# Exhibit 4

233 Cal.App.3d 1587, 285 Cal.Rptr. 417
**(Cite as: 233 Cal.App.3d 1587, 285 Cal.Rptr. 417)**

C

Court of Appeal, Second District, Division 5, California.
CREDIT MANAGERS' ASSOCIATION OF
SOUTHERN CALIFORNIA, Plaintiff, Respondent
and Cross-Appellant,
v.
James W. BRUBAKER, an individual and Does 1
through 20, inclusive, Defendants, Appellants and
Cross-Respondents.
**Civ. No. B043162.**

Sept. 12, 1991.

Assignee for benefit of creditors sued chief execut-
ive officer of assignor, seeking to recover sums
paid by assignor to officer allegedly in preference
over other creditors. The Superior Court, Los
Angeles County, No. C611375, Delbert E. Wong,
Temporary Judge,FN* entered judgment for assign-
ee, but denied assignee prejudgment interest. Ap-
peals were taken. The Court of Appeal, Ashby, J.,
held that: (1) officer's use of private line of credit
with bank to procure currency for use in assignor's
automated teller machines, which was subsequently
repaid, was "loan" for purposes of statute prohibit-
ing creditors from receiving preferential payments
from assignors; (2) loans by officer to assignor
were not in the ordinary course of business, so as to
be exempt from preference statute; (3) assignee was
not liable for any breach of contract claim officer
might have against assignor; and (4) assignee was
entitled to prejudgment interest on preferential pay-
ments made to executive.

FN* Pursuant to Cal.Const., art. VI, § 21.

Affirmed as modified.

West Headnotes

**[1] Debtor and Creditor 117T** ☡6

117T Debtor and Creditor

   117Tk1 Assignments for Benefit of Creditors
      117Tk6 k. Rights and Remedies of Creditors.
Most Cited Cases
Officer had made "loan" to partnership, which had
subsequently executed assignment for benefit of
creditors, by using his personal line of credit with
bank to purchase currency which was dispensed
through automatic teller machines operated by as-
signor in retail business establishments, and trans-
actions were covered by statute prohibiting creditor
of assignor from receiving payments from assignor
in preference over other unsecured creditors, even
though officer claimed that money was furnished to
assignor as bailment. West's Ann.Cal.C.C.P. § 1800
; West's Ann.Cal.Civ.Code §§ 1884, 1912.

**[2] Debtor and Creditor 117T** ☡6

117T Debtor and Creditor
   117Tk1 Assignments for Benefit of Creditors
      117Tk6 k. Rights and Remedies of Creditors.
Most Cited Cases
Chief executive officer of partnership which had
made assignment for benefit of creditors, who had
made use of his personal line of credit at bank to
procure currency for use in assignor's automated
teller machines in retail stores, was not exempt
from statute providing that all unsecured creditors
of assignor would recover equally from assignor,
by virtue of an exception for debt incurred in ordin-
ary course of business; provision applied to busi-
ness of both assignor/debtor and creditor, and of-
ficer making loan was not in general business of
loaning money, and also repayment had not been
made within 45 days after debt was incurred, as re-
quired under statutory exemption. West's
Ann.Cal.C.C.P. § 1800(c)(2), (c)(2)(A, B).

**[3] Debtor and Creditor 117T** ☡6

117T Debtor and Creditor
   117Tk1 Assignments for Benefit of Creditors
      117Tk6 k. Rights and Remedies of Creditors.
Most Cited Cases

233 Cal.App.3d 1587, 285 Cal.Rptr. 417
**(Cite as: 233 Cal.App.3d 1587, 285 Cal.Rptr. 417)**

Chief executive officer of partnership which was assignor for benefit of creditors could not pursue breach of contract claim against assignee; assignee did not assume liabilities of assignor's insolvent business. West's Ann.Cal.C.C.P. §§ 493.010, 1800.

**[4] Interest 219 ⟲39(2.20)**

219 Interest
 219III Time and Computation
  219k39 Time from Which Interest Runs in General
   219k39(2.5) Prejudgment Interest in General
    219k39(2.20) k. Particular Cases and Issues. Most Cited Cases

Assignee for benefit of creditors was entitled to prejudgment interest on amount it claimed chief executive officer of assignor had loaned to assignor in order to procure currency for its automated teller machines, and had then been repaid as a preference over other creditors; assignee had sent letter to officer demanding sum ultimately awarded, prior to commencement of suit, which listed payments in question so as to indicate method of calculation. West's Ann.Cal.Civ.Code § 3287(a).

**\*\*418 \*1589** Hennigan & Mercer and J. Michael Hennigan and Pamala J. King, Los Angeles, for plaintiff, respondent and cross-appellant.

Sheppard, Mullin, Richter & Hampton, Brian L. Holman and David Isenberg, Los Angeles, for defendants, appellants and cross-respondents.

**\*1590** ASHBY, Associate Justice.

Pursuant to a general assignment for the benefit of creditors, plaintiff Credit Managers' Association of Southern California, now known as Credit Managers' Association of California (CMA), was assigned the assets of an insolvent partnership, National Transaction Systems (NTS). In marshalling the assets of the partnership in order to distribute them equally to the unsecured creditors, CMA brought this action against defendant James W.

Brubaker pursuant to Code of Civil Procedure section 1800. The purpose of the action was to recover amounts which Brubaker, the chief executive officer of NTS, had received from NTS in preference over other unsecured creditors. Brubaker filed a cross-complaint for breach of his NTS employment contract and to recover compensation for services rendered after the assignment for benefit of creditors.

By nonjury trial the court found that Brubaker was obligated to return preferential transfers in the amount of $118,582.49. On Brubaker's cross-complaint the court awarded $5,000 to Brubaker in quantum meruit.

**\*\*419** Both parties appeal. Brubaker contends that he was not a "creditor" of NTS and the advances he made to NTS should be regarded as a bailment, trust, or advances in the ordinary course of business. He also contends he was entitled to breach of contract damages on his cross-complaint. CMA appeals, contending the court should have awarded prejudgment interest on the judgment in CMA's favor.

We affirm the judgment in favor of CMA for $118,582.49 and the judgment for Brubaker for $5,000. We remand for the trial court to add prejudgment interest to the award in favor of CMA.

BACKGROUND

At all pertinent times NTS was insolvent. Brubaker, the chief executive officer under a written executive employment agreement with NTS, knew or had reason to know of the insolvent financial condition of NTS. Between September 1984 and December 23, 1985 (the date of the general assignment for the benefit of creditors), Brubaker advanced substantial funds to NTS through Brubaker's $150,000 personal line of credit with the Bank of America. Periodically NTS repaid these advances. Brubaker was repaid 100 percent of his advances, whereas other unsecured creditors received less than 10 percent. Un-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

233 Cal.App.3d 1587, 285 Cal.Rptr. 417
**(Cite as: 233 Cal.App.3d 1587, 285 Cal.Rptr. 417)**

der these circumstances Code of Civil Procedure section 1800, subdivision (b) permits CMA to recover transfers from NTS to Brubaker within the one-year period prior to the assignment for the benefit of creditors.

**\*1591** Brubaker's primary contention on appeal is that he was not a creditor. He contends that the funds he advanced to NTS should be characterized as a bailment or a trust rather than a loan, and therefore the transfers from NTS back to him were merely the return of "his" money, not a preference over other creditors. Understanding this contention requires a brief description of NTS's business.

NTS operated a system of automated teller machines (ATMs). The ATMs in this case were placed in 7-Eleven stores. NTS would stock the ATMs with $20 bills. A customer using an ATM card from the customer's own bank could withdraw cash from the ATM. A magnetic record of the transaction was sent to an automatic clearing house. At the automatic clearing house the account at the customer's bank was debited with the withdrawal, and NTS's account was credited with that amount plus a transaction fee.

Brubaker advanced funds to NTS so that NTS could obtain the currency to stock the ATMs with $20 bills. Brubaker had a personal line of credit at Bank of America. Brubaker would write a check drawn on his personal line of credit. Brubaker's check would be deposited into NTS's general operating account. NTS would then write a check to Bank of America, which was cashed for currency. The currency was loaded into cassettes and taken by armored truck to the ATMs in the 7-Eleven stores.

After the automatic clearing house reconciled the daily transactions from the ATMs, the funds in NTS's clearing house account were used either (1) to repay to Brubaker's line of credit the amounts advanced by Brubaker, plus the interest owed by Brubaker to the Bank of America, or (2) to obtain more currency to replenish ATMs. The advances attributable to Brubaker were used solely to obtain

currency for the ATMs and were not comingled with NTS's funds for other operating expenses.

During the one-year period prior to the assignment for benefit of creditors, NTS transferred $118,582.49 to Brubaker's benefit on account of antecedent debts to Brubaker (after deducting certain "new value" allowed as a defense under Code of Civil Procedure section 1800, subdivision (c)(4)).

CHARACTERIZATION OF LOANS

[1] Brubaker contends he was not a "creditor" of NTS and the sums he advanced to NTS should be characterized as a bailment, special deposit, or trust. There is no merit to this contention. Substantial evidence supports the trial court's contrary conclusion.

**\*1592** Civil Code section 1925 expressly excludes money from the concept of bailment.**\*\*420** [FN1] Similarly Civil Code section 1884 defines a "loan for use" to involve temporary possession of personal property and the return of the "same thing" without reward.[FN2] Brubaker's transaction was properly found to be a loan, as defined in Civil Code section 1912: "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed."

> FN1. Civil Code section 1925 states: "Hiring is a contract by which one gives to another the temporary possession and use of property, *other than money,* for reward, and the latter agrees to return the same to the former at a future time." (Emphasis added.)

> FN2. Civil Code section 1884 states: "A loan for use is a contract by which one gives to another the temporary possession and use of personal property, and the latter agrees to return *the same thing* to him at a future time, without reward for its use."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

233 Cal.App.3d 1587, 285 Cal.Rptr. 417
**(Cite as: 233 Cal.App.3d 1587, 285 Cal.Rptr. 417)**

(Emphasis added.)

Brubaker cites a written "currency supply agreement" he executed with NTS dated August 1, 1985. FN3 Contrary to Brubaker's argument, this agreement is not controlling. In determining whether the transaction was a loan, the court will look to the substance of the transaction rather than the form or terminology of the parties. (*Burr v. Capital Reserve Corp.* (1969) 71 Cal.2d 983, 989, 80 Cal.Rptr. 345, 458 P.2d 185; *Great American Ins. Co. v. National Health Services, Inc.* (1976) 62 Cal.App.3d 785, 791, 133 Cal.Rptr. 420.) FN4

FN3. This agreement recited in part, "BRUBAKER will make available, from time to time, as requested by NTS and agreed by BRUBAKER, currency for the 7-ELEVEN stores up to an amount of Two Hundred Fifty Thousand dollars ($250,000) for the sole purpose of provisioning the Automated Teller Machines (ATMs) at 7-ELEVEN stores in California. Currency provided by BRUBAKER under this agreement are secured by said currency, which shall remain the property of BRUBAKER. [¶] Said currency shall remain the property of BRUBAKER throughout the transaction, including but not limited to pickup and delivery of the currency from Bank of America, recovery of the currency dispensed through the Federal Reserve Automated Clearing House (ACH) and crediting or recrediting BRUBAKER account at Bank of America. At no time will the currency supplied by BRUBAKER be comingled with NTS funds or used for any other purpose than supplying currency to the NTS owned ATMs at 7-ELEVEN locations in California. [¶] NTS shall reimburse BRUBAKER for interest charged to BRUBAKER by Bank of America for the time that the currency has been withdrawn from BRUBAKER's account at Bank of Amer-

ica until such funds have been returned to said account. [¶] BRUBAKER may, at any time, demand return of any or all such currency to his account at Bank of America, with or without reason, and NTS shall return such currency immediately, without recourse."

FN4. Contrary to Brubaker's argument at trial, the court was not required to treat Brubaker's currency supply agreement the same as an assertedly analogous agreement between NTS and California First Bank. Unlike Brubaker, California First was a bank supplying currency from its "vault cash" on deposit at the Federal Reserve, under specific federal regulations.

Brubaker never actually supplied currency, i.e., $20 bills, for use in the ATMs. He wrote a check to NTS which deposited the check in its operating account and which wrote another check to cover the cost of obtaining **\*1593** currency from the bank. In essence Brubaker financed the purchase of NTS's inventory for its vending machines.

The currency obtained as a result of Brubaker's advances could not literally remain his throughout the transaction, because the $20 bills became the property of the customer when withdrawn from the ATM.

NTS paid Brubaker back with interest, which is characteristic of a loan of money. (Civ.Code, § 1914.) This characteristic as interest is not changed by the fact the interest was equivalent to the interest charged by Bank of America to Brubaker.

Brubaker cites a federal case involving gasoline in a pipeline for the proposition that a bailment can exist in a "fungible commodity." (*In re Fuel Oil Supply and Terminaling, Inc.* (S.D.Tex.1987) 72 B.R. 752, revd. on other grounds (5th Cir.1988) 837 F.2d 224.) California law clearly distinguishes money, however. (Civ.Code, §§ 1912-1915, 1925.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

233 Cal.App.3d 1587, 285 Cal.Rptr. 417
**(Cite as: 233 Cal.App.3d 1587, 285 Cal.Rptr. 417)**

The fact the loan was designated for only the specific purpose of supplying the ATMs does not necessarily change its character as a loan. (*Calvin & Co. v. United States of America* (1968) 264 Cal.App.2d 571, 574-575, 70 Cal.Rptr. 578.)

**421** It was intended and contemplated that the proceeds of Brubaker's loans would be *used* in the operation of NTS's business; it was further contemplated and intended that these business operations would generate sufficient revenue to pay the necessary interest. Since the proceeds would in fact be used in operation of the business, the proceeds were not merely a special deposit or trust. (See *Bank of America Assn. v. California Bk.* (1933) 218 Cal. 261, 273-274, 22 P.2d 704; *Petherbridge v. Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 517-518, 145 Cal.Rptr. 87.)

ORDINARY COURSE OF BUSINESS

[2] Brubaker contends that even if Brubaker is a creditor of NTS, the transfers by NTS to Brubaker were within the exception in Code of Civil Procedure section 1800, subdivision (c)(2) for payment made and debt incurred in the ordinary course of business.FN5 There is no merit to this **1594** contention. The trial court's finding against Brubaker is supported on two grounds.

> FN5. Code of Civil Procedure section 1800 , subdivision (c)(2) provides: "The assignee may not recover under this section a transfer: [¶] To the extent that such transfer was: [¶] (A) In payment of a debt incurred in the ordinary course of business or financial affairs of the assignor and the transferee; [¶] (B) Made not later than 45 days after such debt was incurred; [¶] (C) Made in the ordinary course of business or financial affairs of the assignor and the transferee; and [¶] (D) Made according to ordinary business terms."

First, under subdivision (c)(2)(A), the debt must be

incurred in the ordinary course of business of the assignor *and* the transferee. Brubaker was not a financial institution in the business of making loans, thus the trial court reasonably found the loans were not in the ordinary course of business for him. (Cf. *In re Fulghum Const. Corp.* (6th Cir.1989) 872 F.2d 739, 743.)

Second, under subdivision (c)(2)(B), the payment must be made no later than 45 days after the debt was incurred. Brubaker contends this condition was satisfied if the debt is viewed as incurred when a customer withdrew cash from an ATM. This contention lacks merit in light of our holding that Brubaker's advances to NTS were properly characterized as loans. The debt was therefore incurred when Brubaker's line of credit was charged, rather than later as customers withdrew cash from the ATMs. (See *Matter of CHG Intern., Inc.* (9th Cir.1990) 897 F.2d 1479, 1486.) Indeed, the currency supply agreement on which Brubaker relies obligates NTS to pay interest from the time of withdrawal from Brubaker's Bank of America account. (Fn. 3, *ante.*)

CROSS-COMPLAINT FOR EXECUTIVE COMPENSATION

[3] Brubaker was chief executive officer of NTS pursuant to a written employment agreement. Brubaker filed a cross-complaint against CMA, contending that CMA is liable for breach of contract for the compensation Brubaker would have earned on the remaining two years of his contract. CMA denied liability on the contract but conceded that Brubaker was due $5,000 in quantum meruit for two weeks of services assisting CMA in winding down the affairs of the insolvent NTS. The trial court awarded Brubaker $5,000 on his cross-complaint.

Brubaker contends he was entitled instead to damages for breach of his employment contract with NTS. The trial court properly rejected this contention. The assignment to CMA did not include an as-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

233 Cal.App.3d 1587, 285 Cal.Rptr. 417
**(Cite as: 233 Cal.App.3d 1587, 285 Cal.Rptr. 417)**

sumption by CMA of the liabilities of NTS's contractual agreements.

The assignment to CMA was not an assignment in connection with the purchase and sale of NTS as a going concern. It was an assignment for the benefit of creditors, pursuant to which CMA, as a disinterested third party, would liquidate and distribute the assets of NTS to creditors. The beneficial procedure of an assignment for benefit of creditors would be impossible to use if the assignee had to assume the liabilities of the insolvent business. *1595 Code Civ.Proc., § 493.010; 1 Witkin, Summary of California Law (9th ed. 1987) Contracts § 924, p. 824.)

**\*\*422 PREJUDGMENT INTEREST**

[4] CMA appeals from the judgment in its favor for $118,582.49, to the extent the trial court denied prejudgment interest on this amount. CMA contends it is entitled as a matter of right to prejudgment interest because the damages were certain or capable of being made certain by calculation. ( Civ.Code, § 3287, subd. (a).) We agree.

On June 18, 1986, CMA sent Brubaker a demand letter, which Brubaker admitted receiving. The letter demanded $118,582.49, the exact amount requested in CMA's complaint and awarded in the judgment. The demand letter listed the payments from NTS to Brubaker claimed to be recoverable by CMA as preferences, as well as conceded credits for new advances.

The exact amount due and the manner of calculation were made known by CMA to Brubaker, and CMA was therefore entitled to interest from that date. (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 798, 142 Cal.Rptr. 1; *Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 690, 48 Cal.Rptr. 901.)

There is no merit to Brubaker's suggestion that CMA's demands were inconsistent or uncertain. The demand letter acknowledged CMA's awareness of Brubaker's claim that the funds remained his

property at all times. CMA merely suggested a different figure which would be due even if Brubaker were to prevail on that argument. Brubaker's denial of liability on the main theory did not make the damages uncertain within the meaning of Civil Code section 3287. (*Continental Bank v. Blethen* (1970) 7 Cal.App.3d 178, 187, 86 Cal.Rptr. 485.) FN6

FN6. On its cross-appeal CMA raises additional issues regarding certain pretrial rulings, but expressly withdraws those issues in the event this court affirms the judgment in CMA's favor. In light of our disposition these issues need not be discussed.

DISPOSITION

The judgment is modified to provide that plaintiff Credit Managers' Association of Southern California, now known as Credit Managers' Association of California, is entitled to interest on the judgment from June 18, 1986, pursuant to Civil Code section 3287, subdivision (a). As so modified the judgment is affirmed and the cause remanded to the trial court for calculation of interest. Costs on appeal are awarded to Credit Managers' *1596 Association of Southern California, now known as Credit Managers' Association of California.

TURNER, P.J., and BOREN, J., concur.
Cal.App. 2 Dist.,1991.
Credit Managers' Assn. v. Brubaker
233 Cal.App.3d 1587, 285 Cal.Rptr. 417

END OF DOCUMENT

162 Cal.App.3d 1166, 209 Cal.Rptr. 119
**(Cite as: 162 Cal.App.3d 1166, 209 Cal.Rptr. 119)**

C

Court of Appeal, Second District, Division 7, California.
CREDIT MANAGERS ASSOCIATION OF SOUTHERN CALIFORNIA, Assignee for the Benefit of Creditors of Molnar & Associates, Inc., Plaintiffs and Appellants,
v.
NATIONAL INDEPENDENT BUSINESS ALLIANCE, a California corporation, Gordon Bizar dba International Business Network, Gordon Bizar, and Does I through X, inclusive, Defendants and Respondents.
NATIONAL INDEPENDENT BUSINESS ALLIANCE, a California corporation, Gordon Bizar dba International Business Network, Gordon Bizar, Cross-Complainant,
v.
CREDIT MANAGERS ASSOCIATION OF SOUTHERN CALIFORNIA, Assignee for the Benefit of Creditors of Molnar & Associates, Inc., and Does 1 through 30, inclusive, Cross-Defendants.
**No. B001773.**

Dec. 20, 1984.

Default judgment was entered against assignor on a cross complaint of defendant in breach of contract action without notice to plaintiff, the assignee for benefit of creditors. Assignee then moved to have the judgment set aside and to be allowed to defend against the cross complaint as representative of and on behalf of assignor. The Superior Court, Los Angeles County, George Kalinski, Temporary Judge, denied motion to set aside, and assignee appealed. The Court of Appeal, Bigelow, J., assigned, held that assignee was entitled to relief on grounds of surprise.

Reversed with instructions.

West Headnotes

**[1] Debtor and Creditor 117T ☞3**

117T Debtor and Creditor
    117Tk1 Assignments for Benefit of Creditors
        117Tk3 k. Construction and Operation. Most Cited Cases
Under the common law of assignments, assignees for benefit of creditors stand in place of assignor, and can assert no claim to property which assignor might not.

**[2] Debtor and Creditor 117T ☞3**

117T Debtor and Creditor
    117Tk1 Assignments for Benefit of Creditors
        117Tk3 k. Construction and Operation. Most Cited Cases
Assignment for the benefit of creditors does not carry with it to trustee title to property which assignor has previously transferred in fraud of his creditors, for purpose of hindering, delaying, and defrauding them.

**[3] Judgment 228 ☞143(3)**

228 Judgment
    228IV By Default
        228IV(B) Opening or Setting Aside Default
            228k143 Excuses for Default
                228k143(3) k. Mistake, Surprise, or Excusable Neglect in General. Most Cited Cases
"Surprise" as used in Code of Civil Procedure section concerning relief from judgment taken by mistake, inadvertence, surprise or excusable neglect is some condition or situation in which a party to cause is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against. West's Ann.Cal.C.C.P. § 473.

**[4] Judgment 228 ☞143(6)**

228 Judgment
    228IV By Default
        228IV(B) Opening or Setting Aside Default
            228k143 Excuses for Default
                228k143(6) k. Mistake as to Process.

162 Cal.App.3d 1166, 209 Cal.Rptr. 119
**(Cite as: 162 Cal.App.3d 1166, 209 Cal.Rptr. 119)**

Most Cited Cases

Assignee for benefit of creditors was entitled to relief from default judgment taken against its assignor on cross claim against assignor by defendant, due to surprise, where assignee was not aware that service had been had on its assignor until after default was entered and judgment taken against assignor and where transfer of all of assignor's assets to assignee for benefit of creditors had already taken place before cross complaint against assignor was filed. West's Ann.Cal.C.C.P. §§ 4, 385, 473.

**120 *1168 Arak, Welter & Snipper, Stephen J. Snipper, Los Angeles, for plaintiffs and appellants and cross-defendants.

Countryman & McDaniel, W. Dart Vernon, Los Angeles, for defendants and respondents and cross-complainant.

BIGELOW, Associate Justice.FN*

> FN* Assigned by the Chairperson of the Judicial Council.

### Appeal

Plaintiff appeals from the denial of its motion to set aside the default and default judgment taken by defendant upon its cross-complaint against plaintiff's assignor, Molnar & Associates, Inc.

### Issues

1. Does the assignee for the benefit of creditors have standing to move to set aside the default and default judgment taken against its assignor when the cross-complaint therein was filed after the assignment became effective?

2. Did the plaintiff-assignee and defendant-cross-complainant enter into an agreement that cross-complainant would notify plaintiff of the fact of service of process on the assignor before taking assignor's default; and did the trial court make a finding of fact on this issue which was supported by

sufficient substantial evidence?

3. Was relief under section 473 of the Code of Civil Procedure, or other equitable relief, available to plaintiff-assignee and, if so, did the trial court abuse its discretion in denying such relief?

### Facts

Assignor, Molnar & Associates, Inc., a California corporation, made an assignment for benefit of creditors to plaintiff. The validity of this common *1169 law assignment for benefit of creditors is not questioned in this appeal. Plaintiff-assignee then brought an action for breach of contract against defendant on one of the assets of the estate, namely a written agreement between defendant and the assignor.

Defendant contested this action, and in turn, filed its cross-complaint against the assignor on the same agreement, naming plaintiff as one of the additional cross-defendants in its capacity as assignee. Plaintiff, on its own behalf as assignee only, contested the cross-complaint.

**121 Counsel for plaintiff and defendant had numerous discussions and exchanged correspondence concerning service of process on the assignor as a cross-defendant.

Defendant was finally able to effect service of process of its cross-complaint on the assignor. Without notifying plaintiff, defendant had the assignor's default entered and then took default judgment against the assignor on the cross-complaint. Defendant notified plaintiff of the default judgment a few days after its entry.

Immediately, plaintiff filed its motion to set aside this default and default judgment and to be allowed to defend against the cross-complaint as the representative of and on behalf of its assignor. The trial court heard and denied the motion.

Plaintiff appeals. We reverse with directions.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

162 Cal.App.3d 1166, 209 Cal.Rptr. 119
**(Cite as: 162 Cal.App.3d 1166, 209 Cal.Rptr. 119)**

*Discussion*

*History and Nature of Assignment for Benefit of Creditors*

An assignment for benefit of creditors is a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings. (See Cal.Law Revision Com. Comment, cited *infra.*)

For a period of time in California, both the common law type and a statutory *alternative* type of such assignment existed at the same time.

*Common Law*

Section 22.2 of the Civil Code provides as follows: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution **\*1170** of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State." (Added by Stats. 1951, ch. 655, § 1, p. 1833-derived from Stats. 1850, ch. 95, Pol. C. 4468, p. 219.) "The Mexican system was superseded in this state by the adoption of the common law on the 13th of April, 1850, Acts 1850, page 219." (*People ex rel. Vantine v. Senter* (1865) 28 Cal. 502, 505.)

*Statutory Law*

Sections 3449 to 3473 inclusive, of the Civil Code provided a statutory method of making an assignment for benefit of creditors. Section 3448 of that code provided that the common law assignment for benefit of creditors is expressly recognized and that the statutory method is strictly an *alternative* to the common law method and is not to be construed as preventing or invalidating a common law assignment. The statutory provisions for this alternative method of making an assignment for benefit of creditors were repealed by Stats.1980, chapter 35, section 3, page 313. Thereafter common law as-

signments are to be used exclusively. (Law Revision Com. Comment to the repealing legislation.)

Although certain code sections do exist pertaining to such assignments (i.e., §§ 493.020 and 493.010 of the Code Civ.Proc. recognize such an assignment and set forth its requirements), none are relevant to the issues in this appeal. The assignment in our case on appeal was executed after the effective date of the repeal of the statutory alternate method. We are here governed by common law as applied by the California decisions. (See *Bumb v. Bennett* (1958) 51 Cal.2d 294, 299, 333 P.2d 23.)

*Property Rights Acquired by Assignee*

[1][2] Definitive language is contained in the case of *Francisco v. Aguirre* (1892) 94 Cal. 180, 183, 186-187, 29 P. 495, as follows:

"Under the common law of assignments, the assignee stands in the place of the assignor, and can assert no claim to property which the assignor might not. The assignment, therefore, does not carry with it to the trustee the title to property which the assignor has previously transferred in fraud of his creditors, for the purpose of hindering, delaying, and defauding them. [Citations omitted.]"

The court went on to hold that while the above rule was correct, yet the assignee had the right to resist a fraudulent claim **\*\*122** against property in his hands, the court quoting an earlier case from a different jurisdiction as follows:

"It is the duty of the assignee in the performance of his trust to **\*1171** defend this property against all unjust adverse claims. He takes the property, not as a purchaser, but subject to all rights and equities subsisting against it in favor of third parties, and in that sense he is said to succeed only to the rights of his assignor.... In the present case, *the right of the assignee to defend* against a foreclosure of the mortgage is not based upon a transfer of the rights and equities of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

162 Cal.App.3d 1166, 209 Cal.Rptr. 119
**(Cite as: 162 Cal.App.3d 1166, 209 Cal.Rptr. 119)**

creditors, but upon the fact that *the title of the property has been vested in him in trust for the creditors,* and that having accepted the trust, *he is charged with the duty of protecting the property against all fraudulent claims.*" (Emphasis added.)

### *Assignee's Right to Represent Assignor*

In the case of *Plummer v. Brown* (1884) 64 Cal. 429, 1 P. 703, the court construed the meaning of "legal representatives" as used in section 473 and of the right to be substituted in place of a party as used in section 385, both of the Code of Civil Procedure.

Section 473 of that code provides in pertinent parts:

"The court may, upon such terms as may be just, relieve a party or his or her *legal representative* from a judgment, order or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect." (Emphasis added.)

Section 385 of that Code provides in pertinent part:

"(a) An action or proceeding does not abate ... or by a transfer of any interest therein, if the cause of action survive or continue.... In case of any transfer of interest, the action or proceeding may be continued in the name of the original party, or the *court may allow the person to whom the transfer is made to be substituted in the action* or proceeding...." (Emphasis added.)

In *Plummer, supra,* the trial court had ordered that the default of the grantor of land and the resulting default judgment be set aside and that the grantees be allowed to be substituted in place of the grantor to defend as successors in interest and to conduct all proceedings in grantor's name. Grantees had acquired the interest of the grantor after the commencement of the action against the grantor. The court held as follows in affirming the trial court's rulings at page 430, P. 703:

"Per Curiam.-We think that (grantees) after acquiring the entire interest of the defendant in the subject-matter of this action, were his 'legal representatives' " within the meaning of the phrase used in section 473, Code of Civil Procedure. "An *assignee* or grantee is a legal representative of the *assignor* or grantor in regard to the thing *assigned* or granted. [Citation omitted.]" They certainly had acquired the right to represent him. The transfer of his interest to them entitled them to **1172 have the action continue in his name, or the court might allow them to be substituted for him. (Code Civ.Proc., § 385.) "To represent a person is to stand in his place, to act his part, exercise his right, or take his share. [Citation omitted.]"

"Being the legal representative of the defendant the court was authorized upon such terms as might be just to relieve them from a default taken against him, through his mistake, inadvertence, surprise, or excusable neglect."

"After transferring his entire interest in the subject of the controversy, the defendant was only nominally a party to the action. The real parties in interest were his grantees. The entry of his default affected them, not him. It is the duty of all courts to construe the provisions of the Code 'liberally, ... with a view to effect its objects and to promote justice.' (Code Civ.Proc., § 4.) And being satisfied that the moving parties were, upon the showing made by them, entitled to the relief granted, the **123 order of the court below is affirmed." (Emphasis added.)

The provisions of section 4 of the Code of Civil Procedure have not changed since enacted in 1872. ( *Cory v. Crocker National Bank* (1981) 123 Cal.App.3d 665, 669, 177 Cal.Rptr. 150.)

The fact that, in our case at bench, the transfer of all of the assignor's assets to the assignee for benefit of creditors had already taken place before defendant filed its cross-complaint against the assignor, is a distinction which weighs further in favor of granting the relief requested by the assignee. Plaintiff-assignee was the "legal representative" of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

162 Cal.App.3d 1166, 209 Cal.Rptr. 119
**(Cite as: 162 Cal.App.3d 1166, 209 Cal.Rptr. 119)**

the assignor and as trustee for all the creditors, was charged with the duty to defend the property in its hands against all unjust adverse claims.

The policy behind the statutes relating to time limits and other procedural matters are less powerful than the policy which seeks to dispose of litigation on the merits rather than on procedural grounds. ( *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193; see also *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 562, 194 Cal.Rptr. 773, 669 P.2d 9.)

### *Relief from Default Taken by Surprise*

California Code of Civil Procedure section 473 provides for relief from judgment or order taken by mistake, inadvertance, surprise or excusable neglect.

[3]*1173 "Surprise" referred to in the provision of this section is "some condition or situation in which a party to cause is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against." ( *Baratti v. Baratti* (1952) 109 Cal.App.2d 917, 921, 242 P.2d 22.)

[4] Plaintiff was not notified of the assignor's service of process or default being entered before the entry of the default judgment, and was thus taken by surprise.

Immediately after notice, plaintiff made a timely motion to set aside the default in compliance with section 473 of the Code of Civil Procedure.

We hold that the trial court abused its discretion in refusing the relief requested by plaintiff.

### *Other Issue*

We need not, and do not address the issue of whether the plaintiff was promised by defendant that it would be notified if and when service of process was made upon its assignor before entering the de-

fault.

### *Disposition*

The denial of plaintiff's motions is reversed as follows:

The trial court is ordered to set aside the entry of default of Molnar & Associates, Inc. and the default judgment against it which resulted. It is further ordered to grant plaintiff's motion to be substituted in place of said assignor and to be allowed to defend against the cross-complaint of the defendant in assignor's name as its legal representative for the benefit of its creditors.

THOMPSON, Acting P.J., and JOHNSON, J., concur.

Cal.App. 2 Dist.,1984.

Credit Managers Assn. v. National Independent Business Alliance

162 Cal.App.3d 1166, 209 Cal.Rptr. 119

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 1

153 Cal.App.4th 977, 62 Cal.Rptr.3d 896, 07 Cal. Daily Op. Serv. 9003, 2007 Daily Journal D.A.R. 11,535
**(Cite as: 153 Cal.App.4th 977, 62 Cal.Rptr.3d 896)**

H

Court of Appeal, Second District, Division 3, California.
SHERWOOD PARTNERS, INC., Plaintiff and Appellant,
v.
EOP-MARINA BUSINESS CENTER, L.L.C., Defendant and Respondent.
**No. B189590.**

July 27, 2007.

**Background:** Assignee for the benefit of commercial tenant's creditors brought action against landlord for return of security deposit. The Superior Court, Los Angeles County, No. BC281990, Rita Miller, J., entered judgment for assignee. Landlord appealed, and the Court of Appeal, 2005 WL 1594858, reversed and remanded. On remand, the trial court entered judgment for landlord and granted landlord's motion for costs and attorney's fees, finding that assignee and tenant were jointly and severally liable. Assignee appealed.

**Holding:** The Court of Appeal, Kitching, J., held that assignee was not liable for attorney's fees and costs pursuant to lease.
Reversed and remanded.

West Headnotes

**Debtor and Creditor 117T ⟋6**

117T Debtor and Creditor
  117Tk1 Assignments for Benefit of Creditors
    117Tk6 k. Rights and Remedies of Creditors.
Most Cited Cases
Assignee for the benefit of commercial tenant's creditors did not assume the underlying contractual obligations in the written lease between tenant and landlord and thus was not liable for attorney fees and costs pursuant to that lease in connection with failed action to recover security deposit from landlord; although assignee also sought attorney's fees,

it sought to recover attorney fees for the benefit of tenant's creditors, not in its own right, and did not contend that it was entitled to an award of attorney fees as a party to the underlying lease.
**896** Snyder Miller & Orton and Luther Orton, San Francisco, for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Charles N. Kenworthy, Michael S. Greger, Irvine, and Jeanne M. Jorgensen, for Defendant and Respondent.

KITCHING, J.

**\*978 INTRODUCTION**

Plaintiff and appellant, Sherwood Partners, Inc. (Sherwood), as an assignee for the benefit of the creditors of an insolvent entity called WhatsHot-Now.com **\*979** tenant), filed suit against tenant's landlord, defendant and respondent EOP-Marina Business Center, L.L.C. (EOP), for return of tenant's security deposit in the amount of $324,000. The trial court entered judgment in favor of Sherwood. EOP appealed. The Court of Appeal reversed and remanded the case, directing the trial court to enter judgment in favor of EOP, allowing it to retain the security deposit. (Sherwood Partners, Inc. v. EOP-Marina Business Center (July 8, 2005, B175899), 2005 WL 1594858 [nonpub. opn.] ( Sherwood I ).)

On remand, the trial court granted EOP's motion for costs and attorney fees in the amount of $323,000 based upon an attorney fee provision in the written lease agreement between tenant and EOP. The trial court found that Sherwood and tenant were jointly and severally liable for the costs and attorney fees. Sherwood appeals the award of costs and attorney fees against it personally. Sherwood does not appeal the award of costs and attorney fees against tenant.

We reverse. As an assignee for the benefit of credit-

153 Cal.App.4th 977, 62 Cal.Rptr.3d 896, 07 Cal. Daily Op. Serv. 9003, 2007 Daily Journal D.A.R. 11,535
**(Cite as: 153 Cal.App.4th 977, 62 Cal.Rptr.3d 896)**

ors, Sherwood did not assume**897 the underlying liabilities of tenant. (*Credit Managers' Assn. v. Brubaker* (1991) 233 Cal.App.3d 1587, 1594-1595, 285 Cal.Rptr. 417 (*Brubaker* ).) Thus, Sherwood cannot be personally liable for the award of attorney fees pursuant to the written lease between EOP and tenant. The procedure of an assignment for the benefit of creditors would be eviscerated if an assignee like Sherwood were required to assume the underlying liabilities of the assignor's insolvent business. (*Ibid.*)

We therefore remand the case to the trial court with direction to enter a new and different judgment stating that Sherwood, as assignee for the benefit of creditors, is not personally liable for the award of costs and attorney fees in favor of EOP.

## FACTUAL AND PROCEDURAL BACK-GROUND

### 1. *The Lease*

In March 1999, tenant entered into a commercial real estate lease with EOP as the landlord. Tenant paid $324,000 to EOP as a security deposit.

The lease contained an attorney fee provision: "If Landlord places the enforcement of this Lease, or any part thereof, or the collection of any Rent **980** due, or to become due hereunder, or recovery of possession of the Premises in the hands of an attorney, Tenant shall pay to Landlord, upon demand, Landlord's reasonable attorneys' fees and court costs, whether incurred without trial, at trial, appeal or review. In any action which Landlord or Tenant brings to enforce its respective rights hereunder, the unsuccessful party shall pay all costs incurred by the prevailing party including reasonable attorneys' fees, to be fixed by the court, and said costs and attorneys' fees shall be a part of the judgment in said action."

### 2. *Tenant Defaults*

Tenant defaulted under the lease by failing to pay rent and other charges. In June 2001, EOP served tenant with a three-day notice to pay rent or quit. Approximately one week later, tenant made a general assignment to Sherwood for the benefit of creditors.

The assignment agreement between tenant and Sherwood provided: "[Tenant] ... does hereby grant, bargain, sell, assign, convey and transfer to [Sherwood], its successors and assigns, in trust, for the benefit of [tenant's] creditors generally, all of the property of [tenant] of every kind and nature[.]"

In July 2001, Sherwood surrendered possession of the property to EOP. EOP withdrew approximately $323,000 in proceeds from tenant's security deposit to pay rent and other charges.

### 3. *Sherwood Files Suit for Return of Security Deposit*

In September 2002, Sherwood filed suit for return of the security deposit. Sherwood alleged that EOP violated section Civil Code 1950.7 (section 1950.7 ), subdivision (c), by drawing upon the security deposit for reimbursement of unpaid rental obligations accruing after tenant's breach of the lease. Sherwood claimed that section 1950.7 required EOP to return the security deposit to tenant's estate.

### 4. *Trial Court Enters Judgment in Favor of Sherwood*

The trial court conducted a bench trial on stipulated facts. The court held that section 1950.7, subdivision (c), required EOP to refund a portion of the security deposit, minus an offset. The trial court entered judgment in favor of Sherwood, which EOP appealed.

**898 *981 5. *The Court of Appeal Reverses Judgment in Favor of Sherwood*

On appeal, in *Sherwood I, supra,* B175899, 2005

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

153 Cal.App.4th 977, 62 Cal.Rptr.3d 896, 07 Cal. Daily Op. Serv. 9003, 2007 Daily Journal D.A.R. 11,535
**(Cite as: 153 Cal.App.4th 977, 62 Cal.Rptr.3d 896)**

WL 1594858, the Court of Appeal reversed the judgment in favor of Sherwood. The court concluded that in the lease agreement tenant waived protections set forth in section 1950.7, subdivision (c). This waiver authorized EOP to retain the security deposit and apply it against unpaid rental obligations.

6. *Trial Court Awards EOP Costs and Attorney Fees*

Upon remand, the trial court found that pursuant to the contractual attorney fee provision quoted above, tenant and Sherwood were jointly and severally liable to EOP for costs and attorney fees in the amount of $323,000. Sherwood timely filed a notice of appeal.

#### ISSUE PRESENTED

The issue presented is whether Sherwood, as an assignee for the benefit of creditors, is personally liable for the award of costs and attorney fees to EOP based on the written attorney fee provision in the lease agreement between EOP and tenant.

#### STANDARD OF REVIEW

We apply a de novo standard of review. (*California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598, 604, 117 Cal.Rptr.2d 390 ["On appeal, this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law."].)

#### DISCUSSION

Sherwood asserts that it did not assume tenant's liabilities under the written lease with EOP. We agree.

As summarized in Witkin, "[a]n assignment for benefit of creditors is a widely used method by which an insolvent debtor transfers his or her assets in trust to an assignee, who liquidates them and distributes the proceeds to the creditors." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 710, p. 795.) In *Credit Managers Assn. v. National Independent Business Alliance, supra,* 162 Cal.App.3d 1166, 209 Cal.Rptr. 119, the court explained: "An assignment for [the] benefit of creditors is a business liquidation device **\*982** available to an insolvent debtor as an alternative to formal bankruptcy proceedings." (*Id.* at p. 1169, 209 Cal.Rptr. 119.)

In *Brubaker, supra,* 233 Cal.App.3d at page 1590, 285 Cal.Rptr. 417, an insolvent partnership called NTS executed a general assignment for the benefit of creditors in favor of the Credit Managers' Association of California (CMA). CMA sued the former chief executive officer of NTS, Brubaker, to recover amounts NTS paid to Brubaker in preference over other unsecured creditors. Brubaker filed a cross-complaint against CMA. Brubaker alleged that CMA, as assignee of NTS, was liable for breach of contract for compensation that Brubaker would have earned on the remaining two years of his contract with NTS. Brubaker also sought compensation for work he performed for NTS after the assignment to CMA. (*Ibid.*) Following a court trial, the court awarded Brubaker $5,000 in quantum meruit, but denied his claim for contractual damages for the two years remaining on the employment contract with NTS.

On appeal, Brubaker asserted that he was entitled to damages for breach of his employment contract with NTS and that CMA was liable for those damages. The Court of Appeal rejected Brubaker's assertion, stating: "The trial court properly rejected this contention. The assignment **\*\*899** to CMA did not include an assumption by CMA of the liabilities of NTS's contractual agreements. [¶] The assignment to CMA was not an assignment in connection with the purchase and sale of NTS as a going concern. It was an assignment for the benefit of creditors, pursuant to which CMA, as a disinterested third party, would liquidate and distribute the assets

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

153 Cal.App.4th 977, 62 Cal.Rptr.3d 896, 07 Cal. Daily Op. Serv. 9003, 2007 Daily Journal D.A.R. 11,535
**(Cite as: 153 Cal.App.4th 977, 62 Cal.Rptr.3d 896)**

of NTS to creditors. The beneficial procedure of an assignment for [the] benefit of creditors would be impossible to use if the assignee had to assume the liabilities of the insolvent business. [Citations.]" (*Brubaker, supra,* 233 Cal.App.3d at pp. 1594-1595, 285 Cal.Rptr. 417.)

The rationale of the *Brubaker* case is persuasive and applies in this case. Like *Brubaker,* tenant's assignment to Sherwood was not an assignment in connection with the purchase and sale of tenant as a going concern. It was an assignment for the benefit of creditors, pursuant to which Sherwood was required to liquidate tenant's assets for the benefit of its creditors. We find that the assignment did not include an assumption by Sherwood of tenant's underlying contractual liabilities, including the attorney fee provision in the written lease between EOP and tenant.

EOP argues that Sherwood should be personally liable because in *Sherwood I,* the Court of Appeal concluded that Sherwood was the real party in interest and because Sherwood initiated this lawsuit. We disagree.

**\*983** As an assignee for the benefit of creditors, Sherwood had a duty to marshal and protect the assets of tenant, which may include filing and defending lawsuits. (See *Credit Managers Assn. v. National Independent Business Alliance, supra,* 162 Cal.App.3d at pp. 1170-1171, 209 Cal.Rptr. 119.) To impose underlying contractual liabilities upon an assignee for the benefit of creditors because the assignee initiated litigation to protect an assignor's assets, would create a disincentive for such assignees to seek to protect an assignor's assets for the benefit of creditors.

In *Brubaker,* the assignee for the benefit of creditors, CMA, initiated the lawsuit against Brubaker for amounts paid to Brubaker. The court held, however, that plaintiff CMA, clearly the real party in interest, did not assume the contractual liabilities of the assignee, NTS. (*Brubaker, supra,* 233 Cal.App.3d. at p. 1594, 285 Cal.Rptr. 417.) We therefore reject

EOP's contention that because Sherwood was the real party in interest and initiated this lawsuit, it assumed tenant's underlying lease obligations.

EOP asserts that pursuant to *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc., supra,* 96 Cal.App.4th 598, 117 Cal.Rptr.2d 390, Sherwood, as an assignee, assumed tenant's contractual obligations, including the attorney fee provision. We reject this contention. *California Wholesale Material Supply* is inapposite to the issue presented in this case because it did not involve an assignment for the benefit of creditors. That case involved an assignment of a security interest in a construction subcontract and a right to account receivables. (*Id.* at pp. 601-602, 117 Cal.Rptr.2d 390.) The court did not address whether an assignee for the benefit of creditors assumes the underlying lease obligations of the assignor.

EOP further asserts that Sherwood is personally liable for attorney fees because Sherwood initially sought to recover attorney fees pursuant to the written attorney fee provision in the lease between EOP and tenant after prevailing on the merits in the trial court. We disagree. The record shows that Sherwood sought to recover attorney fees for the benefit of tenant's creditors, not in its own right. Sherwood **\*\*900** did not contend that it was entitled to an award of attorney fees as a party to the underlying lease between EOP and tenant. We conclude that Sherwood is not personally liable for attorney fees because it attempted to seek attorney fees on behalf of its assignor, tenant.

We conclude on this record that Sherwood, as an assignee for the benefit of creditors, did not assume the underlying contractual obligations in the written lease between tenant and EOP, and thus cannot be liable for attorney fees and costs pursuant to that lease.

### \*984 DISPOSITION

The order and judgment awarding EOP attorney

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

153 Cal.App.4th 977, 62 Cal.Rptr.3d 896, 07 Cal. Daily Op. Serv. 9003, 2007 Daily Journal D.A.R. 11,535
**(Cite as: 153 Cal.App.4th 977, 62 Cal.Rptr.3d 896)**

fees and costs personally against Sherwood is reversed. The case is remanded to the trial court with instructions to enter a new and different judgment showing that Sherwood is not personally liable for costs and attorney fees awarded to EOP. Plaintiff Sherwood is awarded costs on appeal pursuant to rule 8.276 of the California Rules of Court.

KLEIN, P.J., and ALDRICH, J., concur.
Cal.App. 2 Dist.,2007.
Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.
153 Cal.App.4th 977, 62 Cal.Rptr.3d 896, 07 Cal. Daily Op. Serv. 9003, 2007 Daily Journal D.A.R. 11,535

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 P.2d 615                                                                 Page 1
130 Cal.App.2d 507, 279 P.2d 615
**(Cite as: 130 Cal.App.2d 507, 279 P.2d 615)**

**C**

District Court of Appeal, Second District, Division
1, California.
VOLLESTEDT KERR LUMBER CO., a corpora-
tion, Plaintiff and Respondent,
v.
PRODUCTION HOMES, Inc., a corporation, De-
fendant, and
Clyde Conover, Ray Haley, Jr., and George W.
Barker, Third Party Claimants and Appellants.
**Civ. 20367.**

Jan. 31, 1955.

Proceeding by supplier of lumber to attach lumber
in collection of purchase money debt. The Superior
Court, Santa Barbara County, Walter J. Fourt, J.,
determined that assignees for benefit of defendant's
creditors had no right, title or interest in lumber,
and assignees appealed. The District Court of Ap-
peal, White, P. J., held that under statute providing
that where materials have been furnished for con-
struction of building, they are not subject to legal
process to enforce any debt, except that for pur-
chase money, so long as they are about to be ap-
plied to construction, where construction subcon-
tractor's creditors stopped production by an attach-
ment, and then took voluntary assignment, includ-
ing assignment of contract with provision that they
were authorized to continue work, and released
their attachment, the assignment was ineffective as
against supplier's subsequent attachment to enforce
purchase money debt.

Order affirmed.

West Headnotes

**[1] Debtor and Creditor 117T ⇐3**

117T Debtor and Creditor
    117Tk1 Assignments for Benefit of Creditors
        117Tk3 k. Construction and Operation. Most
Cited Cases

(Formerly 39k184 Assignments for Benefit of
Creditors)
Assignees for benefit of creditors were not pur-
chasers for value, and stood in position of those
they represented.

**[2] Sales 343 ⇐222**

343 Sales
    343V Operation and Effect
        343V(B) Rights and Liabilities of Seller as to
Third Persons
            343k222 k. Creditors of Buyer. Most
Cited Cases
Statute providing that when materials are furnished
for construction of building, they are not subject to
process to enforce any debt, except debt for pur-
chase money, so long as they are about to be ap-
plied to construction, was intended to protect sup-
plier against other creditors in interim between de-
livery of materials and their incorporation into
building. West's Ann.Code Civ.Proc. § 1202.1.

**[3] Mechanics' Liens 257 ⇐166**

257 Mechanics' Liens
    257IV Operation and Effect
        257IV(A) Amount and Extent of Lien
            257k165 Time of Accrual or Commence-
ment
                257k166 k. In General. Most Cited
Cases
As soon an materials furnished for construction of
building have been incorporated into building, sup-
plier has lien not only upon materials, but upon
building and land. West's Ann.Code Civ.Proc. §
1181 et seq.

**[4] Debtor and Creditor 117T ⇐2**

117T Debtor and Creditor
    117Tk1 Assignments for Benefit of Creditors
        117Tk2 k. Requisites and Validity. Most
Cited Cases

(Formerly 39k29 Assignments for Benefit of

Creditors)
"Legal process" within statute providing that when materials are furnished for construction of building, they are not subject to legal process to enforce any debt, except that for purchase money, so long as they are about to be applied to construction of building, includes an assignment for benefit of creditors other than supplier. West's Ann.Code Civ.Proc. § 1202.1.

**[5] Debtor and Creditor 117T ⬥=6**

117T Debtor and Creditor
    117Tk1 Assignments for Benefit of Creditors
        117Tk6 k. Rights and Remedies of Creditors.
Most Cited Cases
    (Formerly 39k336 Assignments for Benefit of Creditors)
Under statute providing that where materials have been furnished for construction of building, they are not subject to legal process to enforce any debt, except that for purchase money, so long as they are about to be applied to construction, where construction subcontractor's creditors stopped production by an attachment, and then took voluntary assignment, including assignment of contract with provision that they were authorized to continue work, and released their attachment, the assignment was ineffective as against supplier's subsequent attachment to enforce purchase money debt. West's Ann.Civ.Code, § 3470; West's Ann.Code Civ.Proc. § 1202.1.
**\*\*616 \*508** Charles W. Jamison, Santa Barbara, for appellants.

Griffith & Thornburgh, Laselle Thornburgh, Santa Barbara, King, Miller, Anderson, Nash & Yerke, Robert S. Miller, Frederic A. Yerke, Jr., Portland, Ore., Paul R. Meyer, Berkeley, for respondent.

WHITE, Presiding Justice.

The instant appeal is taken from an order determining that third party claimants have no right, title or interest in certain lumber attached by respondent.

Following is a résumé of the pertinent events and proceedings.

The defendant, Production Homes, Inc., was a subcontractor obligated to construct, at its Goleta plant in Santa Barbara County, wall sections and roof members for 337 living units, 337 garage and laundry units, one pump-house and one office building, and to erect them, in accordance with Navy specifications, on a certain site near Marine Corps Depot of Suppliers, at Barstow, in San Bernardino County. Plaintiff sold lumber and delivered it to defendant at Goleta, 'on the specific understanding and agreement between the parties that all such materials were to be used exclusively for the construction of particular buildings to be erected on certain premises located near the Marine Corps Depot of Supplies, Barstow, San Bernardino County, California'. Between June 17 and September 17, 1953, under said agreement, defendant ordered and plaintiff delivered at defendant's Goleta plant lumber of the value of $145,958.92. Between June 17 and September 23, 1953, defendant constructed at Goleta and erected at Barstow, interior and exterior wall sections and roof members for 167 living units, 74 garages and 10 laundry units. September 17, such construction at the Goleta plant was suspended because a creditor of defendant, other than respondent, attached all the assets of defendant including the lumber now attached by respondent.

September 23, 1953, defendant executed and delivered to appellants an ordinary common law assignment of all its assets for the benefit of its creditors. On September 25, 1953, the attachment of such other creditor was released from the lumber here involved; and on the same day appellants recorded**\*509** their assignment and took possession of defendant's Goleta plant and other assets, including the lumber now under respondents' attachment. Said assignment expressly authorized appellants to complete defendant's contracts. Appellants, however, did not 'continue with carrying out the contract for furnishing materials' to the general contractor on the buildings for which the attached lum-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ber was to be used exclusively. On September 29, 1953, appellants notified respondent, through their respective attorneys, that the general contractor had declared defendant in default and would not accept further materials under the contract. On or about October 29, 1953, respondents filed this action for lumber sold and delivered and attached the lumber then remaining at defendant's Goleta plant. By their third party claim, appellants aver that on September 25, 1953, they, 'as trustees for the benefit of all the creditors' of defendant, took possession and 'now are in full and complete possession of said assets', and that the attached property 'belongs to' them. They also set forth that defendant's debts total approximately $504,000.00, its assets approximately $150,000 including the attached lumber.

After this action was filed, respondent allegedly discovered that a $14,102.01 of the lumber sold to defendant had been 'obtained by fraud'. An action was brought in the United States District Court for rescission of the sale of that lumber, and the judgment sought in the instant action was reduced by that amount. Judgment by default**617 was rendered in the instant action December 24, 1953, for $131,856.91. No appeal has been taken from the judgment.

The petition to determine title to property claimed by Third Party was heard upon stipulation of facts, and both oral and documentary evidence, and the instant appeal was taken from the Decree Determining that 'Third Party Claimants Have No Right, Title, or Interest in Property Attached', dated December 21, 1953.

Appellants, in their Opening Brief, state that 'The sole issue on appeal, is whether a Vendor who has sold building materials to a Vendee for use in a specific construction project can levy an attachment against such materials in an action for the purchase price, after title and possession of such materials has been transferred by Vendee to Assignees for benefit of creditors generally, and where it has become impossible for Vendee to continue to furnish said materials for said building project.'

**\*510** Appellants rely upon Brainard v. Fitzgerald, 3 Cal.2d 157, 163, 44 P.2d 336, 339, where it was held that the general assignment for the benefit of creditors prevailed over a subsequent attachment, and that the assignment was not a violation of section 3440 of the Civil Code, and wherein it was further said:

'\* \* \* The assignment herein having been made in good faith, the property right passed out of the co-partnership debtor, and thereafter no legal title existed in it on which the attachment could have fastened.

'Because of varying statutory provisions there involved, we shall not undertake to refer to the numerous authorities from other jurisdictions wherein common-law assignments have been held to take priority over subsequent attachments or executions of an opposing creditor. In the absence of any conflict with or violation of our statutory law, we are not inclined to interfere with the practice developed by local boards of trade of procuring assignments, executed in good faith, for the benefit of creditors generally. Experience has shown that this practice has much to commend it.'

Appellants' statement of the 'sole issue' hereinabove quoted ignores the real issue before us on this appeal, to-wit: Was title to said lumber transferred to appellants by defendant's assignment for the benefit of all his creditors?

[1] Appellants are not purchasers for value. See First National Bank of Stockton v. Pomona Tile Manufacturing Co., 82 Cal.App.2d 592, 609, 186 P.2d 693. Their position is the same as the positions of those they represent, the same as other creditors trying to enforce debts due by the purchaser of the lumber other than the 'debt due for the purchase-money thereof'. In principle there is no difference between appellants' position and that of an attaching creditor of the than respondent, if, between the levy and release of the attachment, defendant had executed and delivered to him a bill of sale of the lumber.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

According to Appellants' Brief, 'At all times *after* the assignment of assets for the benefit of creditors, on September 23, 1953, Defendant was unable to continue to furnish the lumber to Harsh Construction Company (the general contractor) for use in the Barstow Project'. (Emphasis added.)

Section 1202.1 of the Code of Civil Procedure provides: 'Whenever materials shall have been furnished for use in the construction * * * of any building * * * such materials shall not be subject to attachment, execution, *or other legal process*, to enforce any debt due by the purchaser of such **\*511** materials, except a debt due for the purchase-money thereof, so long as in good faith the same are about to be applied to the construction * * * of such building * * *.' (Emphasis added.) This statute has not been construed by our courts, nor has our attention been called to any decision by the courts of another state on the question presented.

Appellants concede that the attachment on September 17, 1953, by a creditor other than respondent was ineffective under said section 1202.1; and they further concede that they or any or all of the creditors represented by them could not have attached or levied execution upon said lumber on September 23, 1953, to collect the debts due them from defendant. They further concede that a transfer at that time by operation**\*\*618** of law because of defendant's death or bankruptcy would have been 'other legal process' and would have given the creditors represented by them no right to have said lumber applied in payment of the debts due them.

But, appellants take the position that the procedure followed by them-(1) a wrongful attachment to assure that the lumber was no longer 'about to be applied to the construction'; (2) a general common law assignment for the benefit of creditors; and (3) release of the attachment and delivery of the lumber to the assignees for the benefit of the creditors-effectively removed the lumber from the protection of section 1202.1, and is not such 'other legal process' as is prohibited by said section.

[2][3][4] Appellants urge that 'Section 1202.1 does not say that the purchaser cannot sell the materials or otherwise voluntarily divest himself of title', and that the purpose of the section is to protect the purchaser against his other creditors, and not to curtail purchaser's right to deal with the materials and to sell or transfer them as he sees fit. Manifestly, however, the main purpose of said section 1202.1 is to protect the supplier against the other creditors of his purchaser in the interim between the delivery of the materials and their incorporation into the building for which they were sold. As soon as the materials have been so used, the supplier is given a lien not only upon the materials, but upon the building and the land upon which they are used. Code of Civil Procedure, Section 1181 et seq. Considering these provisions together, it is clear that the Legislature, by its use of the phrase 'other legal process, to enforce any debt due * * * except a debt due for the purchase-money thereof,' intended that such materials 'shall not be subject' to transfer to other creditors in satisfaction**\*512** of their debts by assignment for the benefit of creditors.

[5] We are convinced that, under all the facts and circumstances disclosed by the record before us on this appeal, title to the lumber so attached by respondent had not passed to appellants as assignees for the benefit of creditors by defendant's voluntary assignment of all its assets to them under date of September 23, 1953. There is no evidence of any transfer, or attempt to transfer, said lumber at a later date when said lumber was not 'about to be applied to the construction'. Therefore the title to the lumber remained in defendant and was subject to respondent's attachment on October 29, 1953.

A further reason for holding that appellants did not take title to the lumber involved in the instant action is that 'Property exempt from execution, and insurance upon the life of the assignor, do not pass to the assignee by a general assignment for the benefit of creditors, unless the instrument specially mentions them, and declares an intention that they should pass thereby.' Civil Code, Section 3470; 5

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-10155-SAS   Document 148-4   Filed 09/20/10   Page 22 of 22

Cal.Jur.2d 400; 4 Am.Jur. 347. Assuming that, at the time of defendant's assignment to appellants, said section 1202.1 of the Code of Civil Procedure in no way limited defendant's power to transfer said lumber, it undoubtedly exempted said lumber from execution, except by respondent. Consequently, as 'property exempt from execution,' said lumber did 'not pass to the assignee by a general assignment for the benefit of creditors,' because said assignment contains no special mention of the lumber and no declaration therein of an intention that the lumber 'should pass thereby.'

The order is affirmed.

We concur.

DORAN and DRAPEAU, JJ., concur.
Cal.App. 2 Dist. 1955
Vollstedt Kerr Lumber Co. v. Production Homes
130 Cal.App.2d 507, 279 P.2d 615

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.