# Exhibit 5

1  Jon R. Parsons (Cal. State Bar No. 88045)
   Heather Ledgerwood (Cal. State Bar No. 244730)
2  JON R. PARSONS LAW FIRM
   2501 Park Boulevard, Suite 207
3  Palo Alto, California 94306-1925
   Telephone:    (650) 321-8579
4  Facsimile:    (650) 321-7929

5  Attorneys for Plaintiff Darwin Chang

6

7                                                          FILED  Santa Clara Co
                                                           06/14/10    2:43pm
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA David H. Yamasaki
                                                           Chief Executive Offic
9                  COUNTY OF SANTA CLARA                    By: msorum DTSCIVD101
                                                           R#201000063290
10                                                         CK             $355.00
                                                           TL             $355.00
11                                                         Case: 1-10-CV-174416

12                                          110CV174416

13  DARWIN CHANG,                           CASE NO.

14  Plaintiff,
                                            UNLIMITED JURISDICTION
15  vs.

16  WESTINGHOUSE DIGITAL, LLC, a
    Delaware limited liability company formerly    COMPLAINT FOR DECLARATORY
17  known as GOLDEN STAR                            RELIEF TO DETERMINE ALTER EGO
    ELECTRONICS, LLC; RICHARD HOUNG,               LIABILITY, SINGLE ENTERPRISE
18  an individual; NEXIS, INC.; a California        LIABILITY, SUCCESSOR ENTITY
    corporation;  MORA ELECTRONICS, LLC,           LIABILITY, AND PRINCIPAL-AGENT
19  a California limited liability company          LIABILITY
    formerly known as WESTINGHOUSE
20  DIGITAL ELECTRONICS, LLC; CHI MEI
    CORPORATION, a Republic of China
21  corporation;  CHI MEI INNOLUX
    CORPORATION, a Republic of China
22  corporation; THE CHIMEI GROUP, an
    unincorporated association; CHI MEI
23  OPTOELECTRONICS USA, INC, a
    Delaware corporation; and DOES 1 through
24  100, inclusive

25  Defendants.

26      Plaintiff Darwin Chang alleges:

27      **ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

28      1.    Plaintiff Darwin Chang ("Plaintiff" or "CHANG") is, and at all relevant times

Page 1

COMPLAINT FOR DECLARATORY RELIEF

1   was, an adult individual and a resident of the County of Santa Clara, California. Plaintiff

2   was the Chief Technology Officer of Defendant WDE-LLC from 2003 until 2009. employed

3   in Cupertino, Santa Clara County, California.

4       2.     Defendant MORA ELECTRONICS, LLC, formerly known as

5   WESTINGHOUSE DIGITAL ELECTRONICS, LLC. ("WDE-LLC"), is, and at all relevant

6   times was, a California limited liability company with its current principal place of business in

7   Santa Fe Springs, Los Angeles County, California.

8       3.     Defendant WESTINGHOUSE DIGITAL, LLC ("WD-LLC"), formerly known as

9   GOLDEN STAR ELECTRONICS, LLC, is, and at all relevant times was, a Delaware limited

10   liability company with its current principal place of business in Orange County, California.

11       4.     Defendant RICHARD HOUNG, also known as Houng Yin-Ching, ("HOUNG")

12   is, and at all relevant times was, an adult individual residing in Irvine, Orange County,

13   California.

14       5.     Defendant NEXIS, INC. ("NEXIS") is, and at all relevant times was, a

15   California corporation with its current principal place of business in Santa Fe Springs, Los

16   Angeles County, California, at the same business location as WDE-LLC.

17       6.     Defendant CHI MEI CORPORATION ("CMC") is, and at all relevant times was,

18   a Republic of China corporation, with its current principal office in Chunan, Hsinchu Hsien,

19   Taiwan. Since its founding in 1959, CMC has been a major player in the petro-chemical

20   industry, and has expanded into many industries such as food, hospitality, tele-

21   communications, trading, and hi-tech manufacturing activities.

22       7.     Defendant CHI MEI INNOLUX CORPORATION ("CMI") is, and at all relevant

23   times was, a Republic of China corporation, with a principal office in Chunan, Hsinchu

24   Hsien, Taiwan. Until its merger with Innolux Display Corporation and TPO Display

25   Corporation on April 1, 2010, CMI was known as CHI MEI OPTOELECTRONICS

26   CORPORATION ("CMO"). CMC and THE CHIMEI GROUP formed CMO in 1997 as a

27   Member of the Group controlled by CMC. In August of 2002 CMO became the first

28   member of THE CHIMEI GROUP to become a publicly traded company on Taiwan. All

1    actions alleged below as being performed by CMI were performed prior to the merger and
2    while Defendant CMI was known as CMO, and while CMO was under the control of CMC
3    and THE CHIMEI GROUP. CMO was the "junior member " of the April 2010 merger, and
4    CMI is now perhaps more closely affiliated with the Foxconn Technology Group, than with
5    THE CHIMEI GROUP.

6    8.    Defendant CHI MEI OPTOELECTRONICS USA, INC. ("CMO-USA") is, and at
7    all relevant times was, a Delaware corporation, qualified to do business, and doing business
8    in California in San Jose, Santa Clara County, California, and is a wholly owned subsidiary
9    of CMI. Defendant CMO-USA conducts no business other than the business of its parent
10    and principal, CMI, and CMO-USA is the conduit and instrumentality through which CMI
11    does business in California. At all relevant times, CMI controls and manages CMO-USA
12    and exercises complete dominion and control over CMO-USA, such that the parent and
13    subsidiary conduct business as a single unified enterprise.

14    9.    Defendant THE CHIMEI GROUP (or "Group") is an unincorporated association
15    of individuals, corporations, and other business entities, which acts in concert and under the
16    direction of the Group's leadership, for their perceived mutual benefit. The Group is
17    controlled by CMC out of Chunan, Hsinchu Hsien, Taiwan, with Members worldwide.

18    10.    Plaintiff does not know the true names and capacities of the Defendants sued
19    as Does 1-100, and therefore sues said Defendants using fictitious names pursuant to
20    Section 474 of the California Code of Civil Procedure.

21    11.    Plaintiff is owed money by WDE-LLC in a sum within the unlimited jurisdiction
22    of the Superior Court. WDE-LLC has ceased all operations and has transferred all of its
23    assets to WD-LLC. WD-LLC now continues the business operations of WDE-LLC intact, but
24    disclaims any responsibility for WDE-LLC obligations not expressly assumed by WD-LLC.

25    **THE CHIMEI GROUP**

26    12.    THE CHIMEI GROUP is a form of strategic business alliance called a ji-tuan
27    (集團) or "Group." THE CHIMEI GROUP consists of both entities and individuals who are
28    recognized by the Group to be members ("Members"). Some Members are publicly

1 recognized as belonging to the Group ("Public Members"), but many other Members are not
2 generally known to be affiliated with the Group ("Non-Public Members"). All of the Members
3 agree to act at the direction of the Group's leadership, with the understanding that their
4 loyalty will be remembered and rewarded. The Group's leadership is composed of a small
5 coterie of key executives, who are typically founders (and now adult children) of key Group
6 Members, and is controlled by CMC.

7 13. In addition to occasionally welcoming established companies into its ranks as
8 Public Members, THE CHIMEI GROUP creates and controls numerous Non-Public
9 Members. These controlled Non-Public Members are used by the Group to further its
10 objectives without its apparent involvement. The Non-Public Members are typically
11 controlled through the use of trusted operative and agents ("Managing Agents"). The
12 Member entities are often titular corporations with a figurehead or nominal board of
13 directors, and the Non-Public Members typically function without any actual Board oversight
14 or governance. The Group's Managing Agents usually control the Non-Public entities using
15 a "general manager" form of management widely practiced in China and Taiwan, which
16 gives the Manager complete authority and power to make and enforce decisions
17 implementing his instructions from the Group. The Managing Agent is appointed by CMC
18 and THE CHIMEI GROUP as their factotum in charge of a given branch or office, and often
19 given the title of "General Manager" or "Manager." Managing Agents control their assigned
20 Non-Public entities without regard to the technical rules of corporate or LLC governance, or
21 the legal requirements of local or federal law. The Group's Managing Agents have strong
22 personal ties to specific persons in the leadership of THE CHIMEI GROUP. These
23 Managing Agents are almost all male and native-born Chinese who speak fluent Chinese.

24 14. THE CHIMEI GROUP, in common with other major Groups that operate in
25 China and Taiwan, displays several additional operating characteristics:

26 (a) Group Members will mislead or defraud third parties to financially
27 benefit another Group Member. For example, one Group Member may take out a loan and
28 secretly forward the loan proceeds to another Group Member unable or unwilling to borrow

Page 4

1  the money itself. To further hide the transaction, the proceeds are often forwarded through
2  an intermediary entity that is another Non-Public Member.

3        (b)    Group Members will mislead or defraud third parties to obtain goods
4  that will then be forwarded to another Group Member. For example, one Group Member will
5  purchase goods or components from a supplier, for resale to another Group Member under
6  favorable terms or at intra-Group pricing. In the event of a problem with the ultimate
7  product, the Group can shut down the purchaser Member, and the Member who received
8  the goods appears to be a bona fide purchaser. The Member entities used in this way as
9  intermediaries are often referred to as "Trading Companies."

10        (c)    To reduce the apparent profits of a Member that manufactures products
11  and pays a royalty or taxes based on profits, the Group can direct that the manufacturing
12  Member now buy its components from another Non-Public Member, often a Trading
13  Company, rather than from its original supplier. The newly inserted Trading Company buys
14  the components from the original supplier, and arbitrarily increases the cost when its resells
15  those components to the manufacturer Member.  The Trading Company's mark-up is then
16  passed on to the Group, and the manufacturing Member pays less to third parties because
17  its profits have been artificially reduced.

18        (d)    To cover up its use of Managing Agents and other Group activities, the
19  Group often uses proxy purchasers to hold legal title to assets that are equitably owned and
20  controlled by the Group. The holder of these assets will transfer legal title to whatever
21  person the Group may designate, typically without receiving any compensation other than
22  the intangible benefits of Group membership.

23        (e)    Members of a Group will often "show their colors" by using similar
24  names. Thus, the CHIMEI GROUP caused HOUNG to form a series of entities in Taiwan,
25  California and Delaware that all began their names with "Nex." These include (1) "Nexgen-
26  Taiwan" (formed on Taiwan in 2001), (2) Nexgen Mediatech USA, Inc. (formed in Delaware
27  in May 2006), (3) Defendant NEXIS (formed in California in January 2003), (4) Nexvision,
28  LLC America, Inc. (formed California in October 2006), and (5) Nexcast, LLC. (formed in

Page 5

1 California in April 2007). HOUNG appointed himself "President" of Nexvision, LLC, and then
2 called this entity "Nexvision America, Inc." or "Nexvision America Incorporated," falsely
3 holding out the company to be a corporation with HOUNG as its President.

4     15.    At the time of the filing of this complaint, THE CHIMEI GROUP publicly
5 recognizes the following entities to be Public Members of THE CHIMEI GROUP: (1) Chi Mei
6 Corporation, (2) Chimei-Asahi Corp., (3) Chi Lin Technology Co., Ltd., (4) Zhenjiang Chimei
7 Chemical Co., Ltd., (5) GIO Optoelectronics Corp., (6) Chi Mei Materials Technology Corp.,
8 Ltd., (7) Transmint Precisions Co., Ltd., (8) Powerking Optoelectronics, Co., Ltd. , (9) Chi
9 Mei Energy Corp., (10) former Chi Mei Optoelectronics Corp (then known as "CMO", now
10 called "CMI"), (12) Ningbo CMO Ltd., (13) Nanhai CMO Ltd., (14) Nanhai CMO Ltd., (15)
11 Nexgen Mediatech Inc., (16) Himax Technologies, Inc., (17) Chi Mei Electroluminescence
12 Corp., (18) Chi Mei Lighting Ltd., (19) Chi Hsin Electronics Corp., (20) Linklinear
13 Development Co. Ltd., (21) Chi Mei Trading Co., Ltd., (22) Chi Mei Logistics Corp., (23) Chi
14 Mei Storage Co. Ltd., (24) Zhengjiang Chi Mei Storage Co., Ltd., (25) Poly Chemical
15 Engineering Co., Ltd., (26) Fulintech Science Engineering Co., Ltd., (27) Contrel
16 Technology Co, Ltd., (28) Chi Mei Culture Foundation, (29) Chi Mei Museum, (30) Chi Mei
17 Foundation Medical Center, (31) Chi Mei Frozen Food Co., Ltd., (32) Chimei Cafe, and (33)
18 Fu Shih Food. The foregoing are collectively and individually referred to as "Public
19 Members" of THE CHIMEI GROUP.

20     16.    Non-Public Group Members of the Group include, among many others,
21 Defendants WD-LLC, WDE-LLC, and NEXIS. HOUNG is an individual Member of THE
22 CHIMEI GROUP who acts as one of its Managing Agents.

23     **HOUNG HAS ACTED AS A MANAGING AGENT FOR CMC, CMI AND THE CHIMEI**
    **GROUP IN HIS CONTROL AND MANIPULATION OF WDE-LLC, WD-LLC AND**
24     **NEXIS, AS WELL AS SEVERAL OTHER MEMBERS OF THE CHIMEI GROUP**

25     17.    Defendant HOUNG was an authorized agent ("Managing Agent") of CMC, CMI
26 and THE CHIMEI GROUP, who worked under the direction, and for the benefit, of THE
27 CHIMEI GROUP. With the financial, material, logistical and "relationship" support of THE
28 CHIMEI GROUP, HOUNG has formed and operated numerous business entities that were

1 Public Member and Non-Public Members of THE CHIMEI GROUP. Like many other
2 Managing Agents of THE CHIMEI GROUP, HOUNG's father is a Member of the Group, and
3 HOUNG rose through the ranks to become a trusted lieutenant in the organization. HOUNG
4 started off as director of sales in Europe for Chi Mei Corporation, and then became what
5 HOUNG called a "general manager" for CMO, before founding Nexgen Mediatech Inc.
6 ("Nexgen-Taiwan") in 2001 on Taiwan. Nexgen-Taiwan was at that point a Non-Public
7 Member of THE CHIMEI GROUP. THE CHIMEI GROUP then sent HOUNG to California,
8 where he set up WDE-LLC in December of 2002, and NEXIS in January of 2003. HOUNG
9 would also later set up WD-LLC in March of 2010.

10   18.   Because HOUNG exercises his control over WDE-LLC and NEXIS in
11 disregard of organizational and legal formalities, he considers himself the "Manager" of the
12 entity regardless of any title he may hold. For example, when HOUNG signed the
13 "Unanimous Written Consent of the Board of Directors of Nexis, Inc." on March 3, 2010 to
14 approve assigning away WDE-LLC's assets, he signed as the sole "Manager" of NEXIS, not
15 as "Director." HOUNG does not keep full or accurate records and falsifies corporate records
16 as needed to protect the interests of THE CHIMEI GROUP. HOUNG destroys records from
17 time to time to conceal his actions as a Managing Agent of THE CHIMEI GROUP.

18   19.   As Managing Agent for THE CHIMEI GROUP, HOUNG would often personally
19 guarantee obligations of Group Members that he then controlled. For example, at one point
20 in time, HOUNG personally guaranteed at least the following obligations of Chimei Group
21 Members:

22      (1)   Working Capital line with TC Bank (with between $10,000,000 and
23 $30,000,000 exposure) for WDE-LLC

24      (2)   Working Capital line with HN Bank (with $8,000,000 exposure) for
25 WDE-LLC;

26      (3)   Working Capital line with TS Bank (with $17,000,000 exposure) for
27 NEXIS;

28      (4)   Working Capital line with TC Bank (with $10,000,000 exposure with

Page 7

1 | stock pledge) for NEXIS;

2 |       (5)   Working Capital line # 2 with TC Bank (with between $10,000,000 and
3 | $30,000,000 exposure) for NEXIS;

4 |       (6)   HNB Bank (with NT$15,000,000 exposure - about US$465,000) for
5 | Westinghouse Digital Taiwan.

6 |    20.   Thus, HOUNG has personally guaranteed, at a single point in time, over
7 | US$100,000,000 in debt incurred by three different Chimei Group Members, in which
8 | HOUNG supposedly had no ownership interest. HOUNG is willing to give his personal
9 | guarantee for crushing amounts of debt because he knows THE CHIMEI GROUP will pay if
10 | payment comes due. Banks in China and Taiwan are willing to take HOUNG's personal
11 | guarantee for debts far beyond his means to pay, because they know THE CHIMEI GROUP
12 | stands behind him.

13 | **WD-LLC, WDE-LLC AND NEXIS ARE ALL MEMBERS OF THE CHIMEI GROUP**

14 |    21.   THE CHIMEI GROUP caused HOUNG to form Defendant WDE-LLC in
15 | California as a limited liability company in December of 2002. Since its formation, HOUNG
16 | has been a "Manager" of WDE-LLC and has controlled and manipulated WDE-LLC for the
17 | benefit of THE CHIMEI GROUP. WDE-LLC is a Non-Public Member of THE CHIMEI
18 | GROUP.

19 |    22.   WDE-LLC's then President and in-house counsel, Douglas Woo, referred to
20 | other companies that were also Chimei Group Members as "strategic partners" of WDE-
21 | LLC, and discussed how WDE-LLC's involvement in THE CHIMEI GROUP resulted in
22 | "vertical integration" among the various Group Members. Douglas Woo now renders to WD-
23 | LLC the same services he once provided to WDE-LLC.

24 |    23.   WDE-LLC's then President, Douglas Woo, was quoted in a May 1, 2005 article
25 | in EM Asia, as touting WDE-LLC's close relationship with THE CHIMEI GROUP. In a
26 | February 26, 2007 BusinessWeek article, HOUNG, then WDE-LLC's Manager and CEO,
27 | publicly confirmed that WDE-LLC had "close ties" with CMI.

28 |    24.   WDE-LLC's then President Douglas Woo has stated in writing that Nexgen-

1   Taiwan is an "affiliate" of WDE-LLC. WDE-LLC's website stated that HOUNG was a
2   founder of Nexgen-Taiwan. Nexgen-Taiwan was originally a Non-Public Member of THE
3   CHIMEI GROUP and is now a Public Member of the Group.

4       25.    HOUNG manipulated WDE-LLC for THE CHIMEI GROUP's benefit, even
5   though he damaged WDE-LLC's income and prospects by doing so. WDE-LLC owned and
6   operated a branch facility called Westinghouse Digital Electronics - Ningpo located outside
7   Shanghai. Branch operations were very profitable, such that THE CHIMEI GROUP decided
8   to make the Ningpo operations part of its publicly acknowledged empire. Therefore, in
9   2005, THE CHIMEI GROUP instructed HOUNG to transfer ownership of the Ningpo
10  operations from WDE-LLC to CMI. The entire facility was thereupon transferred by HOUNG
11  from WDE-LLC to CMI, with no substantial payment actually being made to WDE-LLC. The
12  branch is now a Public Member of THE CHIMEI GROUP called Ningpo Chi Mei
13  Optoelectronics, Ltd.

14      26.    HOUNG would combine the business activities of different Chimei Group
15  Members for the greater good of THE CHIMEI GROUP. For example, HOUNG formed
16  Nexcast, LLC. in April of 2007, but he had WDE-LLC apply to register the NEXCAST
17  trademark with the United States Patent and Trademark Office. HOUNG routinely
18  disregarded the separate existences of the Chimei Group Members that he controlled as a
19  Managing Agent for THE CHIMEI GROUP.

20      27.    THE CHIMEI GROUP caused HOUNG to form Defendant NEXIS in California
21  as a corporation in January of 2003. Since its formation, HOUNG has been a "Manager" of
22  NEXIS, as well as its sole officer and director, and has controlled and manipulated NEXIS
23  for the benefit of THE CHIMEI GROUP. NEXIS is a Non-Public Member of THE CHIMEI
24  GROUP.

25      28.    HOUNG also controlled and manipulated NEXIS to secretly benefit WDE-LLC
26  and perpetrate a fraud on lenders. For example, in 2007 HOUNG had NEXIS borrow
27  US$10,000,000 from a lender, and then secretly forwarded those funds to WDE-LLC. To try
28  and hide the transfer, HOUNG funneled the money through Westinghouse Solutions, Inc.

1 ("WSI"). WSI was another Chi-Mei Group Member whose General Manager was HOUNG's
2 father, who was himself another Managing Agent for THE CHIMEI GROUP. HOUNG
3 personally guaranteed repayment of the debt involved.

4     29.    When HOUNG formed WDE-LLC, in December of 2002, he listed Nexgen-
5 Taiwan as the sole owner of WDE-LLC. Nexgen-Taiwan was at that time a Non-Public
6 Member of THE CHIMEI GROUP that HOUNG had formed on Taiwan earlier that year. As
7 the business of Nexgen-Taiwan improved, THE CHIMEI GROUP wanted to make Nexgen-
8 Taiwan a Public Member of the Group. To hide the relationship between THE CHIMEI
9 GROUP and WDE-LLC, in 2004 HOUNG transferred ownership of WDE-LLC from Nexgen-
10 Taiwan to NEXIS, another Non-Public Member of the Group. Nexgen-Taiwan did not
11 receive any adequate or good consideration for the transfer of WDE-LLC from Nexgen-
12 Taiwan to NEXIS. Then, in 2006 THE CHIMEI GROUP publicly announced that Nexgen-
13 Taiwan was a Member of the Group.

14     30.    In February of 2010 HOUNG, at the instructions and with the support of THE
15 CHI MEI GROUP and CMC, caused a new limited liability company to be formed in
16 Delaware, using the generic name Golden Star Electronics, LLC (now Defendant WD-LLC).
17 HOUNG has controlled this Delaware LLC from its formation as its General Manager and a
18 Managing Agent of THE CHIMEI GROUP, and has placed other persons in titular positions
19 to sign documents when needed.

20     31.    In March of 2010 HOUNG, at the instructions and with the support of THE CHI
21 MEI GROUP and CMC, caused Golden Star Electronics, LLC (now WD-LLC) to qualify to
22 do business in the State of California. HOUNG has controlled California operations from
23 their commencement as the manager of the entity and a Managing Agent of THE CHIMEI
24 GROUP. HOUNG has placed other in positions of titular authority, to further hide his control
25 of, and involvement in, WD-LLC.

26     32.    In April of 2010 WDE-LLC changed its name to "Mora Electronics, LLC ,"
27 changed its address of record to NEXIS' address, and then WD-LLC (still called Golden Star
28 Electronics, LLC) changed its name to "Westinghouse Digital, LLC" – a name identical to

1  WDE-LLC's, except for the last word. WD-LLC continues to use the name "Westinghouse

2  Digital. LLC" and the famous Westinghouse trademark ®.

3      33.    On April 1, 2010, CMO completed its merger with Innolux Display Corporation

4  and TPO Display Corporation. CMO was merged into the new entity which assumed the

5  new name of Chi Mei Innolux Corporation ("CMI"), and the debts of CMO.

6      **WD-LLC ACQUIRED THE ASSETS OF WDE-LLC AS A SECRETLY CONTROLLED**
**MEMBER OF THE CHIMEI GROUP TO CONTINUE THE BUSINESS OF WDE-LLC**
7      **FREE OF UNWANTED DEBTS FOR THE GROUP'S BENEFIT**

8      34.    On April 2, 2010, WDE-LLC assigned all of its assets to Credit Managers

9  Association of California ("CMA") in a general assignment for the benefit of creditors

10 pursuant to California Code of Civil Procedure Sections 493.010-493.060 and 1800-1802.

11     35.    HOUNG coordinated, on behalf of both WDE-LLC and WD-LLC, the timing of

12 when WDE-LLC would deliver its General Assignment to CMA, and the terms under which

13 WD-LLC would acquires those assets. HOUNG had WDE-LLC deliver the General

14 Assignment to CMA on April 2, 2010, such that minutes later that same day, WD-LLC

15 presented its offer to purchase those same assts from CMA. In this way, HOUNG

16 manipulated the transfer of WDE-LLC's assets to WD-LLC without notice to the public, and

17 without an opportunity for any third party to bid for the assets. Without competing bidders,

18 WD-LLC acquired all of WDE-LLC's assets, at a sale price that was substantially below fair

19 market value, free and clear of all debts that THE CHIMEI GROUP did not want WD-LLC to

20 assume.

21     36.    On April 2, 2010, WD-LLC purchased substantially all of the assets of WDE-

22 LLC through the intermediary of CMA. WD-LLC purchased the assets for $500,000 in cash

23 and a promise to pay up to $1,500,000 based on future unit sales.

24     37.    WDE-LLC did not inform CMA of the addresses of all creditors, and provided

25 out-of-date contact information for some. WDE-LLC used an assignment for the benefit of

26 creditors to transfer assets to WD-LLC because it would allow them to keep some creditors

27 and suppliers in the dark, and allow the subterfuge of a supposedly "arm's length" sale from

28 one Chimei Group Member to another.

1      38.    WDE-LLC did not inform CMA of the names and addresses of all of its

2 creditors or suppliers, so that WD-LLC could continue doing business as if it were still WDE-

3 LLC. WD-LLC now holds itself out to purchasers and suppliers as being WDE-LLC, using

4 the same website, trademarks, logo, telephone, e-mail, and name that WDE-LLC used

5 when it conducted business.

6      39.    CMA may have been surprised to find a supposedly independent purchaser

7 with a fully negotiated agreement so ready at hand the same day that the assets were

8 assigned, but CMA must have satisfied itself that the transaction met its standards, such as

9 they were. Indeed, CMA was ethically comfortable enough with the transaction that it

10 agreed to take $1,500,000, i.e. three-fourths (3/4) of the entire purchase price, in future

11 proceeds to be derived from WD-LLC's use of WDE-LLC's assets. Plaintiff does not seek in

12 this action any declaration concerning any potential liability of CMA in this subterfuge.

13      40.    Pursuant to a written Asset Purchase Agreement dated April 2, 2010, WD-LLC

14 purchased substantially all of the business assets of WDE-LLC, including:

15      (a)    All tangible and intangible personal property assets of WDE-LLC used

16 in business operations "including without limitation all machinery and equipment, special

17 tools, furniture, fixtures, inventory and work in process" but excluding certain worthless

18 inventory;

19      (b)    All intangible assets of WDE-LLC "including, without limitation,

20 customer lists, vendor lists, licensing and trademark rights to the name 'Westinghouse

21 Digital Electronics' and the rights to use the name 'Westinghouse' under that certain Trade

22 Name License with Westinghouse Electric Corporation" including use of the famous Ⓦ

23 Westinghouse trademark;

24      (c)    All rights under WDE-LLC's contracts and agreements that WD-LLC

25 agreed to keep in place, but not those that WD-LLC disclaimed;

26      (d)    All intellectual property of WDE-LLC including "without limitation, any

27 Patents, Copyrights, Mark and Trade Secrets relating to the Business" of WDE-LLC;

28      (e)    All rights in WDE-LLC's "Subsidiaries," identified by WDE-LLC to be:

1          (1)    Westinghouse Digital Electronics (Taiwan), Ltd;

2          (2)    Westinghouse Digital Electronics (Japan), Ltd;

3          (3)    Westinghouse Digital Electronics (China), Ltd;

4      (f)    All rights of WDE-LLC "that are deemed by [WD-LLC] in writing to be

5  necessary or desirable in connection with the operation of the Business" run by WDE-LLC;

6      (g)    All rights of WDE-LLC under all "warranties, claims, causes of action,

7  choses in action, covenants and other similar claims and interests of [WDE-LLC] against

8  third parties"

9      (h)    All rights of WDE-LLC in any "prepaid charges, deposits, sums and fees

10  and all rights to refunds;"

11      (i)    All of WDE-LLC's title and interest in all transferrable Governmental

12  Permits;

13      (j)    All rights to WDE-LLC's telephone and facsimile numbers;

14      (k)    All rights to WDE-LLC's world wide web domain names;

15      (l)    All rights in WDE-LLC's "inventory of advertising, sales and customer

16  materials, forms, labels, promotional materials, manuals and supplies used in the operation

17  of the Business;"

18      (m)    All rights in WDE-LLC's "books and records (including, without

19  limitation, sales records, data processing records, employment and personnel records,

20  customer lists, files and records, advertising and marketing data and records, credit records,

21  and records relating to suppliers), credit information, domain names, customer account

22  information, user names, passwords, real names, postal and email addresses, telephone

23  and facsimile numbers, customer credit card information, and billing history relating to such

24  customers and vendors, books of account, files, invoices, inventory records, accounting

25  records, maintenance, operating and production records, customer lists, supplier lists,

26  business plans, catalogs, quality control records and manuals, blueprints, research and

27  development files, laboratory books, patent and trademark files and litigation files, wherever

28  located, whether in hard copy or electronic form;"

1        (n)    All rights to WDE-LLC's computer software;

2        (o)    All rights to WDE-LLC's "goodwill of the Business;"

3        (p)    All rights in WDE-LLC's notes receivable; and

4        (q)    All accounts receivable due to WDE-LLC.

5      41.    WD-LLC did not assume any of WDE-LLC's debts, unless a specific debt was

6 owed to a Chimei Group Member, or was needed for WD-LLC to continue WDE-LLC's

7 business in the guise of being WDE-LLC. WD-LLC assumed debts and executory

8 agreements that permitted it to hold itself out as continuing to be WDE-LLC. WD-LLC

9 reaffirmed executory contracts that were in place with Nexcast, LLC, AdtekMedia, Inc., and

10 Akamai Lighting, LLC because these entities are all fellow Non-Public Members of THE

11 CHIMEI GROUP.

12      42.    WD-LLC refused to assume most of WDE-LLC's debts, but expressly

13 assumed WDE-LLC's debts to other Chimei Group Members. WD-LLC purchased the

14 assets for $500,000 in cash and a promise to pay up to $1,500,000 based on future unit

15 sales. But WD-LLC also assumed over $9,000,000 in debt to fellow Chimei Group

16 Members. Indeed, three of the four largest of WDE-LLC's accounts payable assumed by

17 WD-LLC were to Chimei Group Members:

18        Chimei Trading Co., Ltd.           US$ 8,585,251

19        Chimei Optoelectronics Corp.      US$   163,603

20        Westinghouse Digital Elec. Taiwan   US$   308,815

21      43.    One of the reasons THE CHIMEI GROUP set up Golden Star Electronics, LLC

22 in Delaware, then qualified it in California, and then changed its name to Westinghouse

23 Digital LLC, was to continue the WDE-LLC business so that the new entity could affirm, and

24 then pay, the accounts payable owed to fellow Chimei Group Members. If the debts to

25 Group Members became uncollectable, the Members would experience adverse credit

26 results, and individuals would experience personal embarrassment. By engaging in the

27 sham sale of WDE-LLC's business assets to WD-LLC, free of third party debt, THE CHIMEI

28 GROUP hopes to pay off WDE-LLC's debts to other Chimei Group Members.

1

**WD-LLC Continues The Business Of WDE-LLC To This Day**

2     44.    On April 2, 2010, the same day that WD-LLC purchased all of the assets of

3 WDE-LLC, WD-LLC took over the tenancy of WDE-LLC's offices in the City of Orange, and

4 WD-LLC began conducting WDE-LLC's business, using WDE-LLC's names and

5 trademarks, out of WDE-LLC's prior offices, with WDE-LLC's personnel, using WDE-LLC's

6 furniture, using WDE-LLC's telephones, telephone numbers, fax numbers, "wde.com" e-mail

7 addresses, marketing materials, and more, and appearing for all the world as if WD-LLC

8 was still WDE-LLC.

9     45.    WD-LLC continues the business of WDE-LLC to this day, but if asked, WD-

10 LLC denies that it is connected with WDE-LLC in any way. WD-LLC pretends that it is a

11 new and independent company and asserts that WD-LLC is not liable for any debts of WDE-

12 LLC not expressly assumed, including but not limited to the debt that WDE-LLC owes to

13 CHANG.

14     46.    Not surprisingly, numerous creditors have filed suit against WDE-LLC,

15 HOUNG and NEXIS alleging alter ego liability against HOUNG, and attempting to collect

16 debts that WDE-LLC did not pay when it transferred its business to WD-LLC. CHANG has

17 previously filed a lawsuit in the Superior Court in Santa Clara County against WDE-LLC,

18 HOUNG, Nexgen-Taiwan, and Nexgen Mediatech USA, Inc. to recover his unpaid

19 compensation while an employee of WDE-LLC (the "CHANG Compensation Suit"). The

20 current action does not raise or implicate any of the issues in the CHANG Compensation

21 Suit. The current lawsuit is based on a stated debt owed by WDE-LLC to CHANG, and

22 seeks to impose liability on persons other than WDE-LLC for that liability. The current

23 lawsuit does not seek a determination that HOUNG is the alter ego of WDE-LLC. The

24 current lawsuit seeks a determination only that (1) WD-LLC is liable for all debt owed by

25 WDE-LLC to CHANG, based on two separate grounds alleged below, (2) HOUNG and

26 NEXIS are also liable for that debt of WD-LLC to CHANG on alter ego grounds, and (3)

27 CMC, CMI and THE CHIMEI GROUP are each jointly and severally liable for that debt of

28 WDE-LLC to CHANG on the basis of principal-agent liability.

1

## FIRST CAUSE OF ACTION

2

### JUDICIAL DECLARATION THAT WD-LLC IS A SINGLE ENTERPRISE WITH WDE-LLC

3          47.    WD-LLC and WDE-LLC operate as a single enterprise.  At all relevant times
4   the two entities shared management, employees, legal counsel, support services, office
5   location, business name, trademarks, equipment, website, e-mail addresses, office supplies,
6   telephones, and all other assets used in the daily operation of business.  WD-LLC holds
7   itself out as continuing the business of WDE-LLC, but without any obligation to pay any
8   creditors which are not Members of THE CHIMEI GROUP other than as expressly assumed
9   by WD-LLC.

10         48.    There is no separate or distinct existence between WD-LLC and WDE-LLC,
11  and they engage together in this single enterprise as part of a conspiracy to defraud
12  creditors of WDE-LLC, while continuing the business of WDE-LLC to pay off creditors who
13  are Members of THE CHIMEI GROUP.

14         49.    WD-LLC and WDE-LLC are both controlled and owned by the same person or
15  persons, and act in unison and concert to achieve shared business objectives.  WDE-LLC,
16  and WD-LLC have commingled funds, accounts, records and all other assets used in the
17  operation of the business.

18         50.    WD-LLC and WDE-LLC both disregard their legal and organizational
19  formalities, and are both controlled and operated by HOUNG and THE CHIMEI GROUP as
20  a single enterprise, regardless of the legal requirements of their business forms, and without
21  compliance with record-keeping and other statutory requirements.

22         51.    WD-LLC and WDE-LLC engage in the charade of being two different and
23  unrelated enterprises so that WDE-LLC may avoid the debt that it owes to CHANG and
24  others.

25         52.    There is such unity of interest and ownership between WD-LLC and WDE-LLC
26  that the entities have no separate existence, and adherence to the fiction of a separate
27  existence of the entities would promote injustice, and validate the use of the two entities to
28  commit a fraud upon creditors and CHANG.

Page 16

COMPLAINT FOR DECLARATORY RELIEF

1    53.    A controversy currently exists concerning whether WD-LLC is, or is not, a

2  single enterprise with WDE-LLC. CHANG contends that WD-LLC and WDE-LLC are a

3  single enterprise, such that WD-LLC is liable for the debts of WDE-LLC. WD-LLC and

4  WDE-LLC both deny they are a single enterprise, and instead claim to be completely

5  independent business entities that have nothing whatsoever to do with one another.

6    54.    CHANG requests a judicial declaration to the effect that WD-LLC and WDE-

7  LLC both engage in a single enterprise, such that WD-LLC is liable for all debt of WDE-LLC

8  to CHANG.

9                          **SECOND CAUSE OF ACTION**

10   **JUDICIAL DECLARATION THAT WD-LLC HAS SUCCESSOR ENTITY LIABILITY WITH**
     **RESPECT TO WDE-LLC'S DEBT OWED TO CHANG**
11

12   55.    WD-LLC acquired all of the business assets of WDE-LLC, and is continuing

13  the business operations of WDE-LLC, holding itself out as continuing that business, using

14  the trade name and trademarks of WDE-LLC, using the domain name and e-mail addresses

15  of WDE-LLC, using the website and internet presence of WDE-LLC, using the same

16  business location as WDE-LLC, using the same management as WDE-LLC, retaining most

17  of the employees of WDE-LLC, using the trade secrets and confidential information of WDE-

18  LLC, and conducting the same type of business involving the same goods and services as

19  WDE-LLC, with the same suppliers and major customers as WDE-LLC.

20   56.    WD-LLC denies any responsibility for the debt owed by WDE-LLC to CHANG,

21  and WD-LLC refuses to pay any of WDE-LLC's debt to CHANG.

22   57.    A controversy currently exists concerning whether WD-LLC is, or is not, liable

23  to CHANG as a successor entity for the debt owed by WDE-LLC to CHANG. CHANG

24  contends that WD-LLC is liable as the successor of WDE-LLC, carrying on WDE-LLC's

25  business and holding itself out as WDE-LLC, for all debt owed by WDE-LLC to CHANG.

26  WD-LLC denies it has any successor liability or that it is continuing WDE-LLC's business.

27   58.    CHANG requests a judicial declaration to the effect that WD-LLC is liable as

28  the successor to WDE-LLC for all debt owed by WDE-LLC to CHANG.

1

## THIRD CAUSE OF ACTION

### JUDICIAL DECLARATION THAT HOUNG AND NEXIS ARE BOTH ALTER EGOS OF WD-LLC WITH RESPECT TO THE DEBT OWED TO CHANG

59.    HOUNG is the alter ego of Defendants WD-LLC and NEXIS. There is such a unity of interest and ownership between Defendants WD-LLC, NEXIS and HOUNG that their separate identity has ceased, and to recognize the fiction of their separateness would cause an inequitable result, specifically, that the debt that WD-LLC and NEXIS owe to CHANG would not be paid, to CHANG's resulting detriment.

60.    HOUNG at all times controlled and manipulated WD-LLC and NEXIS for his personal benefit and the benefit of THE CHIMEI GROUP. HOUNG exercised his power and authority in excess of, and in contravention of, WD-LLC's operating agreement, and NEXIS' bylaws. HOUNG has ignored organizational and corporate formalities, and has treated WD-LLC as if it was an extension of his own person, to be used for his personal ends, and the ends of his Principals.

61.    HOUNG has used WD-LLC and NEXIS to defraud third parties, and HOUNG's abuse of WD-LLC and NEXIS has resulted in damage to CHANG.

62.    NEXIS is the alter ego of Defendant WD-LLC. There is such a unity of interest and ownership between Defendants WD-LLC and NEXIS that their separate identity has ceased, and to recognize the fiction of their separateness would cause an inequitable result, specifically, that the debt that WD-LLC owes to CHANG would not be paid, to CHANG's resulting detriment.

63.    HOUNG used NEXIS to control and manipulate WD-LLC, for the personal benefit of HOUNG and THE CHIMEI GROUP. HOUNG manipulated NEXIS in violation of NEXIS' bylaws. HOUNG has ignored organizational and corporate formalities, and has treated NEXIS as if it was an extension of his own person, to be used for his personal ends, and the ends of his Principals.

64.    The fiction of the separateness of HOUNG, WD-LLC and NEXIS must be disregarded to avoid an inequitable harm to CHANG.

Page 18

1    65.    A controversy currently exists concerning whether HOUNG is, or is not, the

2  alter ego of WD-LLC for purposes of the debt owed by WD-LLC to CHANG. CHANG

3  contends that HOUNG is the alter ego of WD-LLC with respect to all debt owed by WD-LLC

4  to CHANG, and is personally liable to CHANG for that debt. HOUNG denies that he is the

5  alter ego of WD-LLC and denies owing anything to CHANG.

6    66.    A controversy currently exists concerning whether HOUNG is, or is not, the

7  alter ego of NEXIS for purposes of the debt owed by WD-LLC to CHANG. CHANG

8  contends that HOUNG is the alter ego of NEXIS with respect to all debt owed by WD-LLC to

9  CHANG, and that HOUNG is personally liable to CHANG for that debt. HOUNG denies that

10  he is the alter ego of NEXIS and denies owing anything to CHANG.

11    67.    A controversy currently exists concerning whether NEXIS is, or is not, the alter

12  ego of WD-LLC for purposes of the debt owed by WD-LLC to CHANG. CHANG contends

13  that NEXIS is the alter ego of WD-LLC with respect to all debt owed by WD-LLC to CHANG,

14  and is liable to CHANG for that debt. NEXIS denies that it is the alter ego of WD-LLC and

15  denies owing anything to CHANG.

16    68.    CHANG requests a judicial declaration to the effect that (a) HOUNG is liable to

17  CHANG for the debt of WD-LLC as the alter ego of WD-LLC, (b) HOUNG is liable to

18  CHANG for the debt of WD-LLC as the alter ego of NEXIS, and (c) NEXIS is liable to

19  CHANG for the debt of WD-LLC to CHANG as the alter ego of WD-LLC.

20                              **FOURTH CAUSE OF ACTION**

21    **JUDICIAL DECLARATION THAT HOUNG IS A MANAGING AGENT OF CMC, CMI AND
      THE CHIMEI GROUP AND THAT CMC, CMI AND THE CHIMEI GROUP ARE**
22    **LIABLE AS PRINCIPALS FOR HOUNG'S ACTS AS THEIR MANAGING AGENT**

23    69.    HOUNG performed the acts alleged above as the authorized agent of CMC,

24  CMI and THE CHIMEI GROUP. HOUNG acted with the actual authority of CMC, CMI and

25  THE CHIMEI GROUP. To the extent HOUNG might have incidentally exceeded his actual

26  authority in some regard, he acted with the ostensible authority of CMC, CMI and THE

27  CHIMEI GROUP, and his acts were thereafter ratified by CMC, CMI and THE CHIMEI

28  GROUP. HOUNG remains a Managing Agent of CMC and THE CHIMEI GROUP

1       70.    In acting as the agent of CMC, CMI and THE CHIMEI GROUP, HOUNG

2   intended to, and did, hinder, delay and interfere with CHANG's ability to collect the debt that

3   WDE-LLC owes to CHANG. In acting as the agent of CMC, CMI and THE CHIMEI GROUP,

4   HOUNG intended to, and did, cause CHANG to not be paid the debt owed to him by WDE-

5   LLC, with the intent that CMC, CMI and THE CHIMEI GROUP would benefit from the funds

6   that would otherwise be paid to CHANG.

7       71.    A controversy currently exists concerning whether CMC is, or is not, liable as

8   Principal for the actions of HOUNG, concerning the non-payment of the debt owed by WDE-

9   LLC to HOUNG, and the transfer of assets to WD-LLC in an attempt to avoid payment of the

10   debt to CHANG. CHANG contends that CMC is liable as the principal of HOUNG for the

11   debt that WDE-LLC owes to CHANG. CMC denies all liability.

12      72.    A controversy currently exists concerning whether CMI is, or is not, liable as

13   Principal for the actions of HOUNG, concerning the non-payment of the debt owed by WDE-

14   LLC to HOUNG, and the transfer of assets to WD-LLC in an attempt to avoid payment of the

15   debt to CHANG. CHANG contends that CMI is liable as the principal of HOUNG for the

16   debt that WDE-LLC owes to CHANG. CMI denies all liability.

17      73.    A controversy currently exists concerning whether THE CHIMEI GROUP is, or

18   is not, liable as Principal for the actions of HOUNG, concerning the non-payment of the debt

19   owed by WDE-LLC to HOUNG, and the transfer of assets to WD-LLC in an attempt to avoid

20   payment of the debt to CHANG. CHANG contends that THE CHIMEI GROUP is liable as

21   the principal of HOUNG for the debt that WDE-LLC owes to CHANG. THE CHIMEI GROUP

22   denies all liability.

23      74.    CHANG requests a judicial declaration to the effect that CMC, CMI and THE

24   CHIMEI GROUP are each jointly and severally liable to CHANG for the debt that WDE-LLC

25   owes to CHANG.

26

27                          **PRAYER FOR RELIEF**

28      WHEREFORE, Plaintiff prays for declaratory relief against Defendants and each of

1 | them as follows:

2 |     1.     For a declaration that WD-LLC is a single enterprise with WDE-LLC, such that
3 | WD-LLC is liable for the debt owed by WDE-LLC to CHANG;.

4 |     2.     For a declaration that WD-LLC is liable as a successor entity for the debt owed
5 | by WDE-LLC to CHANG;

6 |     3.     For a declaration that HOUNG is the alter ego of WD-LLC with respect to the
7 | debt owed to CHANG;

8 |     4.     For a declaration that HOUNG is the alter ego of NEXIS with respect to the
9 | debt owed to CHANG;

10 |     5.     For a declaration that NEXIS is the alter ego of, or a single enterprise with,
11 | WD-LLC with respect to the debt owed to CHANG;

12 |     6.     For a declaration that THE CHIMEI GROUP, CMC and CMI are jointly and
13 | severally liable as Principals, for the actions of their Agent HOUNG, performed within the
14 | scope and course of that agency, such that CMC, CMI and THE CHIMEI GROUP are liable
15 | for the debt of WDE-LLC owed to CHANG;

16 |     7.     For attorneys fees and costs of suit incurred herein;

17 |     8.     For such other and further relief as the Court deems just and proper.

18 |     Dated: June 14, 2010.          Jon R. Parsons Law Firm

19 |
20 |
21 |                             by Jon R. Parsons
                            Attorney for Plaintiff
22 |                             Darwin Chang

23 |
24 |
25 |
26 |
27 |
28 |

COMPLAINT FOR DECLARATORY RELIEF