# Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., <br> LG ELECTRONICS INC., and THE TRUSTEES <br> OF COLUMBIA UNIVERSITY IN THE CITY <br> OF NEW YORK, <br><br>       Plaintiffs, <br><br>    v. <br><br> PETTERS GROUP WORLDWIDE, LLC, <br> POLAROID CORPORATION, <br> WESTINGHOUSE DIGITAL <br> ELECTRONICS, LLC and <br> WESTINGHOUSE DIGITAL, LLC, <br><br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 08-348-GMS <br><br> **JURY TRIAL DEMANDED** |

## FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Samsung Electronics Co., Ltd. ("Samsung"), LG Electronics Inc.

("LG"), and The Trustees of Columbia University in the City of New York ("Columbia")

(collectively "Plaintiffs") allege as follows:

### THE PARTIES

1.    Plaintiff Samsung is a corporation of Korea, having its principal place of

business in Seoul, Korea.

2.    Plaintiff LG is a corporation of Korea, having its principal place of

business in Seoul, Korea.

3.    Plaintiff Columbia is a not-for-profit corporation of New York, having its

principal place of business in New York, New York.

4.    On information and belief, Defendant Petters Group Worldwide, L.L.C.

("Petters Group") is a Delaware limited liability company, having its principal place of

business at 4400 Baker Road, Minnetonka, Minnesota 55343, and doing business in this jurisdiction and elsewhere in the United States.

5.     On information and belief, Defendant Polaroid Corporation ("Polaroid") is a Delaware corporation, having its principal place of business at 1265 Main Street, Building W-3, Waltham, Massachusetts 02451, and doing business in this jurisdiction and elsewhere in the United States.

6.     In October 2008, Petters Group, and its wholly-owned subsidiary, Polaroid, filed for bankruptcy protection and Plaintiffs' claims against them were automatically stayed by the automatic stay provision of the U.S. Bankruptcy Code, 11 U.S.C. § 362(a). Later, in 2009, Polaroid was purchased by a joint venture of private equity firms for $90 million.

7.     On information and belief, Defendant Westinghouse Digital Electronics, L.L.C. ("old Westinghouse") is a California limited liability company, having its principal place of business at 12150 Mora Drive, Santa Fe Springs, California 90670, and doing business in this jurisdiction and elsewhere in the United States.

8.     On information and belief, Defendant Westinghouse Digital, LLC ("new Westinghouse") is a Delaware limited liability company, having its principal place of business at 500 North State College Boulevard, Suite 1300, Orange, California 92868, and doing business in this jurisdiction and elsewhere in the United States.

**JURISDICTION**

9.     This Court has subject matter jurisdiction over the patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States (Title 35 of the United States Code).  This Court has subject matter jurisdiction over the pendent state law claims.  Alternatively, this Court has jurisdiction over

2

the state law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of

citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds

$75,000.

10.    On information and belief, Defendants Petters Group, Polaroid

(collectively "Polaroid"), old Westinghouse, and new Westinghouse (all together

"Defendants") have done and/or do business in this District and have committed the acts of

infringement complained of herein in this District and elsewhere.  Personal jurisdiction over

Defendants is proper in this Court because their contacts with this District are sufficient to

render Defendants amenable to personal jurisdiction in this District.  Personal jurisdiction over

Polaroid and new Westinghouse also is proper because these defendants are incorporated in

Delaware.

## VENUE

11.    Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b), (c)

and § 1400(b).

## THE SAMSUNG PATENTS

12.    United States Patent No. 6,184,938 ("the '938 patent") (Exhibit ("Exh.")

1), entitled "Ghost Cancellation Reference Signal With Bessel Chirps & PN Sequences, & TV

Receiver Using Such Signal," was issued on February 6, 2001, based on an application no.

09/246,182 filed on February 4, 1999.  Samsung is the sole owner of the entire right, title, and

interest in the '938 patent.

13.    United States Patent No. 6,480,239 ("the '239 patent") (Exh. 2), entitled

"Ghost Cancellation Reference Signal With Bessel Chirps And PN Sequences, And TV

Receiver Using Such Signal," was issued on November 12, 2002, based on an application no.

09/575,259 filed on May 19, 2000. Samsung is the sole owner of the entire right, title, and interest in the '239 patent.

14.    United States Patent No. 6,937,292 ("the '292 patent") (Exh. 3), entitled "Ghost Cancellation Reference Signal With Bessel Chirps And PN Sequences, And TV Receiver Using Such Signal," was issued on August 30, 2005, based on an application no. 08/158,299 filed on November 29, 1993. Samsung is the sole owner of the entire right, title, and interest in the '292 patent.

15.    United States Patent No. 6,104,436 ("the '436 patent") (Exh. 4), entitled "Method And Apparatus For Displaying Subchannel Information In A Digital TV Receiver," was issued on August 15, 2000, based on an application no. 09/033,006 filed on March 2, 1998. Samsung is the sole owner of the entire right, title, and interest in the '436 patent.

### THE LG PATENTS

16.    United States Patent No. 6,175,718 ("the '718 patent") (Exh. 5), entitled "Apparatus And Method For Controlling Viewing of Video Signals," was issued on January 16, 2001, based on an application no. 08/812,136 filed on March 5, 1997. LG is the sole owner of the entire right, title, and interest in the '718 patent.

17.    United States Patent No. 7,051,359 ("the '359 patent") (Exh. 6), entitled "Virtual Channel Table For A Broadcast Protocol And Method Of Broadcasting And Receiving Broadcast Signals Using The Same," was issued on May 23, 2006, based on an application no. 10/892,253 filed on July 16, 2004. LG is the sole owner of the entire right, title, and interest in the '359 patent.

18.    United States Patent No. 7,051,361 ("the '361 patent") (Exh. 7), entitled "Virtual Channel Table For A Broadcast Protocol And Method Of Broadcasting And Receiving Broadcast Signals Using The Same," was issued on May 23, 2006, based on an

4

application no. 09/684,389 filed on October 10, 2000. LG is the sole owner of the entire right, title, and interest in the '361 patent.

19.    United States Patent No. 7,080,401 ("the '401 patent") (Exh. 8), entitled "Virtual Channel Table For A Broadcast Protocol And Method Of Broadcasting And Receiving Broadcast Signals Using The Same," was issued on July 18, 2006, based on an application no. 10/892,216 filed on July 16, 2004. LG is the sole owner of the entire right, title, and interest in the '401 patent.

20.    United States Patent No. Reissue 36,980 ("the '980 patent") (Exh. 9), entitled "Partial Response Trellis Decoder For High Definition Television (HDTV) System," was issued on December 5, 2000, based on an application no. 09/053,131 filed on April 1, 1998. LG is the sole owner of the entire right, title, and interest in the '980 patent.

## THE COLUMBIA PATENT

21.    United States Patent No. 7,199,836 ("the '836 patent") (Exh. 10), entitled "Object-based Audio-visual Terminal And Bitstream Structure," was issued on April 3, 2007, based on an application no. 09/367,433 filed on August 13, 1999. Columbia is the sole owner of the entire right, title, and interest in the '836 patent.

## THE ATSC DIGITAL TELEVISION SYSTEM

22.    Television can be transmitted by different methods, such as by cable, satellite, or terrestrial broadcast. Terrestrial broadcast television is television that is transmitted on radio frequency channels through the air from broadcast antennas to television antennas.

23.    Historically, terrestrial broadcast television in the United States has been transmitted by an analog system developed by the National Television System Committee, commonly known as NTSC. In 1995, the Federal Communications Commission (the "FCC") adopted a digital television system developed by the Advanced Television Systems Committee,

Inc., commonly known as ATSC, for digital terrestrial television broadcasts. Currently, many broadcasters simultaneously broadcast television terrestrially on two radio frequency channels, an NTSC analog television signal on a first radio frequency channel and an ATSC digital television signal on a second radio frequency channel. The FCC has mandated that in February 2009, the ATSC digital television system will completely replace the NTSC analog system, and all terrestrially broadcast television will be broadcast according to the ATSC digital television system.

24.     The ATSC digital television system is described in the following documents (available at http://www.atsc/org): ATSC Document A/53: "ATSC Digital Television Standard Part 1-6," 2007 (hereafter "A/53"); ATSC Document A/65: Program and System Information Protocol for Terrestrial Broadcast and Cable, Revision C, with Amendment No. 1 (hereafter "A/65"); ATSC Document A/54: Recommended Practice: Guide to the Use of the ATSC Digital Television Standard, including Corrigendum No. 1 (hereafter "A/54"); ATSC Document A/74: ATSC Recommended Practice: Receiver Performance Guidelines with Corrigendum No. 1, (hereafter "A/74"); and ATSC Document A/69: ATSC Recommended Practice: Program and System Information Protocol Implementation Guidelines for Broadcasters (hereafter "A/69").

### ATSC AND PATENTS '938, '239, '292, '436, '718, '359, '361, '401, '980 AND '836

25.     The '938, '239, '292, '436, '718, '359, '361, '401, '980 and '836 patents ("the patents-in-suit") are necessarily infringed when using the ATSC digital television system. For example, any receiver which is capable of receiving digital ATSC television signals infringes the patents-in-suit.

## DEFENDANTS' PRODUCTS AT ISSUE

26.    On information and belief, Defendants make, use, sell, offer to sell and/or import at least one of the following: televisions, including LCD televisions, DVD/television combinations, plasma televisions and projection screen televisions; television tuners, including tuner cards; set-top boxes capable of receiving terrestrial broadcast television; and video recorders with tuners, including DVD recorders and digital video recorders ("DVR")/personal video recorders ("PVR") ("DTV Products"). Each of these DTV Products is capable of receiving digital ATSC television signals.

27.    On information and belief, Defendants make, use, sell, offer to sell, import and/or place into established distribution channels DTV Products in the United States (including in this District) that are capable of receiving digital ATSC television signals.

28.    Defendants have had an opportunity to license the patents in suit by either licensing one or more such patents directly from Plaintiffs or, in the alternative, by taking a license from MPEG LA, L.L.C. ("MPEG LA"), which offers a non-discriminatory patent portfolio license under many patents essential to the ATSC digital television system, including all patents in suit.

29.    MPEG LA is a company that offers a license for patents from many companies, which patents are essential to the ATSC digital television system, including the patents in suit. This license is offered on a nondiscriminatory basis to any one who requests one. MPEG LA is a non-exclusive licensee of each of the patents in suit as well as numerous other patents essential to the ATSC digital television system. MPEG LA's ATSC patent licensing program is modeled after another MPEG LA patent licensing program for the MPEG-2 video compression standard. MPEG LA began its MPEG-2 patent licensing program after the United States Department of Justice reviewed the circumstances surrounding the formation

7

of MPEG LA's MPEG-2 patent licensing program and issued a favorable Business Review
Letter in June 1997.

30. Plaintiffs are committed to license the patents in suit on reasonable terms.
As an alternative, Defendants, and indeed any potential licensee, can get a license from MPEG
LA as a convenience to the licensee. The MPEG LA license adds an alternative choice to the
marketplace, in addition to, not instead of, bilateral licenses with licensors, including Plaintiffs.

31. Competitors of Defendants, such as Funai Corporation, Inc. and Funai
Electric Co. have executed the MPEG LA license which Defendants have declined to execute.

32. Notwithstanding the fact Defendants were aware that their products used
patents owned by Plaintiffs, Defendants have refused to enter into any license with Plaintiffs.
After fraudulently transferring the assets and liabilities necessary to continue old
Westinghouse's business to a new entity operating under the same brand name, the new
Westinghouse entity claimed to be interested in obtaining a license from MPEG LA, but
refused to pay the back royalties owed to Plaintiffs by new Westinghouse's predecessor.

33. Old Westinghouse's infringement of Plaintiffs' patents has been willful
and deliberate. For example, at least as early as 2005, Westinghouse knew that its products
using ATSC technology needed to be licensed. (*See* email dated June 27, 2005, from Eric Xu
at Westinghouse to MPEG LA, stating: "Currently, we are working on a LCDTV project with
built-in ATSC tuner. It's our understanding that there may be certain licensing we need from
your company regarding this type of product. If so, could you provide us detail [sic]
information on what and how this/any licensing can be obtained?") (*See* Exhibit 11.)

## OLD WESTINGHOUSE IS IN DEFAULT

34. Plaintiffs commenced this action on June 10, 2008 for infringement of patents related to the digital transmission of terrestrial television signals. Each defendant was properly served with a summons and complaint, and each answered the complaint.

35. On November 12, 2009, the Court entered an order setting forth a schedule for fact and expert discovery, motions and trial (hereafter the "Scheduling Order").

36. In the Scheduling Order, the Court scheduled a Markman claim construction hearing for September 8, 2010. In anticipation of the Markman hearing, the Court directed the parties to, among other things: exchange proposed lists of claim terms for construction by April 30, 2010; exchange proposed claim constructions by May 21, 2010; meet and confer to prepare a joint claim chart by May 28, 2010; submit a final joint claim chart with "citations to intrinsic evidence" by June 4, 2010; and complete briefing on Markman issues by July 16, 2010. The Scheduling Order also provided that fact discovery be initiated in sufficient time to be completed by October 8, 2010.

37. Old Westinghouse defaulted on its obligations under the Court's Scheduling Order. It did not produce a proposed list of claim terms for construction by the April 30 deadline; did not produce its proposed claim constructions by the May 21 deadline; did not meet and confer with Plaintiffs to prepare a joint claim chart by the May 28 deadline; and did not participate in filing a joint claim chart by the June 4 deadline. Old Westinghouse also failed to produce the discovery Plaintiffs needed to prepare their own timely submissions. On June 10, 2010, old Westinghouse's counsel filed a motion informing the Court that old Westinghouse no longer intends to defend itself in this action, and seeking to withdraw as old Westinghouse's counsel, which was granted on June 22, 2010.

9

38.     On information and belief, old Westinghouse stopped defending itself in other patent infringement litigation.  Old Westinghouse instructed its lawyers in *Zenith Electronic LLC* v. *Vizio, Inc.,* et al., 06-cv-246, E.D. Texas (an infringement action involving the same technology, products, and claims as this litigation) to withdraw their appearance and to advise the Court that Westinghouse would not oppose entry of summary judgment against it.

39.     On April 21, 2010, the Court  in the *Zenith* litigation granted partial summary judgment against Westinghouse for selling digital televisions that infringed *Zenith's* patents.  On July 13, 2010, the Court granted Zenith's unopposed motion for summary judgment on willfulness, damages, prejudgment interest, and enhanced damages, and found the case exceptional and Zenith a prevailing party for purposes of awarding reasonable attorney fees.

### OLD WESTINGHOUSE SHUTS DOWN
### AND TRANSFERS ITS OPERATIONS TO NEW WESTINGHOUSE

40.     On or about April 2, 2010, old Westinghouse entered into a General Assignment agreement assigning all of its assets and liabilities to a third-party fiduciary to be held in trust for the benefit of old Westinghouse's creditors.  Old Westinghouse assigned its assets and liabilities to Credit Management Association ("CMA").

41.     Sometime between April 2 and April 28, 2010, old Westinghouse changed its name to Mora Electronics, LLC and, on information and belief, ceased all business operations.

42.     On or about April 28, 2010, CMA announced the assignment to old Westinghouse's creditors and that old Westinghouse had "exhaust[ed its] working capital whereby the business was unable to fund itself."

43. On information and belief, CMA immediately sold the assets and liabilities of old Westinghouse necessary to continue old Westinghouse's operations, including the "right to use the name 'Westinghouse,'" to new Westinghouse.

44. The agreement by which CMA sold the assets and liabilities necessary to continue old Westinghouse's operations to new Westinghouse purported to exclude from the sale any liability arising from Plaintiffs' patent infringement claims against old Westinghouse.

45. On information and belief, new Westinghouse has continued old Westinghouse's business of manufacturing and selling digital televisions employing Plaintiffs' patented technologies. In exchange for the assets and liabilities of old Westinghouse that new Westinghouse purchased from CMA, new Westinghouse agreed, among other things, to pay CMA $500,000 in cash and "$1.5 million on royalties *from future product sale*." (emphasis added).

46. On information and belief, new Westinghouse is a mere continuation of old Westinghouse: New Westinghouse and old Westinghouse share common officers, directors and employees, many of the same shareholders, and new Westinghouse is occupying the same premises, and carrying on the same business of manufacturing and selling the same products under the same brand name.

### FIRST CAUSE OF ACTION BY PLAINTIFFS SAMSUNG, LG, AND COLUMBIA FOR PATENT INFRINGEMENT AGAINST DEFENDANT POLAROID

(INFRINGEMENT OF THE '938, '239, '292, '436, '718, '359, '361, '401, '980 AND '836 PATENTS)

47. Plaintiffs Samsung, LG, and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 46 of this Complaint as though set forth in full herein.

48.     On information and belief, Polaroid has directly infringed, contributorily infringed, and/or has induced others to infringe, the '938, '239, '292, '436, '718, '359, '361, '401, '980 and '836 patents by making, importing, using, offering to sell, and/or selling within the United States various DTV Products.

49.     On information and belief, Polaroid's infringement has been willful and with full knowledge of the '938, '239, '292, '436, '718, '359, '361, '401, '980 and '836 patents.

50.     Plaintiffs Samsung, LG, and Columbia have been damaged by Polaroid's infringement.

### SECOND CAUSE OF ACTION BY PLAINTIFFS SAMSUNG, LG, AND COLUMBIA FOR PATENT INFRINGEMENT AGAINST DEFENDANT OLD WESTINGHOUSE

### (INFRINGEMENT OF THE '938, '239, '292, '436, '718, '359, '361, '401, '980 AND '836 PATENTS)

51.     Plaintiffs Samsung, LG, and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 50 of this Complaint as though set forth in full herein.

52.     On information and belief, old Westinghouse has directly infringed, contributorily infringed, and/or has induced others to infringe, the '938, '239, '292, '436, '718, '359, '361, '401, '980 and '836 patents by making, importing, using, offering to sell, and/or selling within the United States various DTV Products.

53.     On information and belief, old Westinghouse continues to infringe, contributorily infringes, and/or induces others to infringe the '938, '239, '292, '436, '718, '359, '361, '401, '980 and '836 patents.

54. On information and belief, old Westinghouse's infringement has been willful and with full knowledge of the '938, '239, '292, '436, '718, '359, '361, '401, '980 and '836 patents.

55. Plaintiffs Samsung, LG, and Columbia have been and will continue to be damaged and irreparably harmed by old Westinghouse's infringement, which will continue unless old Westinghouse is enjoined by this Court.

### THIRD CAUSE OF ACTION BY PLAINTIFFS LG AND COLUMBIA FOR PATENT INFRINGEMENT AGAINST DEFENDANT NEW WESTINGHOUSE

### (INFRINGEMENT OF THE '718, '359, '361, '401, '980 AND '836 PATENTS)

56. Plaintiffs LG and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 55 of this Complaint as though set forth in full herein.

57. On information and belief, new Westinghouse has directly infringed, contributorily infringed, and/or has induced others to infringe, the '718, '359, '361, '401, '980 and '836 patents by making, importing, using, offering to sell, and/or selling within the United States various DTV Products.

58. On information and belief, new Westinghouse continues to infringe, contributorily infringes, and/or induces others to infringe the '718, '359, '361, '401, '980 and '836 patents.

59. On information and belief, new Westinghouse's infringement has been willful and with full knowledge of the '718, '359, '361, '401, '980 and '836 patents.

60. Plaintiffs LG and Columbia have been and will continue to be damaged and irreparably harmed by new Westinghouse's infringement, which will continue unless new Westinghouse is enjoined by this Court.

**FOURTH CAUSE OF ACTION BY PLAINTIFFS
LG AND COLUMBIA FOR FRAUDULENT TRANSFERS
AGAINST DEFENDANTS OLD WESTINGHOUSE AND NEW WESTINGHOUSE**

**(Section 3439.04(a)(1) of the California Uniform Fraudulent Transfer Act and
Section 1304(a)(1) of the Delaware Uniform Fraudulent Transfer Act)**

61.    Plaintiffs LG and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 60 of this Complaint as though set forth in full herein.

62.    The transfer of old Westinghouse's assets and liabilities to new Westinghouse violated Section 3439.04(a)(1) of the California Uniform Fraudulent Transfer Act and Section 1304(a)(1) of the Delaware Uniform Fraudulent Transfer Act.

63.    Plaintiffs' claims arose before old Westinghouse's assets and liabilities were transferred to new Westinghouse.

64.    On information and belief, old Westinghouse was insolvent when its assets and liabilities were assigned to CMA and when CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

65.    On information and belief, new Westinghouse participated in the fraudulent scheme and had reasonable cause to believe that old Westinghouse was insolvent when its assets and liabilities were assigned to CMA and when CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

66.    On information and belief, old Westinghouse assigned its assets and liabilities to CMA and CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse, with the intent to hinder, delay or defraud Plaintiffs.

67.    On information and belief, old Westinghouse received less than a reasonably equivalent value in exchange for the assignment of its assets and liabilities to CMA

14

and CMA's transfer of the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

68. Plaintiffs commenced this patent infringement action against old Westinghouse long before old Westinghouse's assets and liabilities were fraudulently transferred to new Westinghouse.

69. On information and belief, new Westinghouse did not take the assets and liabilities of old Westinghouse in good faith and new Westinghouse is not a good faith transferee of old Westinghouse's assets and liabilities.

70. On information and belief, as a result of fraudulent transfers, old Westinghouse and CMA have insufficient assets available to satisfy Plaintiffs' claims for patent infringement.

71. Plaintiffs have suffered and will continue to suffer damages as a result of the fraudulent transfers of old Westinghouse's assets and liabilities to new Westinghouse.

### FIFTH CAUSE OF ACTION BY PLAINTIFFS LG AND COLUMBIA FOR FRAUDULENT TRANSFERS AGAINST OLD WESTINGHOUSE AND NEW WESTINGHOUSE

### (Section 3439.05 of the California Uniform Fraudulent Transfer Act and Section 1305(a) of the Delaware Uniform Fraudulent Transfer Act)

72. Plaintiffs LG and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 71 of this Complaint as though set forth in full herein.

73. The transfer of old Westinghouse's assets and liabilities to new Westinghouse violated Section 3439.05 of the California Uniform Fraudulent Transfer Act and Section 1305(a) of the Delaware Uniform Fraudulent Transfer Act.

74. Plaintiffs' claims arose before old Westinghouse's assets and liabilities were transferred to new Westinghouse.

75. On information and belief, old Westinghouse was insolvent when its assets and liabilities were assigned to CMA and when CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

76. On information and belief, old Westinghouse received less than a reasonably equivalent value in exchange for the assignment of its assets and liabilities to CMA and CMA's transfer of the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

77. On information and belief, new Westinghouse did not take the assets and liabilities of old Westinghouse in good faith, and new Westinghouse is not a good faith transferee of old Westinghouse's assets and liabilities.

78. On information and belief, as a result of fraudulent transfers, old Westinghouse and CMA have insufficient assets available to satisfy Plaintiffs' claims for patent infringement.

79. Plaintiffs have suffered and will continue to suffer damages as a result of the fraudulent transfers of old Westinghouse's assets and liabilities to new Westinghouse.

**SIXTH CAUSE OF ACTION BY PLAINTIFFS LG AND COLUMBIA**
**FOR FRAUDULENT CONVEYANCE UNDER STATE COMMON LAW**
**AGAINST OLD WESTINGHOUSE AND NEW WESTINGHOUSE**

80. Plaintiffs LG and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 79 of this Complaint as though set forth in full herein.

81. The assignment and simultaneous transfer of old Westinghouse's assets and liabilities to new Westinghouse is a fraudulent conveyance under state common law.

82. On information and belief, old Westinghouse was insolvent when its assets and liabilities were assigned to CMA and when CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

83. On information and belief, new Westinghouse participated in the fraudulent scheme and had reasonable cause to believe that old Westinghouse was insolvent when its assets and liabilities were assigned to CMA and when CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

84. On information and belief, old Westinghouse assigned its assets and liabilities to CMA and CMA transferred the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse, with the intent to hinder, delay or defraud Plaintiffs.

85. On information and belief, old Westinghouse received less than a reasonably equivalent value in exchange for the assignment of its assets and liabilities to CMA and CMA's transfer of the assets and liabilities necessary to continue old Westinghouse's business to new Westinghouse.

86. On information and belief, new Westinghouse did not take the assets and liabilities of old Westinghouse in good faith and new Westinghouse is not a good faith transferee of old Westinghouse's assets and liabilities.

87. On information and belief, as a result of fraudulent conveyances, old Westinghouse and CMA have insufficient assets available to satisfy Plaintiffs' claims for patent infringement.

88. Plaintiffs have suffered and will continue to suffer damages as a result of the fraudulent conveyance of old Westinghouse's assets and liabilities to new Westinghouse.

### SEVENTH CAUSE OF ACTION BY PLAINTIFFS
### LG AND COLUMBIA FOR SUCCESSOR LIABILITY AGAINST NEW WESTINGHOUSE

89. Plaintiffs LG and Columbia incorporate by reference the allegations set forth in paragraphs 1 through 88 of this Complaint as though set forth in full herein.

90.     On information and belief, new Westinghouse assigned the assets and liabilities of old Westinghouse necessary to continue old Westinghouse's business through a series of transactions entered into fraudulently to escape old Westinghouse's obligations to Plaintiffs.

91.     On information and belief, new Westinghouse is a mere continuation of old Westinghouse.

92.     On information and belief, after old Westinghouse assigned its assets and liabilities to CMA, it changed its name and discontinued its operations.

93.     On information and belief, new Westinghouse did not pay adequate consideration for old Westinghouse's assets and liabilities, leaving insufficient funds to satisfy old Westinghouse's obligation to Plaintiffs.

94.     On information and belief, the General Assignment and same-day transfer of old Westinghouse's assets and the assumption by new Westinghouse of only the assets and liabilities necessary to continue old Westinghouse's business was a fraudulent transaction, for inadequate consideration, designed to defraud old Westinghouse's creditors and to insulate new Westinghouse from liability.

95.     As a result of the foregoing, new Westinghouse is liable to the Plaintiffs as the successor in interest to old Westinghouse for old Westinghouse's infringement of Plaintiffs' patents.

96.     On information and belief, old Westinghouse willfully and deliberately infringed Plaintiffs' patents.

WHEREFORE, Plaintiffs demand judgment as follows:

1.      Adjudging, finding, and declaring that Defendants are infringing the patents in suit.

2.      Permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from infringing the patents in suit, as provided by 35 U.S.C. § 283.

3.      Awarding the respective Plaintiffs an accounting and damages against Defendants in a sum to be determined at trial, together with interest and costs as fixed by the Court; all of these damages to be enhanced in amount up to treble the amount of compensatory damages, as provided by 35 U.S.C. § 284.

4.      Awarding Plaintiffs their reasonable attorneys' fees, costs, and disbursements in this action pursuant to 35 U.S.C. § 285.

5.      Awarding a judgment that old Westinghouse and new Westinghouse fraudulently transferred old Westinghouse's assets and liabilities, and awarding damages to the Plaintiffs as a result of old Westinghouse and new Westinghouse's actions, including punitive damages.

6.      Awarding damages pursuant to Section 3439.07 of the California Uniform Fraudulent Transfer Act and Section 1307 of the Delaware Fraudulent Transfer Act, including avoidance of the transfer or obligation to the extent necessary to satisfy Plaintiffs' claims, an attachment or other provisional remedies against the assets transferred or its proceeds, and any other relief the circumstances may require.

7.      Awarding damages for successor liability against new Westinghouse for old Westinghouse's infringement of Plaintiffs' patents, which has been willful and deliberate.

8.  Granting Plaintiffs such other and further relief as is just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues that may so be tried.

OF COUNSEL:

Garrard R. Beeney
Emma Gilmore
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000

Anthony C. Coles
PROSKAUER ROSE L.L.P.
1585 Broadway
New York, NY 10036
Tel: (212) 969-3138

Dated: August 5, 2010
974818 / 33215

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiffs Samsung Electronics*
*Co., Ltd., LG Electronics Inc. and*
*The Trustees of Columbia University in the*
*City of New York.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 5, 2010, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 5, 2010, the attached document was served Via Certified Mail, Return Receipt Requested to the following person(s):

Westinghouse Digital, LLC
500 North State College Boulevard
Suite 1300
Orange, CA 92868

Westinghouse Digital Electronics, LLC
n/k/a Mora Electronics, LLC
500 North State College Boulevard
Suite 1300
Orange, CA 92868

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

974874 / 33125