## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOFTWARE FREEDOM CONSERVANCY, INC. and ERIK ANDERSEN, <br><br> Plaintiffs, <br><br> v. <br><br> BEST BUY CO., INC.; SAMSUNG ELECTRONICS AMERICA, INC.; WESTINGHOUSE DIGITAL ELECTRONICS, LLC; JVC AMERICAS CORPORATION; WESTERN DIGITAL TECHNOLOGIES, INC.; ROBERT BOSCH LLC; PHOEBE MICRO, INC.; HUMAX USA INC.; COMTREND CORPORATION; DOBBS-STANDFORD CORPORATION; VERSA TECHNOLOGY INC.; and GCI TECHNOLOGIES CORPORATION, <br><br> Defendants. | Civil Action No: 09-cv-10155 (SAS) <br> Judge Scheindlin <br><br><br><br><br> RESPONDENT WESTINGHOUSE DIGITAL, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR JOINDER [ECF 133] UNDER FED. R. CIV. P. 25(C) |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

TABLE OF EXHIBITS ................................................................................................ iii

I.   Background And Facts ........................................................................................ 2

    A.   Defendant Westinghouse Digital Electronics .................................................. 3

    B.   Defendant Westinghouse Digital Electronics Commences Business Liquidation
       Procedures Under California Law .................................................................. 4

    C.   CMA Begins To Liquidate Certain Of Mora's Assets Pursuant To California Law .......... 6

    D.   Plaintiffs Were Timely Informed Of Mora's Liquidation And The Subsequent Sale To
       Golden Star (WD) In April 2010. ................................................................. 7

II.   Legal Standards Applicable To Rule 25(c) Motions For Successor Liability ...................... 8

    A.   Plaintiffs' Rule 25(c) Motion Presents Both Procedural And Substantive Questions Of
       Law And Fact............................................................................................ 8

    B.   California Substantive Law Applies To Issue Of Whether Asset Transfer Agreements
       Impose Successor Liability On WD ............................................................... 9

III.   WD Should Not Be Added As A Defendant Because It Is Not The Successor To Mora
     Under Applicable Law And Substitution At This Point In The Case Is Procedurally
     Unnecessary And Inappropriate.................................................................. 11

    A.   The undisputed material facts show that WD as a not a successor to Mora under
       California's successor liability laws .............................................................. 11

    B.   WD Did Not Assume Mora's Liability To Plaintiff ......................................... 12

    C.   WD Is Not The Continuation Of Mora Because Plaintiff Does Not Allege Or Offer Any
       Proof Or Suggestion That WD Paid Inadequate Consideration To CMA ...................... 15

    D.   WD Purchase Of Allegedly Infringing Products Does Not Give Rise To Successor
       Liability.................................................................................................. 17

IV.   Procedural Considerations Weigh Heavily Against Plaintiffs' Rule 25(c) Motion ........... 18

    A.   Plaintiffs' Substantive State Law Claim Of Successor Liability Should Be Decided In
       The California State Court Action ............................................................... 20

V.   Conclusion ........................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Appalachian Ins. Co. v. General Electric Co.*, 2008 WL 2840354 (N.Y.Sup.) ............................ 9

*Beatrice Co. v. State Bd. of Equalization*, 6 Cal.4th 767 (Cal. 1993).......................................... 12

*Blonder v. Cumberland Engineering*, 71 Cal.App.4th 1057 (Cal. App. 1999) ............................ 5

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)...... 20, 21, 23

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*. 629 F.2d 786 (2d Cir. 1980)... 9, 11

*Credit Managers Ass'n v. National Independent Business Alliance,* 162 Cal. App. 3d 1166 (Cal. App. 1984) .......................................................................................................................... 4

*ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186 (8th Cir. 1995) .. 17

*F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97 (3d Cir. 1999)................................................... 21

*Foreign & Domestic Music Corp. v. Licht*, 196 F.2d 627 (2d Cir. 1952) ................................... 17

*Franklin v. USX Corp.*, 87 Cal. App. 4th 615 (Cal. App. 2001).................................. 1, 12, 14, 15

*Gough v. Finale*, 39 Cal. App. 3d 777 (Cal. App. 1974)............................................................... 4

*In re Chalasani*, 92 F.3d 1300 (2d Cir. 1996) ............................................................................. 8

*In re Macke Intern. Trade, Inc.*, 370 B.R. 236 (9th Cir. BAP 2007)........................................... 22

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003)..................................................... 1

*In re: Nazi Era Cases Against German Defendants Litigation*, 153 Fed. Appx. 819 (3d Cir. 2005) ............................................................................................................................................. 15

*Katzir's Floor and Home Design v. M-MLS.com*, 394 F.3d 1143 (9th Cir. 2004) ..... 16, 18, 19, 23

*LiButti v United States*, 178 F.3d 114 (2d Cir. 1999) ................................................................... 9

*Luxliner P.L. Export v. RDI/Luxliner*, 13 F.3d 69 (3rd Cir. 1993)................................................ 8

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983)............. 21

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F.Supp.2d 633 (S.D.N.Y. 2006) ... 9

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ..................................................................................... 21

*Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.*, 153 Cal. App. 4th 977 (Cal. App. 2007) ................................................................................................................ 4

## Statutes

11 U.S.C. § 547 ....................................................................................................................... 5

California Code Civ. Proc. § 1204 ......................................................................................... 5

California Code Civ. Proc. § 1800 ...................................................................................... 4, 5

California Code Civ. Proc. § 1802 ......................................................................................... 5

California Code Civ. Proc. § 760.010 .............................................................................. 21, 22

California Code Civ. Proc. § 493.010 ................................................................................. 4, 5

California Code. Civ. Pro. § 187 .......................................................................................... 23

California Corporations Code § 17001 .................................................................................. 3

California Corporations Code § 17150 .................................................................................. 3

## Rules

Rule 25 of the Federal Rules of the Civil Procedure ........................................................ passim

## Other Authorities

6 Moore's Federal Practice 3d Ch. 25 ................................................................................ 8, 17

David Kupetz, "Assignment For The Benefit Of Creditors: Exit Vehicle Of Choice For Many Dot-Com, Technology, And Other Troubled Enterprises" 11 J. Bankr. L. & Prac. 71 (2001) .. 6

## TABLE OF EXHIBITS

A.   Declaration of Arthur Moore

B.   Verified Complaint, with Exhibits [excerpted]

C.   Asset Purchase Agreement [excerpted]

D.   Press Release of Software Freedom Conservancy

E.   California Secretary of State record for Mora Electronics, LLC

F.   Bulletin No. 1 from CMA

Plaintiffs' Rule 25(c) motion is substantively and procedurally flawed, and it should be denied.  Respondent Westinghouse Digital LLC ("WD") is not the successor under any legal theory and, given that plaintiffs have already obtained a default judgment on the underlying copyright claim, there is no procedural reason to join parties in this case at this time.

Plaintiffs' motion and underlying successor theory ignores the fact that WD made the challenged asset purchase from CMA, an independent, third party trustee administering a bankruptcy proceeding under California law.  WD's acquisition and use of some of Mora's assets is not sinister or inappropriate, but rather is the result of California's liquidation and creditor laws.

Indeed, having another entity purchase and utilize a debtor's assets *benefits* creditors and is a fundamental goal of bankruptcy and liquidations regimes.  Business liquidations such as Mora's, do not trigger or impose successor liability on the purchaser and applicable law clearly shows that WD is not liable as a successor here.  Moreover, several courts have recognized a strong public policy ***against*** imposing successor liability on purchasers of assets in business liquidations or reorganizations.[1]

Further, allowing plaintiffs to now convert their default judgment against an insolvent Mora into one against WD raises serious fairness, due process and timeliness issues, particularly when plaintiffs knew in April 2010 about Mora's assignment to CMA and CMA's subsequent sale of assets to WD.  If plaintiffs believed that these were "transfers of interest" under Rule

---

[1] *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 625-6 (Cal. App. 2001)  (noting that insolvent companies could not easily liquidate to pay creditors if asset purchasers faced successor liability); *In re Trans World Airlines, Inc.*, 322 F.3d 283, 291-2 (3d Cir. 2003) (allowing creditors to pursue asset purchasers as successors to debtor would "subvert" bankruptcy scheme).

1

25(c) they should have sought to substitute parties at that time so that the case could continue on the merits.

Instead, plaintiffs opted to pursue default proceedings against Mora, obtaining an unopposed judgment.  Plaintiffs benefited from these actions by not only getting a monetary judgment, but by publicizing this Court's injunction as an unprecedented ruling from an American court.  *See* Exhibit D.  While plaintiffs were certainly within their rights to pursue default against Mora, they should not now be able to sidestep due process on the merits of the underlying case by simply trying to make WD liable for Mora's default judgment.

Finally, Rule 25(c) is not necessary in this case as plaintiffs' successor liability theories are already pending before a California state court.[2]  The California court action will determine the validity of the underlying transactions and successor liability claims.  Plaintiffs' are named parties in that case, and can pursue their successor liability claims—or seek to enforce its judgment—against WD in the California courts (just as it would to enforce any judgment in California).

## I.    Background And Facts

Plaintiffs' motion misstates many facts and omits entirely the factual and legal circumstances surrounding the transactions forming their claims of successor liability.  The material facts are undisputed and, when analyzed in view of the transaction—effected in

---

[2] *Westinghouse Digital, LLC v. Samsung Electronics Co., Ltd., LG Electronics, Inc., Trustees of the Columbia University in the City of New York, Software Freedom Conservancy, Inc., Erik Andersen, Darwin Chang, Credit Managers Association of California d/b/a Credit Management Association, and All Persons Unknown Claiming an Interest in the Property*, Superior Court of California, Orange County, Case No. 30-2010-00395529-CU-MC-CXC.  A copy is attached as Exhibit B.  *See also* Declaration of Arthur Moore ("Moore Decl."), Exhibit A.

accordance with California law—it is clear that respondent WD is not the successor to defendant Westinghouse Digital Electronics, LLC.

### A.  Defendant Westinghouse Digital Electronics

Plaintiffs previously filed this copyright case against numerous defendants claiming infringement of certain software.  One of the original defendants was Westinghouse Digital Electronics, LLC, a California limited liability company headquartered in California.

Before the transactions discussed below, Westinghouse Digital Electronics, LLC was wholly owned and managed (before April 2, 2010) by Nexis, Inc., a California corporation.[3] Nexis, Inc. was wholly owned by Nexis Holdings, LLC, which in turn was 49% owned by Richard Houng.[4]  Moore Decl., ¶ 7.  As discussed below, Credit Managers Association of California has managed Mora since April 2, 2010.

Westinghouse Digital Electronics, LLC sold television sets and related products under the WESTINGHOUSE brand.  Contrary to plaintiffs' assertions, however, it did not own this name or the associated good-will—WESTINGHOUSE is owned by the Westinghouse Electric Corporation, a subsidiary of CBS Corporation.  *See, e.g.,* U.S. Trademark Registration Nos. 0299083, November 22, 1932 and 0888963, April 7, 1970.  Westinghouse Electric Corporation owns and controls the WESTINGHOUSE name and licenses it to numerous businesses

───────────────

[3] Limited liability companies are owned by members and can be managed either by the members or by an appointed manager.  California Corporations Code §§ 17001(x), 17150 *et seq.*

[4] Nexis, Inc. is presently in Chapter 7 federal bankruptcy proceedings, *In re Nexis, Inc.*, Bank. Petition 8:10-BK-18696-ES, United States Bankruptcy Court for the Central District of California.  Richard Houng is presently in Chapter 11 federal bankruptcy proceedings.  *In re Richard Yin-Ching Houng aka Richard Houng,* Case No. 8:10-BK-18712-ES, United States Bankruptcy Court for the Central District of California.  This ownership information is derived from the respective asset schedules filed by these debtors.

throughout the United States and the world.  *See, www.westinghouse.com/WestinghouseBrandGuidelines.pdf*

(visited September 18, 2010).

### B.  Defendant Westinghouse Digital Electronics Commences Business Liquidation Procedures Under California Law

On or about April 2, 2010 Westinghouse Digital Electronics, LLC made a general

assignment for the benefit of creditors pursuant to California law, including California Code Civ.

Proc. §§ 493.010 *et seq*. and 1800-1802.  *See* Exhibit F.  The assignee was Credit Managers

Association of California d/b/a Credit Management Association ("CMA"), a California non-

profit association.  A copy of this Assignment is attached as part of Exhibit B.

Shortly after the assignment, Westinghouse Digital Electronics, LLC changed its name to

Mora Electronics, LLC ("Mora").  According to the California Secretary of State website, Mora

still exists and is active.  *See* Exhibit E.

California's general assignment for the benefit of creditors is a method of business

liquidation offering a well-accepted alternative to federal bankruptcy.  As one California court

recently wrote:

> [a]n assignment for the benefit of creditors is a widely used
> method by which an insolvent debtor transfers his or her assets
> in trust to an assignee, who liquidates them and distributes the
> proceeds to the creditors.

*Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.*, 153 Cal. App. 4th 977, 981

(Cal. App. 2007) quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 710, p.

795.  *See also Credit Managers Ass'n v. National Independent Business Alliance,* 162 Cal. App.

3d 1166, 1169 (Cal. App. 1984) ("An assignment for [the] benefit of creditors is a business

liquidation device available to an insolvent debtor as an alternative to formal bankruptcy

proceedings."); *Gough v. Finale*, 39 Cal. App. 3d 777, 784, n. 3 (Cal. App. 1974) ("a general

assignment of the benefit of creditors may be briefly defined as a transfer by a debtor of the legal and equitable title to all his property to a trustee, with authority to liquidate his affairs and distribute the proceeds equitably to his creditors.  (1 Remington on Bankruptcy, § 149, p. 237.)").

California's assignment for the benefit of creditors process works much like Chapter 7 of federal bankruptcy laws.  Like a Chapter 7 bankruptcy estate, "[t]he assignment is an assignment of all of the defendant's assets that are transferable and not exempt from enforcement of a money judgment." California Code Civ. Proc. § 493.010 (a).  Further, like a Chapter 7 bankruptcy estate, "[t]he assignment is for the benefit of all of the creditors,"  California Code Civ. Proc. § 493.010 (b), and the trustee[5] may recover preferential transfers of property for the benefit of all of the assignor's creditors.  *See* California Code Civ. Proc. § 1800 (b).

Furthermore, like Chapter 7, the trustee is required to give notice to all creditors of the assignor of the assignment and must establish a claims bar date.  *See* California Code Civ. Proc. § 1802.

Finally, like a Chapter 7 trustee, California law authorizes the trustee/assignee to recover preferences obtained by some creditors at the expense of others, *compare* 11 U.S.C. § 547 *with* California Code Civ. Proc. § 1800; *see also Blonder v. Cumberland Engineering*, 71 Cal.App.4th 1057 (Cal. App. 1999) (assignment for the benefit of creditor provisions discourage creditors from racing to proceed against an insolvent debtor, and prevent one creditor from obtaining greater payment than others of its priority class), and to pay claims based on priorities.  *See* David Kupetz, "Assignment For The Benefit Of Creditors: Exit Vehicle Of Choice For Many

---

[5] California law also refers to the assignee as the "trustee for the benefit of creditors."  California Code Civ. Proc. § 1204.

5

Dot-Com, Technology, And Other Troubled Enterprises" 11 J. Bankr. L. & Prac. 71, 80-81 (2001) (secured claims, claims of the U.S government and state governments, and wage and benefit claims having higher prior and being satisfied first; unsecured claims have lowest priority and are paid last).

### C.  CMA Begins To Liquidate Certain Of Mora's Assets Pursuant To California Law

The trustee/assignee in Mora's liquidation is CMA, a California non-profit that has served business-to-business companies since 1883.  Under California law, upon the assignment CMA took over all management and corporate decision-making for Mora, including legal decisions such as whether to continue defense of litigation.  California law charges the trustee with acting in the collective best interests of the creditors—two of which are the plaintiffs.

Pursuant to its obligations under California law, CMA immediately commenced a liquidation of the assets it received from Mora.  In part, CMA sold certain of these assets to Golden Star Electronics, LLC ("Golden Star") on April 2, 2010.  The total value of the consideration for CMA was approximately $20 million.  The Bill of Sale is attached as part of Exhibit B; Portions of the Purchase Agreement are attached as Exhibit C.

Included in the transaction were the WESTINGHOUSE licenses.  Westinghouse Electric Corporation subsequently approved the assignment of the licenses and approved Golden Star's name change to Westinghouse Digital ("WD").

WD at all times has been wholly owned by Northwood Partners Limited, a private investment entity registered under the laws of the Hong Kong Special Administrative Region. Neither Nexis, Inc. nor Richard Houng reported any ownership interest in Northwood Partners (or, of course, in WD) in their respective federal bankruptcy filings.  Moore Decl., ¶ 8.  WD is managed by WD Manager LLC, a Delaware limited liability company, who in turn is managed

by Mr. Eric Chen and is wholly owned by Northwood Partners Limited.  Mr. Chen had no

involvement in Mora or Nexis.  Moore Decl., ¶ 9.

### D.  Plaintiffs Were Timely Informed Of Mora's Liquidation And The Subsequent Sale To Golden Star (WD) In April 2010.

Pursuant to California law, on or about April 28, 2010, CMA issued Bulletin No. 1 with

Proof of Claim ("Bulletin") to Mora's creditors and other claimants advising them of Mora's

assignment for the benefit of creditors to CMA.  A copy of this Bulletin is attached as Exhibit F.

The Bulletin from CMA also advised the creditors of several facts, including:

- Mora was insolvent at the time of the assignment, with total assets of $1.61 million and total liabilities of $42.4 million (Statement of Condition, Bulletin, p. 3);

- CMA had sold "certain of the assets remaining from operation of the Company's [Mora's] business" for approximately $2 million in cash plus the assumption of certain liabilities totaling $18 million (Bulletin, p. 1);

- Westinghouse Digital LLC was the buyer of these assets;

- CMA had received a third party opinion that the sale to WD would benefit the remaining creditors of Mora and such creditors would receive more on their claims than they would receive from a piecemeal liquidation of Mora (Bulletin, p. 1).

Plaintiffs' counsel, Daniel Ravicher, was aware of Mora's assignment and the subsequent

sale of assets to WD at that time.  Mr. Ravicher acknowledged in a letter to this Court on May 3,

2010 that he was told by Mora's then-counsel on April 27, 2010 that Mora "ha[d] undergone an

assignment for the benefit of creditors in California and is unlikely to continue to defend itself in

this matter."  *See* ECF 108, fn 2.

Mr. Ravicher also obtained a copy of the Bulletin around this time.  On information and

belief, WD understands that Mr. Ravicher contacted CMA about the Mora transactions and that a

copy of the Bulletin was sent to him on or about May 5, 2010.  Also on information and belief,

CMA subsequently advised Mr. Ravicher that CMA was not going to expend the estate's limited resources by continuing to defend the case and invited plaintiffs' to submit a claim pursuant to California law.

## II.   Legal Standards Applicable To Rule 25(c) Motions For Successor Liability

### A.   Plaintiffs' Rule 25(c) Motion Presents Both Procedural And Substantive Questions Of Law And Fact

Rule 25(c) is a procedural device where parties may be substituted or joined following a transfer of interest with respect to the subject matter of the lawsuit.  Fed. R. Civ. P. 25(c); 6 Moore's Federal Practice 3d § 25.30.  The rule is purely procedural, designed to facilitate the orderly conduct of the case and is not meant to alter the substantive rights of the parties or the transferee.  6 Moore's § 25.32.  Substitution of successors is not mandatory, but is generally discretionary if the Court determines that the presence of the transferee would facilitate the litigation.  6 Moore's § 25.34; *Luxliner P.L. Export v. RDI/Luxliner*, 13 F.3d 69, 71-2 (3rd Cir. 1993).

Of course, before the Court can exercise that discretion there must be a suitable "transfer of interest" to invoke substitution.  *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) (substitution under Rule 25(c) without a transfer of interest it is an abuse of discretion).  The question of whether a "transfer of interest" has occurred to make the transferee a successor to the subject matter of the lawsuit is a substantive issue, requiring the application of facts to law.[6]  6 Moore's § 25.31[2].

---

[6] In many situations this question is readily answered as successorship is admitted or the material facts are not in dispute.  However, where there appears to be a genuine issue of material fact, summary disposition is inappropriate.  *See, e.g., Luxliner*, 13 F.3d at 72-73 (where a Rule 25(c) decision "effectively imposes liability," the court should conduct an evidentiary hearing unless the standards for summary judgment have been met).

### B.   California Substantive Law Applies To Issue Of Whether Asset Transfer Agreements Impose Successor Liability On WD

Successor liability is a matter of state law.  Plaintiffs' Mem. in Support [ECF 134], p. 4

citing *LiButti v United States*, 178 F.3d 114, 124 (2d Cir. 1999).  Here, plaintiffs' claim that WD

is the successor to Mora is based on the liquidation transactions described above: Mora's

contractual assignment to CMA under California law, and the subsequent asset purchase by WD

from CMA.  These transactions occurred in California, and California clearly has the greatest

relationship with the transactions and the parties thereto—therefore, California's successor

liability law applies.

In federal court cases predicated on federal question jurisdiction, this court has previously

applied New York's choice of law principles.  *See Presbyterian Church of Sudan v. Talisman

Energy, Inc.*, 453 F.Supp.2d 633, 682-3 (S.D.N.Y. 2006) declining to follow *Corporacion

Venezolana de Fomento v. Vintero Sales Corp.*. 629 F.2d 786, 795 (2d Cir. 1980) (Second

Circuit applies the law of the jurisdiction with the greatest interest in the subject matter of the

legal claim at hand).

In *Appalachian Ins. Co. v. General Electric Co.*, 2008 WL 2840354 (N.Y.Sup.), the court

summarized New York's choice of law over contract issues as applying the law of the state with

the most contacts with the contract:

> It is well-settled that in a contract dispute, New York's choice of
> law rules require courts to apply the law of the state which has the
> most contacts with the contract. (*Zurich Ins. Co. v. Shearson
> Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 [1994]; *Auten v. Auten,*
> 308 N.Y. 155, 160 [1954]). Also referred to as the "center of
> gravity" or "grouping of contacts" test, this approach determines
> "which State has the most significant relationship to the transaction
> and the parties." (*Zurich Ins. Co.,* 84 N.Y.2d at 317 [quoting
> Restatement (Second) of Conflict of Laws (hereinafter
> Restatement) § 188(1)]; *Certain Underwriters at Lloyd's, London
> v. Foster Wheeler Corp.,* 36 AD3d 17, 21 [1st Dep't 2006], *aff'd,* 9

NY3d 928 [2007]). There are five factors to consider in determining the "center of gravity" for the contractual dispute: (1) the place of contracting; (2) the places of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile or the place of business of the contracting parties. (*Zurich Ins. Co.,* 84 N.Y.2d at 317 [citing Restatement § 188(2)]).

Applied here, these facts all establish California as the state with the most numerous and most significant relationship to the underlying contracts and transaction, particularly the contracts and asset sale transaction between CMA and WD.

CMA is and was at the time of the transactions a California not-for-profit corporation headquartered in Burbank, California.  WD is and was at the time of the transaction a Delaware limited liability corporation headquartered in Orange, California.  Moore Decl., ¶ 10.

WD negotiated the Asset Purchase Agreement and Bill of Sale with CMA entirely within California.  The contracts were executed in California, and the performances thereunder were and are to be performed in California.

Moreover, the agreements specifically provide that they shall be governed by California substantive law.  For example, the Bill of Sale states:

This Bill of Sale and Assignment shall be governed by, and construed in accordance with, the internal laws of the State of California, without regard to the laws of any other jurisdiction that might be applied because of conflict of law principles of the State of California.

And the Asset Purchase Agreement provides :

8.8 Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, federal law.

Thus, California is clearly the "center of gravity" for the contracts and transaction at issue in the successor liability claim as all five factors point to California:[7]

- California is the place of contracting;

- California is the state in which the contracts were negotiated;

- California is the state in which the contracts are/were performed;

- California is the location of the subject matter of the contracts; and

- California is the domicile and principal place of business of Mora, CMA and WD.

Accordingly, California's substantive law should apply to these contracts and transactions, including its law as to whether these contracts and transactions impose successor liability on WD.

**III.   WD Should Not Be Added As A Defendant Because It Is Not The Successor To Mora Under Applicable Law And Substitution At This Point In The Case Is Procedurally Unnecessary And Inappropriate**

**A.   The undisputed material facts show that WD as a not a successor to Mora under California's successor liability laws**

California law is that successor liability does not attach in the context of an asset purchase absent proving some limited exceptions:

> As typically formulated the rule states that the purchaser [of corporate assets] does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

---

[7] California substantive law would also apply based on the choice of law analysis described in *Corporacion Venezolana de Fomento,* 629 F.2d 786, because California clearly has the greatest interest in the subject matter of the claim at issue—the legal effect as to successor liability of WD's contracts and transaction with CMA as the assignee for the benefit or Mora's creditors.

*Beatrice Co. v. State Bd. of Equalization*, 6 Cal.4th 767, 778 (Cal. 1993) quoting *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (Cal. 1977). *See also Franklin,* 87 Cal. App. 4th at 621.

Plaintiffs here assert exceptions (1) and (3). Plaintiffs' Mem., pp. 5-7. Neither, however, is warranted or supported here. First, the undisputed facts establish that exception (1)— there is an express or implied agreement of assumption—does not apply because WD expressly did not assume Mora's liability to plaintiffs. This is plain from the express provisions of the Purchase Agreement and Bill of Sale.

Second, exception (3)— the purchasing corporation is a mere continuation of the seller— does not apply because an essential element of this exception under California law is that the purchasing corporation paid inadequate consideration for the assets. *Franklin*, 87 Cal. App. 4th at 627.

### B. WD Did Not Assume Mora's Liability To Plaintiff

The agreements between CMA and WD clearly and unambiguously show that WD did not assume Mora's liability with respect to plaintiff. While WD did assume some of Mora's liabilities under these agreements, Mora's liability to plaintiff was not one of them—this liability, among others, was retained by CMA as the assignee for the benefit of creditors.

Pursuant to the Purchase Agreement WD agreed to acquire certain specified assets (the "Purchased Assets") and to assume certain liabilities (the "Assumed Liabilities"). These terms and their opposites, "Excluded Assets" and "Excluded Liabilities," were expressly and specifically defined—and the instant litigation was expressly identified as not being assigned or transferred. Schedule 2.3(n) of the Purchase Agreement, titled "Litigations and Claims Not Assumed," listed this instant action:

12

| COPYRIGHT LITIGATION |
|---|
| *Software Freedom Conservancy, Inc. and Erik Andersen v. Best Buy Co., Inc., Samsung Electronics America, Inc., Westinghouse Digital Electronics, LLC, JVC Americas Corporation, Western Digital Technologies, Inc., Robert Bosch LLC, Phoebe Micro, Inc., Humax USA Inc., Comtred Corporation, Dobbs-Stanford Corporation, Versa Technology Inc., ZYXEL Communications Inc., Astak Inc. and GCI Technologies Corporation,* Case Number :2009cv10155 (S.D.N.Y.) filed Dec. 14, 2009 |

Section 2.3 of the Purchase Agreement defined the assets excluded from transfer as including this case.  Excluded Assets include:

> (n) Any and all rights acquired by Seller from Assignor under any warranties, claims, causes of action, choses in action, covenants and other similar claims and interests of Seller against third parties to the extent that such rights are the subject of the litigation matters and claims expressly described in Schedule 2.3(n) attached hereto and by this reference incorporated herein;

Assumed Liabilities also did not list this lawsuit or plaintiffs' claims as one of the liabilities assumed, and the Purchase Agreement was express that any liability not expressly assumed was excluded:

> **2.5 Excluded Liabilities.** Notwithstanding any other provision of this Agreement to the contrary, the Buyer shall not assume or in any way be liable or responsible for any liabilities or obligations of Assignor of any nature whatsoever, including, without limitation, any obligations of Assignor resulting from events which have occurred, or will occur, prior to the Closing Date other than the Assumed Liabilities. Without limiting the generality of the foregoing, except for as provided to the contrary in this Agreement and other than the Assumed Liabilities, *the Buyer shall not assume any of the following liabilities, obligations or commitments* of Assignor: (a) any tax liabilities or similar assessments arising from the conduct or operation of the Business or from occurrences prior to the Closing Date, *(b) any liability with respect to any claim, suit, action or judicial or arbitration proceeding (whether known or unknown, contingent or non-contingent*, inchoate or not) made or commenced against Assignor and/or Seller at or prior to the Closing Date or made or commenced after the Closing Date, to the extent that such claim, suit, action or proceeding arises out of or relates to any action, omission or condition occurring or existing prior to the Closing Date…. [Emphasis added].

13

***The Purchase Agreement is clear***:  plaintiffs' claims here were expressly defined as an Excluded Asset and as an Excluded Liability.  WD expressly assumed neither.

Likewise, the Bill of Sale, which implements the asset transfer from the Purchase Agreement, provides that "nothing in this Bill of Sale and Assignment shall alter any liability or obligation of the Seller or the Buyer arising under the Purchase Agreement.  Bill of Sale, ¶ 4.

The facts here are analogous to those in *Franklin*, where plaintiffs were seeking to hold USX Corp. liable as the successor to Consolidated Steel Corp. of California ("Con Cal").  87 Cal. App. 4th 615.  Although USX had made a bulk purchase of nearly all of Con Cal's assets and liabilities, the pertinent question was not whether USX had assumed some liabilities, but whether it had assumed the ***specific*** liabilities at issue in the case—the court found that USX had not because it was not one of the liabilities specifically assumed:

> Pursuant to the purchase agreement, the bulk of Con Cal's business assets were purchased by USX, with Con Cal retaining certain specified assets and certain existing contracts. With regard to USX's assumption of liabilities, the agreement provided: "The Buyer shall not, except as herein otherwise specifically provided, directly or indirectly, by virtue of any of the provisions of this agreement, become liable for any of the debts, obligations, liabilities, undertakings, agreements or commitments of the Sellers of any nature whatsoever ...." It further provided that, while USX would assume responsibility for performing "all the obligations of the Sellers with respect to the uncompleted portion of [assumed] contracts, orders and subcontracts ... *in no event* shall the Buyer assume any obligations of the Sellers, or any of them, arising out of deliveries of goods, wares or merchandise made by the Sellers prior to the closing, including, but not limited to, any claims on account of any allegedly defective goods, wares or merchandise delivered by the Sellers pursuant to any such contract or order, or otherwise." (Italics added.)
>
> The quoted language is clear and unambiguous; USX assumed only the liabilities specified in the purchase agreement, which did not include the assumption of contingent tort liabilities.

*Franklin*, 87 Cal App. 4th at 622.

14

WD's purchase agreements with CMA use substantively identical language and are equally clear and unambiguous.  This litigation (and any attendant liability) is expressly defined as an Excluded Asset and an Excluded Liability.  Under the well-established principles of contract construction, it is indisputable that WD did not assume any liability connected to plaintiffs or this case.[8]  Plaintiffs have not and cannot establish this theory of successor liability as a matter of law.

### C.  WD Is Not The Continuation Of Mora Because Plaintiff Does Not Allege Or Offer Any Proof Or Suggestion That WD Paid Inadequate Consideration To CMA

An essential element of the "mere continuation" exception for successor liability is that the purchasing corporation paid inadequate consideration for the assets:

> The crucial factor in determining whether a corporate acquisition constitutes either a de facto merger or a mere continuation is the same: **whether adequate cash consideration was paid for the predecessor corporation's assets.**

*Franklin*, 87 Cal App. 4th at 625 (emphasis added).

Here, plaintiffs do not allege or present any evidence that WD paid inadequate consideration for the assets purchased.  In fact, the evidence is to the contrary.  Mora's balance sheet at the time of its assignment shows total assets of about $1.6 million—WD did not even purchase all of the assets yet agreed to pay approximately $2 million in cash for the assets it

---

[8] Plaintiffs assertion that personal jurisdiction exists over an alleged successor anytime there is successor liability, Plaintiffs' Mem., pp. 3-4, is circular and not inaccurate.  Successor liability and successor jurisdiction are similar concepts, but separate issues.  New York cases show that successor jurisdiction exists where there has been (1) a merger or de facto merger; (2) express or implied assumption of liability; or (3) the transaction was undertaken to fraudulently avoid jurisdiction.  *See In re: Nazi Era Cases Against German Defendants Litigation*, 153 Fed. Appx. 819, 822-3 (3d Cir. 2005) (applying New York law).  Here, plaintiffs' have not alleged (1) or (3), and the undisputed facts show that (2) does not apply.  Thus, plaintiffs have not shown that jurisdiction exists over WD in this Court for the purposes of determining successor liability.

received.  Further, WD paid an additional $18 million in consideration by agreeing to assume certain of Mora's liabilities, including those of many secured creditors and others with liens or security interests in the acquired assets.

Moreover, the "inadequate consideration" requirement of California law is directed at whether the purchaser's consideration deprives the predecessor's creditors of their remedy. *Katzir's Floor and Home Design v. M-MLS.com*, 394 F.3d 1143, 1151 (9th Cir. 2004).  In other words, the predecessor's inability to pay creditors must be caused by the inadequacy of the consideration paid and not the predecessor's general insolvency or bankruptcy.  The *Katzir's* court wrote:

> The requirement of inadequate consideration in a successor liability case is premised on the notion that when a successor corporation acquires the predecessor's assets without paying adequate consideration, the successor deprives the predecessor's creditors of their remedy. Where the predecessor files bankruptcy and its debts are discharged, however, it is the discharge and the lack of sufficient assets that deprive the predecessor's creditors of their remedy, not the acquisition of the predecessor's assets by another entity, in this case for more than their appraised value. *See Monarch Bay II v. Prof'l Serv. Indus., Inc.,* 75 Cal.App.4th 1213, 89 Cal.Rptr.2d 778, 780 (Cal.Ct.App.1999) (indicating that there must be a causal relationship between a successor's acquisition of assets (i.e., inadequate consideration), and the predecessor's creditors' inability to get paid).

*Katzir's*, 394 F.3d at 1151.

Here, it is clear that Mora was insolvent on April 2, 2010 before its assignment to CMA and before the asset sale to WD.  Mora had assets of $1.6 million and over $42 million in liabilities.  The creditors' apparent inability to get paid in full is not caused by CMA's sale to WD (which actually benefits creditors by liquidating property into cash for distribution), but rather by Mora's pre-existing insolvency.

### D.  WD Purchase Of Allegedly Infringing Products Does Not Give Rise To Successor Liability

Plaintiff argues in passing that WD's purchase of allegedly infringing televisions is a "transfer of the property at interest in this matter" to support successor liability.  Plaintiffs' Mem., p. 7.  This argument is flawed because Rule 25(c) looks to transfers of interests in the lawsuit, not simply in products or property related to the lawsuit.  6 Moore's § 25.30 ("This rule is designed to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit.").

Plaintiffs' reliance on *ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186 (8th Cir. 1995) is misplaced as that case had nothing to do with successor liability.  That action involved damages from defendant's environmental contamination of certain real property owned by plaintiff.  During the course of the litigation the plaintiff transferred ownership of the property to a related, albeit separate, entity.  The appeals court ruled that the transferee should have been substituted as plaintiff under Rule 25(c).  This was not because the transferee was the "successor" to the plaintiff corporation, but because transferee was now the real party in interest to the <u>claim</u> for damages to the property caused by defendants.  *Id.* at 191.  In other words, the transferee did not have a new claim against the defendants, but succeeded to an interest in original plaintiff's claim.

Purchasers of products accused of copyright infringement do not become liable for the seller's alleged infringement.  While buyers may themselves end up accused of infringing based on their own actions, absent an assumption of the liability, nowhere does the law make the buyer of the product a successor to the seller's liability infringement.  *See Foreign & Domestic Music Corp. v. Licht*, 196 F.2d 627, 629 (2d Cir. 1952) ("one does not infringe a copyright by buying an infringing copy of the 'work.'").

17

Thus, WD's alleged purchase of product accused of copyright infringement does not make WD liable as the successor to the seller.

## IV.    Procedural Considerations Weigh Heavily Against Plaintiffs' Rule 25(c) Motion

Rule 25(c) is purely procedural, yet plaintiffs here are trying to use it as a substantive sword to convert a default judgment against Mora into a judgment against WD—without ever having given WD due process on the underlying claim.  Plaintiffs knew of the underlying transactions in April 2010, yet took no action to add or substitute WD at that time—had they done so, due process would have required that WD be given notice and an opportunity to defend itself against not only the successor liability claims, but also against plaintiffs' underlying copyright claim.  Plaintiffs chose instead to follow default proceedings against Mora and, having made that choice and obtained a monetary judgment and their much touted unprecedented injunction, should not be able now to circumvent the due process to which WD would have been entitled.

As shown above, Mora and WD are distinct legal entities, with completely different members (owners) and completely different LLC managers.  Mora's litigation decisions in this case (after April 2, 2010), including the decision to no longer defend, were made by CMA as it deemed to be in the best interests of Mora's creditors.  No one from WD was involved in these decisions and WD's interests were not represented.   Under similar circumstances, the Ninth Circuit in *Katzir's* found that it was unfair and improper to add a new party as a judgment debtor:

> In *NEC,* the Court of Appeals of California reversed the Santa
> Clara County Superior Court's judgment adding a shareholder to a
> judgment against his wholly owned corporation where the
> shareholder's individual interests were not represented in the
> lawsuit.  The corporation did not appear at trial or defend itself,
> despite a colorable defense, because it was on the verge of
> bankruptcy. The court reasoned that the sole shareholder, who was
> not a named party to the suit and had no personal liability, had no

18

duty to intervene. *NEC,* 256 Cal.Rptr. at 442, 445 (relying on *Motores* ). It further found that the shareholder's interests were not represented during the lawsuit where the corporation had no incentive to, and in fact did not, defend given its pending bankruptcy. *Id*

Similarly, Sommer was not named individually, knew M–MLS, Inc. was on the verge of dissolution through Canadian bankruptcy law, and had no personal duty to defend the underlying lawsuit. "***To summarily add [corporate shareholders] to [a] judgment heretofore running only against [the corporation], without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate [due process].***" *Motores,* 331 P.2d at 3. The district court clearly erred in adding Sommer to the judgment against M–MLS, Inc.

*Katzir's,* 394 F.3d at 1150 (emphasis added), citing *NEC Elecs. Inc. v. Hurt*, 208 Cal. App.3d 772 (Cal. App. 1989).

Moreover, joinder or substitution is not necessary here.  Plaintiffs' claim against Mora has been litigated to conclusion and a judgment against Mora has been entered.  Thus, the purpose of Rule 25(c)—to permit joinder where it will facilitate the continuation of the action—is inapplicable here.

Finally, plaintiffs will not be prejudiced if the Court declines joinder on procedural grounds because they can pursue their successor liability claims in the pending California state court case—a case in which they are already named as parties.  Pending in that case are the issues of (i) WD's alleged successor liability to Mora, and (ii) the legality and validity of Mora's assignment for the benefit of creditors and the subsequent asset transaction from CMA to WD.  Thus, plaintiffs' successor liability claim will be adjudicated in California.  Moreover, this California case also involves additional parties that are making claims similar to, but also potentially inconsistent with, plaintiffs' claims.  For example, other parties have challenged the validity of the underlying transactions and if these underlying transactions are voided by the

19

California court, then the asset transfer that forms the basis for plaintiffs' successor liability claims will no longer exist, thus mooting such claims.

The procedural aspects of Rule 25(c) are discretionary and the court can decide against joinder without having to reach the substantive issue of successor liability. Here, fairness, judicial efficiency, and the desirability of avoiding inconsistent or duplicative actions favors denying plaintiffs' motion.

### A. Plaintiffs' Substantive State Law Claim Of Successor Liability Should Be Decided In The California State Court Action

As previously discussed, there is already pending in California state court an action to decide not only plaintiffs' successor liability claims, but also related claims by others challenging Mora's assignment under California law and CMA's subsequent asset sale to WD. Because of the pending California action, an additional, separate basis for denying plaintiffs' motion exists pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and its progeny. Pursuant to *Colorado River*, district courts may abstain from hearing claims in favor of a parallel state court proceeding based on a balancing of six factors:

1. which court first assumed jurisdiction over property involved, if any;

2. the relative convenience of the fora;

3. the desirability of avoiding piecemeal litigation;

4. the order in which jurisdiction was obtained;

5. whether federal or state law applies; and

6. whether the state court will adequately protect the federal plaintiff's interests.

*F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 101 (3d Cir. 1999).[9]  No one factor is

determinative, and the factors must be balanced in a "pragmatic, flexible manner with a view to

the realities of the case at hand."  *Moses H. Cone Memorial Hospital v. Mercury Construction*

*Corp.*, 460 U.S. 1, 16 (1983); *Colorado River*, 424 U.S. at 818-19.

Here, the factors clearly weigh in favor of abstention.  First, the California state court

obtained jurisdiction over Mora's former assets upon the filing of the state court complaint on

August 2, 2010.  California Code Civ. Proc. § 760.010 (in quiet title actions "[t]he [superior]

court has complete jurisdiction over the parties to the action and the property described in the

complaint and is deemed to have obtained possession and control of the property for the

purposes of the action with complete jurisdiction to render the judgment provided.").  *See also*

*Shaffer v. Heitner*, 433 U.S. 186, 207-8 (1977) ("when claims to the property itself are the source

of the underlying controversy between the plaintiff and the defendant, it would be unusual for the

State where the property is located not to have jurisdiction").

The second factor—the relative convenience of the fora—favors California.  While New

York and California are both readily accessible and convenient locations, all of the relevant

witnesses to, and documentation of, Mora's liquidation process, including the assignment to

CMA and CMA's sale of assets to WD, are located in California.  Indeed, Mora, CMA and WD

are all located in California.  In contrast, no known witnesses or evidence of these transactions is

---

[9] Abstention is usually a narrow exception to the district court's duty to exercise its jurisdiction.
*F.D.I.C.*, 178 F.3d at 101.  However, in the context of Rule 25(c) the court has the discretion to
deny the motion on procedural grounds.  Abstention still, however, provides a useful framework
for analyzing various factors when, as here, a parallel state action on the same issues is already
pending.

located in or near New York.  As for plaintiffs, Mr. Andersen resides in Utah and plaintiffs would have to use the California courts to enforce their judgment in any event.

Thirdly, there is an interest in avoiding piecemeal litigation, particularly in connection with business liquidations, which favors the state court action.  *See, e.g., In re Macke Intern. Trade, Inc.*, 370 B.R. 236, 247 (9th Cir. BAP 2007) ("Typical circumstances for dismissing [bankruptcy cases] under [11 U.S.C.] § 305(a)(1) include the pendency of proceedings such as assignments for the benefit of creditors.").  The California state court action is positioned to resolve all of the disputed state law issues with respect to all currently interested parties and creditors, not just the few who are parties to this action.

The fourth factor likewise favors the state court action or is neutral.  The state court case commenced on August 2, 2010, and plaintiffs' motion raising state law claims for successor liability was filed a few days later.  *See* ECF 133 filed August 9, 2010.

The fifth factor also favors the California state court action.  Federal law is not implicated by plaintiffs' claim of successor liability.  Plaintiffs themselves refer exclusively to state laws for their claims and it is clear that California law should apply because the contracts and transactions occurred in California and were done in accordance with California's business liquidation procedures.  In any event, it is state law, not federal, that applies to plaintiffs' alleged fraudulent conveyances and successor liability claims, and therefore factor five favors the state action and abstention.

The sixth factor—whether the California court will adequately protect the plaintiffs' interests—likewise favors abstention.  Plaintiffs cannot seriously contend that California's state courts cannot decide or protect their alleged interests.  Moreover, California's quiet title provisions, Code Civ. Proc. §§ 760.010 *et seq.*, are specifically designed to address and

22

adjudicate competing claims over property, and California law allows judgment creditors to seek joinder of additional parties as judgment debtors.  California Code. Civ. Pro. § 187; *Katzir's*, 394 F.3d at 1149-51.  Plaintiffs therefore can obtain complete relief in California.

All of the *Colorado River* factors weigh in favor of the California state court action, or are neutral.  None of these factors weigh in favor of this Court maintaining a parallel, federal court action.

## V.     Conclusion

Plaintiffs' motion should be denied on substantive and/or procedural grounds.  Plaintiffs fall far, far short of showing that is the "successor" to Mora under substantive law—indeed, the undisputed material facts establish that WD is not the successor.  Likewise, procedural considerations weigh heavily against permitting joinder at this time.  The case is over vis-à-vis Mora, so joinder will not facilitate this action.  Plaintiffs' knew about the transactions many months ago, but chose not to seek joinder at that time—it is unfair and disingenuous for plaintiffs to raise these issue only now after obtaining a default judgment.  Finally, successor liability claims are already pending in California state court, so plaintiffs will not be prejudiced by denying the motion.

For all the reasons set forth above, plaintiffs' motion [ECF 133] should be denied.

Dated: September 20, 2010                      Respectfully submitted,
New York, New York

                                               /s/ Barry M. Kazan
                                               THOMPSON HINE LLP
                                               Barry M. Kazan
                                               335 Madison Avenue, 12th Floor
                                               New York, NY 10017
                                               T: 212.344.5680
                                               F: 212.344.6101
                                               Barry.Kazan@ThompsonHine.com

                                               ***Counsel for Westinghouse Digital, LLC.***

23

**Certificate of Service**

I hereby certify that on September 20, 2010, I caused to be served copies of RESPONDENT WESTINGHOUSE DIGITAL, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR JOINDER [ECF 133] UNDER FED. R. CIV. P. 25(C) upon all attorneys of record by electronic means through the Court's ECF system.


/s/ Barry M. Kazan
Barry M. Kazan

24