# Exhibit B-2

| SPINE DESIGN™ | | | |
|---|---|---|---|
| Country | Counsel Dkt No. | Application No. Filing Date | Registration No. Reg. Date |
| US | Kleinberg 16861 | 78/783,190 12/30/05 | 3,413,027 4/15/08 §§ 8 & 15 Due 09 02 2014 |
| JAPAN | Kleinberg 17747 | 91212/2006 09/29/06 | 5172276 10/10/08 |
| TAIWAN | Kleinberg 17749 | 95049269 09/27/06 | 01353677 03/16/2009 |

| NEONPLAYER | | | |
|---|---|---|---|
| Country | Counsel Dkt No. | Application No. Filing Date | Registration No. Reg. Date |
| US | Kleinberg 19805 | 77/591428 10/13/08 | 3,750,537 2/16/10 |

| NEONNOW | | | |
|---|---|---|---|
| Country | Counsel Dkt No. | Application No. Filing Date | Registration No. Reg. Date |
| US | Kleinberg 19806 | 77/591458 10/13/08 | 3,750,538 2/16/10 |

| NEONSOURCE | | | |
|---|---|---|---|
| Country | Counsel Dkt No. | Application No. Filing Date | Registration No. Reg. Date |
| US | Kleinberg 19807 | 77/591477 10/13/08 | 3,750,539 2/16/10 |

| NEONPUMP | | | |
|---|---|---|---|
| Country | Counsel Dkt No. | Application No. Filing Date | Registration No. Reg. Date |
| US | Kleinberg 20196 | 77/694,237 03/18/2009 | |

///

| NEONREMOTE | | | |
|---|---|---|---|
| Country | Counsel Dkt No. | Application No. Filing Date | Registration No. Reg. Date |
| US | Kleinberg 20195 | 77/694,223 03/18/2009 | |

(e) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC in the following Westinghouse Digital Electronics, LLC subsidiaries:

Westinghouse Digital Electronics (Taiwan), Ltd. is a wholly owned subsidiary of Westinghouse Digital Electronics, LLC

Westinghouse Digital Electronics (Japan), Ltd. is owned by Westinghouse Digital Electronics, LLC and Nexis Inc., each holding 51 % and 49% of the Westinghouse Digital Electronics (Japan), Ltd. shares respectively

Westinghouse Digital Electronics (China), Ltd. is owned by Westinghouse Digital Electronics, LLC and Nexis Inc., each holding 51 % and 49% of the Westinghouse Digital Electronics (China), Ltd. shares respectively

(f) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC that are deemed by Westinghouse Digital in writing to be necessary or desirable in connection with the operation of the business of the distribution of consumer electronic products.

(g) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC under any and all warranties, claims, causes of action, choses in action, covenants and other similar claims and interests of CMA against third parties including, without limitation, any liens, security interests, or other rights to payment or to enforce payment in connection with the Purchased Assets (as defined in the Bill of Sale, Exh. B) or the Assumed Liabilities (as defined in the Bill of Sale, Exh. B); provided, that Westinghouse Digital shall not acquire the causes of action, choses in action or similar claims and interests relating to the matters described in Section (n) of Exhibit B to the Bill of Sale (Exhibit B).

(h) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC of any prepaid charges, deposits, sums and fees and all rights to refunds pertaining to the Purchased Assets (as defined in the Bill of Sale, Exh. B) or the Assumed

Liabilities (as defined in the Bill of Sale, Exh. B).

(i) Any and all of CMA's right title and interest in and to the Governmental Permits, to the extent such Governmental Permits are transferable. "Governmental Permit(s)" means all material licenses, permits, franchises, privileges, immunities, approvals and other authorizations issues from or by any Governmental Authority which are necessary to entitle Buyer to own, lease, operate and use the Purchased Assets (as defined in the Bill of Sale, Exh. B) or the business of the distribution of consumer electronic products. "Governmental Authority" means any foreign, domestic, federal, territorial, state or local governmental authority, quasi-governmental authority, instrumentality, court, government or self-regulatory organization, commission, tribunal or organization or any regulatory, administrative or other agency, or any political or other subdivision, department or branch of any of the foregoing.

(j) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC in the telephone and facsimile numbers of CMA (subject to approval by the telephone service provider(s)).

(k) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC in Westinghouse Digital Electronics, LLC's world wide web domain names as follows:

    Domain wde.com (Record expires on 26-June-2010)

    Domain westinghousece.com (Record expires on 30-September-2011)

    Domain westinghousedigital.com (Record expires on 03-October-2010)

    Domain westinghousetv.com (Record expires on 30-September-2010)

All of the above domain name registrations are subject to paragraph 2.8 of Section 2.0 License Grant of the Amended and Restated License Agreement between Westinghouse Electric Corporation and Westinghouse Digital Electronics, LLC

(l) Any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC in Westinghouse Digital Electronics, LLC's inventory of advertising, sales and

1 customer materials, forms, labels, promotional materials, manuals and supplies used in the
2 operation of the business of the distribution of consumer electronic products.

3       (m)    Subject to the rights of CMA under Section 5.4 of the Purchase Agreement,
4 any and all rights acquired by CMA from Westinghouse Digital Electronics, LLC in
5 Westinghouse Digital Electronics, LLC's books and records (including, without limitation, sales
6 records, data processing records, employment and personnel records, customer lists, files and
7 records, advertising and marketing data and records, credit records, and records relating to
8 suppliers), credit information, domain names, customer account information, user names,
9 passwords, real names, postal and email addresses, telephone and facsimile numbers, customer
10 credit card information, and billing history relating to such customers and vendors, books of
11 account, files, invoices, inventory records, accounting records, maintenance, operating and
12 production records, customer lists, supplier lists, business plans, catalogs, quality control records
13 and manuals, blueprints, research and development files, laboratory books, patent and trademark
14 files and litigation files, wherever located, whether in hard copy or electronic form, other than
15 records kept for tax purposes and excluding any of the foregoing relating to, or included in, the
16 Excluded Assets (as defined in the Bill of Sale, Exh. B).

17       (n)    Any and all rights acquired by CMA from Westinghouse Digital
18 Electronics, LLC in Westinghouse Digital Electronics, LLC's computer software (including
19 proprietary and third party software) associated with the operation of the business of the
20 distribution of consumer electronic products (the "Software"); subject to, in all cases, applicable
21 restrictions and necessary consents of third parties.

22       (o)    Any and all rights acquired by CMA from Westinghouse Digital
23 Electronics, LLC in the goodwill of the business of the distribution of consumer electronic
24 products, including all of Westinghouse Digital Electronics, LLC's customer and vendor lists.

25       (p)    Any and all rights acquired by CMA from Westinghouse Digital
26 Electronics, LLC in the following:
27 ///
28 ///

| Customer | Balance Outstanding @ 3/31/10 |
|---|---:|
| Westinghouse Digital China | 114,524 |
| Westinghouse Digital Japan | 316,241 |
| Akamai Lighting | 57,335 |
| Nexis, Inc. | 2,018,827 |
| **Total** | **2,506,927** |

(q)     Any and all accounts receivable due to CMA (whether short-term or long-term), together with any unpaid interest or fees accrued thereon or other amounts due with respect to thereto other than:

| Customer | Balance Outstanding at 3/31/10 |
|---|---:|
| Accounts Receivable – Tatung | 103,588 |
| **Total** | **103,588** |

20.     Golden Star paid fair, reasonable and adequate consideration for these assets, agreeing to consideration in excess of $20 million in combination of cash, royalty payments, and assumption of certain liabilities. Golden Star did not use any of its own stock or ownership interest as consideration for the purchase.

21.     On April 7, 2010, Golden Star changed its name to Westinghouse Digital, LLC. None of the members (owners or shareholders) of Westinghouse Digital were or are members of Mora.

22.     LG and Columbia allege that the assignment of assets and liabilities from Mora to CMA, and then from CMA to Westinghouse Digital violated California's Uniform Fraudulent Transfer Act, Delaware's Uniform Fraudulent Transfer Act and common law. LG and Columbia further claim that the assets purchase by Westinghouse Digital imposed successor liability and/or alter ego liability on Westinghouse Digital for the liabilities of Mora.

23.     SFC and Andersen have alleged that the assignment and subsequent asset purchase were fraudulent transfers and further alleged that the property purchased by Westinghouse Digital imposed successor liability on Westinghouse Digital for the liabilities of Mora.

24. Chang has alleged that Westinghouse Digital has successor entity liability and/or alter ego liability with respect to certain debts that Chang claims are owed to him by Mora.

25. LG, Columbia, SFC, Andersen and Chang each have claimed an interest in the property purchased by Westinghouse Digital, such claim placing a cloud on the title and rights of Westinghouse Digital in such property.

26. A substantial part of the property that is the subject of this action is located within this state and county.

## FIRST CAUSE OF ACTION

### Quiet Title to Personal Property

### (Against all Defendants)

27. Westinghouse Digital and CMA incorporate the allegations of paragraphs 1-26 as if fully rewritten herein.

28. The property for which Westinghouse Digital and CMA seek to quiet title is that identified in the Bill of Sale, attached to the Complaint as Exhibit B. The tangible personal property identified in the Bill of Sale exists in Orange County, California, and elsewhere.

29. Westinghouse Digital is the owner of the property identified in the Bill of Sale by virtue of the consummation of the Asset Purchase Agreement and the exchange of fair and adequate consideration therefor.

30. Defendants claim a lien upon, attachment to, and/or some other unspecified equitable interest in such property. Defendants have also demanded that the property be returned to CMA.

31. Westinghouse Digital and CMA request that the determination of the rights, title and interest of the parties in the property be made as of April 2, 2010.

///

///

///

///

///

2233922.2

- 21 -

VERIFIED COMPLAINT TO QUIET TITLE FOR PERSONAL PROPERTY AND DECL. RELIEF

## SECOND CAUSE OF ACTION

### Declaratory Judgment

### (Against all Defendants)

32. Westinghouse Digital and CMA incorporate the allegations of paragraphs 1-26 as if fully rewritten herein.

33. Each of the Defendants has taken the position that Westinghouse Digital is liable to him or it as the successor of Mora, including alleging that:

    (a) Westinghouse Digital is a mere continuation of Mora;

    (b) Westinghouse Digital did not pay adequate consideration to CMA for Mora's assets and liabilities, leaving insufficient funds to satisfy Mora's obligations to Defendants; and

    (c) The General Assignment and Asset Purchase Agreement were fraudulent conveyances under Section 3439.05 of the California Uniform Fraudulent Transfer Act and state common law for inadequate consideration, and designed to defraud Mora's creditors.

34. Westinghouse Digital and CMA deny Defendants' allegations, and deny that Westinghouse Digital is liable to Defendants for Mora's obligations, liabilities or debts to them, if any, and as such an actual controversy exists.

35. Westinghouse Digital acquired the assets of Mora for adequate consideration.

36. Westinghouse Digital and CMA request that the Court declare the rights of the parties pursuant to California Code of Civil Procedure § 1060 and declare that: (a) Westinghouse Digital is not liable to Defendants under any theory of successor liability and/or alter ego liability; and (b) the transfer of assts and liabilities from Mora, through CMA, to Westinghouse Digital was not fraudulent.

### PRAYER

Wherefore, Plaintiffs request a declaratory judgment as follows:

1. Adjudging, finding, and declaring that Westinghouse Digital is the owner, free and clear of any interest, liens or claims by Defendants, of the property identified in paragraph 19, above, and Exhibit B to the Complaint.

1      2.    Adjudging, finding, and declaring that Westinghouse Digital is not liable under any theory of successor liability and/or alter ego for the obligations, liabilities and debts of Mora.

3.    Adjudging, finding, and declaring that the transfer of assets from Mora, through CMA, to Westinghouse Digital did not violate Section 3439.05 of the California Uniform Fraudulent Transfer Act or state common law.

4.    Adjudging, finding, and declaring that the transfer of assets from Mora, through CMA, to Westinghouse Digital was for fair and adequate consideration.

5.    Granting Plaintiffs such other and further relief that the Court deems is just and proper.

Dated: August 2, 2010

NEWMEYER & DILLION LLP  
Gregory L. Dillion  
Carol S. Zaist

By: _____  
Carol S. Zaist  
Attorneys for Plaintiff  
Westinghouse Digital, LLC

2233922.2

- 23 -

VERIFIED COMPLAINT TO QUIET TITLE FOR PERSONAL PROPERTY AND DECL. RELIEF

## VERIFICATION

I, Douglas Q. Woo, declare:

I am the president of Westinghouse Digital, LLC, which is a plaintiff in the action identified above. I have read Plaintiffs' VERIFIED COMPLAINT and know the contents thereof.

The factual matters stated in the VERIFIED COMPLAINT, unless averred on information and belief, are true and correct of my own knowledge.

I declare under penalty of perjury under the laws of the United States and of the State of California that the forgoing is true and correct, and that this verification was executed by me on July 30, 2010.

_____
Douglas Q. Woo

will cause to be done, executed, acknowledged and delivered such further acts, conveyances, transfers, assignments, powers of attorney and assurances as the Buyer may reasonably require to convey, transfer to and vest in the Buyer, and to put the Buyer in possession of, any of the Purchased Assets.

4. Nothing in this Bill of Sale and Assignment shall alter any liability or obligation of the Seller or the Buyer arising under the Purchase Agreement, which shall govern the representations, warranties and obligations of the parties with respect to the Purchased Assets.

5. This Bill of Sale and Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

6. This Bill of Sale and Assignment shall be governed by, and construed in accordance with, the internal laws of the State of California, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws principles of the State of California.

7. This Bill of Sale and Assignment may be executed by facsimile signature and in two or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

[The remainder of this page has been intentionally left blank.]

IN WITNESS WHEREOF, the parties have executed this Bill of Sale as of the date first written above.

**Credit Managers Association of California,** a California corporation doing business as Credit Management Association, solely in its capacity as Assignee for the Benefit of Creditors of Westinghouse Digital Electronics, LLC,

By: _/s/ Dmamn_
Name: David Macomber
Title: Vice President &CFO

**Golden Star Electronics, LLC,** a Delaware limited liability company

By: _____
Name: Eric Chen
Title: Managing Director