# Exhibit C-2

leasehold interest previously held by Assignor within thirty (30) days of any such renewal or termination. If Buyer shall hold, occupy or acquire possession of any real or personal property subject to a lease to which Assignor was a party (each a "**Leased Property**"), for a period of more than 60 days, Buyer shall assume such lease and satisfy all obligations thereunder, or Buyer shall return such Leased Property to the applicable lessor. Buyer shall also take such other steps as Seller may reasonably require to discharge any obligation of Seller with respect to such Leased Property.

(d)     Without limiting Section 5.6(a) and (b), such further assurance shall include as to Seller, on or within three (3) days immediately following the Closing Date, making or (causing Assignor to make) any and all necessary filings with the California Secretary of State to change the name of Assignor to "WDE Electronics, LLC."

5.7     **Press Releases, Public Announcements and Third Party Disclosures**. The Seller and the Buyer shall consult with each other before issuing, and provide each other the opportunity to review and comment upon, any press release or other public statement with respect to the transactions contemplated hereby, and shall not issue any such press release or make any such public statement prior to such consultation, except as may be required by applicable law.

5.8     **No Obligations to Third Parties**. The execution and delivery of this Agreement shall not be deemed to confer any rights upon any Person or entity other than the Parties hereto, or make any Person or entity a third party beneficiary of this Agreement, or to obligate the Parties to any Person or entity other than the Parties to this Agreement.

5.9     **Satisfaction or Release of Assumed Liabilities.** Buyer covenants and agrees, that from and after Closing, it shall, within 90 days after Closing, either (a) cause the Assumed Liabilities to be satisfied to the reasonable satisfaction of Seller and/or (b) as to the Assumed Liabilities that are not satisfied, obtain releases, reasonably satisfactory to Seller, in favor of Seller, from each Person to which an Assumed Liability set forth on Schedule 2.4(c) hereto is owed, and from each Person which may be able to assert any right including without limitation any right of contribution, indemnity or subrogation, against Seller with respect to any such Assumed Liability. Such release shall be in the form set forth in Exhibit B hereto, or in such other form as provides Seller and the Assignor with a complete release of all liabilities arising directly or indirectly from the applicable Assumed Liability. To secure the punctual payment and performance of the obligations of Buyer set forth in this Section 5.9 when due whether at the stated maturity, by acceleration or otherwise, the Buyer hereby grants to Seller, to be effective upon the Closing Date, a security interest in and to, and a lien upon all right, title and interest of the Buyer in the Purchased Assets. The value advanced by Seller is for the purpose of purchasing the Purchased Assets. The Parties intend that Seller shall have a purchase money security interest in the Purchased Assets.

## ARTICLE VI
## CONDITIONS TO CLOSING

6.1    **Conditions to Buyer's Obligations**. The obligations of the Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to the Closing, of each of the following conditions, any of which may be waived in writing by the Buyer in its sole discretion:

(a)    The representations and warranties made by Seller in this Agreement or any Ancillary Agreement or any certificate delivered pursuant hereto shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date, with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(b)    The Seller shall have complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement or any Ancillary Agreement imposed on Seller and required to be performed or complied with by Seller at, or prior to, the Closing Date.

(c)    Seller shall have delivered, and Buyer shall have received:

(i)    written assignments, executed by Seller in favor of Buyer, of the Patent and Mark rights included within the Purchased Assets (in a form and substance acceptable to Buyer);

(ii)    a written assignment, executed by Seller in favor of Buyer, of the interests in the Subsidiaries set forth on Schedule 2.2(e) attached hereto (in a form and substance acceptable to Buyer); and

(iii)    an executed counterpart of each of the Ancillary Agreements signed by Seller.

(d)    As of the Closing, there shall not have occurred any material adverse change in the Business or the Purchased Assets (including without limitation, the modification or termination of any material contracts to which Assignor is a party or a beneficiary and which is included within the Purchased Assets).

(e)    As of the Closing, no action shall have been filed by Assignor and/or by Assignor's creditors for the dissolution, bankruptcy or insolvency of Assignor.

(f)    Westinghouse Electronic Corporation shall have executed a written consent to the assignment of the "Westinghouse Digital" trade name and licensing rights to Buyer (in a form and substance acceptable to Buyer).

6.2    **Conditions to Seller's Obligations**. The obligations of the Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment, at or prior to

the Closing, of each of the following conditions, any of which may be waived in writing by the Seller in its sole discretion:

(a)    The representations and warranties made by Buyer in this Agreement or any Ancillary Agreement or any certificate delivered pursuant hereto shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date, with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(b)    The Buyer shall have complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement or any Ancillary Agreement imposed on Buyer and required to be performed or complied with by Buyer at, or prior to, the Closing Date.

(c)    Buyer shall have delivered, and Seller shall have received:

(i)    a certificate to the effect set forth in subprongs (a) and (b) above signed by a duly authorized officer of Buyer; and

(ii)    an executed counterpart of each of the Ancillary Agreements signed by Buyer.

(d)    Buyer shall have delivered the Purchase Price in accordance with Section 2.6(a).

## ARTICLE VII
## INDEMNIFICATION

7.1    **Survival of Representations and Warranties**.  Each of the representations and warranties made by Buyer in this Agreement and the Ancillary Agreements and any certificate delivered pursuant hereto shall survive the Closing for a period of six months after the Closing Date.  The covenants and agreements of the Buyer contained in this Agreement and the Ancillary Agreements shall survive the Closing for a period of six months after the Closing Date, except for those covenants and agreements that by their terms contemplate performance in whole or in part after the Closing, which shall remain in full force and effect for a period of six months following the date by which such covenant or agreement is required to be performed.

7.2    **Indemnification by Buyer**.

(a)    Buyer shall defend, indemnify, and hold harmless Seller and its affiliates, directors, officers, shareholders, employees, agents, successors, and assigns (each a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**") from and against all losses, damages, liabilities, deficiencies, claims, interest, awards, judgments, penalties, costs and expenses (including reasonable attorneys' fees, costs and other out-of-pocket expenses incurred in investigating, preparing or defending the foregoing) (hereinafter collectively, "**Losses**") arising out of or resulting from:

(i)      any breach of any representation or warranty made by the Buyer contained in this Agreement or any Ancillary Agreement or any certificate delivered pursuant hereto;

(ii)      any breach of any covenant or agreement by the Buyer contained in this Agreement or any Ancillary Agreement; and

(iii)      any Assumed Liability; and

(iv)      any breach or alleged breach by Seller of any provision of the Securities Act, the Securities and Exchange Act of 1934, as amended, or any other statute, law, ordinance, regulation, rule, code, injunction, judgment, decree or order of any Governmental Authority related to the sale of securities arising out of the transactions contemplated by this Agreement.

(b)      Buyer shall defend, indemnify, and hold harmless the Seller Indemnified parties from and against all Losses, arising after the Closing Date, arising out of or resulting from:

(i)      the Purchased Assets;

(ii)      any Sales Tax Liability; and

(iii)      the use or occupation by Buyer of any real or personal property previously leased by Assignor.

(c)      Buyer shall defend, indemnify and hold harmless Assignor and its affiliates, director, officers, shareholders, employees, agents, successors, and assigns (each a "**Assignor Indemnified Party**" and, collectively, the "**Assignor Indemnified Parties**") from and against all Losses arising out of or resulting from the Assumed Liabilities, but only to the extent of the amounts for the Assumed Liabilities set forth in Schedule 2.4(c).

7.3      **Procedures.**

(a)      In order for a Seller Indemnified Party or a Assignor Indemnified Party (the "**Indemnified Party**") to be entitled to any indemnification provided for under this Agreement as a result of a Loss or a claim or demand made by any Person against the Indemnified Party (a "**Third Party Claim**") such Indemnified Party shall deliver notice thereof to the Buyer describing in reasonable detail the facts giving rise to any claim for indemnification hereunder, the amount or method of computation of the amount of such claim (if known) and such other information with respect thereto as the Buyer may reasonably request. The failure to provide such notice, however, shall not release the Buyer of its obligations under this Article VII except to the extent that the Buyer is prejudiced by such failure.

(b)      The Buyer shall have the right, upon written notice to the Indemnified Party within 30 days of receipt of notice from the Indemnified Party of the commencement of such Third Party Claim, to assume the defense thereof at the expense of the Buyer with counsel selected by the Buyer and reasonably satisfactory to the Indemnified Party. If the Buyer assumes the defense of such Third Party Claim, the Indemnified Party shall have the right to employ separate counsel and to participate in the defense thereof, but the fees and expenses of such

counsel shall be at the expense of the Indemnified Party; provided, that if in the reasonable opinion of counsel for the Indemnified Party, there is a conflict of interest between the Indemnified Party and the Buyer, the Buyer shall be responsible for the reasonable fees and expenses of one counsel to such Indemnified Party in connection with such defense. If the Buyer assumes the defense of any Third Party Claim, the Indemnified Party shall cooperate with the Buyer in such defense and make available to the Buyer all witnesses, pertinent records, materials and information in the Indemnified Party's possession or under the Indemnified Party's control relating thereto as is reasonably required by the Buyer. If the Buyer assumes the defense of any Third Party Claim, the Indemnified Party shall agree to any settlement, compromise or discharge of such Third Party Claim that the Buyer may recommend and that by its terms obligates the Buyer to pay the full amount of the liability in connection with such Third Party Claim, and which releases the Indemnified Party completely in connection with such Third Party Claim. Whether or not the Buyer assumes the defense of a Third Party Claim, the Indemnified Party shall not admit any liability with respect to, or settle, compromise or discharge, or offer to settle, compromise or discharge, such Third Party Claim without the Buyer's prior written consent, (which consent shall not be unreasonably withheld).

(c)     In the event any Indemnified Party should have a claim against the Buyer hereunder that does not involve a Third Party Claim being asserted against or sought to be collected from such Indemnified Party, the Indemnified Party shall deliver notice of such claim promptly to the Buyer, describing in reasonable detail the facts giving rise to any claim for indemnification hereunder, the amount or method of computation of the amount of such claim (if known) and such other information with respect thereto as the Buyer may reasonably request. The failure to provide such notice, however, shall not release the Buyer from any of its obligations under this Article VII except to the extent that the Buyer is prejudiced by such failure. The Indemnified Party shall reasonably cooperate and assist the Buyer in determining the validity of any claim for indemnity by the Indemnified Party and in otherwise resolving such matters. Such assistance and cooperation shall include providing reasonable access to and copies of information, records and documents relating to such matters, furnishing employees to assist in the investigation, defense and resolution of such matters and providing legal and business assistance with respect to such matters.

(d)     The Parties shall cooperate with each other with respect to resolving any claim, liability or Loss for which indemnification may be required hereunder, including by making, or causing the applicable Indemnified Party to make, all reasonable efforts to mitigate any such claim, liability or Loss. Seller shall, or shall cause the applicable Seller Indemnified Party to, use reasonable efforts to seek full recovery under all insurance policies covering any Loss to the same extent as they would if such Loss were not subject to indemnification hereunder.

## ARTICLE VIII
## MISCELLANEOUS.

8.1     **Costs and Expenses**.  Except as otherwise provided in this Agreement, each of the Parties hereto will bear its own costs and expenses (including without limitation attorneys' fees) in connection with the negotiation and consummation of the transactions contemplated hereby.

8.2   **Notices**.  All notices, requests, approvals, demands, claims and other communications required or permitted to be given under this Agreement (individually and collectively, "**Notices**") hereunder shall be delivered to the addresses set forth below, or pursuant to such other instructions as may be designated in writing by the Party to receive such Notice:

<u>If to Seller</u>:

Credit Managers Association of California
40 E. Verdugo Avenue
Burbank, California 91502-1931
Attention:  Michael L. Joncich
mjoncich@creditservices.org
Fax No.:  818-972-5301

<u>With copies to</u>:

Gibson Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
Attention:  Samuel Newman and Michele L. Barinsky
SNewman@gibsondunn.com
MBarinsky@gibsondunn.com
Fax No.:   213-229-6644
            213-229-6818

<u>If to Buyer</u>:

Golden Star Electronics, LLC
c/o Northwood Partners Limited
1F, Yue Tahi Commerical Building
128 Connaught Roa Central
Hong Kong
Attention:  Eric Chen, Managing Director
eric_chen@northwoodpartners.net

<u>With copies to Buyer's counsel</u>:

Newmeyer & Dillion, LLP
895 Dove Street, Suite 500
Newport Beach, CA 92660
Attention:  Jon J. Janecek, Esq.
JJanecek@ndlf.com
Fax No:  949-854-7099

Any such Notices shall be deemed to have been duly given and effective:

18

(a)     upon receipt if delivered in person;

(b)     on the date of machine transmittal (except if sent after 5:00 p.m. recipient's time, then the Notice shall be deemed given at 9:00 a.m. on the next business day) when electronically transmitted by facsimile or email, with a copy also given as described in (d);

(c)     one day after deposit with a national overnight delivery service; or

(d)     three days after deposit with the United States Post Office by certified mail, return receipt requested, postage prepaid.

Any Party to whom Notices are to be sent pursuant to this Agreement may from time to time change its address, facsimile number, or email address for future communication hereunder by giving Notice in the manner prescribed herein to all other parties named in this Section 8.2, provided that the change shall not be effective until five (5) business days after the Notice of change has been given.

8.3     **Entire Agreement; Captions**. This Agreement, Exhibits and Schedules hereto (which are incorporated herein by reference) and the agreements to be executed and delivered in connection herewith, together constitute the entire agreement and understanding between the Parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement. This Agreement supersedes any prior offer, agreement or understanding between the Parties with respect to the transactions contemplated hereby. The captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Agreement.

8.4     **Amendment.** This Agreement may not be amending, modified or supplemented in any manner, whether by course of conduct or otherwise, except by an instrument in writing specifically designated as an amendment hereto, signed on behalf of each Party.

8.5     **Waiver.** No failure or delay of either Party in exercising any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such right or power, or any course of conduct, preclude any other or further exercise thereof or the exercise of any other right or power. Any agreement on the part of either Party to any such waiver shall be valid only if set forth in a written instrument executed and delivered by a duly authorized officer on behalf of such Party.

8.6     **Execution in Counterparts**. For the convenience of the Parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Any signature pages of this Agreement transmitted by telecopier will have the same legal effect as an original executed signature page.

8.7     **Assignment; Binding Effect; Successors**. Neither this Agreement nor any of the rights, interest, or obligations under this Agreement may be assigned or delegate, in whole or in part, by operation of law or otherwise, by either Party without the express written consent of the other

Party, and any such assignment without such prior written consent shall be null and void. This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the Parties hereto and their respective successors and permitted assigns.

8.8     **Governing Law**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.

8.9     **Dispute Resolution**.

(a)     All disputes, claims, or controversies arising out of or relating to this Agreement or the negotiation, validity or performance hereof or the transactions contemplated hereby and thereby that are not resolved by mutual agreement shall be resolved solely and exclusively by binding arbitration before a single neutral to be conducted before the Judicial Mediation and Arbitration Services (JAMS) (the "**Arbitrator**"). The arbitration shall be held in Los Angeles County, California and shall be conducted in accordance with the then-current JAMS rules and regulations unless specifically modified herein.

(b)     The Parties covenant and agree that the arbitration shall commence within 180 days of the date on which a written demand for arbitration is filed by any Party hereto. In connection with the arbitration proceeding, the Arbitrator shall have the power to order the production of documents by each Party and any third-party witnesses. In addition, each Party may take up to three depositions as of right, and the Arbitrator may in his or her discretion allow additional depositions upon good cause shown by the moving Party. However, the Arbitrator shall not have the power to order the answering of interrogatories or the response to requests for admission. In connection with any arbitration, each Party shall provide to the other, no later than seven (7) business days before the date of the arbitration, the identity of all persons that may testify at the arbitration and a copy of all documents that may be introduced at the arbitration or considered or used by a party's witness or expert. The Arbitrator's decision and award shall be made and delivered within six (6) months of the selection of the Arbitrator. The Arbitrator's decision shall set forth a reasoned basis for any award of damages or finding of liability. The Arbitrator shall not have power to award damages in excess of actual compensatory damages and shall not multiply actual damages or award punitive damages or any other damages that are specifically excluded under this Agreement, and each party hereby irrevocably waives any claim to such damages.

(c)     The Parties covenant and agree that they will participate in the arbitration in good faith and that they will, except as provided below, (i) bear their own attorneys' fees, costs and expenses in connection with the arbitration, and (ii) share equally in the fees and expenses charged by the Arbitrator. The Arbitrator may in his or her discretion assess costs and expenses (including the reasonable legal fees and expenses of the prevailing Party) against any Party to a proceeding. Any Party unsuccessfully refusing to comply with an order of the Arbitrator shall be liable for costs and expenses, including attorneys' fees, incurred by the other Party in enforcing the award. This Section 8.9 applies equally to requests for temporary, preliminary or permanent injunctive relief, except that in the case of temporary or preliminary injunctive relief any Party

20

may proceed in a court of appropriate jurisdiction without prior arbitration for the purpose of avoiding immediate and irreparable harm or to enforce its rights under any non-competition covenants.

8.10   **Severability**.   Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision or portion of any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable Law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or portion of any provision in such jurisdiction, and this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision or portion of any provision had never been contained herein.

8.11   **Attorneys' Fees**.   Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the applicable court of competent jurisdiction or the Arbitrator (including without limitation costs, expenses and fees on any appeal). The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

8.12   **No Presumption Against Drafting Party.**   Each of the Buyer and the Seller acknowledges that each Party to this Agreement has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement. Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement against the drafting Party has no application and is expressly waived.

8.13   **Facsimile Signature.**   This Agreement may be executed by facsimile signature and a facsimile signature shall constitute an original for all purposes.


[The remainder of this page has been intentionally left blank.]

IN WITNESS WHEREOF, Buyer and Seller duly executed and delivered this Agreement by their duly authorized representatives as of the Effective Date.

**SELLER:**                                              **BUYER:**

**CREDIT MANAGERS ASSOCIATION**          **GOLDEN STAR ELECTRONICS, LLC**, a
**OF CALIFORNIA**, a California corporation   Delaware limited liability company
doing business as Credit Management
Association, solely in its capacity as Assignee
for the Benefit of Creditors of Westinghouse
Digital Electronics, LLC                      By: _____
                                             Name: Eric Chen, its Managing Director

By: _____
   Name: David Macomber
   Title: Vice President & CFO

[The remainder of this page has been intentionally left blank.]

**Signature Page to Asset Purchase Agreement**

*31March2010*

Schedule 2.3(n)
Litigations and Claims Not Assumed

| COMMERCIAL LITIGATIONS |
|---|
| *Tatung Company v. Westinghouse Digital Electronics, LLC et al. (and Related Cross-Action), Judicate West, Case No. A152234-25* |
| *Microdyne Outsourcing, Inc. v. Westinghouse Digital Electronics, LLC et al. (and Related Cross-Action), Los Angeles County Superior Court Case No.: BC414970, filed July 14, 2009* |
| *Winthrop Resources Corporation v. Westinghouse Digital Electronics, LLC,* State of Minnesota, County of Hennepin |
| *Michelle Pfeiffer et al. v. COMPUSA.com et al.,* Los Angeles Superior Court, West District, Case No. 101403 (attempted service of WDE as a doe defendant) |
| *Legacy Partners II Santa Fe Springs. v. Westinghouse Digital Electronics, LLC,,* Los Angeles County Superior Court, Norwalk Courthouse Case No.:VC055667, filed February 23, 2010 |

| HUMAN RESOURCES LITIGATION |
|---|
| *Darwin Chang v. Westinghouse Digital Electronics, LLC, a California limited liability company; Richard Houng, an individual; Nexgen Mediatech, Inc., a Taiwan corporation; Nexgen Mediatech USA, Inc., a California corporation, Santa Clara County Superior Court Case No.: 109CV144204, filed June 4, 2009* |

| PATENT LITIGATIONS |
|---|
| *Zenith Electronics LLC v. Vizio, Inc., Westinghouse Digital Electronics, LLC; Funai Corporation, Inc.; Polaroid Corporation; Petters Group Worldwide, LLC; APH USA, Inc., Akai Electrical Co., Ltd.,* Case No. 5:06CV246 (E.D. Tex.), filed October 30, 2006 |
| *Samsung Electronics Co., Ltd. and LG Electronics Co., Ltd. v. Petters Group Worldwide, LLC; Polaroid Corporation and Westinghouse Digital Electronics, LLC,* Case No. 08-348-GMS (D. Del.), filed June 10, 2008 |
| *LG Electronics, Inc. v. Petters Group Worldwide, L.L.C.; Polaroid Corp.; Westinghouse Digital Electronics, L.L.P.; Vizio Inc.; Proview Technology, Inc..; Proview International Holdings, Ltd; and Proview Technology (Shenzhen) Co., Ltd.;* Case Number 5:08-cv-00163 (E.D. Tex.) filed September 19, 2008 |
| *Multimedia Patent Trust v. DIRECTV, Inc.; DIRECTV Enterprises, LLC; The DIRECTV Group, Inc.; DIRECTV Holdings LLC; DIRECTV Operations, LLC; DISH DBS Corporation; DISH Network Corporation; DISH Network LLC; EchoStar Corporation; EchoStar Orbital Corporation; EchoStar Technologies LLC; Imation Corp.; Imation Enterprises Corp.; Memorex Products, Inc.; Pioneer Corp.; Pioneer Electronics Technology, Inc.; Pioneer Electronics (USA) Inc.; Polycom, Inc.; Proview Electronics Co., Ltd.; Proview International Holdings Ltd.; Proview Technology Inc.; Proview Technology (Shenzhen) Co.; Ltd., Vizio, Inc.; and Westinghouse Digital Electronics, LLC,* Case Number 3:2009cv00278 (S.D. Cal.) filed February 13, 2009 |

Schedule 2.3(n)
*Westinghouse Digital Electronics, LLC Confidential Information*

1


| COPYRIGHT LITIGATION |
| --- |
| *Software Freedom Conservancy, Inc. and Erik Andersen v. Best Buy Co., Inc., Samsung Electronics America, Inc., Westinghouse Digital Electronics, LLC, JVC Americas Corporation, Western Digital Technologies, Inc., Robert Bosch LLC, Phoebe Micro, Inc., Humax USA Inc., Comtred Corporation, Dobbs-Stanford Corporation, Versa Technology Inc., ZYXEL Communications Inc., Astak Inc. and GCI Technologies Corporation,* Case Number :2009cv10155 (S.D.N.Y.) filed Dec. 14, 2009 |

| EMPLOYEE CLAIMS |
| --- |
| *Darwin Chang v. Westinghouse Digital Electronics, LLC* (see Human Resources Litigation) |
| *Rodney Hayes v. Westinghouse Digital Electronics, LLC;* prior actions in Federal and State forums |
| *Rodney Hayes* – investigation by the California Employment Development Department (EDD) |
| *Tiffany Trejo* – Workers Compensation Claim |
| *Elizabeth Lewis v. Westinghouse Digital Electronics, LLC* |

| PATENT INFRINGEMENT CLAIM S RECEIVED |
| --- |
| Thomson Licensing LLC |
| Funai Electric Company Ltd. |
| Gemstar – TV Guide International (Rovi Corporation) |
| Microsoft Corporation |
| Saxon Innovations, LLC |
| Hitachi, Ltd. |
| Rembrandt Technologies, L.P. |
| IP Innovation LLC; Technology Licensing Corporation |
| MISCELLANEOUS CLAIMS RECEIVED |
| American Express Travel Relates Service Company, Inc. – claim for moneys due under Corporate Services Agreement for Corporate Credit Card |
| Demand letter for payment of unpaid installment payments under Promissory Note of January 13, 2010 in favor of Navy Exchange Service Command |
| Office Media Network, Inc. ("OMN") v. Westinghouse Digital Electronics, LLC – alleging damages resulting from defective and non-complying flat screens (warranty claim for flat screens sold and replacement flat screens provided to OMN) |
| Claim received from Allstate Insurance, insurance company for end-user customer, Rapid Rehab, with respect to a fire alleged to be caused by a Westinghouse Digital's LCD monitor (LCM-17v2). WDE has tendered this claim to its insurance broker. |
| SUBPOENAS |
| Subpoena in the US District Court for the Central District of California to testify at a deposition or produce documents in the civil action *Apeldyn Corporation v. AU Optronics et al., Civil Action No. 08-568-SLR* in the District of Delaware |

Schedule 2.3(n)
*Westinghouse Digital Electronics, LLC Confidential Information*