SOFTWARE FREEDOM LAW CENTER, INC.
Daniel B. Ravicher (DR1498)
Aaron Williamson (AW1337)
Michael A. Spiegel (MS2309)
1995 Broadway, 17th Floor
New York, NY 10023-5882
Tel.: 212-580-0800
Fax.: 212-580-0898

Attorneys for Plaintiffs *Software Freedom Conservancy, Inc.* and *Erik Andersen*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
SOFTWARE FREEDOM CONSERVANCY, INC. and
ERIK ANDERSEN,

                      Plaintiffs,

    -against-

BEST BUY CO., INC., SAMSUNG ELECTRONICS
AMERICA, INC., WESTINGHOUSE DIGITAL
ELECTRONICS, LLC, JVC AMERICAS
CORPORATION, WESTERN DIGITAL
TECHNOLOGIES, INC., ROBERT BOSCH LLC,
PHOEBE MICRO, INC., HUMAX USA INC.,
COMTREND CORPORATION, DOBBS-STANFORD
CORPORATION, VERSA TECHNOLOGY INC.,
ZYXEL COMMUNICATIONS INC., ASTAK INC.,
and GCI TECHNOLOGIES CORPORATION,

                      Defendants.
----------------------------------------------------------------- X

ECF CASE

09-CV-10155 (SAS)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO JOIN SUCCESSORS IN INTEREST OF DEFENDANT WESTINGHOUSE DIGITAL ELECTRONICS, LLC**

INTRODUCTION

Plaintiff Erik Andersen is a work-from-home father who has gifted to the world software underlying a significant body of consumer electronics. Predecessor Westinghouse Digital Electronics (hereinafter "old Westinghouse") willfully infringed Mr. Andersen's copyrights in his software and that willful infringement continued unabated as the assets owned by old Westinghouse passed to CMA and then to Successor Westinghouse Digital (hereinafter "new Westinghouse"). Prior to the transfer, both CMA and new Westinghouse had full knowledge of Plaintiffs' claims against old Westinghouse, and both companies knew that they were receiving from old Westinghouse infringing television sets and website servers that continued making infringing distributions of Plaintiffs' copyrighted code. But they did nothing to stop the infringement. As such, Plaintiffs moved to join them as successors to old Westinghouse.

CMA and new Westinghouse now argue they are not successors to old Westinghouse because they did not *contractually* assume liability for such copyright infringement. This conclusion contradicts the law, frustrates Federal copyright policy and flouts equity. New Westinghouse has the same offices, same employees, same business, same website, same operations and same name as old Westinghouse, and CMA played a willing part in the transfer as an intermediary attempting to eliminate the liabilities of old Westinghouse from being passed to new Westinghouse. These parties, who purposefully colluded in a scheme to attempt to launder away copyright infringement liability while continuing to commit the infringing activity are rightfully joined as successors to old Westinghouse. The later-filed California state action has neither personal jurisdiction over Plaintiffs nor subject matter jurisdiction over copyright claims.

I.      PERSONAL JURISDICTION OVER CMA EXISTS IF IT WAS A SUCCESSOR

CMA argues that FRCP 25(c) does not subject successor organizations to jurisdiction. CMA Opp., pp. 15-17. This argument ignores binding precedent in the Second Circuit and the majority rule among the other circuit courts. In *LiButti v. United States*, the Second Circuit considered whether FRCP 25(c) conferred jurisdiction over successors in interest. 178 F.3d 114, 123 (2d Cir. 1999). After noting that the Fourth, First, and Federal Circuits "held that when a person is found to be a successor in interest, the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest," the court conducted only a successor-in-interest analysis to determine whether it had jurisdiction. *Id.* (citing *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 454-55 (4th Cir. 1990); *Explosives Corp. of Am. v. Garlam Enters. Corp.,* 817 F.2d 894, 906 (1st Cir. 1987); *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985)). Thus, the personal jurisdiction inquiry collapses into the question of whether CMA is a successor to old Westinghouse. If it is, this court has personal jurisdiction over CMA as a result of it having had personal jurisdiction over old Westinghouse.

II.     CMA AND NEW WESTINGHOUSE ARE SUCCESSORS TO OLD WESTINGHOUSE

CMA and new Westinghouse are successors to old Westinghouse under California state law for at least two separate reasons: (i) the transfer of old Westinghouse's assets to new Westinghouse amounted to a merger, and (ii) CMA and new Westinghouse continued the tortious activity of old Westinghouse. A contrary reading would set California state law at odds with the Federal interest in granting copyright holders exclusive rights. If such a contradiction exists,

which Plaintiffs do not believe is the case, California law must nonetheless yield to Federal common law, which would find CMA and new Westinghouse to be successors. At minimum, the incomplete factual information submitted by CMA and new Westinghouse leave genuine issues of material fact that are appropriately subject to an evidentiary hearing.

      A.     <u>CMA and New Westinghouse are Successors Under California Law</u>

California courts hold that an inquiry of successor liability involves "broad equitable considerations," and should be considered on its "own unique facts." *Rosales v. Thermex-Thermatron*, 67 Cal. App. 4th 187, 196 (Cal. App. 1998); *CenterPoint Energy, Inc. v. Superior Court*, 157 Call. App. 4th 1101, 1122 (Cal. App. 2007). CMA and new Westinghouse identify only four situations under California law where an assignment will result in successor liability: "(1) there is an express or implied agreement of assumption [of liabilities], (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray v. Alad Corp.*, 136 Cal. Rptr. 574, 578 (Cal. 1977). However, California courts recognize a fifth situation justifying successor liability: where the successor continues the strict liability tortious activities of the predecessor. *Schwartz v. Pillsbury, Inc.*, 969 F.2d 840, 845 (9th Cir. 1992) (citing *Ray,* 136 Cal. Rptr. at 579).

Not only does new Westinghouse's acquisition of old Westinghouse amount to a merger, both new Westinghouse and CMA are also successors because they continued the tortious copyright infringement of old Westinghouse. Either basis is sufficient under California law to declare CMA and new Westinghouse successors in interest to old Westinghouse.

1. New Westinghouse's Acquisition of Old Westinghouse Amounts to a Merger

Despite new Westinghouse's attempt to characterize their transaction as a mere purchase of assets, the transaction achieved the same effect as a merger.  California recognizes the doctrine of *de facto* merger in cases where a transaction "actually achieves the same practical result as a merger."  *Orthotec, LLC v. REO Spineline, LLC*, 438 F. Supp. 2d 1122, 1130 (C.D. Cal. 2006).  Whether a transfer is a *de facto* merger depends on the balancing of five factors: "(1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller?"  *Greenberg Traurig, LLP v. Gale Corp.*, 2009 U.S. Dist. LEXIS 67843, *12 (E.D. Cal. 2009).

While there is no indication that any stock of new Westinghouse was used in payment for the transaction, the other factors support a finding that the transfer was a *de facto* merger.  On the second factor, new Westinghouse has continued the same enterprise, occupying the same location with the same employees, and is continuing to infringe Plaintiff's copyrights.  Ravicher Decl. ¶¶. 3-5.; Kuhn Decl. ¶¶ 4-8.  On the fourth factor, new Westinghouse admits old Westinghouse is undergoing liquidation.  Westinghouse Opp., p. 6, ("The trustee/assignee in [old Westinghouse]'s liquidation is CMA.").  On the fifth factor, new Westinghouse also admits that it took on agreements that were necessary to carry on the business of old Westinghouse, such as vendor supply agreements, marketing agreements, lease agreements, and—the most valuable asset in old Westinghouse's possession—a license to the Westinghouse brand name.  Westinghouse Opp., p.

4

6 (admitting that it acquired the Westinghouse brand); Westinghouse Opp., Exhibit B1, pp. 6-10.

On the third factor, new Westinghouse notes when describing the transaction that a Mr. Richard Houng owned 49% of old Westinghouse. Westinghouse Opp., p. 3. However, they provide no information concerning the true owners of the other 51% of old Westinghouse. If the shareholders of Northwood Partners, who apparently wholly own new Westinghouse, are a portion of that 51%, then the third factor also weighs in favor of finding a merger. However, new Westinghouse has conspicuously omitted this information.

New Westinghouse argues "adequate *cash* consideration was paid," and suggests that fact, alone, suffices to declare them not a successor. Westinghouse Opp., p. 15 (emphasis added); Westinghouse Opp., Exhibit C-1 p. 8 (detailing payment terms). However, the amount of actual cash paid, $500,000, was less than one third of the stated value of old Westinghouse's assets. Westinghouse Opp., p. 6 ("[Old Westinghouse] had assets of $1.6 million"). The promise of future royalties made by new Westinghouse does not constitute "cash" consideration paid for the sale, because there is no guarantee any such royalties will ever materialize. And the liabilities new Westinghouse assumed were merely those "necessary for the uninterrupted continuation of normal business operations," the fifth factor indicating a *de facto* merger. *Marks v. Minn. Mining & Mfg. Co.*, 187 Cal. App. 3d 1429, 1436-1437 (Cal. App. 1986) (internal quotations omitted). Thus, the "$18 Million in considerations by agreeing to assume certain … liabilities" cannot be considered when determining whether adequate consideration was paid. In sum, the fact that new Westinghouse paid so little "cash" actually *supports* a finding that the transaction was indeed a *de facto* merger.

      2.  <u>CMA and New Westinghouse Continued Tortious Activity of Old Westinghouse</u>

Under California law, the liability of a successor-continuing-tortfeasor[1] depends on three considerations: "(1) the virtual destruction of the plaintiffs' remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." *Franklin v. Usx Corp.*, 87 Cal. App. 4th 615, 628 (Cal. App. 2001) (quoting *Ray* 136 Cal. Rptr. At 579). Here, both CMA and new Westinghouse are successors to old Westinghouse because they each continued the tortious copyright infringing activities of old Westinghouse as the infringing assets of old Westinghouse (i.e., the infringing televisions and infringing website servers distributing Plaintiffs' copyrighted software) came into their possession and control.

First, CMA and new Westinghouse do not dispute that when CMA acquired the business and sold it to new Westinghouse, Plaintiffs' remedies against old Westinghouse were virtually destroyed. Indeed, they demand Plaintiffs get in line to receive what will assuredly be mere pennies on the dollar for the judgment delivered by this court. CMA Opp., p. 11 ("Plaintiffs must submit their claim … to CMA … or collect nothing."). Further, that remedy offered by CMA and new Westinghouse completely destroys Plaintiffs' right to the injunction issued by this court against the continuing infringement. Second, both CMA and new Westinghouse knew of old

---

[1] Copyright infringement "has long been recognized as a tort." *See*, *Davis v. Blige*, 505 F.3d 90, 103 n.11 (2d Cir. 2007); *accord Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) ("copyright infringement … is often characterized as a tort").

Westinghouse's infringing activity and had or have the means to stop those infringing activities from occurring, but they chose and continue to choose not to stop the infringement. Finally, the business of old Westinghouse continued to profit from the infringement even as it was coming under the control of CMA and ownership of new Westinghouse. Thus, they each benefited from old Westinghouse's brand recognition and goodwill—CMA through its fees, new Westinghouse through its acquisition—making it fair to hold each responsible for the ongoing infringement.

While it may be true that California courts of appeals have three times declined to extend this doctrine to negligence based tort actions, there is support for extending it to include all strict liability torts, including copyright infringement. *Maloney v. Am. Pharm. Co.,* 207 Cal. App. 3d 282, 290 (Cal. App. 1988) (holding that successor-manufacturer liability "is limited to cases in which *strict tort liability* is available as a theory of recovery") (emphasis added), *but see Franklin v. Usx Corp.*, 87 Cal. App. 4th 615, 628 (Cal. App. 2001) ("we decline to expand the product line exception beyond the arena of product liability."). At minimum, Federal copyright policy itself supports applying the doctrine to at least the tort of copyright infringement.

B. <u>To The Extent California State Law Would Not Protect The Copyright Act's Uniquely Federal Interests, It Must Yield to Federal Common Law</u>

The Supreme Court instructs that it is appropriate for Federal common law to displace state law in situations when "significant conflict exists between an identifiable federal policy or interest and the operation of state law." *Boyle v. United Techs. Corp.,* 487 U.S. 500, 508 (1988). The Second Circuit has found that it may override state law with Federal common law "where the operation of state law would (1) significantly conflict with (2) uniquely federal interests." *Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005) (*aff'd by Empire*

7

*Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006)).

The unique Federal interest in copyright law is expressed in the Constitution, which directs Congress to grant "Authors … the exclusive Right to their Writings," and in the Copyright Act. U.S. Const. art. 1 § 8, cl. 8; 17 U.S.C. §§ 101-1332 (2010). The Supreme Court has held that state laws interfering with Federal intellectual property laws must be preempted. *See, e.g.*, *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 14 (1989) (holding the interference of a Florida law protecting boat hull designs with Federal patent law warranted preemption). Thus, the inquiry here should focus on whether the state law of successor liability would interfere with the Federal grant of exclusive rights and remedies to copyright holders.

In this instance, the operation of a California assignment for the benefit of creditors could frustrate enforcement of Federal copyright law, and particularly the exclusive right of Plaintiffs in their work and the injunction issued by this court to enforce that exclusive right. Allowing an intermediary to contractually disclaim liability for the infringement when selling the business to a new corporate entity that continues the infringing activity would endorse a legal version of "catch me if you can", allowing the old entity, the intermediary and the new entity to profit from continued infringement without any risk of ever being stopped or held responsible. Plaintiffs would continually have to file copyright infringement lawsuits against each new entity, which could then itself simply undergo another assignment for the benefit of creditors (a non-bankruptcy, non-judicially approved, private transaction) to again launder the underlying assets. If California law operates to permit such a scheme, as CMA and new Westinghouse argue it does, such would frustrate Federal copyright law, by making injunctions against copyright infringement

practically impossible to enforce, and permitting the infringement to continue unabated.

When faced with an analogous situation in the context of labor law, the Supreme Court approved a modified successor liability test, the "substantial continuity test," to prohibit a frustration of Federal interests. Because of the unique Federal interest in copyright law, this test should apply here as well. The substantial continuity test asks "whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." *Fall River Dyeing & Fishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987) (internal quotations omitted) (quoting *Golden State Bottling Co. v. NLRB* 414 U.S. 168, 184 (1973) (same). In the labor context, the test consists of three inquires, "whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Id.*

Under this test, both CMA and new Westinghouse are successors. Both CMA and new Westinghouse acquired the assets of old Westinghouse and continued its business operations uninterrupted. They operated or operate the same business, with the same employees and supervisors, using the same facilities, and producing the same products. New Westinghouse uses the same name, and holds itself out as the same corporation to the public at large. Thus, even if California state law would not hold CMA and new Westinghouse to be successors to old Westinghouse, because this matter involves important interests under Federal copyright law, that state law must yield to Federal common law, which would hold that both CMA and new

9

Westinghouse are successors to old Westinghouse. Due process supports this result because both CMA and new Westinghouse were fully aware of Plaintiffs' default judgment motion.

### C. At Minimum, An Evidentiary Hearing Is Proper

If the Court requires additional information to rule on Plaintiffs' motion, the appropriate response is to order an evidentiary hearing. While not previously addressed by this Circuit, the Third Circuit, in analyzing a similar motion for post-judgment joinder under FRCP 25(c), held that "where competing affidavits focus on a material issue, a district court may not decide factual issues arising in the context of Rule 25(c) motions simply by weighing the sworn affidavits against one another." *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993). Instead, when there is an issue of material fact, the court should conduct an evidentiary hearing to decide whether to grant the motion. *Id.*

Though CMA and new Westinghouse made some disclosures in opposition to this motion, they omitted several essential facts. First, they do not provide sufficient information to compare the true owners of old and new Westinghouse. Second, CMA does not reveal how much it benefited from its sale of the Westinghouse brand name, which is a factor in the California successor-continuing-tortfeasor doctrine discussed above. Finally, while Plaintiffs do not have enough information to allege that this was a fraudulent transfer, the circumstances surrounding the transaction— especially the fact that the assignment and the sale were executed on the same day (Joncich Decl. ¶ 5; Westinghouse Opp., p. 6) and that the Westinghouse brand was not valued in the statement of condition (Ravicher Decl. Exhibit 1)—are properly subject to investigation through an evidentiary hearing.

## CONCLUSION

For the above reasons, Plaintiffs respectfully ask that the motion to join CMA and new Westinghouse as successors to defendant old Westinghouse be granted.


Dated: October 4, 2010
      New York, New York

                                            Respectfully submitted,
                                            SOFTWARE FREEDOM LAW CENTER, INC.

                                            By: s/ Daniel B. Ravicher
                                            Daniel B. Ravicher (DR1498)
                                            Aaron Williamson (AW1337)
                                            Michael A. Spiegel (MS2309)
                                            1995 Broadway, 17th Floor
                                            New York, NY 10023-5882
                                            Tel.: 212-580-0800
                                            Fax.: 212-580-0898

                                            Attorneys for Plaintiffs *Software Freedom Conservancy*, Inc. and Erik Andersen