SOFTWARE FREEDOM LAW CENTER, INC.
Daniel B. Ravicher (DR1498)
Aaron Williamson (AW1337)
Mishi Choudhary (MC2009)
Michael A. Spiegel (MS2309)
1995 Broadway, 17th Floor
New York, NY 10023-5882
Tel.: 212-580-0800
Fax.: 212-580-0898

Attorneys for Plaintiffs *Software Freedom
Conservancy, Inc.* and *Erik Andersen*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
SOFTWARE FREEDOM CONSERVANCY, INC. and   :
ERIK ANDERSEN,   :   ECF CASE
  :
             Plaintiffs,   :   09-CV-10155 (SAS)
     -against-   :
  :
BEST BUY CO., INC., SAMSUNG ELECTRONICS   :   **PLAINTIFFS'**
AMERICA, INC., WESTINGHOUSE DIGITAL   :   **MEMORANDUM OF LAW**
ELECTRONICS, LLC, JVC AMERICAS   :   **IN SUPPORT OF THEIR**
CORPORATION, WESTERN DIGITAL   :   **MOTION FOR**
TECHNOLOGIES, INC., ROBERT BOSCH LLC,   :   **PRELIMINARY INJUNCTION**
PHOEBE MICRO, INC., HUMAX USA INC.,   :   **AGAINST DEFENDANTS**
COMTREND CORPORATION, DOBBS-STANFORD   :   **BEST BUY, CO., INC. AND**
CORPORATION, VERSA TECHNOLOGY INC.,   :   **PHOEBE MICRO, INC.**
ZYXEL COMMUNICATIONS INC., ASTAK INC.,   :
and GCI TECHNOLOGIES CORPORATION,   :
  :
             Defendants.   :
------------------------------------------------------------------- X

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ….................................................................................1

FACTUAL BACKGROUND ….....................................................................................2

I.      PLAINTIFFS' COPYRIGHT IN BUSYBOX AND LICENSING THEREOF …...............2

II.     BEST BUY'S INFRINGEMENT OF BUSYBOX COPYRIGHT …..................................5

III.    PHOEBE MICRO'S INFRINGEMENT OF BUSYBOX COPYRIGHT …........................7

ARGUMENT …...............................................................................................................9

I.      PLAINTIFFS HAVE MET THE STANDARD FOR PRELIMINARY INJUNCTION......9

        A.      Plaintiffs Are Likely To Succeed On The Merits Because Best Buy and Phoebe Micro Are Infringing Plaintiffs' BusyBox Copyrights...........................................10

                1.     Plaintiffs Own Valid Copyrights In BusyBox …........................................10

                2.     Both Best Buy and Pheobe Micro Are Distributing BusyBox Without Plaintiffs' Permission...................................................................................11

        B.      Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief ........................12

        C.      The Balance Of Hardships Favors Plaintiffs Because The Issuance Of A Preliminary Injunction Will Not Harm Best Buy Or Phoebe Micro.....................15

        D.      The Issuance Of A Preliminary Injunction Will Serve The Public Interest ..........17

II.     BECAUSE THIS CASE ADVANCES AN IMPORTANT PUBLIC INTEREST THE COURT SHOULD WAIVE THE BOND REQUIREMENT ............................................18

CONCLUSION ..............................................................................................................20

## TABLE OF AUTHORITIES

**Page**

## CASES

*Apple Computer Inc. v. Franklin Computer Corp.,*
714 F.2d 1240, 1255 (3d Cir. 1983) ...............................................................17

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.,*
598 F.3d 30, 34-35 (2d Cir. 2010) .................................................................9

*Concrete Mach. Co. v. Classic Lawn Ornaments,*
843 F.2d 600, 612 (1st Cir. 1988) ................................................................16

*Corning Inc. v. PicVue Elecs., Ltd.,*
365 F.3d 156, 158 (2d Cir. 2004) .................................................................18

*Cosgrove v. Bd. of Educ.,*
175 F. Supp. 2D 375, 399-400 (N.D.N.Y. 2001) ..........................................19

*Doctor's Assocs., Inc. v. Distajo,*
107 F.3d 126, 136 (2d Cir. 1997) .............................................................18, 20

*Dolori Fabrics, Inc. v. Limited, Inc.,*
662 F.Supp. 1347, 1358 (S.D.N.Y. 1987) ......................................................15

*eBay Inc. v. MercExchange LLC,*
547 U.S. 388, 392-93 (2006) ........................................................................12

*Esbin & Alter, LLP v. Zappier,*
2010 U.S. Dist. LEXIS 9487, *6 (S.D.N.Y. Feb. 3, 2010) ..............................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) ....................................................................................10

*Ferguson v. Tabah,*
288 F.2d 665, 675 (2d Cir. 1961) .................................................................19

*Jacobson v. Katzer,*
535 F. 3d 1373 (Fed. Cir. 2008) .............................................................*passim*

## **TABLE OF AUTHORITIES**
### **(continued)**

**Page**

## **CASES**

*My-T Fine Corp. v. Samuels,*
  69 F.2d 76, 78 (2d Cir. 1934) …........................................................................16

*Pharmaceutical Soc'y of New York, Inc. v. New York State Dept. of Soc. Servs.,*
  50 F.3d 1168, 1174-75 (2d Cir. 1995) …...........................................................19

*Salinger v. Colting,*
  607 F.3d 68, 75 (2d Cir. 2010) …..............................................................*passim*

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417, 429 n.10 (1984) …......................................................................17

*Streetwise Maps, Inc. v. Vandam, Inc.,*
  159 F.3D 739, 747 (2d Cir. 1998) …..................................................................11

*Telerate Systems, Inc. v. Caro,*
  689 F. Supp. 221, 227 (S.D.N.Y. 1988) …........................................................11

*Tradescape.com v. Shivaram,*
  77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999) ….....................................................16

*Warner Bros. Entm't Inc. v. RDR Books,*
  575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) …...................................................16

*Yurman Design, Inc. v. Golden Treasure Imps., Inc.,*
  275 F. Supp. 2D 506, 513 (S.D.N.Y. 2003) …...................................................11

## **Constitutions**

U.S. Const. Art. I, § 8, cl. 8. …........................................................................17

## TABLE OF AUTHORITIES
### (continued)

**Page**

**Statutes**

17 U.S.C. § 410(c) …..................................................................................................10

17 U.S.C. § 501 …......................................................................................................10

**Rules**

Fed. R. Civ. P. 65 …..........................................................................................*passim*

Fed. R. Civ. P. 65(c) …...............................................................................................18

**Other Authorities**

2 Melville Nimmer & David *Nimmer, Nimmer on Copyright* § 7.16[B][2] (1997) …....................11

4 Melville Nimmer & David *Nimmer, Nimmer on Copyright* § 14.06[B] (1986) …......................15

Plaintiffs Software Freedom Conservancy, Inc. and Erik Andersen (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion, pursuant to Federal Rule of Civil Procedure Rule 65, for a preliminary injunction enjoining and restraining defendants Best Buy Co., Inc. ("Best Buy") and Phoebe Micro, Inc. ("Phoebe Micro") from any further copying, distribution or use of Plaintiffs' copyrighted BusyBox software program.

## PRELIMINARY STATEMENT

In December 2009, Plaintiffs filed this action for copyright infringement against fourteen commercial electronics distributors because each copied and distributed Plaintiffs' copyrighted BusyBox software without Plaintiffs' permission and continued to do so even after receiving direct notice from Plaintiffs of their infringing activity.  In their complaint, Plaintiffs respectfully requested judgment against each defendant and relief in the form of (i) an injunction restraining each defendant from any further infringing use of Plaintiffs' software, (ii) an award of damages, (iii) an accounting and disgorgement of each defendant's profits from their infringing activities, (iv) a reimbursement of Plaintiffs' litigation expenses, and (v) any such further relief as the Court may deem just and proper.

As of the filing of this motion, Plaintiffs have reached settlement with nine of the fourteen defendants and received a default judgment from the court with respect to one other defendant. Thus, only four defendants remain.  Settlement discussions with two of those defendants have been very productive and plaintiffs believe settlement with them is imminent.  Plaintiffs have hoped to reach an amicable settlement with the remaining two defendants, Best Buy and Phoebe Micro, however, settlement negotiations with those two defendants have proven futile.  In the

1

fourteen months since Plaintiffs first contacted Best Buy and Phoebe Micro regarding their violation of the free and open source software license, both have repeatedly failed to come into compliance with Plaintiffs' license and instead chosen to brazenly begin completely new infringing distributions of Plaintiffs' copyrighted software.  To be sure, both Best Buy and Phoebe Micro continue to distribute Plaintiffs' copyrighted software today without Plaintiffs' permission, causing irreparable harm to Plaintiffs' rights as copyright holders of BusyBox.

Plaintiffs would be happy to settle this matter with Best Buy and Phoebe Micro if they either (i) ceased all distribution of BusyBox or (ii) committed to distribute BusyBox in compliance with the free and open source license terms under which Plaintiffs offer BusyBox to the world.  Plaintiffs have patiently worked with Best Buy and Phoebe Micro to bring their products into compliance with the license, but unfortunately have now concluded that those efforts are destined to fail because neither Best Buy nor Phoebe Micro has the capacity and desire to meet either of Plaintiffs' demands for settlement.  As such, Plaintiffs are forced to protect their interests in BusyBox by now respectfully moving for a preliminary injunction, pursuant to Rule 65, enjoining and restraining defendants Best Buy and Phoebe Micro from any further copying, distribution, or use of their copyrighted software BusyBox.

## FACTUAL BACKGROUND

## I.  PLAINTIFFS' COPYRIGHT IN BUSYBOX AND LICENSING THEREOF

The BusyBox free and open source software program is a single computer program that comprises a set of computing tools and optimizes them for computers with limited resources,

such as cell phones, PDAs, and other small, specialized electronic devices.  D. Kuhn ¶ 5.[1]
BusyBox is extremely customizable, fast, and flexible, and is used in countless products sold by
many manufacturers all over the world.  D. Kuhn ¶ 5.  It is a critical component of a wide range
of consumer electronic devices, including televisions, DVD players, internet routers, cameras,
etc.  BusyBox makes these devices run faster, more reliably and cheaper.  It is without question a
very important and widely adopted piece of software, despite the fact that most consumers may
have never heard of it.

Beginning in about November 1999, Plaintiff Mr. Erik Andersen, a work from home
father, wrote software for inclusion in BusyBox because it is a free and open source computer
program.  D. Andersen ¶ 3.  Mr. Andersen allowed his contributions to be included in the
BusyBox project, but retained all ownership of the the copyrights therein.  D. Andersen ¶ 3.
Over the years, the BusyBox project came to include many of Mr. Andersen's contributions.  D.
Andersen ¶ 3.  Mr. Andersen registered his copyright in the new and revised computer source
code written by him that was included in BusyBox version 0.60.3, which was first published on
April 27, 2002.  D. Andersen ¶ 4 (annexed thereto as Exhibit 1 is a true copy of "BusyBox,
v.0.60.3.", Copyright Reg. No. TX0006869051 (10/2/2008)).

Because he believes in open source principles, Mr. Andersen allows his contributions to
the BusyBox project to be copied, modified and redistributed by others under certain terms.  D.
Andersen ¶ 5.  Specifically, he licenses the copyright in his contributions under the terms of a
well known free and open source software license called the "GNU General Public License,

1   The nomenclature "D. [NAME]" refers to the declaration of that individual submitted herewith in support of this
motion.

Version 2" ("GPL").   D. Andersen ¶ 5.   Mr. Andersen does not allow his copyrighted contributions to the BusyBox project to be copied, modified or distributed under any other terms. D. Andersen ¶ 5 (annexed thereto as Exhibit 2 is a true copy of GPL).

Software licensed under the GPL, such as BusyBox, is considered free and open source because GPL allows licensees to make unlimited copies, modifications, and redistributions of the program for no fee so long as the licensee (i) further distributes the program only under the terms of the GPL and (ii) provides its redistributees either the complete and corresponding source code for the version of the program being distributed or a written offer for that complete and corresponding source code along with the distribution of the program.   Source code is the version of software that computer programmers alter to make improvements.   It is not the version of software that operates machines.  D. Kuhn ¶ 4.

The version of software that operates machines is called object code, binary code, or, when referring to machines other than desktop/laptop computers, "firmware."   D. Kuhn ¶ 4. Therefore, when BusyBox is used in a consumer electronic device, the device only needs the object code or "firmware" version to operate.  D. Kuhn ¶ 7.  The source code version would be needed by a human being who wanted to change it to make it work better so that they could put a new version of the object code or "firmware" on the device.  D. Kuhn ¶ 4.  Thus, the purpose of free and open source licenses like the GPL is to empower recipients of devices controlled by software to be able improve the software (and thus the device) on their own, which requires them to have access to the corresponding source code for the software on the device.  That is why the requirement that the "complete and corresponding source code" be given to downstream

4

recipients of programs like BusyBox is so important.  Without that source code, and without it being complete and corresponding, the whole purpose of the free and open source software licensing model is defeated.

Plaintiff The Software Freedom Conservancy, Inc. ("Conservancy) acts as a fiscal sponsor for many free and open source software projects.  D. Kuhn ¶ 3.  By joining the Conservancy, projects obtain the benefits of a formal legal structure while keeping themselves focused on software development.  D. Kuhn ¶ 3.  These benefits include, most notably, the ability to collect earmarked project donations and protection from personal liability for the developers of the project.  D. Kuhn ¶ 3.  The Conservancy also holds assets for its member projects and manages them on behalf of and at the direction of the project.  D. Kuhn ¶ 3.  The Conservancy is a tax-exempt 501(c)(3) organization, so member projects can receive tax-deductible donations to the extent allowed by law.  D. Kuhn ¶ 3.  BusyBox is a member project of the Conservancy.  D. Kuhn ¶ 4.  The Conservancy also acts as copyright enforcement agent for owners of copyright in BusyBox, including co-plaintiff Erik Andersen.  Kuhn ¶ 6.

## II.  BEST BUY'S INFRINGEMENT OF BUSYBOX COPYRIGHT

In 2009, Mr. Bradley M. Kuhn, the President of the Conservancy, conducted an investigation to determine whether Best Buy was distributing the BusyBox program as part of the firmware for its "Insignia" exclusive brand Blue-ray Disc Player products.  D. Kuhn ¶ 8-13.  As part of this investigation, Mr. Kuhn downloaded a copy of the firmware for the Insignia Blu-ray Disc Player with model number NS-WBRDVD by visiting Best Buy's Insignia Products webpage at http://insigniaproducts.com/products/dvd-players-recorders/NS-WBRDVD.html.  D. Kuhn ¶ 8.

From that webpage, Mr. Kuhn downloaded the file located at http://insigniaproducts.com/cms/software-updates/NS-WBRDVD/20091022_NS_WBRDVD_BBY_52_6902_22.iso, which was identified as the firmware for Best Buy's Insignia NS-WBRDVD product.  D. Kuhn ¶ 8.

Mr. Kuhn analyzed the 20091022_NS_WBRDVD_BBY_52_6902_22.iso firmware file and discovered that BusyBox was indeed present therein.  D. Kuhn ¶ 9.  In particular, Mr. Kuhn loopback mounted the .iso file, which contained a file called "images/squashfs-7601b0.img".  D. Kuhn ¶ 9.  That file is a squashfs filesystem, which, when opened with the unsquashfs utility, contains inside it a file called /bin/busybox.  D. Kuhn ¶ 9.  The file /bin/busybox is a binary version of BusyBox.  Searching that binary version showed strings of characters that are unique to BusyBox, including the specific version number, identified as v1.2.1.  D. Kuhn ¶ 9.  When Mr. Kuhn downloaded the Best Buy firmware, 20091022_NS_WBRDVD_BBY_52_6902_22.iso that contained BusyBox, there was no corresponding source code nor offer for corresponding source code for BusyBox provided therewith.  D. Kuhn ¶ 10.  There was also no notice that the file was licensed under the GPLv2 nor that Mr. Kuhn had any right to make unlimited copies, modifications, and redistributions of the file for no fee.  D. Kuhn ¶ 10.

Conservancy notified BestBuy of this issue in November 2009 and since then Plaintiffs have evaluated seven different source code candidates for the NS-WBRDVD firmware provided by Best Buy.  No candidate has been complete and corresponding as required by the GPL.  D. Kuhn ¶ 13.  Furthermore, Best Buy has provided Plaintiffs with source code candidate for only one of the infringing products – NS-WBRDVD – and have failed to address the source code for

the programs contained in the firmwares of NS-BRDVD, NS-BRDVD2, NSBRDVD4, NS-2BRDVD, NS-WBRDVD2, NS-BDLIVE01 and NS-BRHTIB Insignia Blu-ray Disc Player products, which also all contain BusyBox.  D. Kuhn ¶ 13.

In short, Best Buy continues to distribute Plaintiffs' copyrighted BusyBox software without Plaintiffs' permission and has shown no ability or desire to either cease such distribution or make such distributions in compliance with the requirements of the GPL.

## III.   PHOEBE MICRO'S INFRINGEMENT OF BUSYBOX COPYRIGHT

In 2009, Mr. Kuhn conducted an investigation to determine whether Phoebe Micro was distributing the BusyBox program as part of the firmware for its "Airlink101" wireless router and IP Motion Wireless Camera products.  D. Kuhn ¶ 14-24.  As part of this investigation, Mr. Kuhn downloaded  a copy of the firmware for Phoebe Micro's Airlink101 AR670W firmware by visiting the Airlink101 Support webpage at http://www.airlink101.com/support/index.php?cmd=files&id=130.   From that webpage, Mr. Kuhn downloaded the file located at http://www.airlink101.com/support/index.php?cmd=files&_a=download&id=323  identified   as "AR670W Firmware v1.01", the firmware for the Airlink101 AR670W product.  D. Kuhn ¶ 14.

Mr. Kuhn analyzed the AR670W firmware file and discovered that BusyBox was indeed present therein. In particular, Mr. Kuhn opened the ZIP archive file, which contained a file called "ar670w_v1.01_892c.bin". Byte location 655488 of that file was a squashfs partition (a virtual filesystem).  Inside that squashfs, Mr. Kuhn found a binary version of BusyBox.  Searching that binary version showed strings of characters that are unique to BusyBox, including the specific version number, identified as v1.00.  D. Kuhn ¶ 15.  When Mr. Kuhn downloaded the Airlink101

7

firmware that contained BusyBox, there was no corresponding source code or offer for corresponding source code for BusyBox provided therewith.  D. Kuhn ¶ 16.

Conservancy notified Phoebe Micro of this issue in November 2009 and since then Plaintiffs have evaluated four to seven different source code candidates for the various Airlink101 product firmwares provided by Phoebe Micro, and each candidate has failed to comply with the complete and corresponding source code requirements of the GPL.  D. Kuhn ¶ 14-24.  Furthermore, Phoebe Micro continues to distribute firmware and new products in the Airlink101 line without first providing Plaintiffs the opportunity to review complete and corresponding source code candidates for the firmware and new product lines.  D. Kuhn ¶ 14-24.

In short, Phoebe Micro continues to distribute Plaintiffs' copyrighted BusyBox software without Plaintiffs' permission and has shown no ability or desire to either cease such distribution or make such distributions in compliance with the requirements of the GPL.

Best Buy and Phoebe Micro's initial distributions of BusyBox violated the express language of Section 4 of the GPL, terminating any rights Best Buy and Phoebe Micro had to copy, modify or distribute BusyBox.  Given Best Buy and Phoebe Micro's failure to provide complete and corresponding source code for BusyBox, Plaintiffs have not reinstated Best Buy and Phoebe Micro's rights to copy, modify, and distribute BusyBox under the GPL.  Thus, Best Buy and Phoebe Micro's continued distribution of BusyBox is unauthorized and without Plaintiffs' permission.  They cannot merely come into compliance now.  They may only continue distribution of BusyBox with Plaintiffs' express permission, which they have not received.

8

## ARGUMENT

## I.   PLAINTIFFS HAVE MET THE STANDARD FOR PRELIMINARY INJUNCTION

Under Federal Rule of Civil Procedure 65, injunctive relief is warranted when a plaintiff demonstrates (i) irreparable harm in the absence of an injunction, and (ii) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in plaintiff's favor. *See Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010). Additionally, in cases of copyright infringement, the District Court must always "consider the balance of hardships," and not presume irreparable harm. *Salinger*, 607 F.3d at 80. And finally, the Court must ensure that the issuance of a preliminary injunction would not disserve the interest of the public. *Id*.

Plaintiffs here meet this test for a preliminary injunction as to their claim for copyright infringement. Plaintiffs can establish a *prima facie* claim for copyright infringement based upon Plaintiffs' ownership of a valid, existing copyright in BusyBox and Best Buy and Phoebe Micro's unauthorized copying, modifying, and distributing of that copyrighted work. Absent an injunction, Plaintiffs will be irreparably harmed by Best Buy and Phoebe Micro's continuing distribution of BusyBox in violation of the terms of the GPL. On the other hand, enjoining Best Buy and Phoebe Micro from infringing activities, namely their continued unauthorized distribution of BusyBox will not pose a hardship to them, as they each distribute many other

products not relevant to this case. By issuing a preliminary injunction and enforcing compliance with the GPL, the Court will ensure the vitality of free and open source licensing, namely ensuring that recipients have the right to modify software source code to make the software on their devices better.

> **A.     Plaintiffs Are Likely To Succeed On The Merits Because Best Buy and Phoebe Micro Are Infringing Plaintiffs' BusyBox Copyrights**

A copyright infringement claim comprises two elements: (i) ownership of a valid copyright and (ii) unauthorized copying, modifying or distributing of the copyrighted work by another. 17 U.S.C. § 501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).

> **1.     Plaintiffs Own Valid Copyright In BusyBox**

Plaintiff Erik Andersen is a computer programer and beginning in 1999 he wrote and contributed code that was included in the BusyBox program. D. Andersen, ¶3. Mr. Andersen is the legal copyright owner in his contributions to BusyBox and he registered his copyright to some of his code in 2008. D. Andersen, ¶4. 17 U.S.C. § 410(c) states:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

Although Plaintiffs' copyright was registered 5 years and 4 months after publication, in the absence of any evidence to the contrary, Plaintiffs are entitled to the presumption of validity. *Telerate Systems, Inc. v. Caro*, 689 F. Supp. 221, 227 (S.D.N.Y. 1988); *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2D 506, 513 (S.D.N.Y. 2003). Furthermore, although

Plaintiffs registered a version of the work derivative to that infringed by Best Buy, because Plaintiff Erik Andersen "is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work." *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3D 739, 747 (2d Cir. 1998).  *See* 2 Melville  Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2] (1997) (copyright owners of derivative work that own pre-existing work should be able to pursue copyright infringement action against individuals infringing the pre-existing work, even when only derivative work registered).

### 2. Both Best Buy and Pheobe Micro Are Distributing BusyBox Without Plaintiffs' Permission

Best Buy has distributed copies of BusyBox in at least its NS-BRDVD Blu Ray DVD Player product and Plaintiffs also believe Best Buy has distributed BusyBox in several of its other Blu Ray DVD Player products.  D. Kuhn, ¶¶ 8-13.  Best Buy has also distributed copies of BusyBox via its website as part of software updates for those products.  D. Kuhn, ¶¶ 8-13.  These copies and distributions of BusyBox were made without Plaintiffs' permission and continue unabated today.   D. Andersen, ¶ 5; D. Kuhn, ¶ 8-13.

Phoebe Micro has distributed copies of BusyBox in at least its Airlink101 AR670W and AR360W3G wireless routers, Airlink101 AICAP650W IP Motion Wireless Camera, and ANAS350 Network Attached Storage products.  D. Kuhn, ¶¶ 14-24.  Phoebe Micro has also distributed copies of BusyBox via its website as part of software updates for those  products.  D.

Kuhn, ¶¶ 14-24.  These copies and distributions of BusyBox were made without Plaintiffs' permission and continue unabated today.  D. Andersen, ¶ 4; D. Kuhn, ¶ 14-24.

Because Plaintiffs hold valid copyright in BusyBox and because Best Buy and Phoebe Micro copied and distributed BusyBox without Plaintiffs' permission, Plaintiffs can easily succeed on the merits of a claim for copyright infringement.

**B.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief**

Courts routinely issue preliminary injunctions when the moving party demonstrates that it is likely to suffer irreparable harm without it.  *Salinger*, 607 F.3d at 80.  Following the Supreme Court's decision in *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 392-93 (2006), the Second Circuit in *Salinger* abrogated the longstanding practice of presuming irreparable harm based upon the plaintiff's *prima facie* claim of copyright infringement.  *Salinger*, 607 F.3d at 75-80. Now, the Court must consider the injury a plaintiff will suffer if it loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether "the remedies available at law, such as monetary damages, are adequate to compensate for that injury." *Id*.

In this case, Best Buy and Phoebe Micro's ongoing violation of Plaintiffs' copyright in BusyBox, but failing to comply with the terms of the GPL when they redistribute BusyBox, will irreparably harm Plaintiffs in the absence of an injunction.  The absence of a preliminary injunction will cause Plaintiffs to lose control over the modification and distribution of BusyBox and the considerable market share and reputation they have established in BusyBox, both of

12

which are harms that have no adequate remedy at law.  Furthermore, absent a preliminary injunction, Best Buy and Phoebe Micro's unauthorized distribution of BusyBox constitutes a threat of further infringement that is likely to continue unabated.  The public will lose faith in the strength of free and open source software development models, thus encouraging violation of open source licenses and entrenchment on the rights of copyright holders who wish to participate exclusively in the open source ecosystem.  For the sake of free and open source software in general, and the interests of the BusyBox copyright holders in this case specifically, a preliminary injunction should be entered to prevent parties, like Best Buy and Phoebe Micro, from usurping the very reasonable and publicly focused free and open source license requirements.

To be sure, the importance of enforcing free and open source licenses and enjoining those who choose not to abide by them has been recognized by other Circuits.  In *Jacobson v. Katzer*, the Federal Circuit found that a defendant's violation of the terms of an open source license inflicts actual and irreparable economic harm upon the copyright holder.  535 F. 3d 1373 (2008). As the Federal Circuit noted, "[t]here are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under [open source] licenses that range far beyond traditional license royalties."  *Id*. at 1379.  The Federal Circuit is the exclusive Court of Appeals for patent cases and is, as such, one of the most experienced Circuits dealing with issues related to intellectual property.

Like the plaintiffs in *Jacobsen v. Katzer*, Plaintiff Erik Andersen deliberately chose to

contribute to BusyBox because it is free and open source software distributed under the GPL. He did this knowing that the GPL grants certain permissions to other parties to copy, modify, and redistribute BusyBox so long as those parties satisfy the conditions of the GPL, including that any further distributions be made only under the GPL and also be accompanied by either the complete and corresponding source code for BusyBox or an offer for that source code. The Conservancy exists to protect and preserve the interests of free and open source software projects. As the IRS has found by granting the Conservancy 501(c)(3) public charity status, this is a public good.

Best Buy and Phoebe Micro's past and continuing distribution of BusyBox in violation of the GPL is completely contrary to Mr. Andersen's wishes and threatens to eliminate his control over his copyright in BusyBox. It also frustrates the Conservancy's public charity mission and activities. Best Buy and Phoebe Micro's actions infringe upon Plaintiffs' exclusive right to control the modification and distribution of BusyBox by downstream users through the use of the GPL. As the Federal Circuit said, "Copyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material." *Id*. at 1381. Additionally, Plaintiffs have generated market share and a strong reputation for BusyBox by distributing it under the GPL. For example, Mr. Andersen's personal reputation as an extraordinary software developer is enhanced by the widespread distribution, use, and improvement of BusyBox under the GPL he receives recognition for his contributions. *See id.* at 1379; D. Andersen, ¶ 4; D. Kuhn, ¶ 4-5.

When Best Buy and Pheobe Micro distribute BusyBox without complying with the GPL, they deprive Plaintiffs of these benefits to which they are entitled, and no amount of money awarded at the end of this litigation can compensate for them.  Mr. Andersen didn't contribute his code to the world to make money; he did it to encourage participation in the open source development model and he has also derived the substantial benefit of an enhanced reputation for doing so.  There is no adequate remedy at law for the harm Best Buy and Pheobe Micro's unabated copyright infringement causing or threatens Plaintiffs.  As the Federal Circuit held, Plaintiffs' copyright license, the GPL, through which they impose certain restrictions designed to "exact consideration in the form of compliance with the open source requirements of disclosure and explanation of changes, rather than as a dollar-denominated fee," would be rendered ineffective absent the ability to enforce such restrictions through injunctive relief.  *Id*. at 1382.

Finally, Best Buy and Phoebe Micro's unauthorized distribution of BusyBox, which continues unabated today, constitutes a threat of further infringement that is likely to continue absent a preliminary injunction.  This is an additional basis to grant a preliminary injunction against them.  *See Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F.Supp. 1347, 1358 (S.D.N.Y. 1987) (citing 4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06[B] (1986)).

### C.     The Balance Of Hardships Favors Plaintiffs Because The Issuance Of A Preliminary Injunction Will Not Harm Best Buy Or Phoebe Micro

The Court must also consider the balance of hardships between the plaintiff and defendant and issue a preliminary injunction only if the balance of hardships tips in the plaintiff's favor.  *Salinger*, 607 F.3d at 75-80.  The Court must determine "which of the two parties would

suffer more grievously if the preliminary injunction motion were wrongly decided." *Esbin &*

*Alter, LLP v. Zappier*, 2010 U.S. Dist. LEXIS 9487, *6 (S.D.N.Y. Feb. 3, 2010) (citing

*Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)).

 If the Court permits Best Buy and Phoebe Micro to continue their unauthorized

distribution of BusyBox, it would cause not just harm, but irreparable injury to Plaintiffs. *See*

*Jacobsen*, 535 F. 3d at 1379-82 (holding that open source licenses might well be rendered

meaningless absent the ability of the licensor to enforce the restrictions through injunctive relief).

Plaintiffs receive substantial benefits, both economic and otherwise, through the distribution of

BusyBox under the GPL.  By violating the terms of the GPL and continuing to distribute

BusyBox without Plaintiffs' permission, Best Buy and Phoebe Micro place Plaintiffs' benefits in

peril.

 In contrast, the issuance of a preliminary injunction cannot harm Best Buy or Phoebe

Micro because the Court would only be enjoining Best Buy and Phoebe Micro from infringing

activities, namely their continued unauthorized distribution of BusyBox.  Best Buy and Phoebe

Micro would only lose the opportunity to sell infringing products and distribute infringing

firmwares.  The law does not protect this type of hardship. *See Warner Bros. Entm't Inc. v. RDR*

*Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (citing *My-T Fine Corp. v. Samuels*, 69 F.2d

76, 78 (2d Cir. 1934) (Hand, J.); *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600,

612 (1st Cir. 1988); *Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d

Cir. 1983)).  Best Buy and Pheobe Micro would be permitted to continue to sell the many other

products that are not related to this case, and therefore they would not suffer any significant business interruption from the granting of a preliminary injunction against them.

Thus, the balance of the hardships clearly tips in favor of Plaintiffs.

**D.      The Issuance Of A Preliminary Injunction Will Serve The Public Interest**

Finally, the Court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction. *Salinger*, 607 F.3d at 80. The purpose of copyright law is "[t]o promote the Progress of Science and the useful Arts," and to that effect, to promote the store of knowledge available to the public. U.S. Const. Art. I, § 8, cl. 8. *See also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 n.10 (1984); *Salinger*, 607 F.3d at 82. In this case, a preliminary injunction enjoining Best Buy and Phoebe Micro from any further copying, distribution, or use of Busy Box would serve to promote the public's interest by enforcing compliance with the GPL and preserving the public's ability to reap the benefits of free and open source software.

In *Jacobson v. Katzer*, which dealt with free and open source software written for model trains, the Federal Circuit discussed the public benefit of creating and distributing free software. 535 F. 3d at 1378. The court noted that public, or "open source" licenses "are used by artists, authors, educators, software developers, and scientists who wish to create collaborative projects and to dedicate certain works to the public." *Id*. The court also observed that "[o]pen source licensing has become a widely used method of creative collaboration that serves to advance the arts and sciences in a manner and at a pace that few could have imagined just a few decades

17

ago." *Id.* Here we are dealing with software that is of significantly more social importance than that related to model trains, as it is the software that underlies millions, if not tens of millions, of consumer electronics devices. Thus, BusyBox deserves even more respect than the free and open source software at issue in *Jacobson*.

Compliance with the conditions set forth in a free and open source license by downstream users, such as Best Buy and Phoebe Micro, is vital to the public mission of a free and open source project, and ultimately, to the public's ability to reap the benefits of free and open source software, namely the right to use, modify, and study the source code. The absence of a preliminary injunction would jeopardize Plaintiffs' ability to enforce compliance with the GPL, therefore, Plaintiffs respectfully request that the Court enjoin and restrain Best Buy and Phoebe Micro from any further copying, distribution or use of BusyBox pending the outcome of this litigation.

## II.   BECAUSE THIS CASE ADVANCES AN IMPORTANT PUBLIC INTEREST THE COURT SHOULD WAIVE THE BOND REQUIREMENT

Under Rule 65(c), the "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, in this Circuit, Rule 65(c) gives the district court wide discretion to set the amount of the security or bond. *See Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997); see also *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961) ("the matter of a bond is for the discretion of the trial court"). This

Court has often waived the bond requirement of Rule 65(c) based on plaintiff's lack of financial resources and where the case advances an important public interest, and the Second Circuit has approved of this practice. *See e.g.*, *Pharmaceutical Soc'y of New York, Inc. v. New York State Dept. of Soc. Servs.*, 50 F.3d 1168, 1174-75 (2d Cir. 1995) (waiver affirmed where action advanced public interest arising out of comprehensive health or welfare statute); *Cosgrove v. Bd. of Educ.*, 175 F. Supp. 2D 375, 399-400 (N.D.N.Y. 2001) (waiver affirmed where action involved important public policy interest of school district compliance with disabled student education statute).

Plaintiffs are a work from home father and a very small and young non-profit organization. The Internal Revenue Service has recognized Plaintiff Conservancy as a 501(c)(3) organization, organized and operated exclusively for charitable purposes. D. Kuhn ¶ 3. Neither Plaintiff has the financial resources to post any sizable security for the issuance of the preliminary injunction. Therefore, the bond requirement may properly be waived.

Further, as discussed above, this case serves to advance the public interest. Free and open source software is a public good and free and open source licenses serve to protect that public good. As the Federal Circuit noted in *Jacobsen v. Katzer*, free and open source software serves a wide variety of public interests including education, promotion of the arts, and the creation of public works—available to all, including nonprofits, educational institutions, and economically disadvantaged people—on a non-discriminatory basis. *See* 535 F. 3d at 1378-79. Indeed, in addition to the Conservancy, the Internal Revenue Service has also given 501(c)(3) tax

19

exemption to a number of other organizations whose primary activity is creating, distributing and supporting free and open source software, such as The Apache Software Foundation, Free Software Foundation, Gnome Foundation, Open Source Application Foundation, Software in the Public Interest, and Instant Messaging Freedom.

Furthermore, the Court may dispense with the bond requirement if there exists no likelihood of harm to the party to be enjoined. *Doctor's Assocs., Inc.*, 107 F.3d at 136. The party to be enjoined carries the burden of establishing the amount of bond necessary to secure against wrongful issuance of the preliminary injunction. *Id.* As stated above, the issuance of a preliminary injunction cannot harm Best Buy or Phoebe Micro because the Court would only be enjoining Best Buy and Phoebe Micro from infringing activities, namely their continued unauthorized distribution of BusyBox.

For the reasons stated, Plaintiffs respectfully submit that in granting the preliminary injunction the Court waive any security requirement under Rule 65(c), or in the alternative, exercise its discretion to set the requirement at a nominal amount within the capacity of the Plaintiffs to provide.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the motion for preliminary injunction against Best Buy and Phoebe Micro be granted.

Dated: January 31, 2011
New York, New York

          Respectfully submitted,
          SOFTWARE FREEDOM LAW CENTER, INC.

          By: <u>/s/ Daniel B. Ravicher</u>
          Daniel B. Ravicher (DR1498)
          Aaron Williamson (AW1337)
          Mishi Choudhary (MC2009)
          Michael A. Spiegel (MS2309)
          1995 Broadway, 17th Floor
          New York, NY 10023-5882
          Tel.: 212-580-0800
          Fax.: 212-580-0898

          Attorneys for Plaintiffs *Software Freedom Conservancy, Inc.* and *Erik Andersen*