**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOFTWARE FREEDOM CONSERVANCY, INC. and ERIK ANDERSEN,<br><br>           Plaintiffs,<br><br>v.<br><br>BEST BUY CO., INC., SAMSUNG ELECTRONICS AMERICA INC., WESTINGHOUSE DIGITAL ELECTRONICS, LLC, JVC AMERICAS CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., ROBERT BOSCH LLC, PHOEBE MICRO, INC., HUMAX USA INC., COMTREND CORPORATION, DOBBS-STANFORD CORPORATION, VERSA TECHNOLOGY INC., ZYXEL COMMUNICATIONS INC., ASTAK INC., and GCI TECHNOLOGIES CORPORATION,<br><br>           Defendants. | CIVIL ACTION NO. 09-cv-10155 (SAS)<br><br><br>**DEFENDANT BEST BUY CO., INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ECF CASE** |

82047288.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 2

A.     The Plaintiffs ............................................................................................................ 2

B.     Best Buy and the Accused Products ........................................................................ 5

C.     Sources of BusyBox Code ....................................................................................... 6

D.     Litigation History ................................................................................................... 6

ARGUMENT ...................................................................................................................... 9

I.     PLAINTIFFS HAVE NOT MET THE HIGH BURDEN REQUIRED FOR A PRELIMINARY INJUNCTION ................................................................... 10

     A.     Plaintiffs Have Not Made A Clear Showing That They Are Likely To Succeed On The Merits ........................................................................... 10

          1.     Neither Plaintiff Is Likely To Prevail On The Merits .............................. 10

               i)     Mr. Andersen Is Not Likely To Prevail ....................................... 10

               ii)     The Conservancy Is Not Likely To Prevail on the Merits ........... 14

     B.     Plaintiffs Have Shown No Evidence Of Irreparable Harm .................................. 16

     C.     The Balance Of Hardships Does Not Tip In Plaintiffs' Favor .............................. 20

     D.     An Injunction Would Not Serve The Public's Interests ....................................... 21

II.     SHOULD A PRELIMINARY INJUNCTION BE GRANTED, PLAINTIFFS SHOULD POST A BOND IN SUFFICIENT AMOUNT TO PROTECT BEST BUY ... 22

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ...................................................................................... 15, 16

*Chase Manhattan Corp. v. Nw. Mut. Life*,
  Civ. No. 92 Civ. 4978, 1993 U.S. Dist. LEXIS 2271 (S.D.N.Y. Feb 27, 1993) ............. 20

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985) ........................................................................................ 19

*Cortner v. Israel*,
  732 F.2d 267 (2d Cir. 1984) ........................................................................................ 15

*Cosgrove v. Bd. of Educ.*,
  175 F. Supp. 2d 375 (S.D.N.Y. 2001) ........................................................................... 22

*Doctor's Assocs., Inc. v. Distajo*,
  107 F.3d 126 (2d Cir. 1997) ........................................................................................ 22

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*,
  13 F. Supp. 2d 417 (S.D.N.Y. 1998) ............................................................................ 19

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007) ............................................................................................ 9

*Hunt v. Washington State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ..................................................................................................... 15

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008) ................................................................................... 17

*Jacobsen v. Katzer*,
  609 F. Supp. 2d 925 (N.D. Cal. 2009) ......................................................................... 17

*Lewinson v. Henry Holt & Co., LLC*,
  659 F. Supp. 2d 547 (S.D.N.Y. 2009) .......................................................................... 10

*Loveridge v. Pendleton Woolen Mills, Inc.*,
  788 F.2d 914 (2d Cir. 1986) ........................................................................................ 18

*Magnet Commc'ns., L.L.C. v. Magnet Commc'ns, Inc.*,
  No. 00 Civ. 5746, 2001 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 7, 2001) ................... 19

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.*,
    712 F. Supp. 2d 84 (S.D.N.Y. 2010)........................................................... 11, 12

*Pharm. Soc'y of New York, Inc. v. New York State Dept. of Soc. Servs.*,
    50 F.3d 1168 (2d Cir. 1995)........................................................................ 22

*R&R Recreation Prods,. Inc. v. Joan Cook, Inc.*,
    1992 U.S. Dist. LEXIS 5176 (S.D.N.Y. Apr. 20, 1992)................................. 15

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)........................................................................ 9, 16

*Streetwise Maps, Inc. v. Vandam, Inc.*,
    159 F.3d 739 (2d Cir. 1998)...................................................................... 10

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).................................................................................... 9

## Statutes

17 U.S.C. § 101 ........................................................................................ 11

17 U.S.C. § 106 ........................................................................................ 14, 15

17 U.S.C. § 409(2) .................................................................................... 11

17 U.S.C. § 410(c) .................................................................................... 10

17 U.S.C. § 501(b) .................................................................................... 14, 15, 16

Fed. R. Civ. P. 65(c) ................................................................................ 22, 23

Fed. R. Evid. 408 ..................................................................................... 7

## Other Authorities

Applying to Join the Conservancy as a Member Project
    (http://sfconservancy.org/members/apply/) (last accessed February 9, 2011)................... 3

*Conservancy Project Membership*,
    http://sfconservancy.org/members/ ................................................................ 3

*Current Member Projects*,
    http://sfconservancy.org/members/current/ (last accessed February 9, 2011)................... 4

*Member Project Services*,
    http://sfconservancy.org/members/services/ (last accessed February 9, 2011) ................. 4

*Overview*,
        http://sfconservancy.org/overview/ (last accessed February 9, 2011) ............................... 4

*The Software Freedom Conservancy*, http://sfconservancy.org/ .................................................... 3

## <u>INTRODUCTION</u>

Plaintiffs' motion for a preliminary injunction ("Motion") is based upon an alleged copyrighted work that is neither before the Court nor compared to the accused software. Plaintiffs make no allegation that the accused software contains the copyrighted code allegedly authored by Plaintiff Erik Andersen.  That should be enough to deny the Motion.

The Motion is also a moving target.  It seeks to enjoin all use of a computer program called "BusyBox."  But Mr. Andersen's Certificate of Registration claims authorship of only one, old version, v.0.60.3, of BusyBox.  And, his Declaration claims that he contributed code that was only "included" in v.0.60.3.  Mr. Andersen did not apply for his Certificate of Registration within the statutory period to invoke a presumption of validity, and his admissions establish that 25 other "authors" contributed to the same v.0.60.3 that he claims to have solely authored.  There is a substantial dispute as to the validity of his copyright, and what he actually authored.

Moreover, Plaintiffs' two declarations in support of the Motion do not, and cannot, *even attempt* to demonstrate any irreparable harm that they will incur in the absence of an injunction. Indeed, during the course of this case, the two Plaintiffs entered into a contract setting forth details on how they would share *monetary* recoveries.  They are actually in the business of filing and monetizing "copyright enforcement actions."  They also delayed bringing this Motion for almost 14 months, while making demands for concessions outside the scope of the case, such as prior review and veto power over source code *other than BusyBox* in certain Best Buy products. This is hardly the conduct of parties that desperately need a quick resolution of the issues in the case.  Last, the accused products currently sold by Best Buy have been brought within the scope of a general public license.  And, the chip manufacturer has already rewritten its firmware for the

accused products currently sold so that it excludes the BusyBox code.  That firmware has been sent to the manufacturer and is expected to be in the products manufactured after March, 2011. There is no irreparable harm to address.

Indeed, the infirmities with this Motion are so severe, that Plaintiffs are unwilling to incur the cost of a bond to protect Best Buy.  Clearly, the Motion for a preliminary injunction must be denied.

## FACTS

**A.     The Plaintiffs**

Mr. Andersen is the alleged copyright holder.  In 1999, he started a two-year employment stint with a company called Lineo, which focused on the open source Linux operating system in embedded applications.  (Roberg-Perez Decl. Ex. F, at 30:10-16, 31:5-10.)  His resume describes his work at Lineo as "maintainer and developer of BusyBox."  (*Id.* at 32-33.)  He wrote code for his employer, personally acknowledging that Lineo owned the copyrights for his BusyBox code. (Roberg-Perez Decl. Ex. J, at 1 ("Copyright (c) 1999, 2000, 2001 by Lineo, inc. [*sic*] and written by Erik Andersen"); Ex. F, at 98:21-99:25, 101:4-102:23, 110:1-25; Ex. H, at 1.)

Mr. Andersen left Lineo in 2001.  He claims that version 0.60.3 ("v.0.60.3") of BusyBox was first published on April 27, 2002. (Andersen Decl., Dkt. No. 165 at ¶ 4.)  In connection with that April 2002 release, he circulated a "list of authors of code in BusyBox" that lists 25 authors in addition to himself.  (Roberg-Perez Decl. Ex. D.)  He did not claim sole authorship at that time.  Indeed, one author of v.0.60.3 was Bruce Perens, the "original author of BusyBox," and another author, Kent Robotti, wrote "tons and tons of bug reports and patches" to the code.  (*Id.*) In 2004, Mr. Andersen acknowledged that "many contributors" authored BusyBox, that he was not the sole copyright holder, and that it was an "aggregate work."  (*Id.* Ex. G, at 1.)

On or about September 18, 2007, five years and four months after his alleged first publication on April 27, 2002, Mr. Andersen filed an application for copyright registration for BusyBox code, claiming that v.0.60.3 was "new and revised computer source code."  (Dkt. No. 165, Ex. 1.)  Noticeably, he did not tell the Copyright Office that he previously acknowledged 25 other "authors" of that same work.

Mr. Andersen further claims that he licenses the copyright in his contributions to BusyBox under the terms of a well-known open source software license called the "GNU General Public License, Version 2" ("GPLv2").  (Dkt. No. 165 at ¶ 5.)  Under that license, anyone can copy or distribute the "Program," which at best is Mr. Andersen's contribution to BusyBox after 2001, provided that such distributor meets only one of certain conditions set forth in Paragraph 3 of the GPLv2.  One condition is that a copy or distribution must be

> Accompan[ied] . . . with a written offer . . . to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange . . .

(Dkt. No. 165, Ex. 2, at 3.)  Thus, anyone can distribute the copyrighted "Program" provided that the distribution is accompanied with an offer to provide a machine-readable copy of the corresponding source code.

The second Plaintiff is the Software Freedom Conservancy ("Conservancy"), which is not an assignee of any registered copyright in BusyBox.  (Roberg-Perez Decl. Ex. A, at 86:23-87:10.)  According to its website, the Conservancy takes applications from "Free, Libre, and Open Source Software (FLOSS) projects."[1]  Projects whose applications are "accepted" become

---

[1]     *The Software Freedom Conservancy*, http://sfconservancy.org/; *Conservancy Project Membership*, http://sfconservancy.org/members/; Applying to Join the Conservancy as a Member Project, http://sfconservancy.org/members/apply/ (last accessed February 9, 2011).

a "Member Project" of the Conservancy.[2]   The Conservancy then provides services, such as administrative support, and it also provides a shield or "protection from personal liability for the developers of the project."[3]   The Conservancy's web site advises that its directors "believe strongly in the principles of software freedom" and that they "oppose[] the notion of patents that cover software."[4]  Thus, the Conservancy is opposed to proprietary rights in software.

The Conservancy identifies BusyBox as a "Member Project," without identifying any particular individual or developer as a "member."[5]  Indeed, there are multiple BusyBox authors who are not represented by the Conservancy.  (Roberg-Perez Decl. Ex. A, at 95:24-96:2, 102:9-104:22.)  Thus, while the Conservancy claims that it has some kind of enforcement rights in a BusyBox "Member Project," and it seeks to enjoin any use of any version of "BusyBox," it does not represent all the copyright owners in BusyBox.

On September 5, 2010, nine months after suit was filed, Mr. Andersen, "a work from home father" (Motion, Dkt. No. 164 at 19), entered into an "Amended and Restated Fiscal Sponsorship Agreement" ("Fiscal Sponsorship Agreement") with the Conservancy that provides that the Conservancy can conduct "license compliance enforcement efforts" on behalf of "Projects" — not members.  (Roberg-Perez Decl. Ex. C, at 3, ¶ 5.)  It explicitly provides that recovered funds, or damages, obtained in enforcement actions, be deposited in a "Project Fund," and managed by the Plaintiffs under precise terms.  (*Id*. at ¶¶ 5-6.)  Thus, both Plaintiffs in this case contemplated *monetary* recoveries in enforcement actions, like this one.  The "*Fiscal* Sponsorship Agreement" does not contemplate that *fiscal* recoveries would be insufficient to

---

[2]       *Supra* note 1.
[3]       *Member Project Services*, http://sfconservancy.org/members/services/ (last accessed February 9, 2011).
[4]       *Overview*, http://sfconservancy.org/overview/ (last accessed February 9, 2011).
[5]       *Current Member Projects*, http://sfconservancy.org/members/current/ (last accessed February 9, 2011).

remedy any violations.  Indeed, the Fiscal Sponsorship Agreement, written after Plaintiffs sued Best Buy, does not even consider that irreparable harm may arise from any alleged non-compliance.

**B.      Best Buy and the Accused Products**

Best Buy is a retailer of consumer electronic goods.  (McGinnis Decl. at ¶ 4.)  It sells the Blu-ray DVD players that Plaintiffs accuse of infringement.  (*Id*. at ¶ 5.)  The accused Insignia Blu-ray players are manufactured by a Chinese company, Desay A & V and Technology Co., Ltd. ("Desay"), based on general specifications provided by Best Buy.  (*Id*. at ¶ 5.)  Those specifications do not require a specific Blu-ray chip, or that BusyBox be included in the players.  (*Id*. at ¶ 6.)  Desay obtains the Blu-ray chip used in the players from a U.S. company called Broadcom Corporation ("Broadcom").  (*Id*. at ¶ 5.)  The Broadcom Blu-ray chip provides numerous functionalities that rely on software.  A small subset of that software includes the BusyBox code, about which the Plaintiffs complain.  (*Id*. at ¶ 5; Khan Decl. at ¶¶ 1-4.)

The Insignia Blu-ray products are designed to allow consumers to upgrade their players as new features and services become available by downloading certain software called "firmware" on the players.  The "firmware" for the products corresponds to some of the software on the Broadcom Blu-ray chip.  Consumers may obtain the firmware from Best Buy's web site.  In addition to providing new services and features, firmware updates are essential to ensure that the players are capable of playing Blu-ray discs when studios change the way the discs are authored.  Firmware updates also ensure that the players with Internet connectivity receive any necessary security features. (McGinnis Decl. at ¶ 7.)

C.    **Sources of BusyBox Code**

Best Buy is not the only company that sells products that incorporate the Broadcom Blu-ray chip.  To the contrary, Broadcom supplies its chips to many other customers in the Blu-ray industry besides Best Buy's manufacturer, Desay.  (Khan Decl. at ¶ 2.)

Without limiting themselves to Mr. Andersen's specific contributions to BusyBox, the Plaintiffs broadly contend that the BusyBox software is found in "millions" of consumer electronic devices.  (Dkt. No. 164 at 18.)  Thus, while they complain that BusyBox code for the Broadcom Blu-ray chip must be freely available, the Plaintiffs also concede that "millions" can easily obtain BusyBox code from sources other than Best Buy.  Furthermore, Plaintiffs have admitted that the BusyBox code written by Mr. Andersen is still freely available to anyone who wishes to download it from the BusyBox website.  (Roberg-Perez Decl. Ex. A, at 193:14-20; Ex. F, at 151:13-23.)

D.    **Litigation History**

Plaintiffs filed this case on December 14, 2009.  They appear to object to use of any portion of BusyBox, rather than just Mr. Andersen's contributions.  For example, their Notice of Motion advises that they are seeking a preliminary injunction enjoining Best Buy from "any further copying, distribution or use of their copyrighted software BusyBox."

In order to resolve this dispute, Best Buy worked diligently with Broadcom to provide Plaintiffs with complete BusyBox source code that corresponds to object code on the Insignia NS-BRDVD3 and NS-WBRDVD players.  (McGinnis Decl. at ¶¶ 12-14; Khan Decl. at ¶¶ 9-13.) These players contain the 7601 Broadcom Blu-ray chip. (McGinnis Decl. at ¶ 8.)

When Best Buy would provide code and corresponding "build instructions" to appease Plaintiffs, new demands were raised.  (Khan Decl. at ¶¶ 9-13.)  Best Buy has provided Plaintiffs

with seven different iterations of BusyBox source code. (McGinnis Decl. at ¶ 12.) But Plaintiffs persist in demanding that additional code be provided that is entirely unrelated to BusyBox. (Khan Decl. at ¶¶ 9-13.)

For example, this past September, Plaintiffs complimented the source code submitted by Best Buy and Broadcom, remarking that the "new instructions are very well written; they are probably among the best C&CS instructions I've seen in years." (Khan Decl. at ¶ 12; Ex. A.) Yet, later that same day, Plaintiffs continued to demand source code for *other* open source software, and proprietary code, that has nothing to do with BusyBox.[6] (*Id.* at ¶¶ 9-13; Ex. B.) Consistent with Conservancy's opposition to proprietary rights in software, Conservancy demanded that Broadcom include proprietary source code with the code that would be offered under Paragraph 3 of GPLv2. Conservancy argued that the particular file in question was a derivative work of an open source Linux kernel. (*Id.* at ¶ 12.) But Conservancy does not have rights to Linux, nor does it have rights to Broadcom's proprietary source code. Whether that code was proprietary to Broadcom, or derivative of Linux open source code, it is completely unrelated to BusyBox. (*Id.* at ¶ 12; Ex. B.) Thus, while Plaintiffs feign the need to avoid irreparable injury, the facts establish that Plaintiffs would prefer to put the BusyBox issue with Best Buy on hold in order to require Broadcom to publish source code that has nothing to do with this case.

---

[6]   While this evidence derives from settlement discussions, it is relevant and should be considered by the Court for reasons not prohibited by Federal Rule of Evidence 408. Indeed, counsel for Plaintiffs alleged at the February 2nd status conference that Best Buy's settlement negotiations caused them to be justified in delaying to bring the pending Motion. (Status Conference Hearing (2/2/11) Tr., Dkt. No. 170 at 11:20-12:6.) Rule 408 expressly permits Best Buy to rely upon the content of Plaintiffs' litigious, overreaching settlement demands to show an absence of delay on Best Buy's part. Fed. R. Evid. 408 ("This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include . . . negating a contention of undue delay . . .").

It does not stop there.  Plaintiffs used their pretended enforcement rights in the entire BusyBox code, as well as other open source software, to attempt to extract prior review and veto rights over future models of Insignia Blu-ray players and firmware releases.  (McGinnis Decl. at ¶ 15; Roberg-Perez Decl. Ex. I (demanding that Best Buy not distribute firmware for the accused products until the Conservancy has "approved the complete and corresponding source code therefor," and not limiting that demand solely to BusyBox code).)  Best Buy is not inclined to give veto power over its products to third parties who increasingly demand more than they are entitled to recover at trial.

Best Buy is currently making a written offer to provide BusyBox source code for all of its Insignia Blu-ray players that contain the 7630 Blu-ray chips.  (McGinnis Decl. at ¶ 17.)  The offer is found within product manuals that consumers may download from Best Buy's web site, as well as in on-screen displays on the players.[7]  (*Id*; *and see, e.g.,* Roberg-Perez Decl. Ex. L, at BBYSF0014577.)  A similar offer is being made with respect to products containing the 7601 chip, even though those DVD players are no longer sold.  The written offers bring Best Buy within the license conditions of Paragraph 3 of the GPLv2.[8]

In addition, for those products containing the 7630 chip, which is included in the only accused Blu-ray DVD players still being sold, the offer for BusyBox source code will be entirely unnecessary after March of this year.  Broadcom has rewritten the code on the 7630 chip to

---

[7]     To the extent that Plaintiffs have raised issues with additional Insignia Players, (Dkt. No. 166 at ¶ 13), the NS-BRDVD, NS-2BRDVD and NS-BDLIVE01 products are no longer sold by Best Buy.  Best Buy has not sold an Insignia Blu-ray player with the model number NS-BRDVD2.  (McGinnis Decl. at ¶ 8, n.1.)

[8]     Source code for the GPL-licensed components for the Broadcom 7630 chip has been obtained.  (Roberg-Perez Decl. at ¶ 15.)  In addition, although the Broadcom 7440 chip is only found in legacy products no longer sold by Best Buy, (McGinnis Decl. at ¶ 8), source code for the GPL-licensed components for the Broadcom 7440 chip has also been obtained.  (Roberg-Perez Decl. at ¶ 15.)

eliminate BusyBox.  (Khan Decl. at ¶¶ 14-16.)  The new code was sent to the manufacturer on February 18, 2011.  (Khan Decl. at ¶ 16.)  Under this plan, Insignia Blu-ray players manufactured after March will not contain BusyBox code.  (McGinnis Decl. at ¶ 18.)  And the players in Best Buy's existing inventory with 7630 chips will be updated to remove BusyBox when consumers accept firmware updates after March.  (*Id.*)

## ARGUMENT

Preliminary injunctions are "extraordinary" remedies only to be awarded upon a clear showing by the plaintiff that it is entitled to the requested relief.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 28 (2008).  Plaintiffs' burden on a preliminary injunction motion is so high because the requested relief "is one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Accordingly, a preliminary injunction is only appropriate when (1) plaintiff has demonstrated a likelihood of success on the merits;[9] (2) plaintiff has demonstrated that he is likely to suffer irreparable injury in the absence of an injunction; (3) the balance of hardships between the plaintiff and the defendant tips in plaintiff's favor; and (4) the public's interest would not be disserved by the issuance of a preliminary injunction.  *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).

---

[9]    In lieu of demonstrating a likelihood of success on the merits, Plaintiffs may instead establish that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [plaintiff]'s favor." *Salinger*, 607 F.3d at 79.  Plaintiffs did not address this alternative prong in their Motion. (Dkt. No. 164.)  As shown herein, the record establishes that Best Buy, not Plaintiffs, is likely to prevail.  Moreover, Plaintiffs' declarations, the only evidence submitted in support of the Motion, do not even *allege* harm to them, and they fall far short of showing that the balancing of hardships tips decidedly in their favor.

I.      **PLAINTIFFS HAVE NOT MET THE HIGH BURDEN REQUIRED FOR A PRELIMINARY INJUNCTION.**

      A.      **Plaintiffs Have Not Made A Clear Showing That They Are Likely To Succeed On The Merits.**

Armed with the very heavy burden of proof for a preliminary injunction, Plaintiffs must establish ownership of a valid copyright, and copying of constituent elements of the work that are original, in order to prevail on a copyright infringement claim. *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009). Their evidence is woefully deficient.

      1.      <u>Neither Plaintiff Is Likely To Prevail On The Merits.</u>

          i)      <u>Mr. Andersen Is Not Likely To Prevail</u>.

There are numerous, compelling reasons why Mr. Andersen cannot meet his high burden of demonstrating a likelihood of success on the merits. First, a copyright plaintiff must prove registration of a valid copyright covering the accused work. *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 746 (2d Cir. 1998). A certificate of registration will be presumed valid if it is made within five years after the first publication of the work. 17 U.S.C. § 410(c). Mr. Andersen's registration for v.0.60.3 was signed and filed no earlier than September 18, 2007. This registration was not within five years of the alleged April 27, 2002 publication date. Accordingly, he is not entitled to a statutory presumption of a valid, registered copyright.

Some courts have held that the presumptive period can be extended more than five years if the plaintiff is the owner of the copyright of a derivative work *and also* the preexisting work. *Streetwise Maps*, 159 F.3d at 747. Relying upon *Streetwise* and a misleading declaration, Mr. Andersen argues that he is the "owner of the copyright of both the derivative *and pre-existing work* . . ." (Dkt. No. 164 at 11) (emphasis added.) However, the evidence regarding Mr. Andersen's preexisting work on BusyBox, prior to the registration, consists of his own email that

reveals that he was affixing copyright marks on BusyBox code for his employer.  (Roberg-Perez Decl. Ex. H.)  A copyright in that preexisting BusyBox code vested in his employer, Lineo, as a work for hire.  17 U.S.C. § 101.  Mr. Andersen simply did not retain copyright ownership in his preexisting work on BusyBox, and his statements to the contrary are not consistent with the facts.[10]

Second, regardless of any presumption, the evidence and admissions of Mr. Andersen clearly establish that he does not have a valid, registered copyright in the entirety of BusyBox v.0.60.3, which he tries to enforce.  The Copyright Act requires that a registration contain certain information, including the authors' names.  17 U.S.C. § 409(2); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co*., 712 F. Supp. 2d 84, 94 (S.D.N.Y. 2010).  If all the authors of a collective work are not named, the registration only reaches individual work that was written by the identified author.  *Id.* at 94-95.  In this case, Mr. Andersen's Certificate of Registration identifies the registered work as "Title of Work: BusyBox, v.0.60.3"  (Dkt. No. 165, Ex. 1.)  But, Mr. Andersen also *admitted that 25 other authors contributed to v.0.60.3*.  (Roberg-Perez Decl. Ex. D.)  Referring to those 25 people, Mr. Andersen admitted that "every one of these people has some contribution to some extent, small or large, that is incorporated into

---

[10]      Plaintiffs made the same misstatements when moving for a default judgment against Westinghouse Digital Electronics, LLC.  *See* Dkt. 113 at 6, n 4, (". . . since Mr. Anderson 'is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of pre-existing work.")" and Dkt. No. 115 at 1-2 (referring to work beginning in 1999 and saying "I . . . retained all ownership of the copyrights therein.")  Plaintiffs sought and obtained an injunction and turnover order for "all articles containing BusyBox."  (Dkt. No. 113 at 9; and Dkt. No. 131 at 9, 15.)  In doing so, they did not advise that Mr. Andersen's former employer, Lineo, had copyrights in Mr. Andersen's earlier work on BusyBox, that 25 other "authors" contributed to v.0.60.3 and that there are other, subsequent versions of BusyBox such as v.1.2.1, which Mr. Kuhn claims he knew about in November, 2009, seven months before moving for the default judgment.  (*See supra* at 2-3; Dkt. No. 166 at ¶ 9.)

BusyBox 0.60.3."  (*Id*. Ex. F, at 133:19-24; *and see* Ex. G.)  One of the "authors" of v.0.60.3 was Bruce Perens, the original author of BusyBox.  Another of the 25 authors was Kent Robotti, who contributed "tons and tons of bug reports and patches" to the same v.0.60.3.  None of these authors were identified in the Certificate of Registration, (Dkt. No. 165, Ex. 1).  Indeed, in a 2004 email, Mr. Andersen acknowledged that most BusyBox authors retained copyrights over their contributions.  (Roberg-Perez Decl. Ex. G.)

Although Mr. Andersen claims a copyright in v.0.60.3, because he admits that 25 other people contributed to the very same work and retained their copyrights, his registration cannot reach any part of v.0.60.3 that he did not author.  *See Muench,* 712 F. Supp. 2d at 95.  In fact, even if he had the benefit of the statutory presumption of validity, which is denied, the foregoing admissions rebut that presumption.

Third, Plaintiffs have avoided specifically identifying the work they intend to enforce.  Mr. Andersen chooses his words very carefully in his Declaration. While his copyright registration is for the entirety of BusyBox v.0.60.3, his Declaration acknowledges that he merely wrote code that was *included in* BusyBox v.0.60.3.  (*Compare* Dkt. No. 165 at ¶ 4, *with* Ex. 2.) That means he wrote a subset of v.0.60.3, which is consistent with his admissions that 25 other authors contributed to that same version.  But neither v.0.60.3 nor the smaller subset which Mr. Andersen actually wrote is in evidence.[11]

Fourth, and most fatal, is Plaintiffs' complete failure to establish that any of the accused players contain the copyrighted work.  There simply is no comparison of v.0.60.3, or the smaller subset that Mr. Andersen wrote, to any code on the accused products.  Instead, the Declaration of

---

[11]    If Mr. Andersen were to later claim that he is trying to enforce only his personal contributions to v.0.60.3, those contributions have not been defined, they are not before the Court, and they are not alleged to be in the accused devices.

Mr. Kuhn, upon which Mr. Andersen relies, alleges only that he downloaded firmware for a Best Buy Insignia Blu-ray disc player that contained a single BusyBox file called "/bin/busybox," which allegedly is part of BusyBox version 1.2.1.[12]   (Dkt. No. 166 at ¶¶ 8-12.)   But Mr. Andersen has no registered copyright in BusyBox version 1.2.1.

Mr. Andersen's copyright registration is of an earlier version of BusyBox, v.0.60.3.  (Dkt. No. 165 at ¶ 4; Roberg-Perez Decl. Ex. D, at 3; Ex. E, at 1; Ex. F, at 74:6-76:14.)  Plaintiffs have nowhere presented evidence that the accused "/bin/busybox" file, identified in the Kuhn Declaration (Dkt. No. 166 at ¶¶ 9, 12), was part of BusyBox v.0.60.3, or that it was written by Mr. Andersen and registered at the Copyright Office.  (Dkt. Nos. 164-166.)  Indeed, there were at least nine intervening releases of BusyBox between v.0.60.3 and 1.2.1.  (Roberg-Perez Decl. Ex. E, at 1 of 6).  Each of those intervening releases presumably had multiple authors, and at least one of these intervening versions is registered at the Copyright Office to someone other than Mr. Andersen.  (Roberg-Perez Decl. Ex. K; *and see* Dkt. No. 165 at ¶ 4 (referring only to a registration in v.0.60.3).)  Thus, there is no evidence in the record that any Best Buy product contains any BusyBox code registered at the Copyright Office to Mr. Andersen, entitling him to assert an infringement claim.  Mr. Andersen is unlikely to prevail on the merits, because the code in the accused devices has not been shown to be the registered, copyrighted work.

Thus, the Court should not rule that Mr. Andersen is likely to prevail on the merits.  He is not entitled to a statutory presumption of a valid registration and he did not try to prove a valid copyright by any means other than the statutory presumption.  Substantial evidence establishes his copyright is invalid, the overwhelming evidence and admissions reveal that others

---

[12]   Multiple versions of the BusyBox computer program exist, but only a few versions are registered at the U.S. Copyright Office.  (Roberg-Perez Decl., *compare* Ex. E *with* Ex. K.)

contributed to the work he attempts to enforce, and he has not compared the copyrighted work to the accused products.

   ii) <u>The Conservancy Is Not Likely To Prevail On The Merits</u>.

  The Conservancy has the same problems that Andersen must overcome, but it also must establish that it has standing to sue for BusyBox copyright infringement.  A copyright infringement suit may only be brought by "[t]he legal or beneficial owner of an exclusive right under a copyright."  17 U.S.C. § 501(b).  The "exclusive rights" are enumerated at 17 U.S.C. § 106.  The right to sue or otherwise enforce copyrights is not one of the "exclusive rights" under a copyright.

  In bringing this motion for a preliminary injunction, Plaintiffs attempt to sidestep the issue of Conservancy's ownership interest by merely referring to "Plaintiffs'" ownership.  (Dkt. No. 164 at 10.)  But the Conservancy has nowhere even alleged that *it* has an ownership interest in any registered BusyBox copyright.[13]  (Dkt. Nos. 164-166.)  Nor can it.  A 30(b)(6) witness for the Conservancy has already acknowledged that the Conservancy has no assignment in any registered BusyBox copyright.  (Roberg-Perez Decl. Ex. A, at 86:23-87:10.)

  The only agreements between the Conservancy and Mr. Andersen establish that the Conservancy lacks standing to be a party to this litigation.  (Roberg-Perez Decl. Ex. A, at 77:21-78:7, 93:1-95:10; Ex. B; Ex. C.)  The agreements do not assign any exclusive rights enumerated in 17 U.S.C. § 106.  They merely assign to the Conservancy the right to act as Mr. Andersen's "enforcement agent," and to administer any funds collected in connection with those

---

[13] On March 2, 2011, after the close of discovery, Plaintiffs produced a document dated January 13, 2011, that purports to be an assignment to Conservancy from alleged author Matthew Kraai, not Plaintiff Andersen, of "changes to the program BusyBox."  No further explanation was provided.  That document predates the filing of the pending Motion and was not part of the supporting evidence or declarations.

enforcement activities for the benefit of the BusyBox project.  (Roberg-Perez Decl. Ex. B; Ex. C, at ¶¶ 5-6.)  But neither acting as an enforcement agent nor administering funds is an exclusive right under a copyright, 17 U.S.C. § 106, so neither of these agreements give the Conservancy standing to sue on Mr. Andersen's copyright in BusyBox.  17 U.S.C. § 501(b); *R&R Recreation Prods., Inc. v. Joan Cook, Inc.*, 1992 U.S. Dist. LEXIS 5176, at *12 (S.D.N.Y. Apr. 20, 1992).

The Conservancy has indicated that it will rely upon *Cortner v. Israel*, 732 F.2d 267, 270-71 (2d Cir. 1984), to establish standing through an "equitable trust" relationship with Mr. Andersen.  In *Cortner*, the Second Circuit noted the legislative history of the Copyright Act, which gave an example of a "beneficial owner" as "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees."  *Id*. at 271.

Here, the Conservancy never had any copyright or legal title in BusyBox to assign, so it is not similar to the composers in *Cortner*, or to any other author parting with legal title.  If *Mr. Andersen* had a valid copyright, he may have a beneficial interest in the work after a transfer of rights.  But *Cortner* does not recognize that the Conservancy can have such an interest.  The Conservancy is not a "beneficial owner" of an exclusive right under the copyright with standing to sue for infringement.

Best Buy expects the Conservancy to also argue that it has "associational standing."  In contexts other than copyright, courts have recognized that an association may have associational standing where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

The Conservancy cannot meet *Bano's* third requirement for associational standing because this action requires the participation of Mr. Andersen, the copyright owner.  17 U.S.C. § 501(b) (copyright action must be brought by the "legal or beneficial owner of an exclusive right under a copyright").  Because the copyright statute expressly *requires* the participation of the copyright owner or beneficial owner, there cannot be associational standing in this case. *Bano*, 361 F.3d at 713.  Moreover, the Conservancy misses the mark if it intends to argue that it is a beneficial owner, and therefore has associational standing.  The analysis regarding the third requirement of *Bano* must focus upon the *members*, not the status of the entity claiming associational standing.

The Conservancy also cannot meet *Bano's* third requirement for associational standing because Mr. Andersen has requested certain forms of relief that require his individual participation in this lawsuit.  In addition to seeking injunctive relief, Plaintiffs seek "actual damages."  (Compl., Dkt. No. 1 at ¶ 33.)  And Mr. Andersen must necessarily be involved in the proof of his own claim for damages.  *Bano*, 361 F.3d at 714-15 ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members").

Plaintiffs cannot show that the Conservancy is likely to prevail on the merits.

**B.    Plaintiffs Have Shown No Evidence Of Irreparable Harm.**

Plaintiffs are required to show they will suffer irreparable harm if an injunction is not granted.  *Salinger*, 607 F.3d at 79-80.  A careful review of their declarations reveals that they did not even attempt to make that showing—there is no evidence in the record before this Court of *any* irreparable harm to either the Conservancy or Andersen.  (Dkt. Nos. 165-66.)  While Plaintiffs' brief makes broad conclusory allegations of irreparable harm, it is not supported by

any facts or evidence in Plaintiffs' declarations.  Indeed, the facts establish that Plaintiffs will not incur irreparable harm.  With respect to one set of legacy products (those containing the 7601 chip), Best Buy is compliant with the GPLv2, and is thereby licensed, because it offers the requisite code with build instructions that are "probably among the best C&CS instructions [Plaintiffs have] seen in years."  (Khan Decl. at ¶ 10, Ex. A.)[14]  With respect to the currently sold products (containing the 7630 chip), because the Conservancy has been so difficult in demanding concessions beyond what it can recover at trial, Best Buy is simply replacing BusyBox on the chip.  Best Buy has been assured that BusyBox will no longer be in the Broadcom Blu-ray chips that will be included in Insignia Blu-ray products.  Under this plan, after March all products that will be manufactured going forward, and all new installations of firmware on products with the existing 7630 chip, will be BusyBox free.  (McGinnis Decl. at ¶ 18; Khan Decl. at ¶¶ 14-16.)

Plaintiffs have also mischaracterized *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008). The Federal Circuit did not find that "a defendant's violation of the terms of an open source license inflicts actual and irreparable economic harm upon [a] copyright holder."  (Dkt. No. 164 at 13.)  To the contrary, the Federal Circuit simply remanded for a determination of *whether* the plaintiff had demonstrated irreparable harm.  *Jacobsen*, 535 F.3d at 1383.  On remand, the district court determined that although there are *potential* harms to copyright holders in the open source field, there was no showing on the record before the court that plaintiff had actually suffered any harm.  *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 937-38 (N.D. Cal. 2009).

---

[14]    Plaintiffs state, with no authority, that once rights under the GPLv2 are terminated, it is insufficient for a party to "merely come into compliance now" and that "Plaintiffs' express permission" must be obtained.  (Dkt. No. 164 at 8.)  But the GPLv2 nowhere indicates that a copyright holder's "express permission" must be obtained if rights are terminated.  (Dkt. No. 165, Ex. 2, *and see* ¶ 4.)  The GPLv2 only indicates that a party may copy and distribute a licensed program, so long as it complies with the requirements of the license.  (*Id*. at ¶ 3.)

Similarly, because Plaintiffs herein have presented no *evidence* of any specific and actual harm, their motion must be denied.

Indeed, the facts in this case indicate that if Plaintiffs were to prevail, a monetary award would adequately compensate them. "It is well established that 'irreparable injury means injury for which a monetary award cannot be adequate compensation.'" *Loveridge v. Pendleton Woolen Mills, Inc*., 788 F.2d 914, 917 (2d Cir. 1986). And "where money damages are adequate compensation, a preliminary injunction will not issue . . ." *Id*. at 918. In this case, Plaintiffs contemplated that a monetary award would be sufficient compensation, evidenced by a Fiscal Sponsorship Agreement on BusyBox. (Roberg-Perez Decl. Ex. C.) Plaintiffs agreed that, in connection with license compliance efforts, funds would be collected and deposited in an account, with monies to be used for further enforcement efforts and/or other BusyBox-related activities. (*Id*. at ¶¶ 5, 6.) Nowhere does the Fiscal Sponsorship Agreement suggest that there would be any injury to either Plaintiff not redressable by a monetary award. (*Id*.)

While the arguments in their Motion are not supported by evidence, it is important to note that those arguments also do not establish irreparable harm. Acting as if they have a copyright to the entire BusyBox program, Plaintiffs argue that they will "lose control over the modification and distribution of BusyBox and the considerable market share and reputation they have established in BusyBox." (Dkt. No. 164 at 12.) But Mr. Andersen does not have a copyright in the entire BusyBox program, or to all versions of BusyBox, and neither Plaintiff has rights to its market share or its reputation. And, even if sales of the accused Blu-ray players were to be enjoined, the Blu-ray software chips containing the accused code would still be distributed by a third party, Broadcom, to its other customers in the Blu-ray industry. (Khan Decl. at ¶ 2.) Thus, to the extent that Plaintiffs are concerned about distribution of object code containing BusyBox,

exactly the same object code would continue to be distributed to the public, through Broadcom's other customers.

Moreover, Mr. Andersen could not identify specific harms to market share or reputation when given the chance to do so in his deposition.  He admitted that he would have to speculate as to whether the sale of the accused Best Buy Blu-ray players decreased the number of individuals using BusyBox.  (Roberg-Perez Decl. Ex. F, at 151:24-152:8.)  He could name no specific instances where his reputation was adversely affected because of the sale of the accused players, admitted that he was not personally aware of anyone who had maligned his reputation, and had no knowledge of any way in which his reputation had been harmed.  (Roberg-Perez Decl. Ex. F, at 144:3-17, 150:4-13.)  Nor could he identify any business he has lost because of the sale of the accused players.  (*Id*. at 150:14-151:12.)

Last, Plaintiffs delayed bring their motion for a preliminary injunction for 14 months. Courts have routinely considered the delay in bringing such a motion as evidence that the Plaintiffs truly felt no legitimate threat of irreparable harm.  *See, e.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Delay in seeking enforcement of [a preliminary injunction] . . . tends to indicate at least a reduced need for such drastic, speedy action."); *Magnet Commc'ns., LLC v. Magnet Commc'ns, Inc.*, No. 00 Civ. 5746, 2001 U.S. Dist. LEXIS 14460, at *4-5 (S.D.N.Y. Sept. 7, 2001) (denying a request for a preliminary injunction where defendant in a declaratory judgment action did not move for injunctive relief until twelve weeks after the complaint was filed); *Gidatex, S.R.L. v. Campaniello Imports, Ltd*., 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (noting that delay "standing alone," may preclude the granting of preliminary injunctive relief); *Chase Manhattan Corp. v. Nw. Mut. Life*, Civ. No. 92 Civ. 4978, 1993 U.S.

Dist. LEXIS 2271, at *5, 11 (S.D.N.Y. Feb. 27, 1993) (denying a preliminary injunction where plaintiffs did not make their motion until six months after filing suit).

Plaintiffs previously advised the Court that their delay should be excused because the parties had been engaged in settlement discussions.  (Status Conference Hearing (2/2/11) Tr., Dkt. No. 170 at 24-25.)  Plaintiffs have injected settlement discussions into the dispute.  Those discussions are also independently admissible pursuant to Rule 408 to establish an absence of delay on Best Buy's part.  The settlement discussions indicate that Plaintiffs, not Best Buy, caused the delay by trying to muscle unbridled veto power over Best Buy products based upon their ever-shifting, self-serving views of other open source code irrelevant to this case.

In the absence of any showing of actual and specific harm to either Plaintiff, the request for a preliminary injunction should be denied.

### C.    The Balance Of Hardships Does Not Tip In Plaintiffs' Favor.

The balance of hardships cannot tip in Plaintiffs' favor for at least the reason that Plaintiffs have presented no evidence of irreparable harm that they will incur if an injunction were not granted.  (*Id.* at 19-23.)  On the other hand, Best Buy would suffer immediate and significant harm if an injunction were granted.  Best Buy would lose the good faith of its customers who have purchased Insignia Blu-ray players, and sales to future customers will be jeopardized. (McGinnis Decl. at ¶¶ 19-24.) In the absence of firmware updates, players already in use by consumers would be at risk of not operating properly because consumers will experience Blu-ray disc playback issues as various studios that release Blu-ray discs change their authoring techniques.  (McGinnis Decl. at ¶ 20.)

Further, in the absence of firmware updates, consumers who own the accused players will not be assured that their connected services will continue without interruption, and in a secure

fashion that includes any new DRM technologies.  Best Buy will lose the good faith of its customers because it will not be able to offer consumers new services or features that become available, which would normally be offered via firmware updates. (McGinnis Decl. at ¶¶ 21-22.)

Best Buy will further suffer harm by being unable to make further sales of the accused Insignia Blu-ray players.  (McGinnis Decl. at ¶ 23.)  Finally, Best Buy will be harmed by an injunction because it is contractually obligated to provide firmware updates, and failing to provide those updates will harm Best Buy's relationships with its business partners.  (McGinnis Decl. at ¶ 24.)

### D.   An Injunction Would Not Serve The Public's Interests.

Plaintiffs argue that a preliminary injunction against Best Buy will ensure compliance with the GPLv2.  (Dkt. No. 164 at 17.)  As explained above, an injunction against Best Buy will not prevent the accused code from widespread use in the industry.  *Exactly the same code* will continue to be distributed by a third party, Broadcom, through its other industry customers. (Khan Decl. at ¶ 2.)

Plaintiffs also argue that an injunction will preserve the public's ability to reap the benefits of open source software.  (Dkt. No. 164 at 17.)  But Plaintiffs rely again on attorney argument instead of evidence.  (*Id*. at 17-18.)  This is perhaps not surprising in light of Plaintiffs' deposition testimony.  Mr. Andersen offered only conclusory testimony that the sale of the accused Blu-ray players created a perception in the marketplace that companies were able to use open source software without complying with the applicable licenses.  (Roberg-Perez Decl. Ex. F, at 145:13-146:23.)  But, when he was asked to name specific individuals with this perception, he could name only one other person besides himself, and in neither instance was the

"perception" related to the sale of the accused Best Buy Blu-ray players.  (Roberg-Perez Decl. Ex. F, at 147:3-148:18.)

## II.   SHOULD A PRELIMINARY INJUNCTION BE GRANTED, PLAINTIFFS SHOULD POST A BOND IN SUFFICIENT AMOUNT TO PROTECT BEST BUY.

Because a preliminary injunction is such an extraordinary remedy, the Federal Rules require that the requesting party provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Although courts, in their discretion, may waive the bond requirement, waiver is only proper "where there has been no proof of likelihood of harm" or where an injunction issues to preserve jurisdiction.  *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).  Neither circumstance is met in this case.  Plaintiffs want to disrupt sales in more than 1,000 Best Buy stores, and not have to be financially responsible for the damages arising from that disruption.  Best Buy would face *significant* harm if an injunction was ordered. Best Buy would lose future sales of the accused Insignia Blu-ray players, as well as the good faith and loyalty of its customers, which, although difficult to calculate, is of considerable value. Best Buy's relationships with various business partners would also be harmed. (McGinnis Decl. at ¶¶ 19-24.)  For these reasons, the Court should require Plaintiffs to post a substantial bond if preliminary injunctive relief is awarded.  Fed. R. Civ. P. 65(c).

In arguing that they should not be required to post a bond, Plaintiffs rely on cases "involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'" (Dkt. No. 164 at 19 (*citing Pharm. Soc'y of New York, Inc. v. New York State Dept. of Soc. Servs.*, 50 F.3d 1168, 1174-75 (2d Cir. 1995); *and see Cosgrove v. Bd. of Educ.*, 175 F. Supp. 2d. 375, 399 (S.D.N.Y. 2001) (involving a school district's services to a deaf child)).)  But it is entirely unclear how the interests of either Plaintiff in relation to a single,

registered copyright in an open source software computer program are akin to comprehensive federal health and welfare statutes with wide-reaching impact.  According to Plaintiffs' own brief, BusyBox is not particularly well known.  (Dkt. No. 164 at 3.)  Moreover, BusyBox is easily replaced with other, easily obtainable software.  (Khan Decl. at ¶¶ 14-16.)  Thus, for the reasons above, if the Court awards injunctive relief, Plaintiffs should be required to provide security as required by Fed. R. Civ. P. 65(c).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction should be denied.


Dated March 7, 2011

s/ Emmett J. McMahon
Emmett J. McMahon (*pro hac vice*)
ejmcmahon@rkmc.com
Sharon E. Roberg-Perez (*pro hac vice*)
seroberg-perez@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402
Tel.:  612.349.8500
Fax:  612.339.4181

David Leichtman (DL-7233)
dleichtman@rkmc.com
Oren D. Langer (OL-5962)
odlanger@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
601 Lexington Ave., 34th Floor
New York, NY  10022
Tel.:  212.980.7400
Fax:  212.980.7499

ATTORNEYS FOR BEST BUY CO., INC.