# Roberg-Perez Decl. Ex. A

## March 7, 2011

## Best Buy's Opposition to Plaintiffs' Preliminary Injunction Motion

Bradley M. Kuhn  -  11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

09-CV-10155 (SAS)

----------------------------------------

SOFTWARE FREEDOM CONSERVANCY, INC.

and ERIK ANDERSEN,

                Plaintiffs,

    -against-

BEST BUY CO., INC., SAMSUNG

ELECTRONICS AMERICA, INC.,

WESTINGHOUSE DIGITAL ELECTRONICS,

LLC, JVC AMERICAS CORPORATION,

WESTERN DIGITAL TECHNOLOGIES, INC.,

ROBERT BOSCH LLC, PHOEBE MICRO, INC.,

HUMAX USA, INC., COMTREND CORPORATION,

DOBBS-STANFORD CORPORATION, VERSA

TECHNOLOGY, INC., ZYXEL COMMUNICATIONS,

INC., ASTAK, INC. and GCI TECHNOLOGIES

CORPORATION,

                Defendants

----------------------------------------

VIDEOTAPED DEPOSITION OF BRADLEY M. KUHN

New York, New York

Thursday, November 11, 2010

Bradley M. Kuhn   -   11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 74

1   BRADLEY M. KUHN
2   software?
3       A.   Yes.
4       Q.   What is that difference?
5       A.   This is a hotly-debated topic in the
6   open-source and free software community. I can
7   give you quite a treatise on it. I'm not sure
8   what specifically you're looking for.
9       Q.   Is there a way to give me a nutshell
10  answer, for example, just a few sentences of the
11  difference?
12      A.   Unfortunately, free software people
13  aren't known for nutshell answers, but I will
14  certainly try.
15          Free software and open-source are, by
16  some, considered two different terms for the same
17  thing.
18          I don't agree with that conclusion for
19  two reasons: One, free software is generally
20  referring to both software that is meeting the
21  free software definition as published by the Free
22  Software Foundation, and, also, generally, free
23  software refers to development that has a slant
24  towards the political beliefs that I was
25  describing earlier with regard to rights of users.

Page 75

1   BRADLEY M. KUHN
2           Open source is a term that was coined
3   in 1999 primarily as a way to communicate the
4   ideas of free software in a much more mundane and
5   nonpolitical fashion.
6           Also, open source is something with
7   regard to software when it fits the open-source
8   definition as published by the Open Source Initiative,
9   Incorporated. They have a list of licenses which they
10  define as open-source licenses. The Free Software
11  Foundation has a list of licenses it defines as free
12  software licenses. Those lists are very close, but not
13  identical.
14      Q.   I understand.
15          How many free and open-source software
16  projects is the Conservancy the corporate home
17  for?
18      A.   As of yesterday, 23.
19      Q.   Is the Linux kernel one of these
20  projects?
21      A.   No.
22      Q.   Okay.
23          Is BusyBox one of the open-source
24  software projects -- the free and open-source
25  software projects that the Conservancy sponsors?

Page 76

1   BRADLEY M. KUHN
2       A.   Yes.
3       Q.   What does "Fiscally sponsoring a
4   project" mean?
5           MR. WILLIAMSON: Objection.
6           Calls for a legal conclusion.
7       Q.   Can you answer giving me the factual
8   bases for fiscal sponsorship?
9       A.   What I can give you is the
10  understanding of what a fiscal sponsor is in
11  nonproject management terms.
12          Would that be adequate for you?
13      Q.   Yes, yes.
14      A.   Typically, when a project of any
15  kind -- and this often happens in the art world,
16  for example -- does not have enough resources,
17  staffing, know how to form their own nonprofit
18  organization, they look to an existing nonprofit
19  organization that's willing to be their fiscal
20  sponsor.
21          They join that organization formally,
22  and they are able to continue their work under a
23  nonprofit umbrella without having to go through
24  the work of forming their own nonprofit
25  organization.

Page 77

1   BRADLEY M. KUHN
2       Q.   Okay.
3           If you know, have there been previous
4   fiscal sponsors of BusyBox?
5       A.   I'm not aware of any.
6       Q.   Does documentation exist of the
7   Conservancy's fiscal sponsorship of BusyBox?
8       A.   Yes.
9       Q.   I'm going to ask the reporter what
10  we'll hand you -- to hand you I think what will be
11  marked Exhibit 44.
12          THE WITNESS: I'd really appreciate a
13  break in five, ten minutes, if that's
14  possible at all?
15          I'm sorry for the close time, but ...
16          MS. ROBERG-PEREZ: We will take a
17  short break.
18          (Exhibit Kuhn 44, the amended fiscal
19  sponsorship agreement, was marked for
20  identification at this time.)
21      Q.   Mr. Kuhn, please take a moment to
22  review, and let me know when you've done so.
23          (Pause.)
24      A.   I've read Exhibit 44.
25      Q.   Do you recognize this document?

Case 1:09-cv-10155-SAS   Document 179-1   Filed 03/07/11   Page 4 of 9

Bradley M. Kuhn  -  11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 78

BRADLEY M. KUHN
2   A.   Yes, I believe so.
3   Q.   What is it?
4   A.   This document is substantially similar
5 to the amended fiscal sponsorship agreement that
6 we recently executed with -- between the
7 Conservancy and the BusyBox developers.
8   Q.   And this document in particular is
9 with the BusyBox developer Erik Andersen, correct?
10       Directing your attention to Page 5.
11   A.   This particular copy is only the copy
12 with Erik Andersen's signature that he sent.
13   Q.   And that was dated September 5th,
14 2010?
15   A.   That's the date of his signature.
16   Q.   I see.
17       But does the document also say that
18 the fiscal sponsorship agreement was effective
19 August 31st, 2010?
20   A.   The agreement says that this
21 particular agreement was effective on that date,
22 yes.
23   Q.   Okay.
24       Aside from this document, are there
25 other documents that reflect the Conservancy's

Page 79

BRADLEY M. KUHN
2 fiscal sponsorship of BusyBox with regard to
3 Mr. Andersen?
4   A.   I believe so.
5   Q.   What are those documents?
6   A.   There was an earlier version of this
7 document that my attorneys handled for me.
8   Q.   Any other documents besides an earlier
9 version of this document?
10   A.   If there are, they were in e-mail
11 discussions that were either with our attorneys or
12 produced in the discovery that you've already
13 received.
14       I don't know if there were any, but if
15 they were, that's where they would be.
16       MS. ROBERG-PEREZ:  Okay.
17       Counsel, I don't believe that we have
18       the earlier version of this document.  We
19       may, I just haven't seen it in your
20       production.
21       If you could, perhaps, PDF us a copy
22       of the earlier agreement?
23       MR. RAVICHER:  We'll object to it as
24       work product.
25       MS. ROBERG-PEREZ:  Counsel, you've

Page 80

BRADLEY M. KUHN
2 waived work product by producing this
3 document.
4       I have asked that you send us all
5 copies of earlier agreements.
6       MR. RAVICHER:  And I'm not sure that
7 we have waived, but we can set up a meet and
8 confer to discuss that, if you'd like.
9       MS. ROBERG-PEREZ:  Very well, we can
10 do that.
11 BY MS. ROBERG-PEREZ:
12   Q.   Mr. Kuhn, going back to the complaint,
13 directing your attention to the first page, you
14 see that the Conservancy is a named co-plaintiff
15 in this litigation, correct?
16   A.   Yes, I see that.
17   Q.   Has the Conservancy ever been party to
18 a previous copyright infringement suit involving
19 BusyBox?
20   A.   Not to my knowledge.
21   Q.   Okay.
22       Mr. Andersen, I have a couple of more
23 questions.  I know you wanted a --
24   A.   I can't answer on behalf of
25 Mr. Andersen.  I'm sorry.

Page 81

BRADLEY M. KUHN
2   Q.   Mr. Kuhn, I have a couple more
3 questions, and then we can take a break.
4   A.   Thank you.
5   Q.   The first relates to Exhibit 44.
6       You spoke about earlier versions of
7 this agreement, and Counsel has indicated that
8 these earlier versions are work product.
9       Do you know if there were executed
10 versions -- executed copies of these earlier
11 versions?
12   A.   I simply did not handle these
13 agreements at that time.  I asked Conservancy's
14 attorneys to do it for us.
15   Q.   Okay.
16       Besides being executive director of
17 the Conservancy, which I understood happened on
18 October 1st of this year -- year, you also
19 testified that you were president, correct?
20   A.   Yes.
21   Q.   And when did you first become
22 president?
23   A.   It was at some point in 2006.  I,
24 unfortunately, don't recall the exact date.
25   Q.   Okay.

21 (Pages 78 to 81)

Case 1:09-cv-10155-SAS   Document 179-1   Filed 03/07/11   Page 5 of 9

Bradley M. Kuhn  -  11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 86

1  BRADLEY M. KUHN
2  said, the document was handled completely by my
3  attorneys --
4  Q. Okay.
5  A. -- two of whom, as you know, were
6  directors of the Conservancy as well.
7  Q. Okay.
8       In this litigation, the Conservancy
9  has alleged that it is the enforcement agent for
10 Mr. Andersen with respect to BusyBox, correct?
11 A. Yes.
12 Q. And, in this litigation, Mr. Andersen
13 has been identified as the author and developer of
14 BusyBox, correct?
15 A. Yes.
16 Q. No other authors are identified in
17 your complaint, correct?
18 A. Not in the complaint, no.
19 Q. No other -- no other developers of
20 BusyBox are identified in the complaint either,
21 correct?
22 A. Yes.
23 Q. Does the Conservancy have an
24 assignment of all rights in any version of BusyBox
25 that is registered at the copyright office?

Page 87

1  BRADLEY M. KUHN
2       MR. WILLIAMSON: Objection.
3       Calls for a legal conclusion.
4  Q. You may answer.
5  A. Not that I'm aware of.
6  Q. Does the Conservancy have an
7  assignment of all rights in any version of BusyBox
8  at all, whether or not registered at the copyright
9  office?
10 A. Not that I'm aware of.
11 Q. Are you familiar with Version 0.60.3
12 of BusyBox?
13     MR. WILLIAMSON: Objection.
14     Vague.
15 Q. You may answer.
16 A. I know that that is a version of
17 BusyBox that was released.
18 Q. And do you know if this is a version
19 of BusyBox that is registered at the copyright
20 office with Mr. Andersen as an author?
21 A. Without reviewing the copyright
22 registration, I wouldn't want to testify certainly
23 which exact version was registered.
24 Q. Do you know if Mr. Andersen has more
25 than one version of BusyBox registered at the

Page 88

1  BRADLEY M. KUHN
2  copyright office?
3  A. I don't know.
4     MS. ROBERG-PEREZ: I'd like the
5  reporter to hand you what will be marked as
6  deposition Exhibit 45.
7     (Exhibit Kuhn 45, Plaintiff's Response
8  to Defendant Best Buy's Second Set of
9  Requests for Admissions, was marked for
10 identification at this time.)
11 BY MS. ROBERG-PEREZ:
12 Q. Take a minute to review the document,
13 and let me know when you've done so.
14 A. I may take more than a minute. It's a
15 couple of pages here.
16 Q. Okay.
17    (Pause.)
18 A. I've reviewed Exhibit 45.
19 Q. Okay.
20    Do you see that it is entitled,
21 "Plaintiff's Response to Defendant Best Buy's
22 Second Set of Requests for Admissions"?
23 A. I see that as the title, yes.
24 Q. Do you see that on Page 4, your
25 attorney, Mr. Williamson, signed this?

Page 89

1  BRADLEY M. KUHN
2  A. Well, I see S/Aaron Williamson.
3  Q. Okay.
4     Directing your attention up to Page 3,
5  Request No. 13.
6     Do you see that Request No. 13 says:
7  "Admit that plaintiff Erik Andersen did not
8  register other versions of BusyBox in addition to
9  BusyBox Version 0.60.3 at the United States
10 Copyright Office."
11 A. Yes, I see that's Request No. 13.
12 Q. And do you see that the response to
13 Request No. 13 is "Admitted"?
14 A. Yes, I see that.
15 Q. Do you have any factual basis on which
16 to dispute that admission?
17 A. I have no factual basis to dispute nor
18 confirm that admission. I'm just --
19 Q. Okay.
20 A. -- not aware of the details of the
21 copyright registration --
22 Q. Okay.
23 A. -- as written by Mr. Williamson.
24 Q. Okay.
25    I'd like to go back to language that

23 (Pages 86 to 89)

Case 1:09-cv-10155-SAS   Document 179-1   Filed 03/07/11   Page 6 of 9

Bradley M. Kuhn - 11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 90

```
 1        BRADLEY M. KUHN
 2   the Conservancy used in its allegations in the
 3   complaint regarding the Conservancy being a
 4   copyright enforcement agent.
 5           I'd like to direct your attention back
 6   to Exhibit 28.
 7       A.   Okay.
 8       Q.   Looking at the second full paragraph
 9   that you wrote, do you see that you wrote: "If
10   you would like a further delegation for the
11   Conservancy to act as your agent with regard to
12   GPL enforcement, that is certainly possible and
13   can be done without actual copyright assignment of
14   BusyBox-/uClibc to the Conservancy."
15           Do you see that?
16       A.   Yes, I see that's what's on the page
17   here.
18       Q.   What was your understanding then, in
19   2006, of what the Conservancy could do as
20   Mr. Andersen's agent with respect to GPL
21   enforcement?
22       A.   Primarily, I understood it to mean
23   that Conservancy could, at a minimum, handle
24   communications with the SFLC, details about
25   strategy and plans for GPL enforcement, without
```

Page 91

```
 1        BRADLEY M. KUHN
 2   having to bug Erik with each individual question.
 3       Q.   Anything else?
 4       A.   That was the primary goal at the time
 5   for having Conservancy named as his enforcement
 6   agency.
 7           I understood it to mean that we could
 8   possibly in the future do other things on Erik's
 9   behalf.
10       Q.   What other things?
11       A.   My understanding was that we would, if
12   we wanted to, be able to send letters in the
13   similar fashion to which I described we used to do
14   at FSF to alleged violators to try to get them
15   into compliance, to conduct discussions with
16   violators to convince them to coming into
17   compliance was a good idea, etc.
18       Q.   Anything besides what we talked about
19   earlier?
20       A.   I understood it to mean that
21   Conservancy could be a plaintiff in any possible
22   litigation that arise -- arose from failure to
23   receive response from alleged GPL violators.
24       Q.   And is your understanding today the
25   same as it was in 2006 with respect to the
```

Page 92

```
 1        BRADLEY M. KUHN
 2   Conservancy acting as Mr. Andersen's enforcement
 3   agent?
 4       A.   Yes, that's my understanding.
 5       Q.   Okay.
 6           Mr. Kuhn, do you have a factual basis
 7   for your understanding that the Conservancy could
 8   be a plaintiff in a lawsuit on BusyBox's copyright
 9   infringement?
10       A.   Those kinds of issues are things that
11   I typically discuss with my attorneys.
12       Q.   Okay.
13           And outside of discussions with your
14   attorneys, is there anything that you can point me
15   to?
16       A.   I am simply not familiar with the
17   Rules of Civil Procedure, that I've heard them
18   called before, to know what can and can't be done
19   and so forth.
20           I call an attorney when I have those
21   kinds of questions. That's what you guys are for.
22       Q.   I understand. Fair enough.
23           MS. ROBERG-PEREZ: I apologize,
24   Counsel, I'm just looking for some copies.
25           MR. WILLIAMSON: Take your time.
```

Page 93

```
 1        BRADLEY M. KUHN
 2           MS. ROBERG-PEREZ: I'd like the
 3   reporter to hand you what has been
 4   previously marked deposition Exhibit 29.
 5       A.   I've reviewed Exhibit 29.
 6       Q.   You see that this is an e-mail from
 7   Erik Andersen to you?
 8       A.   It seems to be such.
 9       Q.   Any reason to dispute that it is not
10   what I just said?
11       A.   No.
12       Q.   Do you see that the date April -- is
13   April 7th, 2007?
14       A.   I see that's the date on the page.
15       Q.   And by this date you were already
16   president of the Conservancy, correct?
17       A.   Yes.
18       Q.   Toward the bottom of the page, do you
19   see that Erik has written: "As a copyright holder
20   in the Conservancy's BusyBox and uClibc projects,
21   I appoint the Conservancy as my agent in
22   enforcement of those copyrights and the GPL and
23   LGPL licenses (respectively) on those software
24   packages."
25       A.   I see that's what's on the page.
```

24 (Pages 90 to 93)

Bradley M. Kuhn - 11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

### Page 94

1 BRADLEY M. KUHN
2  Q. Is this the document that appointed
3 the Conservancy to be Andersen's enforcement agent
4 in BusyBox?
5     MR. WILLIAMSON: Objection.
6     Calls for a legal conclusion.
7  Q. You may answer.
8  A. I recall receiving this e-mail, and my
9 understanding was that it did appoint Conservancy
10 as Erik Andersen's agent in enforcement of BusyBox
11 and uClibc copyrights.
12  Q. Okay.
13     Aside from this e-mail and Exhibit 44,
14 which is the amended and restated fiscal
15 sponsorship agreement between the Conservancy
16 Andersen, and the earlier version that I'm told is
17 work product, although we don't accept that, are
18 there any other agreements between Andersen and
19 the Conservancy on BusyBox?
20     MR. WILLIAMSON: Objection.
21     Privilege.
22     MS. ROBERG-PEREZ: The fact of an
23 agreement is not privileged.
24  A. The fiscal sponsorship agreement and
25 this appointment of copyright enforcement agency

### Page 95

1 BRADLEY M. KUHN
2 are the only two formal agreements that I know
3 exist between Erik Andersen and the Conservancy.
4  Q. Are there any informal agreements that
5 exist?
6  A. Erik and I have talked frequently with
7 our legal counsel. There could have been informal
8 agreements at various times for various different
9 issues. I don't recall exactly what they were.
10 They were informal.
11  Q. Okay.
12     Does the Conservancy act as the
13 enforcement agent for any other BusyBox author
14 other than Mr. Andersen?
15  A. Yes.
16  Q. Who?
17  A. We act as an enforcement agent for
18 Denys Vlasenko.
19  Q. Anyone besides Denys Vlasenko?
20  A. At what time?
21  Q. At any time.
22  A. I believe that we, for some time,
23 acted as an enforcement agent for Rob Landley.
24  Q. Does the Conservancy act as Rob
25 Landley's enforcement agent today?

### Page 96

1 BRADLEY M. KUHN
2  A. No.
3  Q. Are you aware if Mr. Landley has
4 appointed anyone else to act as enforcement agent
5 for BusyBox for him?
6     MR. WILLIAMSON: Objection.
7     Privilege.
8 BY MS. ROBERG-PEREZ:
9  Q. Are you going to take your counsel's
10 advice?
11  A. As I mentioned before, I make it a
12 general rule to try and always take my counsel's
13 advice.
14  Q. Okay.
15     MS. ROBERG-PEREZ: Asking the reporter
16 to what has been -- to hand you what has
17 been previously marked as deposition Exhibit
18 30.
19  Q. Take a moment to review, and let me
20 know when you've done so.
21     (Pause.)
22  A. I've reviewed Exhibit 30.
23  Q. Do you see that this is an e-mail from
24 you to Matt Kraai?
25  A. It appears to be an e-mail from me to

### Page 97

1 BRADLEY M. KUHN
2 Matt Kraai.
3  Q. Any reason to doubt that it is not?
4  A. I have no reason to doubt that.
5  Q. Do you see that the date is
6 March 14th, 2010?
7  A. I see that's the date on this page.
8  Q. Directing your attention to the second
9 paragraph, do you see that you've written
10 specifically: "If you are interested, you could
11 assign your existing copyrights on BusyBox to the
12 Software Freedom Conservancy"?
13  A. I'm sorry, can you point me to that
14 paragraph? I've lost my place here.
15  Q. Second paragraph.
16  A. Okay.
17     Yes, I see it -- I see that.
18  Q. Do you see that in this paragraph you
19 also go on to say that: "This would help us in a
20 few ways. First, occasionally, it would be
21 helpful for Conservancy to act as the -- an
22 official copyright holder, rather than merely
23 Denys Vlasenko's and Erik Andersen's enforcement
24 agent (which is Conservancy's current designation
25 in this matter)."

25 (Pages 94 to 97)

Depo International, Inc.
(763) 591-0535 or (800) 591-9722 admin@depointernational.com

Bradley M. Kuhn  -  11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 102

1   BRADLEY M. KUHN
2   understand. Let me rephrase.
3   BY MS. ROBERG-PEREZ:
4       Q.   Mr. Kuhn, has the Conservancy asked
5   any other author of a copyright in BusyBox and not
6   represented by the Conservancy to assign their
7   copyrights to the Conservancy -- strike that.
8   Strike that. Let me rephrase.
9            Have you -- has the Conservancy asked
10  any other author of a copyright in BusyBox who is
11  not represented by the Software Freedom Law Center
12  to assign their copyright to the Conservancy?
13           MR. WILLIAMSON: Objection.
14           Calls for speculation.
15      Q.   If you know.
16      A.   Yes.
17      Q.   Who?
18      A.   Glen McGrath.
19      Q.   Anybody else?
20      A.   I'm having difficulty answering
21  because your question said not represented by the
22  Software Freedom Law Center, and I am not privy to
23  all clients of the Software Freedom Law Center.
24      Q.   Okay.
25           Let's try it this way: I -- I don't

Page 103

1   BRADLEY M. KUHN
2   want you to divulge any attorney-client privileged
3   information that you would have received from your
4   attorneys. Maybe we can focus just on
5   communications that you have had with BusyBox
6   authors -- okay -- outside the presence of your
7   attorneys.
8            Who besides Matt Kraai and Glen
9   McGrath have you spoken to about obtaining a
10  copyright assignment on BusyBox?
11      A.   I -- I think you mispronounced his
12  name. It's Glen McGrath.
13      Q.   Glen McGrath.
14           Besides Glen McGrath and Matt Kraai,
15  can you identify any other author that the
16  Conservancy has requested an assignment from?
17      A.   Yes.
18      Q.   Who?
19      A.   No, I'm sorry, you -- you changed the
20  question there. You said that has received an
21  assignment from?
22      Q.   Strike that.
23           Let me try --
24      A.   And I -- I -- I think I answered
25  incorrectly because the question changed when you

Page 104

1   BRADLEY M. KUHN
2   restated it. I apologize.
3       Q.   Let me try it again.
4            Has the Conservancy asked any other
5   BusyBox author for an assignment of copyright in
6   BusyBox besides Matt Kraai and Glen McGrath?
7       A.   Yes.
8       Q.   Who?
9       A.   Russ Dill.
10      Q.   Anybody else?
11      A.   No one else that's not a client of the
12  Software Freedom Law Center.
13      Q.   And you've already testified that Matt
14  Kraai did not assign copyright to the Conservancy,
15  correct?
16      A.   Yes, that's what I testified.
17      Q.   Glen McGrath didn't either, did he?
18      A.   No.
19      Q.   And Russ Dill did not assign to the
20  Conservancy the copyright in BusyBox either, did
21  he?
22      A.   No.
23      Q.   Okay.
24           To your knowledge, there has not been
25  an exclusive license granted by Mr. Andersen to

Page 105

1   BRADLEY M. KUHN
2   his copyrights in BusyBox, correct?
3            MR. WILLIAMSON: Objection.
4            Calls for a legal conclusion.
5       Q.   You may answer.
6       A.   My understanding is the GPL is a
7   public license, hence the name, and is, therefore,
8   not an exclusive license.
9       Q.   Okay.
10           You were at Mr. Andersen's deposition
11  on October 29th, correct?
12      A.   Yes.
13      Q.   So, you're aware that he testified
14  that BusyBox is licensed under the GPL Version 2,
15  correct?
16      A.   Yes.
17      Q.   And you're aware that he also
18  testified that BusyBox is only licensed under the
19  GPL Version 2, correct?
20      A.   I don't recall that sweeping of a
21  statement was his testimony.
22      Q.   Well, do you have any reason to
23  disagree with the statement that BusyBox is
24  licensed under the GPL Version 2?
25      A.   It likely depends on the specific

27 (Pages 102 to 105)

Case 1:09-cv-10155-SAS   Document 179-1   Filed 03/07/11   Page 9 of 9

Bradley M. Kuhn  -  11/11/2010
Software Freedom Conservancy, Inc., et al. vs. Best Buy Co., Inc., et al.

Page 190

1  BRADLEY M. KUHN
2  Conservancy.
3     Q.  Anything else?
4     A.  I'm sure I could think of more if I
5  tried, but those are probably sufficient for these
6  purposes.
7     Q.  Okay.  Let's go back to the reasons
8  that you've testified to.
9         You have said that sometimes thousands
10 upon thousands of users have been impacted.
11        Aside from Denver Gingrich, who
12 reported the violation -- the alleged violation of
13 the Best Buy products, can you name any other user
14 of the Insignia product that has been adversely
15 impacted?
16    A.  I don't know any of them by name, no.
17    Q.  Okay.
18        You also spoke about young people
19 being able to advance and improve their skills as
20 computer scientists, correct?
21    A.  Yes.
22    Q.  Can you give me a single name of a
23 young person who, because of the sale of an
24 accused Insignia device, has not been able to
25 advance and improve his or her skills?

Page 191

1  BRADLEY M. KUHN
2     A.  Without doing substantial market
3  research, I can't answer that question.
4     Q.  So the answer is, as you sit here
5  today, is no, correct?
6     A.  That's correct.
7     Q.  And you also spoke about how a large
8  part of the free software movement is advocating
9  for people's rights under the free software
10 movement.
11        Has the sale of the accused devices in
12 any way prevented the Conservancy from advocating?
13    A.  Yes.
14    Q.  How has the sale of the accused
15 devices prevented actions by the Conservancy for
16 the Conservancy to advocate?
17    A.  Oftentimes, when people receive a
18 device -- and I've witnessed this in the past --
19 and learn about the GPL, they often get in touch
20 with organizations such as Conservancy and Free
21 Software Foundation, which we've also talked
22 about, to learn more.
23        I would argue that many potential
24 people who might have learned about the GPL did
25 not learn about it, because they did not receive a

Page 192

1  BRADLEY M. KUHN
2  copy of the GPL, because it wasn't included in
3  your Insignia products.
4     Q.  But has the sale of the Insignia
5  products prevented the Conservancy from
6  advocating?
7     A.  It's better characterized as a very
8  large missed opportunity in that, as a extremely
9  small nonprofit organization, and indeed, as a set
10 of the extremely small nonprofit organizations,
11 including the Free Software Foundation in that
12 analysis, it's hard for us to reach everyone.
13        One of the reasons that we've written
14 free software and licensed it under the GPL, and
15 required that the GPL go along with it, is -- is a way
16 to reach more people, because by terms of the license
17 you have to include it and tell people about free
18 software.
19        So, you've taken that opportunity from
20 us.
21    Q.  Does Conservancy have access to a
22 website?
23        MR. WILLIAMSON:  Objection.
24        Vague.
25    Q.  Does the Conservancy have access to a

Page 193

1  BRADLEY M. KUHN
2  website?
3     A.  We have an Internet connection at our
4  offices, yes.
5     Q.  Does the Conservancy have the ability
6  to post information about the GPL on a website?
7     A.  Yes.
8     Q.  Okay.
9         Do you know if the sale of accused
10 devices in this litigation has decreased --
11 decreased the number of people using BusyBox code
12 that Mr. Andersen wrote?
13    A.  What do you mean by "Using"?
14    Q.  Are there individuals that because of
15 the sale of accused devices in this litigation
16 cannot access code that Mr. Andersen wrote?
17    A.  What do you mean by "Access"?
18    Q.  Is code that Mr. Andersen wrote, to
19 your knowledge, available today on BusyBox.net?
20    A.  Yes.
21    Q.  Okay.
22        Do you recall whether Best Buy was
23 notified of the alleged infringement prior to the
24 Conservancy and Mr. Andersen filing suit?
25        MR. RAVICHER:  In what capacity?