# Roberg-Perez Decl. Ex. C

## March 7, 2011

## Best Buy's Opposition to Plaintiffs' Preliminary Injunction Motion

SFA

## SOFTWARE FREEDOM CONSERVANCY
## AMENDED AND RESTATED FISCAL SPONSORSHIP AGREEMENT

This Agreement is made by and between The Software Freedom Conservancy ("Conservancy") and Erik Andersen and Denys Vlasenko (the "Developers") on behalf of the project known as Busybox (the "Project"). The Conservancy is a New York nonprofit public benefit corporation located in New York, New York, which has received recognition of exemption from federal income tax under Section 501(c)(3) of the Internal Revenue Code (IRC) and classification as a public charity under IRC Sections 509(a)(1) and 170(b)(1)(A)(vi).

WHEREAS:

A. The purpose of the Project is to produce and distribute software that can be freely copied, modified and redistributed by the general public ("Free Software").

B. The Conservancy desires to act as the fiscal sponsor of the Project beginning on the Effective Date (as defined below) to assist the Project in accomplishing its purpose, which the Conservancy has determined will further the Conservancy's charitable goals. The Developers desire to manage the Project under the sponsorship of the Conservancy.

C. The Conservancy's Board of Directors has approved the establishment of a fund to receive donations of cash and other property earmarked for support of the Project and to make disbursements in furtherance of the Project's mission (the "Project Fund"). Currently, the principal office of the Project is located at:

> Erik Andersen
> c/o CodePoet Consulting
> 352 North 525 East
> Springville, Utah 84663
> United States

NOW, THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

1. **Term of Agreement.** As of the Effective Date, the Project joins the Conservancy, which relationship will continue unless and until terminated as set forth below.

2. **Project Management and Activities.**

1


EXHIBIT 44
WIT: Kuhn
DATE: 11-11-10
Amy Rivera, CSR, RPR, CLR.

*EBA*

a. **The Project Will Be Free Software.** The Conservancy and the Project agree that any software distributed by the Project will be distributed solely as Free Software.

b. **The Developers Will Manage the Project.** Authority to manage the technical and artistic direction of the Project and the program activities of the Project is delegated to the Developers, subject at all times to the direction and control of the Conservancy's Board of Directors. The Conservancy will only intervene in the program activities to the extent the Project is not in compliance with Paragraph 2(a) or Paragraph 6 of this Agreement.

c. **Ultimate Responsibility of Project.** Subject to Section 2(b) of this Agreement, all community programs, public information work, fundraising events, processing and acknowledgment of cash and non-cash revenue items, accounts payable and receivable, negotiation of leases and contracts, disbursement of Project funds (including grants), and other activities planned by the Project shall be the ultimate responsibility of the Conservancy and shall be conducted in the name of the Conservancy, beginning on the Effective Date.

d. **Project Not An Agent Of Conservancy.** The Project does not and shall not act as an agent for the Conservancy unless specifically authorized in writing by the Conservancy to do so.

3. **No Fees.** Other than as specified in Section 5, The Conservancy will collect no fees from the Project.

4. **Project Fund/Variance Power.** Beginning on the Effective Date, the Conservancy shall place all gifts, grants, contributions and other revenues received by the Conservancy and identified with the Project into a Project Fund to be used for the sole benefit of the Project's mission as that mission may be defined by the Developers from time to time with the approval of the Conservancy. The Conservancy retains the unilateral right to spend such funds so as to accomplish the purposes of the Project as nearly as possible within the Conservancy's sole judgment, subject to any donor-imposed restrictions, as to purpose, on the charitable use of such assets. The parties agree that all money, and the fair market value of all property, deposited in the Project Fund be reported as the income of the Conservancy, for both tax purposes and for purposes of the Conservancy's financial statements. It is the intent of the parties that this Agreement be interpreted to provide the Conservancy with variance powers necessary to enable the Conservancy to treat the Project Fund as the Conservancy's asset in accordance with Financial Accounting Statement No. 136 issued by the

2

EBA

Financial Accounting Standards Board, while this Agreement is in effect.

5. **Enforcement.** The Conservancy will conduct license compliance enforcement efforts on the Project's behalf. All funds received by the Conservancy in connection with any enforcement activities will be deposited in the Project Fund, minus any amounts paid to legal counsel related to the matter and minus any filing fees or other expenses due to third parties (the total deposited amount hereinafter is referred to as the "Compliance Amount"). The Project agrees that up to 50% of the Compliance Amount may be used by the Conservancy for other enforcement efforts conducted by it on the Project's behalf. For any month that any such expenditures are made, the Conservancy will provide the Project with a report showing an accounting of the expenditures. The Project may stop the Conservancy from engaging in these funded enforcement activities upon two (2) days notice.

6. **Project Fund Management / Performance of Charitable Purposes.** All of the assets received by the Conservancy under the terms of this Agreement shall be devoted to the purposes of the Project, within the tax-exempt purposes of the Conservancy. The Project agrees not to use its funds or operate in any way which would jeopardize the tax-exempt status of the Conservancy. No item of revenue shall be earmarked for use in any attempt to influence legislation within the meaning of IRC Section 501(c)(3) and no agreement, oral or written, to that effect shall be made between the Conservancy and any revenue source. The Conservancy shall not use any portion of the assets to participate or intervene in any political campaign on behalf or in opposition to any candidate for public office, to induce or encourage violations of law or public policy, to cause any private inurement or improper private benefit to occur, nor to take any other action inconsistent with IRC Section 501(c)(3).

7. **Representation of the Project in the Conservancy.** The Developers, each a signatory hereto, shall manage the Project. Denys Vlasenko will represent the Project in its official communication with the Conservancy.

8. **Outstanding Liabilities.** The Developers represent that any liabilities that may be outstanding in connection with the Project have been disclosed to the Conservancy.

9. **Termination.** The Developers or the Conservancy may terminate this Agreement at any time subject to the following understandings:

   e. **Notice and Successor Search.** Either the Conservancy or the Developers may terminate this Agreement on 60 days' written notice to the other party, so long as a

3


EBA

   Successor can be found that meets the following requirements:
   i. the Successor is another nonprofit corporation which is tax-exempt under IRC Section 501(c)(3),
   ii. the Successor is not classified as a private foundation under Section 509(a),
   iii. the Successor is willing and able to sponsor the Project, and
   iv. the Successor is approved in writing by both parties by the end of the 60-day period, such approval not to be unreasonably withheld.

   b. **Additional Search Periods.** If the parties cannot agree on a Successor to sponsor the Project, the Developers shall have an additional 60 days to find a Successor willing and able to sponsor the Project. Upon written agreement of the parties, the Developers shall have further additional periods in which to find a Successor. Such periods will be of a duration agreed to by the parties.

   c. **Transfer to a Successor.** If a Successor is found, the balance of assets in the Project Fund, together with any other assets held or liabilities incurred by the Conservancy in connection with the Project, shall be transferred to the Successor by the end of the notice period or any extension thereof, subject to the approval of any third parties that may be required. If the Project has formed a new organization qualified as a Successor as set forth in this Section, such organization shall be eligible to receive all such assets and liabilities so long as such organization has received a determination letter from the Internal Revenue Service, indicating that such qualifications have been met, no later than the end of the notice period or any extension thereof.

   d. **Termination Without a Successor.** If no Successor is found, the Conservancy may dispose of the Project assets and liabilities in any manner consistent with applicable tax and charitable trust laws.

10. **Miscellaneous.** Each provision of this Agreement shall be separately enforceable, and the invalidity of one provision shall not affect the validity or enforceability of any other provision. This Agreement shall be interpreted and construed in accordance with the laws of the State of New York. This Agreement constitutes the only agreement, and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof. This Agreement may not be amended or modified, except in writing and signed by all parties to this Agreement.

11. **Counterparts / Facsimile.** This Agreement may be executed in two or more counterparts, each of which shall constitute an original, but all of which, when

4

together, shall constitute but one and the same instrument, and shall become effective when one or more counterparts have been signed by each party hereto and delivered to the other party. In lieu of the original, a facsimile transmission or copy of the original shall be as effective and enforceable as the original.

IN WITNESS WHEREOF, the parties have executed this Fiscal Sponsorship Agreement effective on the 31st day of August, 2010 (the "Effective Date").

By: _____  Dated: _5 September 2010_
Erik Andersen

By: _____  Dated: _____
Denys Vlasenko

By: _____  Dated: _____
Software Freedom Conservancy

5