# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOFTWARE FREEDOM CONSERVANCY, INC. and ERIK ANDERSEN,<br><br>        Plaintiffs,<br><br>v.<br><br>BEST BUY CO., INC.; SAMSUNG ELECTRONICS AMERICA, INC.; WESTINGHOUSE DIGITAL ELECTRONICS, LLC; JVC AMERICAS CORPORATION; WESTERN DIGITAL TECHNOLOGIES, INC.; ROBERT BOSCH LLC; PHOEBE MICRO, INC.; HUMAX USA INC.; COMTREND CORPORATION; DOBBS-STANDFORD CORPORATION; VERSA TECHNOLOGY INC.; and GCI TECHNOLOGIES CORPORATION,<br><br>        Defendants. | Civil Action No: 09-cv-10155 (SAS)<br>Judge Scheindlin<br><br><br><br>RESPONDENT WESTINGHOUSE DIGITAL, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO FIND WESTINGHOUSE DIGITAL, LLC IN CONTEMPT |

TABLE OF CONTENTS

I.      Background ................................................................................................................. 1

II.     Westinghouse Digital Is Not In Contempt Of The Court's Injunction Because The
        Accused Conduct Is Not Copyright Infringement And Because The Injunction Against
        Mora Does Not Apply To Westinghouse Digital ............................................................ 2

        A.   The posting of Mora's DTV firmware on the web is not copyright infringement because it
             is required under federal law and an Order of the Federal Communications Commission 3

        B.   The injunction against Mora does not apply to non-party Westinghouse Digital because
             Westinghouse Digital has neither abetted nor is legally identified with Mora .................. 7

        C.   Westinghouse Digital is not the successor to Mora for purposes of the injunction under
             federal common law ................................................................................................ 10

III.    Conclusion ................................................................................................................ 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*,
   154 F.3d 1345 (Fed. Cir. 1998)..................................................................................7, 8, 9

*Alemite Manufacturing Corp. v. Staff*,
   42 F.2d 832 (2d Cir. 1930)....................................................................................................3

*Douglas v. Stamco*,
   No. 09-1390-cv, 2010 WL 337043 (2d Cir. Feb. 1, 2010) .....................................12

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)...............................................................................................................7

*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998)..............................................................................................12

*Gulfstream Aerospace Corp. v. Camp Systems Int'l, Inc.*,
   428 F. Supp. 2d 1369 (S.D. Ga. 2006)..................................................................4, 5, 6

*New York v National Services Industries, Inc.*,
   352 F.3d 682 (2d Cir. 2003)......................................................................................10, 12

*New York v. National Services Industries, Inc.*,
   460 F.3d 201 (2d Cir. 2006).......................................................................................10, 11

*New York v. Operation Rescue Nat'l*,
   No. 92 Civ. 4884(RJW), 1994 WL 517475 (S.D.N.Y. Sept. 21, 1994) ...................8

*New York v. Operation Rescue Nat'l*,
   80 F.3d 64 (2d Cir. 1996) ..............................................................................................7, 8

*Pearson Education, Inc. v. Vergara*,
   No. 09 Civ. 6832(JGK), 2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010)..................7

*SmithKline Beecham  Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*,
   211 F.3d 21 (2d Cir. 2000)...............................................................................................4, 5

## FEDERAL STATUTES

Fed. R. Civ. P. 65(d) ...........................................................................................................7, 8, 9

**MISCELLANEOUS**

6 Del. Code § 18-402 ...........................................................................................................12

Plaintiffs' motion [ECF 172] to hold non-party Westinghouse Digital, LLC ("Westinghouse Digital" or "WD") in contempt of the Court's permanent injunction against defendant Mora Electronics, LLC ("Mora") fails for several independent reasons:

- The conduct about which plaintiffs complain—that certain television firmware allegedly containing the BusyBox code is available on the website formerly operated by Mora—is not an act of copyright infringement because that firmware must be posted on the internet and made publicly available pursuant to federal law and an Order of the Federal Communications Commission;

- WD is not a party to either this case or to the injunction, and there is no evidence that WD has acted in "active concert or participation" with anyone covered by the injunction, *see* Fed. R. Civ. Pro. 65(d)(2)(A), (B) and (C); and

- WD is not the successor to Mora for purposes of the injunction under any theory of federal common law because there is no identity of ownership between Mora and WD.

Accordingly, plaintiffs' motion should be denied.

## I.   Background

Plaintiffs initially filed this action against 14 commercial electronics distributors alleging copyright infringement of an open source computer program called BusyBox.  Order, ECF 159, p. 1.  One of the defendants was Mora, then known as Westinghouse Digital Electronics, LLC, a California limited liability company.  Mora was wholly owned by Nexis, Inc., which was wholly owned by Nexis Holdings, LLC, which in turn was 49% owned by Richard Houng.  *Id.* p. 3. Relatives of Mr. Houng owned the remainder.  Feb. 22, 2011 Hearing, Plaintiffs' Ex. 1, p. 5.  On or about June 25, 2010, Nexis, Inc. and Mr. Houng filed for federal bankruptcy protection.  *See* ECF 149, n.4.  Their respective interests are now part of their bankruptcy estates.

On April 2, 2010, Mora executed a General Assignment for the Benefit of Creditors under California law in favor of Credit Managers Association of California doing business as Credit Management Association ("CMA").  ECF 159, p. 4.  CMA assumed all decision-making

for Mora, including a decision to cease defending the instant action.  *See id.* pp. 4-5; ECF 128, p. 2.

CMA also commenced liquidation proceedings for the assets it received from Mora. CMA sold many of those assets to WD, then known as Golden Star Electronics, LLC, a Delaware limited liability company, and WD paid CMA approximately $2 million in cash and assumed $18 million of liabilities.  ECF 159, p. 5.  Included in the CMA's sale was Mora's website and WD's assumption of the warranty and other obligations owed to Mora's consumers under federal and state law. *See* the attached Declaration of Ken Randall ("Randall Decl."), ¶ 6.

No later than early May 2010 plaintiffs' counsel was aware of Mora's assignment, the subsequent asset sale by CMA, and that Mora would no longer defend itself in this case.  *See, e.g.,* ECF 108 n.2 and ECF 114, ¶¶ 21 and 23.  Despite this knowledge, plaintiffs made no attempt at that time to add CMA or WD to the case, but instead moved for judgment against Mora.  *See* ECF 113.  The Court subsequently granted a default judgment against Mora as a sanction for failing to meet its discovery obligations.  ECF 131.  As part of the judgment against Mora, the Court granted plaintiffs' request for a permanent injunction.  *Id.* at 8-9.

## II.    Westinghouse Digital Is Not In Contempt Of The Court's Injunction Because The Accused Conduct Is Not Copyright Infringement And Because The Injunction Against Mora Does Not Apply To Westinghouse Digital

Plaintiffs do not claim that WD is actually distributing televisions or products containing BusyBox.  Rather, plaintiffs move for contempt solely because WD maintains Mora's old website includes certain versions of television firmware (software) that allegedly contain the copyrighted BusyBox code.  ECF 173, p. 3 (WD "continues to distribute the same infringing firmware containing BusyBox from the same exact URL from which [Mora] had made infringing distributions.").

Plaintiffs' allegations do not support a finding of contempt for several reasons.  First, the posting of Mora's firmware on the web is done pursuant to the express terms of an Order from the Federal Communications Commission.  The complained-of activity is required by the FCC Order, and therefore it is neither an act of copyright infringement nor a violation of this Court's Order.

Second, plaintiffs' effort to enlarge the injunction to cover Westinghouse Digital is not supported by the federal rules.  Injunctions do not apply to "the world at large," *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930), but rather only to parties, their officers, agents, employees, and to anyone else acting in active concert or participation with them.  Fed. R. Civ. Pro. 65(d)(2)(A-C).  The undisputed facts show that Westinghouse Digital does not fall within any of the categories set out in the federal rules.

Third, Westinghouse Digital is not a successor to Mora because there is no identity of ownership between Mora and Westinghouse Digital, or any other facts to establish any basis for successor liability under federal common law.

A. **The posting of Mora's DTV firmware on the web is not copyright infringement because it is required under federal law and an Order of the Federal Communications Commission**

In an Order dated April 9, 2008, the FCC adopted the terms of a Consent Decree with Mora (then known as Westinghouse Digital Electronics, LLC) that, in part, ***required*** copies of Mora's digital television firmware to be posted on a website for 5 years.  *In the Matter of Westinghouse Digital Electronics, LLC*, EB-07-SE-261.  *See also* Exhibit A to the Randall Decl. The Order states, in pertinent part:

> Westinghouse Digital Electronics will assist customers who purchased models with a USB connector in downloading appropriate firmware from its website and installing it on the receiver through the USB connector. Westinghouse Digital **will make the firmware available on its website for a period of five years.** If a customer is not able to download the firmware, Westinghouse Digital Electronics will offer to provide a device (such as a thumb drive or a compact disc) at no

3

> charge that the customer can use to install the upgrade. For customers who purchased models without a USB connector or firmware solution, Westinghouse Digital Electronics will permit the customer to bring the receiver to the store where it was purchased or to a Westinghouse Digital Electronics service center, where the receiver will be upgraded or replaced, at Westinghouse Digital Electronics' discretion, without charge to the customer. (Emphasis added)

Order, Consent Decree ¶ 8(b).

The FCC specifically found that the "public interest would be served" by the terms of the Consent Decree.  Order, ¶ 3.  Further, the requirements of the Order were made to satisfy the requirements of "section 330(c) of the Communications Act of 1934, as amended, and section 15.120(d)(2) of the Commission's rules regarding the interstate shipment of digital television receivers that did not comply with the V-Chip technology requirements[1] because they lack the ability to adapt to new rating systems."  Order, ¶ 1.[2]

**As a result of the FCC's Order in 2008, the firmware for Mora's televisions must be made available to the public and for download from the website until April 9, 2013**. Because the firmware is posted on the web pursuant to the FCC Order implementing and enforcing federal law, it cannot be a copyright violation.  *See, e.g., SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21 (2d Cir. 2000); *Gulfstream Aerospace Corp. v. Camp Systems Int'l, Inc.*, 428 F. Supp. 2d 1369 (S.D. Ga. 2006).

In *SmithKline*, the Second Circuit dismissed a copyright infringement claim because Food and Drug Administration ("FDA") regulations required the copying and consequently the

---

[1] V-Chip technology allows viewers to block the display of programs based on a rating system. *See* http://www.fcc.gov/vchip/ (visited March 4, 2011).  This technology was mandated following Congressional findings that public interest would be served by requiring V-Chip technology in television broadcasts and reception.  *See http://www.fcc.gov/Bureaus/Cable/ News_Releases/1998/nrcb800 3.html* (visited March 4, 2011).

[2] The FCC entered similar Orders—with corresponding requirements for posting firmware on websites—with respect to numerous other television distributors, such as Panasonic, Audiovox, Philips, Vizio, Sanyo, and LG.  *See, e.g.,* EB-07-SE-256; EB-07-SE-262; EB-07-SE-258; EB-07-SE-255; EB-07-SE-254; and EB-07-SE-263.

4

FDA's requirements prevailed over plaintiff's copyright.  SmithKline sold Nicorette® gum that was accompanied by certain labeling, including a user guide and an audiotape, over which it owned copyrights.  Watson subsequently sought to market a generic equivalent and, pursuant to federal law and FDA regulations, proposed to use virtually identical labeling—including a substantially identical user guide and audiotape—to SmithKline's.

The Second Circuit concluded that a copyright holder "cannot enforce its copyright against generic drug manufacturers who are required by [federal law] to copy labeling and who do no more than that."  *SmithKline*, 211 F.3d at 29.  Examining the apparent conflict between the FDA requirements and copyright, the Second Circuit noted that the FDA labeling requirements served the public interest and the purpose of copyright—to encourage creative works by protecting against unauthorized copying—would not be undermined by the copying:

> It is simply not conceivable that, if we reject SmithKline's claim, pioneer drug producers will so fear the copying of labels by future generic drug producers that some pioneer producers-or even one of them-will lack the incentive to create labeling needed for FDA approval.

*Id.*

Similarly, in *Gulfstream Aerospace,* the Southern District of Georgia used the fair use doctrine to reject a copyright infringement claim over the copying of airplane maintenance manuals in accordance with the requirements of the Federal Aviation Administration. Gulfstream manufactured the airplanes and produced corresponding maintenance manuals. Camp competed with Gulfstream in providing airplane maintenance and, in order to perform that maintenance under FAA regulations, it had to copy Gulfstream's maintenance manuals.  428 F. Supp. 2d at 1373.

The District Court found Camp's copying of the manuals to be fair use.  *Id.* at 1376. While analyzing the four typical fair use factors, the court noted that the "single most important element of fair use" is the effect of the use on the market for or value of the copyrighted work.

*Id.* at 1379 (citations omitted).  The court found no evidence that Camp's copying affected the market for Gulfstream manuals.  *Id.*  This, coupled with the FAA's approval of Camp's copying, *id.* at 1377-8, led the court to conclude that Camp's use of the manual was fair use.  *Id.* at 1380-1.

Here, the FCC is the federal agency charged with implementing and enforcing federal telecommunications laws, including the Communications Act of 1934, as amended.  Pursuant to this authority and its rulemaking, in 2008 the FCC entered an adjudication Order that ***required*** Mora to post on its website a copy of its televisions' firmware—which Mora did by June 2008. Randall Decl., ¶ 4.  Mora maintained this website—and continued to comply with the FCC Order—until it made the General Assignment to CMA pursuant to California law.  Mora's website was subsequently sold by CMA to WD, who has continued to keep Mora's website online for the benefit of Mora's customers, including those who would require access to the firmware pursuant to the FCC's Order.  *Id.* ¶¶ 5, 6.

Mora's compliance with the FCC Order requiring the firmware to be posted on its website cannot be considered an act of copyright infringement, a conclusion supported by both the Second Circuit's *SmithKline* analysis and the fair use doctrine.  The FCC specifically found that the Order—including the posting of the firmware on the web—was in the public interest and furthered the goals of the Communication Act of 1934, as amended, by providing the consuming public with updates to V-Chip functionality (which is embedded in the firmware).

As for fair use, the firmware posted on the website cannot be read by humans and has no use or value except when installed on the specific Mora television model for which it was written—thus, there cannot be any effect on the market for BusyBox becasue those who want to use it must acquire it from BusyBox.net or some other source.  Randall Decl., ¶ 7.  This, coupled with the FCC Order requiring the firmware to be posted on the website, establishes fair use.

Nothing in the Court's injunction prohibits posting the firmware on the web in accordance with the FCC's Order and regulations.  ECF 131.  Further, the record shows that the Court was not informed of the FCC's Order and regulations (Mora had ceased defending itself), and plaintiffs' moving papers did not present the public interests in continued access to the federally required V-Chip functionality.[3]  Moreover, the injunction appears directed only at "infringing" activity done "without permission."  This is neither, and the FCC Order not only permits, but requires, Mora's website to provide the firmware for download until April 2013.  *See Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998) ("Non-parties are subject to contempt sanctions … only if they are aware of the injunction and know that their acts violate the injunction.").

The continued posting of the firmware on Mora's former website pursuant to the express requirements of the FCC Order cannot be considered an act of copyright infringement, nor under the circumstances a violation of this Court's Order.  Plaintiffs' motion for contempt against Westinghouse Digital for such conduct therefore must fail.

**B.      The injunction against Mora does not apply to non-party Westinghouse Digital because Westinghouse Digital has neither abetted nor is legally identified with Mora.**

"The party seeking enforcement of an order bears the burden of demonstrating that the persons to be held in contempt are within the scope of the injunction." *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996).  Plaintiffs cannot meet that burden here and their reliance on *Operation Rescue* and *Additive Controls* to extend the injunction to cover non-party WD is misplaced.  These cases involved corporate officers, bound to an injunction under Fed. R.

---

[3] Whether the public interest would be disserved by the injunction is one of the four factors for a permanent injunction.  *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832(JGK), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) (Second Circuit applies *eBay* factors to copyright cases).

Çiv. Pro. 65(d), seeking to evade the injunction by setting up new organizations.  No such facts exist here.

In *Operation Rescue*, an injunction against trespassing during anti-abortion protests was entered against various defendants, including an organization known as B.O.R.N.  Although not named as a defendant, at the time of the injunction Brusstar was an officer of B.O.R.N. and therefore bound by the injunction under Fed. R. Civ. Pro. 65(d).  After the injunction Brusstar and others continued protesting and trespassing, this time as part of another organization, LIFE. The court concluded that because Brusstar was bound by the injunction, those acting with him as part of LIFE were also bound because they were in "active concert or participation" with Brusstar.[4]  *Id.* at 71.

Similarly, in *Additive Controls & Measurement Systems, Inc. v Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998), Cotton was an officer and majority shareholder of the defendant corporation at the time of the injunction.  Thus, as a corporate officer he was bound by the injunction. Fed. R. Civ. Pro. 65(d).   After the injunction, Cotton continued the enjoined activity with his new company, Truflo—for which he was an officer and majority owner.  The court found that Truflo was also bound by the injunction because it had been "created" by Cotton "for the purpose of evading the injunction."  154 F.3d at 1355-6.  The court also noted that Truflo "had no independent identity outside of Cotton and Adcon [the original, defendant corporation]." *Id.*

Thus, in both of the cases cited by plaintiffs, the injunction applied against individuals at the time it was entered and their subsequent movement to another entity could not be used to

---

[4] LIFE was not held in contempt, nor was there any finding that LIFE was bound by the injunction except as a result of Brusster.  *Id.  See also New York v. Operation Rescue Nat'l*, No. 92 Civ. 4884(RJW), 1994 WL 517475, at *1 (S.D.N.Y. Sept. 21, 1994) (identifying those held in contempt).

evade the injunction.  Moreover, only in *Additive Controls* was the new entity held in contempt and then only after the court found that Truflo had been formed for the purpose of evading the injunction.  None of these material facts are present here.

The undisputed facts establish that WD was formed in February 2010 and purchased assets from CMA in April 2010, nearly 4 months ***before*** the court issued the injunction against Mora and two months ***before*** plaintiffs even moved for a judgment and injunction.  Further, it is undisputed that WD was formed by and is ultimately owned by Northwood Partners, an investment entity under the laws of the Hong Kong Special Administrative Region.  ECF 149, pp. 6-7.  Northwood Partners manages WD through Eric Chen, a person who had no involvement with Mora or Nexis.  ECF 149, p. 7.  Thus, and unlike Truflo in *Additive Controls*, WD was plainly ***not*** formed as a means of evading this Court's injunction and plaintiff has not put forth any evidence to the contrary.

Moreover, plaintiffs do not point to anyone covered by the injunction with whom WD is "in active concert or participation," and, most importantly, cannot identify anyone at WD who was a director, agent, officer or employee at Mora ***at the time the injunction issued***.  Fed. R. Civ. P. 65(d)(2)(B).  While WD employs many of Mora's former officers and employees such as Mr. Houng, he and all of Mora's other officers and employees were terminated by Mora on April 2, 2010—4 months before the injunction.  *See* the attached Declaration of Terri Poindexter ("Poindexter Decl."), ¶¶ 2, 3; *see also Additive Controls*, 154 F.3d at 152 (former officers and employees are not bound by injunction against corporation unless shown to still be acting for or with it).  Thus, the present situation is unlike the one in *Operation Rescue* and WD cannot be bound by the injunction under Fed. R. Civ. P. 65(d)(2)(C).

C.     **Westinghouse Digital is not the successor to Mora for purposes of the injunction under federal common law.**

Plaintiff also argues that the injunction applies to WD because it is the successor to Mora under federal common law.  The Second Circuit has described the federal common law test for successor liability as follows:

> [the] traditional common law rule states that a corporation acquiring the assets of another corporation only takes on its liabilities if any of the following apply: the successor expressly or impliedly agrees to assume them; the transaction may be viewed as a de facto merger or consolidation; the successor is the 'mere continuation' of the predecessor; or the transaction is fraudulent.

*New York v National Services Industries, Inc.*, 352 F.3d 682, 685 (2d Cir. 2003) ("*NSI II*").  *See also New York v. National Services Industries, Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) ("*NSI IV*").

As an initial matter, successor liability requires ***direct*** sales of assets from the predecessor entity to the alleged successor, *see, e.g.,* ECF 159, p. 13, and plaintiffs have not pointed to any authority that allows successor liability to attach where, as here, the assets were first transferred to an independent third-party.  In this case, Mora assigned its assets to CMA, a trustee with fiduciary obligations to all creditors under California law.  ECF 159, p. 20-21.  This Court has already held that CMA is not a "successor" to Mora under any of the successor liability theories, and in doing so expressly found that there was no evidence that the transactions were fraudulent.  *Id.* at 20-22.  Indeed, while during the recent evidentiary hearing plaintiffs counsel continued to question the transactions, he admitted that plaintiffs "can't prove anything" and otherwise offered no evidence of fraud.  *See* Feb. 22, 2011 Transcript, 45:11-12.  WD purchased the assets from CMA, not Mora, and plaintiffs do not allege and cannot establish that WD is liable as the successor to CMA.

Not only do plaintiffs lack any legal grounds to disregard the assignment for the benefit of creditors process under California law or CMA's role as a fiduciary trustee, plaintiffs also cannot establish any of the federal common law bases for successor liability.  First, this Court

has already determined that WD did not expressly assume Mora's liabilities with respect to this lawsuit, ECF 159, pp. 15-16.  Further, and as discussed above, plaintiffs have presented no evidence that any of the underlying transactions were fraudulent.

A de facto merger occurs under federal common law when a transaction, although not in form a merger, is in substance "a consolidation or merger of seller and purchaser."  *NSI IV*, 460 F.3d  at 209 (citing *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 45 (2d Cir. 2003)).

At common law, the hallmarks of a de facto merger are: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation.  *Id.* at 210.  These elements are all required—and there can be no de facto merger unless there is a continuity of ownership between the two entities.  *Id.*

Here, there is no evidence of any continuity of ownership between Mora and Westinghouse Digital.  First, and unlike most "continuity of ownership" cases, Westinghouse Digital paid cash (and assumed liabilities) to CMA for the assets.[5]  Second, Mora was wholly owned by Nexis Holdings, LLC which in turn was ultimately owned by Richard Houng and other members of his family.  In contrast, Northwood Partners wholly owns Westinghouse Digital.  There is no common ownership of Mora and Westinghouse Digital and no other evidence to support continuity of ownership.  Plaintiffs conceded at the recent hearing that they had no evidence of any identity or overlap of ownership.  Feb. 22, 2010 Transcript, pp. 44:24-

---

[5] As the Second Circuit noted, the continuity of ownership requirement is typically satisfied where the purchasing entity pays for the assets with shares of its own stock.  *Id.* at 210 n2.  Here, WD's consideration was cash and the assumption of certain liabilities—no WD shares were involved.

45:4.  Thus, WD cannot be considered the successor to Mora under the de facto merger exception.

To the extent that these tests differ, it is clear that WD is not the "mere continuation" of Mora because this test also requires an identity of ownership between the two entities.  The Second Circuit has described the "mere continuation" exception[6] as the:

> common law test (sometimes referred to as the identity test), which requires the existence of a single corporation after the transfer of assets,[7] with an identity of stock, stockholders, and directors between the successor and predecessor corporations.

*NSI II*, 352 F.3d at 685.  *See also Graham v. James*, 144 F.3d 229 (2d Cir. 1998) (applying the mere continuation/identity test to copyright infringement).  As previously discussed, here there is no identity of "stock, stockholders, and directors" between Mora and WD.  Mora was ultimately owned by Richard Houng and certain of his family members, while WD is owned by Northwood Partners.  Limited liability companies do not have directors, but are directly managed by their owners (members) or, if appointed, a manager.  *See* 6 Del. Code § 18-402.  Mora was managed by Nexis, Inc., while WD is managed by WD Manager, LLC, who in turn is managed by Mr. Eric Chen and is wholly-owned by Northwood Partners.  ECF 149-1, ¶¶ 7, 9.

---

[6] Plaintiffs' reliance on the "substantial continuity" test is misplaced—the Second Circuit has expressly rejected this test outside the context of labor law and further noted that the "substantial continuity" test is not part of the federal common law.  *See, e.g., NSI II,* 352 F3d 682 (discussing differences between labor law's "substantial continuity" test and the common law "mere continuation" test).

[7] Under the common law, both the de facto merger and mere continuation exceptions require that only one corporation survive the transaction.  *Douglas v. Stamco*, No. 09-1390-cv, 2010 WL 337043, at *1 (2d Cir. Feb. 1, 2010).  Here, it is undisputed that Mora is still in existence and in good standing under California law.  This provides yet an additional basis to reject plaintiffs' successor liability claim.

**III.     Conclusion**

While non-party Westinghouse Digital submits that it is not bound by the injunction under Fed. R. Civ. Pro. 65(d)(2)(A-C) or under any theory of successor liability, it is in fact not doing anything prohibited by the injunction.  Plaintiffs do not claim that any of WD's televisions or other products contain BusyBox software, and WD's maintenance of the old Mora website is done in accordance with the express terms and requirements of the FCC Order.  Randall Decl., ¶¶ 4-6.

For these and all of the foregoing reasons, plaintiffs' motion to hold non-party Westinghouse Digital, LLC in contempt of the Court's permanent injunction should be denied.


Dated: March 9, 2011                                   Respectfully submitted,
New York, New York
                                                       /s/ Barry M. Kazan
                                                       THOMPSON HINE LLP
                                                       Barry M. Kazan
                                                       335 Madison Avenue, 12th Floor
                                                       New York, NY 10017
                                                       T: 212.344.5680
                                                       F: 212.344.6101
                                                       Barry.Kazan@ThompsonHine.com

                                                       *Counsel for Westinghouse Digital, LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2011, I caused to be served copies of Respondent Westinghouse Digital, LLC's Opposition to Plaintiffs' Motion to Find Westinghouse Digital, LLC in Contempt, Declaration of Kenneth Randall in support of Respondent Westinghouse Digital, LLC's Opposition to Plaintiffs' Motion to Find Westinghouse Digital, LLC in Contempt, and Declaration of Terri Poindexter in support of Respondent Westinghouse Digital, LLC's Opposition to Plaintiffs' Motion to Find Westinghouse Digital, LLC in Contempt upon all attorneys of record by electronic means through the Court's ECF system.


/s/ Barry M. Kazan
Barry M. Kazan

14