SOFTWARE FREEDOM LAW CENTER, INC.
Daniel B. Ravicher (DR1498)
Aaron Williamson (AW1337)
1995 Broadway, 17th Floor
New York, NY 10023-5882
Tel.: 212-580-0800
Fax.: 212-580-0898

Attorneys for Plaintiffs *Software Freedom
Conservancy, Inc.* and *Erik Andersen*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

SOFTWARE FREEDOM CONSERVANCY, INC. and : 
ERIK ANDERSEN, :    ECF CASE
                                    :
                    Plaintiffs, :    09-CV-10155 (SAS)
       -against- :
                                      :
BEST BUY CO., INC., SAMSUNG ELECTRONICS : **PLAINTIFFS' REPLY**
AMERICA, INC., WESTINGHOUSE DIGITAL : **MEMORANDUM OF LAW IN**
ELECTRONICS, LLC, JVC AMERICAS : **SUPPORT OF THEIR**
CORPORATION, WESTERN DIGITAL : **MOTION FOR**
TECHNOLOGIES, INC., ROBERT BOSCH LLC, : **PRELIMINARY INJUNCTION**
PHOEBE MICRO, INC., HUMAX USA INC., : **AGAINST DEFENDANTS**
COMTREND CORPORATION, DOBBS-STANFORD : **BEST BUY, CO., INC. AND**
CORPORATION, VERSA TECHNOLOGY INC., : **PHOEBE MICRO, INC.**
ZYXEL COMMUNICATIONS INC., ASTAK INC., :
and GCI TECHNOLOGIES CORPORATION, :
                            Defendants. :

------------------------------------------------------------- X

Best Buy and Phoebe Micro oppose Plaintiffs' Motion for Preliminary Injunction primarily on two grounds, that Erik Andersen's infringement claim will fail on the merits because his copyright in BusyBox is invalid and that Plaintiffs do not suffer irreparable harm from ongoing infringement. However, Plaintiffs can easily demonstrate the validity of Andersen's copyright in BusyBox and the continued distribution of BusyBox by Best Buy and Phoebe (which is conceded) will deprive Plaintiffs of potential contributions and reputational benefits.

Under Andersen's leadership—and with his myriad contributions—BusyBox matured from an obscure, special-purpose software program into an essential component of "embedded" computing devices. Andersen's work enabled consumer electronics companies like Best Buy and Phoebe to profit from new products. BusyBox is not only high quality software, it is also open source, meaning its license allows unlimited copying and redistribution *for free* so long as the rights to BusyBox granted by Andersen are passed on. Chief among these is the right to obtain a complete copy of the corresponding source code for the version of BusyBox being redistributed. Best Buy and Phoebe have proven unable or unwilling to meet these modest requirements, despite launching new products since this suit began that they admit contain BusyBox and despite continuing to distribute BusyBox today. These brazen acts demonstrate that they will continue to infringe Plaintiffs' rights unless enjoined by this court.

## I.    PLAINTIFF ANDERSEN OWNS VALID COPYRIGHTS IN BUSYBOX

Best Buy claims that there is "substantial dispute" as to the validity and extent of Andersen's copyright in BusyBox.[1] Opp'n Dkt. 178 at 1. But from the beginning of discovery,

---

1  Phoebe has moved to join Best Buy's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Dkt. 183. Therefore, Plaintiffs here will respond to Best Buy's brief as if responding to both Best Buy and Phoebe.

Best Buy has been in possession of answers to every question it raises: auditable source code revision logs definitively showing every line of code Andersen contributed to BusyBox; Andersen's copyright registration clearly defining his claim; and emails showing when Andersen began developing BusyBox independent of his employment, and thus owned all his work. Pl.'s Resp. to Def.'s Req. for Docs No. 3;[2] Andersen Decl. Ex. 1; Williamson Decl. Ex. B.

### A.    Andersen Owns Copyright In Significant Portions of BusyBox Version 0.60.3 And Subsequent Versions

Andersen was the maintainer of BusyBox from 1999 through 2006. During the first two years of his stewardship, he also worked for Lineo, Inc.[3] After leaving Lineo, Andersen continued maintaining BusyBox independently for over 4 years, during which he wrote enormous amounts of BusyBox code, served as the program's chief architect, and coordinated the contributions of other developers. Williamson Decl. Ex. D at 88:24–89:10. The first version of BusyBox Andersen released after leaving Lineo was version 0.60.3. That version contained 8,897 lines of brand new code added by Andersen after leaving Lineo. This new code added functionality and improvements to the stability of BusyBox's core features. Williamson Decl. Ex. A at 274:5–276:24. A large portion of this code, 5,794 lines, he wrote entirely by himself. The rest were contributions (or "patches") submitted to Andersen by other developers, each of which Andersen personally reviewed and, if appropriate, integrated into the BusyBox code, often requiring Andersen to rewrite or reorganize the patch in the process. Williamson Decl. Ex. D at 90:5–12.

The precise details of Andersen's contributions were recorded in revision control system software, which allows developers to track every change to a body of code. Revision control

---

2   Attached as Exhibit A to Williamson Decl.

3   The copyright asserted here does not include any code Andersen produced while at Lineo.

systems record every detail of every modification: who made it, when, and what was changed. Williamson Decl. Ex. D at 234:22–239:25; Kuhn Decl. ¶¶ 4–5. Plaintiffs long ago pointed Best Buy to the public website containing BusyBox's commit logs. Pl.'s Resp. to Def.'s Req. for Docs No. 3. A simple inspection of those logs shows that Andersen's original code is indisputably the subject of copyright protection. *See Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir. 1992). Not only did Andersen write from scratch a significant portion of the code added between the time he left Lineo and the release of version 0.60.3, he is also entitled to a copyright for his direction and organization of BusyBox's development because the Copyright Act protects "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship ... ." 17 U.S.C. §§ 101, 103; *Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991).[4] After releasing BusyBox version 0.60.3, Andersen contributed substantial original code and managing contributions to every subsequent version until he ceded maintainership in 2006. Kuhn Decl. ¶ 10 (attributing over 27,600 lines of code to Andersen).

**B.    Andersen's Copyright Registration In BusyBox Version 0.60.3 Is Valid And *Prima Facie* Evidence Of A Valid Copyright**

**1.    Best Buy misstates the facts regarding Andersen's registration**

Andersen registered his copyright in the "[n]ew and revised computer source code" he added to BusyBox, v.0.60.3. Andersen Decl. Ex. 1.[5] Best Buy suggests that the registration is

---

4  Contrary to Best Buy's suggestion, Plaintiffs do not dispute that the other developers who contributed to BusyBox during Andersen's maintainership also own copyrights in their code. But those copyrights held by unrelated third parties are not at issue in this case. All that is at issue is the copyright held by Andersen registered with the Copyright Office.

5  The Andersen Decl. was submitted with Plaintiffs opening memorandum supporting this motion. Dkt. 165-1.

defective because Andersen's registration did not mention the work of other BusyBox contributors. Dkt. 178 at 11–12. That is patently false. In his application, Andersen deposited BusyBox source code containing the copyright notices of several authors.[6] Williamson Decl. Ex. C. Andersen's application did not list every contributor to BusyBox because he was not registering the copyrights of those contributors. Rather, he claimed copyright only in *his own* original contributions. That is why his copyright registration expressly states, "New and revised computer source code *by Erik Andersen.*" Andersen Decl. Ex. 1 (emphasis added). In an ironic effort to characterize Andersen's application as misleading, Best Buy omitted the limitation "by Erik Andersen" when quoting the registration in its opposition brief. Dkt. 178 at 3.

### 2. Andersen's registration is *prima facie* evidence of a valid copyright

Best Buy makes much of the fact that Andersen registered his copyright five years *and four months* after publication, Dkt. 178 at 3, 8, but this court nonetheless has discretion to apply the presumption. 17 U.S.C. § 410(c); *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 227 n.7 (S.D.N.Y. 1988). Congress included the five year time period in 17 U.S.C. § 410(c) to ensure the reliability of the facts brought before the Copyright Office, reasoning that "the longer the lapse of time between publication and registration, the less likely to be reliable are the facts stated in the certificate." 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.11[A][1] (2010) (citing H. Rep. 94-1476, at 156 (1976)). Here, the lapse of four months after the statutory period of five years had no effect on the reliability of the certificate, because the BusyBox revision control system retained clear public evidence of Andersen's copyrighted contribution.

---

6  Those authors include David Keppel, David MacKenzie, Lineo, Inc., Ron Alder, Bryan Rittmeyer, Julien Gaulmin and Nicolas Ferre of Alcôve, Magnus Damm, Quinn Jensen, Linux International, Ralf Baechle, Richard Henderson, and Bjorn Ekwall.

Williamson Decl. Ex. D at 240:15–245:16; Kuhn Decl. ¶¶ 4–5.

## II.  BEST BUY INFRINGES ANDERSEN'S COPYRIGHTS IN BUSYBOX

Best Buy has distributed BusyBox in at least seven of its Insignia products. Kuhn Decl. Dkt. 166 at ¶¶ 8–13. Best Buy concedes as much in its brief, and also concedes that it continues to distribute BusyBox in the NS-BRDRVD4 and NS-WBRDVD2 products today and in software updates for its NS-BRDVD3 and NS-WBRDVD products. Dkt. 178 at 5, 8–9 ("a small subset of that software includes the BusyBox code"); Dkt. 166 ¶¶ 8–13; Williamson Decl. ¶ 7. These distributions violate the BusyBox license, because Best Buy did not give its users notice of their rights in BusyBox, including their right to get a copy of the complete corresponding source code. Andersen Decl. Ex. 2, §§ 2, 3; Dkt. 166 ¶ 10.

Further, once Best Buy made a distribution of BusyBox that did not comply with the license terms, the license terminated, and therefore any further act of copying or distributing BusyBox by Best Buy (even if in compliance with the license) is without Andersen's permission. Andersen Decl. Ex. 2, § 4 ("You may not copy, modify, sublicense, or distribute [BusyBox] except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute [BusyBox] is void, and will automatically terminate your rights under this License."). Thus, Best Buy's failure to comply with the license has terminated any right it may have to make any copies or distributions of BusyBox and its ongoing distribution of BusyBox therefore infringes Andersen's copyrights regardless of whether the distributions today are in compliance with the open source license.

Best Buy's infringing distributions contain BusyBox version 1.2.1, which contains 4,884

lines of code that Andersen contributed to BusyBox version 0.60.3, 3,078 of which he authored. Kuhn Decl. ¶ 8. Thus, Best Buy's distribution of version 1.2.1 of BusyBox violates Andersen's exclusive right to reproduce and distribute copies of his copyrighted code. 17 U.S.C. § 106 (1), (3). Further, version 1.2.1 is unquestionably a derivative work of version 0.60.3, as version 1.2.1 was indisputably based on and is substantially similar to version 0.60.3, so Best Buy's distribution of version 1.2.1 is itself a violation of Andersen's exclusive right to make and distribute derivative works of his registered copyright. 17 U.S.C. § 106 (2), (3). After the release of version 0.60.3, Andersen contributed 27,671 more lines of code to version 1.2.1 (original code as well as selection, arrangement, and coordination of existing code and patches). Kuhn Decl. ¶ 10. Though Andersen has not registered his copyright in contributions since 0.60.3, this does not preclude him from seeking an injunction for infringement of these copyrights. *See* 17 U.S.C. § 412 (listing remedies for which registration is a prerequisite and omitting injunctive relief).

## III.   THE COURT SHOULD ENJOIN BEST BUY FROM DISTRIBUTING BUSYBOX

### A.   Plaintiffs Have Demonstrated A Likelihood Of Success On The Merits

A copyright infringement claim comprises two elements: (i) ownership of a valid copyright and (ii) unauthorized copying, modifying, or distributing of the copyrighted work by another. *See Arista Records LLC v. Doe*, 604 F.3d 110, 117 (2d Cir. 2010) (citing *Feist*, 499 U.S. at 361). As shown above, Andersen holds a valid copyright in significant portions of the versions of BusyBox currently being distributed by Best Buy and these distributions are unauthorized.

### B.   Absent An Injunction, Plaintiffs Will Suffer Irreparable Harm

Irreparable harm occurs where the remedies available at law, such monetary damages,

will not adequately compensate for the harm suffered. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010). In this case, Best Buy has harmed Andersen by appropriating his work on BusyBox while denying him the principal object of that work, namely the incremental improvements that Best Buy (and its suppliers) made to BusyBox: "[i]n exchange and in consideration for this collaborative work [that] the copyright holder permits users to copy, modify and distribute the software code subject to conditions that serve to protect downstream users and to keep the code accessible." See *Jacobsen v. Katzer*, 535 F. 3d 1373, 1379 (Fed. Cir. 2008) (citing *Wallace v. IBM Corp.*, 467 F.3d 1104, 1105–06 (7th Cir. 2006)).

Damages cannot repair Plantiffs' injury because the goals of open source licensing are time-sensitive. Contributions to BusyBox arise because users add functionality to the software that they need for their own use; indeed, this is how most open source software gets made. Best Buy's customers missed the opportunity to modify BusyBox to meet their needs, because Best Buy did not provide them with the BusyBox source code, or notify them of their rights under the BusyBox license, as they were required to do. Compliance after the fact will not remedy that loss, because consumer electronics like Blu-ray disc players fall into disuse quickly, whether from malfunction or obsolescence.[7] If Best Buy's customers are no longer using the players, they will not modify BusyBox to meet their needs, and the BusyBox project will have lost their contributions irretrievably. To Andersen and others, the point of writing open source software is not to make money, but to benefit from the sharing of improvements. Best Buy's failure to comply with the open source license terms denied them this objective, and money

---

7  For example, Best Buy's early Blu-ray Disc players could not connect to streaming services such as Netflix, an important selling point of the new players. Williamson Decl. ¶ 8.

cannot compensate for their loss.

Best Buy did worse than ignore its obligation to Andersen and its customers—it released new products in willful infringement of Andersen's copyright well after Plaintiffs brought this action. Williamson Decl. ¶ 7. Best Buy's casual attitude toward infringement contributes to a culture of corporate infringement of open source software that harms Plaintiffs greatly. By failing to require compliance from its suppliers, Best Buy condones and encourages infringement of BusyBox copyrights. This conspiracy of indifference to the rights of open source software developers is self-perpetuating and deeply harmful. *C.f. Arista Records LLC v. Lime Wire LLC*, 2010 U.S. Dist. LEXIS 115675 at *15 (S.D.N.Y. 2010) (facilitation of widespread infringement caused irreparable harm because it engendered a culture of infringement). Plaintiffs' lost opportunity to receive contributions to BusyBox and the culture of infringement abetted by Best Buy's actions are inherently nonpecuniary and have no remedy at law. As the Federal Circuit has found, open source licenses might well be rendered meaningless absent the ability of the licensor to enforce their restrictions through injunctive relief. *See Jacobsen*, 535 F. 3d at 1379–82.

### C.   Because Any Harm To Best Buy Is Unrecognized Under The Law, The Balance Of Hardships Favors Plaintiffs

While Best Buy's infringement is inflicting irreparable harm on Plaintiffs, an injunction would cause Best Buy no hardship recognized by the law. Best Buy argues that it "would suffer immediate and significant harm" because it would be "unable to make further sales of the accused Insignia Blu-ray players." Dkt. 178 at 20–21. But where "[t]he only possible harm to [an infringer] is the loss of the chance to sell an infringing [product], ... the law does not protect [it]." *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (citing *My-T*

*Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934) (Hand, J.)). Every harm cited by Best Buy derives from its inability to make infringing distributions, and therefore they are all uncognizable under *Warner Bros.* and *My-T Fine*.

Furthermore, Best Buy misleadingly implies that it will make no distributions of BusyBox after March 2011. Dkt. 178 at 2, 8–9. In fact, Best Buy absolutely intends to continue selling the NS-BRDVD4 and NS-WBRDVD2 products it manufactured with BusyBox embedded in them well after March 2011. *Id*. It also intends to continue making electronic firmware distributions that contain BusyBox to its customers who purchased the NS-BRDVD3 and NS-WBRDVD products. *Id* at 8–9, 17. Best Buy argues these distributions are not infringing because they are being made in compliance with the applicable license terms. However, that is irrelevant. As discussed above, Best Buy's rights to make any copies or distributions of BusyBox terminated when it first failed to comply with the applicable license. Andersen Decl. Ex. 2 §4. Andersen has not reinstated any right to Best Buy to make copies of distributions of his copyrighted code, and therefore any distribution is without his permission, whether it is currently in compliance or not.

### D. An Injunction Serves The Interest Of The General Public In Receiving The Benefits Of The BusyBox License

Enjoining Best Buy from continuing to infringe Andersen's copyrights serves the public interest by enforcing the terms of the open source license and promoting access to the improved BusyBox source code to which the license entitles them. *See Jacobsen*, 535 F. 3d at 1378. Best Buy argues that "an injunction against Best Buy will not prevent the accused code from widespread use in the industry. *Exactly the same code* will continue to be distributed by a third party, Broadcom, through its other industry customers." Dkt. 178 at 21 (emphasis in original).

9

This "but everybody's doing it" argument is as baseless as it is callous: Best Buy offers no evidence that any third-party distributions of BusyBox are in violation of the open source license. But even if such violations exist, that Plaintiffs have cause to enjoin similar infringements is beside the point and certainly does not excuse Best Buy's willful infringement. Failing to enjoin blatant violations of open source licenses threatens to erode their effectiveness, which would cause substantial public harm by decreasing the participation in the software distribution model that produces freely available and modifiable software to the world.

### E.    The Court Should Waive The Security Requirement

The underlying purpose of Rule 65(c) is to provide a mechanism to reimburse the enjoined party should it suffer harm as a result of a wrongly issued injunction. *See Beth Medrash Eeyun Hatalmud v. Spellings*, 505 F.3d 139 (2d Cir. 2007); *see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). Here, since Best Buy has admitted the facts necessary to prove Plaintiffs' claim of willful infringement, a mistake by the court is highly unlikely. Best Buy, knowing of Andersen's copyright, knowing that BusyBox was in its products, knowing the terms of the GPL, and *knowing it was violating them*, began infringing anew 8 months after Plaintiffs filed suit. Best Buy has raised no legitimate issues regarding Andersen's ownership or registration of copyrights in BusyBox and regardless, Plaintiffs have here demonstrated both beyond question.

### CONCLUSION

For these reasons, Plaintiffs respectfully request that the motion for preliminary injunction be granted and that the security requirement of Rule 65(c) be waived.

10

Dated: March 21, 2011
       New York, New York

                    Respectfully submitted,
                    SOFTWARE FREEDOM LAW CENTER, INC.

                    By: /s/ Daniel B. Ravicher
                    Daniel B. Ravicher (DR1498)
                    Aaron Williamson (AW1337)
                    1995 Broadway, 17th Floor
                    New York, NY 10023-5882
                    Tel.: 212-580-0800
                    Fax.: 212-580-0898

                    Attorneys for Plaintiffs *Software Freedom
                    Conservancy, Inc.* and *Erik Andersen*

11