SOFTWARE FREEDOM LAW CENTER, INC.
Daniel B. Ravicher (DR1498)
Aaron Williamson (AW1337)
1995 Broadway, 17th Floor
New York, NY 10023-5882
Tel.: 212-580-0800
Fax.: 212-580-0898

Attorneys for Plaintiffs *Software Freedom Conservancy, Inc.* and *Erik Andersen*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
SOFTWARE FREEDOM CONSERVANCY, INC. and   :
ERIK ANDERSEN,                            :   ECF CASE
                                          :
                    Plaintiffs,           :   09-CV-10155 (SAS)
        -against-                         :
                                          :
BEST BUY CO., INC., SAMSUNG ELECTRONICS   :   **PLAINTIFFS' REPLY**
AMERICA, INC., WESTINGHOUSE DIGITAL       :   **MEMORANDUM OF LAW IN**
ELECTRONICS, LLC, JVC AMERICAS            :   **SUPPORT OF THEIR**
CORPORATION, WESTERN DIGITAL              :   **MOTION TO FIND**
TECHNOLOGIES, INC., ROBERT BOSCH LLC,     :   **WESTINGHOUSE DIGITAL,**
PHOEBE MICRO, INC., HUMAX USA INC.,       :   **LLC IN CONTEMPT**
COMTREND CORPORATION, DOBBS-STANFORD      :
CORPORATION, VERSA TECHNOLOGY INC.,       :
ZYXEL COMMUNICATIONS INC., ASTAK INC.,    :
and GCI TECHNOLOGIES CORPORATION,         :
                                          :
                    Defendants.           :
---------------------------------------------------------------- X

New Westinghouse argues in its untimely opposition that even though it knew of the injunction,[1] this Court's order does not apply to it because it is not a successor under the "substantial continuity" test. To the contrary, Plaintiffs' undisputed evidence entered at the February 22, 2011 hearing plainly demonstrates that New Westinghouse is nothing more than a continuation of Old Westinghouse cloaked in different corporate clothing. New Westinghouse does not contest that it acquired all of the assets necessary to run Old Westinghouse's business, and then continued that business from the same location, with the same personnel, under the same name. *See, e.g.,* Feb. 22 Hr'g, Plaintiffs' Ex. 2 at 22:20-25:22. Most importantly, it also admits to distributing the very same infringing firmware that this Court relied upon when issuing its permanent injunction. *See*, Dkt. 131 at 2 n.2 (relying on facts stated in Dkt. 114 identifying TX-52F480S firmware as an infringing distribution of BusyBox); Randall Decl., Dkt. 187 ¶ 5-7. Therefore, since they do not have Plaintiffs' permission to distribute the firmware, New Westinghouse is in contempt of this Court's injunction.

New Westinghouse attempts to evade this Court's injunction by arguing that it has two affirmative defenses to copyright infringement. However, these defenses are barred by the collateral bar doctrine, which prevents a party from challenging a district court order by any means other than moving to vacate or modify the order. If a party does neither and violates the injunction, that party may not challenge the order unless it was transparently invalid or exceeded the court's jurisdiction, neither of which apply here. *See*, *e.g.*, *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995). Regardless, these arguments are also simply wrong on the merits.

---

1  *See* New Westinghouse Opp'n to Joinder Motion, Dkt. 149 at 6 (September 20, 2010) (demonstrating knowledge that this Court ordered both "monetary damages" and an "injunction").

## I. NEW WESTINGHOUSE'S OPPOSITION WAS UNTIMELY AND SHOULD BE STRICKEN

At the evidentiary hearing held on February 22, 2011, the Court set a briefing schedule for this Motion. The Court scheduled a due date for the opposition brief as March 8, and a due date for the reply brief as March 22. *See* Feb. 22 Tr., 55:6-56:2. Though New Westinghouse long ago possessed the letter Plaintiffs agreed to precisely resubmit for this Motion (since January 24), it still neglected to file its opposition until late in the evening on March 9, almost a full 24 hours late. *See* New Westinghouse Opp'n Dkt. 185. Thus, New Westinghouse's filing was late, and should be stricken.

## II. NEW WESTINGHOUSE IS IN CONTEMPT OF THIS COURT'S ORDER

New Westinghouse argues two independent reasons why this Court's order does not apply to it. First, it argues that it does not fall within the scope of the injunction as limited by Rule 65(d). Second, though it does not claim to distribute BusyBox with permission and admits violation of the BusyBox license, it attempts to evade this Court's injunction by arguing that it has an affirmative defense to its infringing activity. Both arguments fail.

### A. **New Westinghouse is a Successor to Old Westinghouse Under Rule 65(d) Because it is a Substantial Continuation of the Same Business**

This Court "is authorized to enforce its order against a successor of the enjoined organization." *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996). New Westinghouse does not contest that the "substantial continuity" test is the federal common law test for determining the scope of an injunction to a successor under Rule 65(d).[2] This Court

---

2  In addition to arguing that they do not fall within the "substantial continuity" test, Dkt. 185 at 7-9, New Westinghouse argues that they are not liable as successors to Old Westinghouse under federal common law, but the inquiry they cite is not the one before the Court, nor is the

noted in its opinion on Plaintiffs' pending motion to join New Westinghouse to this action under Rule 25(c) that the "substantial continuity test asks whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Dkt. 159 at 24. The facts admitted before this Court, which New Westinghouse does not dispute, demonstrate that New Westinghouse is not only "substantial continuation" of Old Westinghouse, but, apart from ownership structure, is *the exact same organization*.

New Westinghouse acquired all of the assets necessary to carry on the business of manufacturing and selling televisions, including the Westinghouse trademark. Feb. 22 Hr'g, Plaintiffs' Ex. 9, § 2.2 (hereinafter, "*APA*"); Feb. 22 Hr'g, Plaintiffs' Ex. 10 ¶ 19, (5-20) (Hereinafter *"California Complaint"*). The asset purchase agreement where New Westinghouse acquired Old Westinghouse's assets even includes a catch-all provision allowing New Westinghouse to obtain any asset it finds "necessary or desirable in connection with the operation of the Business" that were not identified explicitly. *APA* § 2.2(f). New Westinghouse then continued the business of Old Westinghouse from the same location, with the same personnel. Feb. 22 Hr'g, Plaintiffs' Ex. 7 at 2 ("Westinghouse Digital is one of the leading LCD TV manufacturers in the U.S."); Feb. 22 Hr'g, Plaintiffs' Ex. 8 at 7-9 (listing all employees that

---

definition of "successor" the same. Dkt. 185 at 10–12. The federal common law *interpreting Rule 65(d)* uses the "substantial continuity" test to determine whether a successor organization falls within Rule 65(d). *Operation Rescue,* 80 F.3d at 70; *Additive Controls* 154 F.3d 1345, 1355 (Fed. Cir. 1998) ("the substantial continuity of identity test has been adopted as a general expression of the degree of closeness that Rule 65(d) requires for a non-party successor to be subject to the injunction"). That federal common law may use a different test for successor liability in other situations is irrelevant. *See, e.g., New York v. National Services Industries*, 460 F.3d 201, 209 (2d Cir. 2006) (Applying both New York and "traditional common-law principals" to determine successor liability under CERCLA.).

were employed by both Old Westinghouse and New Westinghouse); Feb. 22 Hr'g, Plaintiffs' Ex. 2 at 22:20-25:22 (statements by former Old Westinghouse CEO and current New Westinghouse CEO Richard Houng indicating that the office is in the same location, and that the business was transferred over a weekend). New Westinghouse holds itself out to the public as the same corporation, using the same web address and trade name. *APA* 2.2(k) (noting the transfer of rights to domain names); Feb. 22 Hr'g, Plaintiffs' Ex. 2 at 25:21-22 (statement by Richard Houng, CEO of New Westinghouse and former CEO of Old Westinghouse that his email address did not change); *Id.* at 10, (noting that New Westinghouse received Old Westinghouse's trade name).

      In the face of these undisputed facts, New Westinghouse claims that it falls outside of the "substantial continuity" test by pointing to two "material facts" that it argues should bar this Court from finding it within the scope of its order. Dkt. 185 at 9. First, New Westinghouse claims that the fact that the injunction was entered after they acquired the assets insulates it from this Court's order. *Id.* Second, New Westinghouse argues that it did not set up the transaction to avoid the injunction, and so cannot be found in contempt. *Id.*

      The contention that any "material fact" is determinative to the substantial continuity test has no basis in the law. The Second Circuit teaches that the "critical inquiry" for determining whether a new organization is a successor of the old organization for purposes of Rule 65(d) is whether there is "a substantial continuity of identity" between the two organizations. *Operation Rescue,* 80 F.3d at 70. In determining whether such an identity exists, the Second Circuit instructs district courts to consider "the facts and circumstances of the case." *Id.* Similarly, the Supreme Court counsels in interpreting Rule 65 that "[w]hether one brings himself in contempt

4

as a successor or assign depends on an appraisal of his relations and behavior, not upon mere construction of terms of the order." *Golden State Bottling Co. v. NLRB* 414 U.S. 168, 179 (1973) (quoting *Regal Knitwear Co. v. NLRB* 324 U.S. 9, 14-15 (1945)).  Thus, neither of these contentions amounts to a bright-line rule insulating New Westinghouse from liability.  Further, the facts and circumstances are not in dispute: over a weekend in April, 2010, with the stroke of a pen, Old Westinghouse, without change to management, business, technology or products, magically became New Westinghouse. *See, e.g.*, Feb. 22 Hr'g, Plaintiffs' Ex. 2 at 22:20-25:22.

Even if one or both "material facts" could insulate New Westinghouse from liability, neither does when examining all of the facts and circumstances of this case.  Despite New Westinghouse's contention, courts have regularly found that a transfer of assets performed while the action is pending permits a district court to bind the successor corporation.  For example, the Federal Circuit held that a corporation may be bound by Rule 65(d) when "after a suit begins, a nonparty acquires assets of a defendant-infringer." *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1583 (Fed. Cir. 1986) (overruled on other grounds).  Similarly, the district court in *Additive Controls* held that an injunction is properly applied where the assets were purchased after the suit was filed. *See Additive Controls v. Flowdata, Inc.,* 1994 U.S. Dist. LEXIS 19750 at *37 (S.D. Tex. 1994) (recognizing that an injunction may be extended to include assignees of the infringer's assets when the assets were purchased after the suit was filed).  In this case, New Westinghouse acquired as part of their transaction the very software that violates the injunction, knowing full well that there was an outstanding software copyright claim against the products containing that software. *APA* § 2.2(n) (purchase of the software); *APA,* Schedule 2.3(n)

(showing knowledge of this copyright action); Dkt. 1 ¶ 27 (complaint asserting copyright infringement against Westinghouse's TX-52F480S LCD HDTV); Randall Decl. ¶ 4-7 (acknowledging responsibility for TX-52F480S LCD HDTV firmware). This set of facts further supports binding New Westinghouse to this Court's order.

New Westinghouse also argues that the Court must find that the transaction occurred with the purpose of evading the injunction before finding it in contempt. Dkt. 185 at 9. This is merely an attempt to draw a bright-line rule to prevent the Court from considering all the "facts and circumstances," most of which are fatal to New Westinghouse's opposition. *Operation Rescue,* 80 F.3d at 70. The purpose of the transaction need not be to evade the injunction: "an injunction is enforceable by contempt proceedings … against those to whom the business may have been transferred, whether as a means of evading the judgment *or for other reasons.*" *Id.* (quoting *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674 (1944)) (emphasis added); *see also Additive Controls,* 154 F.3d at 1351–52 (same).

Regardless, despite the fact that ill intent is not a requirement, the facts and circumstances of this case show that the transaction was undertaken in part to evade patent and copyright claims. The very same month this suit was filed, Nexis Inc.—owner of Old Westinghouse, and at the time under the control of New Westinghouse's current CEO—retained an expert to write a fairness opinion it hoped would insulate it from liability. Feb. 22 Hr'g, New Westinghouse Ex. B at 74:21-23 ("The [claim] I focused on … was I believe your client, BusyBox. And that was right when we got retained."). Further, despite acquiring the software, know-how, and intellectual property rights of Old Westinghouse, *see California Complaint* ¶ 19 at 5-19, New Westinghouse

6

continues the exact same business while attempting to shed no fewer than thirteen patent and copyright claims asserted against the assets underlying that business. *APA,* Schedule 2.3(n). Thus, under the facts and circumstances of the case, New Westinghouse, as a substantial continuation of Old Westinghouse, falls squarely within this Court's permanent injunction prohibiting further copying, distribution, or use of BusyBox without Plaintiffs' permission.

### B. New Westinghouse's Distribution is Without Plaintiffs' Permission and Is Therefore In Contempt of This Court's Order

This Court's injunction order reads: "to prevent further copying, distribution, or use of Busybox without permission, Plaintiffs' request for injunctive relief permanently enjoining Westinghouse is granted." Dkt. 131 at 9. New Westinghouse does not claim that it has Plaintiffs' permission to distribute Plaintiffs' copyrighted works, and admits that it is distributing BusyBox as part of the firmware for its products without satisfying the terms of the BusyBox license.[3] By distributing Plaintiffs' copyrighted work without permission, regardless of any untimely affirmative defenses it raises, New Westinghouse is in violation of this Court's order.

Instead, New Westinghouse raises two affirmative defenses to copyright infringement on behalf of both itself and Old Westinghouse. These defenses are not only misplaced, since the question of New Westinghouse's infringement is not currently before the Court, they are barred. *See, e.g., United States v. Crawford*, 329 F.3d 131, 138 (2d Cir. 2003) ("Under the [collateral bar

---

3 Plaintiffs' software is only permitted to be distributed under the terms of the GNU General Public License, version 2 ("GPL"), which requires that when the complied, machine-readable source code ("object code") is distributed that it be accompanied by human readable code ("source code") or an offer for source code. See GPL § 3 (available at: http://www.gnu.org/licenses/gpl-2.0.html). New Westinghouse admits that its firmware is distributed outside these terms. Dkt. 185 at 6 ("those who want to use [BusyBox] must acquire it from BusyBox.net or some other source"); Randall Decl. ¶ 7 ("The firmware download is compiled into machine-only readable form—not a form that can be read and understood by humans").

doctrine] it is well settled that persons subject to an injunctive order … are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.") (quoting *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386 (1980) (internal quotations omitted)).  Plaintiffs address New Westinghouse's contentions only for the sake of completeness.

Since both its contentions are affirmative defenses, New Westinghouse carries the burden of proof.  *See Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998) ("Since fair use is an affirmative defense to a claim of infringement, the burden of proof is on its proponent.").  New Westinghouse relies upon *SmithKline Beecham Consumer Heathcare, L.P. v. Watson pharmaceuticals, Inc.*, 211 F.3d 21 (2d Cir. 2000) for the proposition that its continued distribution "cannot be considered an act of copyright infringement" because of an FCC order.  Dkt. 185 at 6. In *SmithKline*, the Second Circuit interpreted a section of the Hatch-Waxman Act allowing expedited FDA approval of generic drugs to require copyright infringement of the brand name drug's label.  *SmithKline,* 211 F.3d at 27.  Thus, the *SmithKline* court concluded they were "faced with a conflict between" the Hatch-Waxman Act and the Copyright Act.  *Id.* The court resolved the conflict by noting that Hatch-Waxman would be "severely undermined" if forced to take copyright law into account, but that the Copyright Act's purpose of encouraging the production of new works would not be undermined, since the labels would still be created by the brand name drug companies regardless of whether the copyrights thereon were enforceable against generic drug manufacturers.  *Id.* at 28-29.

The *SmithKline* holding is wholly inapplicable to this case.  Unlike the defendant in

*SmithKline*, New Westinghouse is *not* put to the impossible choice of infringing copyright or complying with the the FCC order. The order does not require the distribution of BusyBox, and New Westinghouse is free to use any software it likes to fulfill its alleged obligations to the FCC. There is no collision of statutes or order forcing New Westinghouse to use Plaintiffs' software. Thus, New Westinghouse's contention that it should be excused from infringement is without merit. *See*, *e.g.*, *Int'l Swaps & Derivatives Ass'n v. Socratek, L.L.C.*, 712 F. Supp. 2d 96, 100-101 (S.D.N.Y. 2010) (distinguishing *SmithKline* from cases where there is no "direct conflict" of statutes and recognizing that "a copyright claim is usually actionable even where a statute authorizes certain behavior that may conflict with a party's rights in the copyrighted materials.").

*Gulfstream Aerospace* is similarly unpersuasive. 428 F. Supp. 2d 1369 (S.D. Ga. 2006). In that case the court found that defendant's copying of airplane repair manuals was fair use. Essential to the court's analysis was that "[b]ecasue of [FAA] regulations, [the defendant] cannot produce its own version of [the copyrighted airplane maintenance] manuals." *Id.* at 1373. Thus, the court was again presented with a direct conflict between copyright law and federal regulation requiring the defendant to use specific copyrighted materials when maintaining the airplanes. The court resolved the conflict in favor of the regulation, in part because the FAA wrote a letter stating that "[t]he FAA considers it contrary to the intent of the regulation for a design approval holder [such as Gulfstream] to restrict the ability of an owner to use those [manuals] to either perform, or facilitate the performance of, required maintenance on a product." *Id.* at 1378. Here, there is again no collision between the regulation and the copyright act, nor any evidence that the FCC knew about or desired to bring about New Westinghouse's infringement of

9

Plaintiffs' copyrights. New Westinghouse neglects to mention that there is another way for it to avoid contempt: stop distributing Plaintiffs' software.

Curiously, New Westinghouse nowhere explains why it believes itself legally bound to the FCC order if it is not a successor to Old Westinghouse. New Westinghouse merely alleges, without citation to any supporting documentation, that it "assumed the liabilities and obligations" to Old Westinghouse's customers. See Randall Decl. ¶ 6. This is unsupported by evidence.

### C. Plaintiffs Request All Appropriate Remedies

Plaintiffs request that, upon applying its injunction to New Westinghouse, the Court amend its order to name New Westinghouse. Additionally, where a court finds contempt of its order, the court may fashion a remedy that enforces future compliance. *See, e.g., Paramedics Electronmedicina Comercial, LTD. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657-658 (2d Cir. 2004). Therefore, upon finding that New Westinghouse's distribution of firmware is in contempt of the injunction, Plaintiffs request that the Court order (1) New Westinghouse to provide copies of all firmware contained in its products to Plaintiffs and (2) an audit at New Westinghouse's expense to determine which New Westinghouse televisions currently contain Plaintiffs' software. Additionally, Plaintiffs request that the Court award (1) coercive and compensatory damages, (2) attorney's fees and costs, (3) an order for New Westinghouse to deliver all infringing articles to Plaintiffs for disposition.

### CONCLUSION

For the above reasons, Plaintiffs respectfully ask that the Court grant motion to hold New Westinghouse in contempt of its preliminary injunction.

Dated: March 22, 2011
      New York, New York

                                      Respectfully submitted,
                                      SOFTWARE FREEDOM LAW CENTER, INC.

                                      By: s/ Daniel B. Ravicher
                                      Daniel B. Ravicher (DR1498)
                                      Aaron Williamson (AW1337)
                                      1995 Broadway, 17th Floor
                                      New York, NY 10023-5882
                                      Tel.: 212-580-0800
                                      Fax.: 212-580-0898

                                      Attorneys for Plaintiffs *Software Freedom*
                                      Conservancy, Inc. and Erik Andersen