# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

SUITE 3400
601 LEXINGTON AVENUE
NEW YORK, NY 10022-4611
TEL: 212-980-7400 FAX: 212-980-7499
www.rkmc.com

ATTORNEYS AT LAW

> *Defendant's request is granted. The court will consider Best Buy's response to the new issues raised in Plaintiffs' Reply, as set forth in this letter. So ordered.*
>
> *[signed] Shira A. Scheindlin, USDJ*
> *3/23/11*

David Leichtman
212-980-7401
DLeichtman@rkmc.com

March 23, 2011

Honorable Shira A. Scheindlin
United States District Court Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

VIA FACSIMILE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/11

Re:  *Software Freedom Conservancy Inc., et al. v. Best Buy Co., Inc., et al.*,
     09-cv-10155 (SAS)

Dear Judge Scheindlin:

We represent Best Buy Co., Inc. ("Best Buy") in the referenced matter, and write concerning Plaintiffs' Motion for a Preliminary Injunction. Last Monday, Plaintiffs filed a Reply in Support of their Motion for a Preliminary Injunction ("Reply") and a supporting Declaration of Bradley Kuhn ("Kuhn Declaration"). These two pleadings inject new issues that were never raised in their Motion. For one thing, the Plaintiffs *did not even attempt* to compare Plaintiff Erik Anderson's copyrighted material to the accused devices until the Reply. (Dkt. No. 188 at 1-6). Plaintiffs also raise a new argument on irreparable harm. (*Id.* at 7.) We have not had a fair opportunity to respond to this new matter. Accordingly, we request that the Reply and Kuhn Declaration be stricken, or in the alternative, that the Court consider Best Buy's responses to these new theories and arguments, as set forth below.

1.  **Plaintiffs Have Not Established Infringement Of BusyBox Code Written And Registered By Mr. Andersen.**

    Plaintiffs initially took a broad brush approach in requesting a preliminary injunction, seeking to enjoin Best Buy from "any further copying, distribution or use of Busy Box." (Dkt. No. 164 at 18.) Although they made broad reference to Mr. Andersen's contributions in BusyBox v. 0.60.3 (*id.* at 3), their Motion did not specifically identify what parts of the registered copyright Mr. Anderson allegedly authored, nor did they compare his contributions in the BusyBox code to the accused devices. (Dkt. Nos. 164-166.) Only after Best Buy informed this Court of the multiple ownership issues surrounding BusyBox, and of Plaintiffs' defective infringement proof (Dkt. No. 178 at 10-14), have Plaintiffs even attempted to delineate what Mr. Andersen wrote and registered at the Copyright Office, or to compare Mr. Andersen's registered code to code in the accused products. These new theories and evidence should be stricken because "argument[s] made for the first time in a reply brief . . . are not properly before the

Honorable Shira A. Scheindlin
Page 2

Court." *Cousins v. Pereira*, No. 09 Civ. 1190, 2010 U.S. Dist. LEXIS 136139, at *8 n.3 (S.D.N.Y. December 22, 2010).

Should the Court wish to consider Plaintiffs' belated proof, it will be evident that it is sorely lacking. The copyright owner, Mr. Andersen, is conspicuously silent on what lines of code he wrote. Instead, Bradley Kuhn, an officer of plaintiff Software Freedom Conservancy ("the Conservancy"), suddenly claims that he inspected logs documenting changes to the BusyBox program. (Dkt. No. 189 at 3-4.) Based on this assessment, Mr. Kuhn states that, after leaving his employment with Lineo, Mr. Andersen "added or was the last person to edit" over 8000 lines of code. (Dkt. No. 3 at ¶ 6.) That is not surprising, as Mr. Andersen was the BusyBox "maintainer," (Dkt. No. 190, Ex. 4 at 76:15-22) and accordingly the other authors had to submit their code to him. Then, as the "maintainer," he would "commit" the code authored by others to Busy Box. "Committing" code, and "authoring" code, are two different things. (*Id.* at 88:13-90:12).

Mr. Kuhn also states that, for over 5000 lines of code last "added or edited" by Mr. Andersen, there was no record of attribution to another developer. (*Id.* at ¶ 7.) From this, Plaintiffs speculate without basis that Mr. Andersen "wrote [this code] entirely by himself." (Dkt. No. 188 at 2.) But the absence of proper attribution to another author can hardly be equated with authorship by Mr. Andersen. Mr. Andersen's testimony establishes a haphazard approach to documenting authorship in BusyBox. His use of annotation and editorial comments to track authorship was in no way systematic. (Dkt. No. 190, Ex. 4 at 241 ("I am also given an opportunity to annotate that change [authored by someone else], and I can then add whatever explanatory comments I might choose . . . it contains both the software modification and, potentially, some degree of editorial comment.") And a document that predates the litigation demonstrates that changes to the BusyBox program were "not very carefully tracked." (Dkt. No. 190, Ex. 4 at 242:12-243:25.) Clearly, evidence relating to "commits" and "edits" does not establish authorship. The Kuhn Declaration does not prove authorship.

Plaintiffs' Reply also argues, for the first time, that Mr. Andersen is entitled to pursue an injunction for infringement of his *unregistered* contributions in BusyBox v. 1.2.1. (Dkt. No. 188 at 6.) But this Court does not have jurisdiction over claims of infringement in an unregistered work. *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 213 (S.D.N.Y. 2009); *and see* 17 U.S.C. § 411. And only a court with jurisdiction under the Copyright Act may enjoin the use of a copyrighted work. 17 U.S.C. § 502.

Plaintiffs also argue that Mr. Anderson's registration is not misleading because it recites that it is for "[n]ew and revised computer source code by Erik Andersen." (Dkt. No. 188 at 4.) But the registration does not make clear to the public whether Mr. Andersen wrote all, or only part of, BusyBox v.0.60.3. Nor does the deposit copy of the code (excerpted by Plaintiffs and attached to their Reply brief as Exhibit C to disclose other authors of BusyBox v.0.60.3) indicate which code Mr. Andersen authored.

II. **Plaintiffs Cannot Demonstrate Irreparable Harm To Justify An Injunction.**

Plaintiffs also suggest, for the first time—and again relying strictly on attorney argument and no evidence— that the nature of their harm is somehow related to alleged rapid obsolescence

82081787.1

Honorable Shira A. Scheindlin
Page 3

of consumer electronics. (Dkt. No. 188 at 7.) But, their focus on obsolescence of the accused products that have already been sold to consumers is irrelevant to the preliminary injunction motion, which must be forward looking.

This new theory is simply a distraction from the fact that Plaintiffs have not, and cannot, dispute that Best Buy has eliminated the harm about which Plaintiffs complained in their opening brief. Plaintiffs' Reply does not dispute that Best Buy is now making a written offer for Busy Box source code in connection with the sale of its current, Insignia Blu-ray players, and is also making an offer for source code for the two Insignia Blu-ray players that were most recently discontinued. (Dkt. No. 178 at 8 and n.8; Dkt. No. 181 at ¶ 17.) Thus, Best Buy is complying with the terms of the open source license (GPL v.2) and there is no threat of future harm.

Plaintiffs resort to characterizing Best Buy's ongoing sales of Insignia Blu-ray players as "infringing" activities, (Dkt. No. 188 at 9). Citing no authority, Plaintiffs interpret the GPL v.2 to allow a license to be irrevocably terminated, barring express reinstatement of rights by the copyright owner. (Dkt. Nos. 164 at 8; 188 at 5, 9.) There is no irrevocable termination provision in the license. To the contrary, the GPL v.2 is unambiguous regarding the requirements for distribution of a licensed work—any licensed program may be copied or distributed in object code or executable form (i.e. on a Blu-ray player) so long as it is accompanied with a written offer for the corresponding source code. (Dkt. No. 165, Ex. 2 at 3.) Best Buy is doing that.

When interpreting an unambiguous agreement, courts should not consider individual provisions or terms "in isolation 'but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (quotation omitted). The GPLv.2 is designed to encourage and protect the rights of anyone to copy, distribute and/or modify licensed software, so long as the recipients are also made aware of their ability to obtain corresponding source code. (Dkt. No. 165, Ex. 2 at Preamble.) The license is intended to prevent anyone from denying the rights to copy, distribute or modify licensed software, so long as anyone exercising those rights meets their obligations. (*Id.*)

Lastly, we also note that Plaintiffs' do not dispute that they took too long to bring the pending motion, and that any delay in filing the motion was caused by their unwarranted demands for publication of proprietary code, or for other open source code unrelated to BusyBox, which have nothing to do with this case.

Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

David Leichtman

cc: All Counsel of Record (by e-mail)

82081787.1