1560sofc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SOFTWARE FREEDOM,

4                   Plaintiff,

5              v.                        09 CV 10155

6   BEST BUY,

7                   Defendant.

8   ------------------------------x
                                        New York, N.Y.
9                                       May 6, 2011
                                        2:40 p.m.
10
    Before:
11
                    HON. SHIRA A. SCHEINDLIN,
12
                                        District Judge
13
                        APPEARANCES
14  SOFTWARE FREEDOM LAW CENTER
    Attorneys for Plaintiff Software Freedom Conservancy and
15  Erik Andersen
    BY:  DANIEL RAVICHER, ESQ.
16       AARON WILLIAMSON, ESQ.

17  ROBINS, KAPLAN, MILLER & CIRESI, LLP
         Attorneys for Defendant Best Buy
18  BY:  EMMETT J. McMAHON, ESQ.

19

20

21

22

23

24

25

1560sofc

```
 1            THE COURT:  All right.  Please be seated.

 2            Mr. Ravicher?

 3            MR. RAVICHER:  Yes, your Honor.

 4            THE COURT:  Mr. Williamson.

 5            MR. WILLIAMSON:  Yes, your Honor.

 6            THE COURT:  Mr. McMahon.

 7            MR. McMAHON:  Yes, your Honor.

 8            THE COURT:  Are you the gentlemen that are usually

 9   here for the defense side?

10            MR. McMAHON:  Yes, I was here last time, your Honor.

11   I spoke a little bit.  My partner spoke last time.  I was here

12   last time.

13            THE COURT:  Somebody I got used to seeing wasn't here,

14   okay.

15            So we have, I think, two issues to discuss this

16   afternoon.

17            One is the Best Buy would like to make a motion to

18   strike Bradley Kuhn as an expert witness.  And that letter was

19   dated April 18th from Best Buy.  And there was a responsive

20   letter from the plaintiff dated April 21st.  And it said that

21   such a motion won't be successful.

22            And I, frankly, think there is enough in the letters

23   for me to discuss that issue and not have a motion.  I don't

24   see why I need a motion, I'll give you my views on the issue.

25            And the other one is Best Buy, also defendant's letter
```

1560sofc

```
 1    requesting a premotion conference regarding, again, motion to
 2    strike plaintiff's claim for actual damages.  And to strike, I
 3    guess, plaintiff's claim to obtain or cover Best Buy's profits.
 4    And that letter is responded to on April 28th by the
 5    plaintiff's, again objecting to the request to strike the claim
 6    for Best Buy's profits, not objecting I think to the motion to
 7    strike, so to speak, the claim for actual damages.  And then
 8    saying that plaintiff, in turn, intends to strike any expert
 9    evidence should Best Buy offer any expert evidence as to
10    deductible expenses.
11          Once again, I think there was enough in the letters
12    for me to really take on all of those issues also.
13          So let's start with Bradley Kuhn.
14          The issue here is whether or not Mr. Kuhn is a witness
15    retained or specially employed to provide expert testimony in a
16    case.  Or, one whose duties as the party's employee regularly
17    involved giving expert testimony.  If he falls under either of
18    those categories, Rule 26(a)(2)(B) requires a written report
19    and the rule lays out what the report must contain.
20          If the witness is not specially retained or employed
21    to give expert testimony then no expert report is required.  So
22    the only issue is which category does Kuhn fall in.
23          After reading these letters, I actually think Kuhn is
24    not retained or specially employed to provide expert testimony
25    and not one whose duties as the party's employee regularly
```

1560sofc

1    involves giving expert testimony.  So I don't think any expert

2    report is required and, therefore, his designation as an expert

3    witness is now stricken.

4        All that said, on the other hand, Best Buy has a lot

5    of information from this guy.  He has already been deposed.  As

6    I understand it, Kuhn has been deposed in this case.  And we do

7    know the subject of the testimony.  We do know his identity as

8    expert.  We know the subject of his testimony.  I'm

9    not entirely sure we know the summary of the facts and opinions

10   that he expects to give.  But if you have done that, too,

11   that's fine.  If you haven't done that, you ought to supplement

12   it, minimally, to do that.  But then that will be satisfactory,

13   as I don't think a written report is required.  So the long and

14   short of it is, I don't need a motion.  And if you're not

15   satisfied with that, stand up and make your motion orally, I'll

16   listen to the plaintiff oppose it orally, and I'll rule orally

17   on the record.  But that's pretty much going to be the ruling.

18   I think you're speaking now for the record and not really to

19   convince me, because I have already studied the issue.

20       MR. McMAHON:  I respect that you have gone as far as

21   you have already.  I do have two comments to make.

22       One is that what we have right here is that if Mr.

23   Kuhn wants to testify -- and we apply the exception in rule 26

24   to him, then it should be limited to what Software Freedom

25   could say.  But what we have here is the copyright holder has

1560sofc

1    given some expert a proprietary interest in this case.  He's

2    joined the case.

3            THE COURT:  Some expert.  You mean Mr. Kuhn.  Use his

4    name or his company.

5            MR. McMAHON:  I'm sorry.

6            And then he is providing opinions on behalf of Mr.

7    Anderson.  So whether or not he has paid or not, he is still

8    retained.  And I don't think retained should hinge on whether

9    or not the man is compensated and whether there is an expert

10   agreement.  The only reason that --

11           THE COURT:  He has to be retained as an expert.  He

12   may be retained by the conservancy, but he has lots of other

13   duties, as I understand it.  He manages the finances of the

14   company, he works on members' behalf to make arrangements for

15   third-party services, he counsels members.  So he -- yes, he is

16   retained by the conservancy, but not for the purpose --

17   certainly not for the sole purpose of giving expert testimony,

18   which he has never given before.

19           MR. McMAHON:  Well --

20           THE COURT:  So he is an employee.  He is --

21           MR. McMAHON:  He is employee of a party --

22           THE COURT:  -- retained.

23           MR. McMAHON:  I'm sorry to interrupt.

24           THE COURT:  No, go ahead.

25           MR. McMAHON:  Employee of a party who should not be in

1560sofc

1    this case because they lack standing.

2              THE COURT:  But that's -- we disagree.  You'll get to

3    appeal that someday.  I have already ruled on the standing

4    issue.

5              MR. McMAHON:  Okay.  But my point is, then, let him

6    give opinions under 26(a) that apply to Software Freedom, but

7    not to what Mr. Anderson wrote.

8              THE COURT:  Where does the rule say it has to be

9    limited to that?

10             MR. McMAHON:  It doesn't.  But who is he specially

11   employed by?  He is specially employed -- or he is an employee

12   of Software Freedom.

13             THE COURT:  He is an employee of Software Freedom, not

14   the --

15             MR. McMAHON:  Not the copyright.

16             THE COURT:  That may be true, too.  But I don't see

17   the limitation you're talking about in the rule.

18             Are you really prejudiced here?  You deposed him.

19             MR. McMAHON:  That gets to my next point.

20             THE COURT:  People write reports and then lawyers take

21   depositions anyway, which is beyond my comprehension.  But you

22   deposed him.  So what more do you want to know anyhow?

23             MR. McMAHON:  If the Court's going to limit to what he

24   already gave in his declaration --

25             THE COURT:  Declarations?

1560sofc

```
1          MR. McMAHON:  Well, he filed two declarations with

2     respect to preliminary injunction.

3          THE COURT:  I know that.  Before or after those

4     declarations.

5          MR. McMAHON:  Before.

6          THE COURT:  Do you want to depose him again?

7          MR. McMAHON:  I don't want him to testify.  But if

8     that's the Court's ruling, then I do want to depose him.

9          But, you know, the -- we have asked opinions.  In

10    fact, we asked him at one time in his deposition and we was

11    just evasive.

12         This has been a moving target in this case.  In fact,

13    we told the Court -- we used the words "moving target" when the

14    defendant's first scheduling order --

15         THE COURT:  It is not a word that is uncommon in my

16    courtroom.  Lawyers are always accusing each other of moving

17    targets.  I hear it once a week.

18         MR. McMAHON:  But I don't think my statement is less

19    appropriate because it's been -- I mean --

20         THE COURT:  My point is that that's a fairly common

21    accusation, but go ahead.  What is the point?  I'm offering you

22    a further deposition.  What is the point?

23         MR. McMAHON:  All right.  Well, okay, then I'll take

24    the deposition.

25         THE COURT:  Yeah.  I think that's right.  I'm not
```

1560sofc

1   going to grant your motion to strike, I'm gonna allow him to

2   testify.  I don't think he falls under the part of the rule

3   that requires an expert report.  But in the end you're going to

4   learn what he has to say.

5           MR. McMAHON:  All right.  I'll take his deposition.

6           THE COURT:  Now, we turn --

7           MR. McMAHON:  Your Honor, I have a rebuttal report.

8   Well, the rebuttal reports are due, I guess this is more

9   applicable to the damages issue.

10          THE COURT:  That is interesting.  But what's -- you

11  have rebuttal report of the damages?

12          MR. McMAHON:  I'm just thinking about the expert

13  report.  I don't know, I -- I'll see what he says and make a

14  motion.

15          THE COURT:  Not a motion, you'll write me a letter.

16          MR. McMAHON:  Yeah, right.

17          THE COURT:  Okay.  Now, with respect to the damages

18  point, what rebuttal report do you have coming there?

19          MR. McMAHON:  Oh.  On the damages issue, we've

20  complied with all of the rules.  And in April -- April 10th, I

21  believe it was, we had to give -- the parties had their opening

22  reports, we had to have rebuttal reports.

23          THE COURT:  Right.

24          MR. McMAHON:  I have an expert who is retained.  I

25  don't know what to respond to, because the copyright law says

1560sofc

1    that --

2            THE COURT:  Oh, you're getting into the motion.  I'm

3    about to tell you what I think on that one, too.

4            MR. McMAHON:  Yes.

5            THE COURT:  Let me tell you first, and you can be

6    heard on like you did on the other one.

7            Seems to me the plaintiff is not going to seek actual

8    damages.  What they are seeking is defendant's profits.

9            Is that right?  Mr. Ravicher, is that right?

10           MR. RAVICHER:  Yes, your Honor.

11           THE COURT:  So the part about actual damages you win

12   by default.  But the part about the profits, your claim is they

13   didn't give you a computation under the rule, so they should be

14   barred.  Well, that can't be right, because their burden going

15   forward on that theory is to show gross revenues.  They can't

16   know the gross revenues, so they take it from you and give it

17   back to you.  Whatever the gross revenues are, they are.

18           Then the burden shifts to you if you want to show

19   the -- the -- what do they call it, the costs, the -- the --

20   I'm not sure about the words --

21           MR. McMAHON:  Costs and expenses.

22           THE COURT:  Exactly.  I thought there was one word

23   that covered that, and it won't come to me right now, but --

24           MR. McMAHON:  Offsets.

25           THE COURT:  That's the word I want, too, but it isn't

1560sofc

1    the right word.  But we're on the same page.

2           You get to them, the burden shifts to you, then, to

3    show any costs or offsets.  And you're welcome to do that, but

4    all they're saying is you can't do that now through expert

5    testimony, because you didn't come up with an expert report.

6    And I don't think that's a problem because whoever is in the

7    company, is a fact issue.  Somebody can come in and testify to

8    the fact that this was our cost of producing the goods or

9    whatever.  These are our offsets, this is, who knows what,

10   shipping or packaging, whatever these things are, that we

11   subtract from gross revenues.  That's not a matter of expert

12   testimony, it's fact testimony.  So this is a fairly

13   straightforward one, too.  They did tell you in the initial

14   disclosure that they intend to go after your lost profits, but

15   they are not required to compute it because it's -- their

16   burden is only gross revenues, then the burden shifts.  And

17   there is plenty of case law.  They obtain the gross revenues

18   from you, they give you the figure back, and then you're

19   allowed to prove the offsets.

20           What's so hard about this one?

21           MR. McMAHON:  I still don't have even a statement from

22   them --

23           THE COURT:  As to what your gross revenue is?

24           MR. McMAHON:  As to what our gross revenue is.

25           THE COURT:  Well, what is it?  It comes from you.

1560sofc

1          They can't know your gross revenue from the air.

2     They're allowed to seek in the course of discovery.  They can

3     say:  Dear Mr. McMahon, what are your company gross revenues

4     with this product.  You tell them.  And then they say that's

5     the number.  But it has to come from a defendant.  There is no

6     way a plaintiff who starts bringing a lawsuit knows your gross

7     revenues.  As long as they disclose, which they did, that that

8     was going to be their theory of damages, that we're going to be

9     seeking defendant's profits.

10          MR. McMAHON:  All right.  First, your Honor --

11          THE COURT:  They did tell you that.

12          MR. McMAHON:  The rule says that we get more than a

13     theory of damages.

14          THE COURT:  That's not true.  You get a computation of

15     damages.

16          MR. McMAHON:  Right.

17          THE COURT:  But there is no way they can compute your

18     profits.  Because the law says -- and there is case law that

19     says there is shifting burden.  They come forth with gross

20     revenue, which they obtain from you.  And you have the right to

21     prove the offsets.

22          MR. McMAHON:  Your Honor, I have here -- first, they

23     had the discovery.  They have had a deposition, in fact, about

24     one document they produced.  So they had discovery on a

25     document on a spreadsheet.  We have, at that time, six

1560sofc

1    different products.  Yeah.  Most of them, even the same

2    document --

3             THE COURT:  Let me interrupt you.  But it seems to me

4    so elementary compared to what --

5             MR. McMAHON:  I don't know which product --

6             THE COURT:  Hold on.  Hold on.  That's what I was

7    going to say.  Give me a minute to get my thought out.  This is

8    very easy, compared to the rest of my day.  I have a whole

9    bunch of hard cases today.

10            If they have not told you which product they are

11   talking about in terms of gross revenues, they have to do that.

12   But they are not out of time to do that.  But I think, Mr.

13   Ravicher, you have had discovery as to revenues, right?

14            MR. RAVICHER:  Yes, your Honor.

15            THE COURT:  All right.  So what gross revenues are you

16   seeking?

17            MR. RAVICHER:  We have identified for them the exact

18   document and the exact witness that we deposed that are the

19   factual bases.  It's a spreadsheet.  It has the products.  It

20   has the exact name, product number, gross revenues.

21            THE COURT:  Oh, so you told them which products.

22            MR. RAVICHER:  Absolutely.

23            THE COURT:  All right.  And where did you tell them

24   that?

25            MR. RAVICHER:  In the letter that was attached to our

1560sofc

1    responsive letter to you about this.

2              THE COURT:  Oh.

3              MR. RAVICHER:  So we sent it -- and just -- we didn't

4    think we had a burden to do that at that time, but out of

5    courtesy and out of caution --

6              THE COURT:  I don't think it is courtesy, I think you

7    did have that burden, but you met it.

8              Do you know which page he is talking about, Mr.

9    McMahon?

10             MR. McMAHON:  Well, I think so.

11             THE COURT:  Well, show it to him.  You're standing

12   right there, Mr. Ravicher.  Just show him what you are

13   referring to.

14             MR. McMAHON:  Which document.  Is this the one?

15             MR. RAVICHER:  It's got the Bates numbers right there.

16             MR. McMAHON:  Well, that's 400 pages.  Is this the

17   page you are referring to, because there is one document that

18   is --

19             THE COURT:  Wait, wait.  Talk to each other off line

20   for a minute.  Talk to each other, please.

21             (Pause)

22             MR. McMAHON:  Your Honor, if he is going to clarify

23   it, then that's fine and I get some relief.  Because we have

24   called, and didn't get our phone calls returned, so we filed

25   our motion.

1560sofc

1          But what we have, and what I need to know, for one

2     thing, there is one spreadsheet that has been produced.  He

3     still won't commit to it today --

4          THE COURT:  You still won't commit to it today?

5          MR. McMAHON:  He won't tell me this is the one that he

6     is relying upon.  Some of the documents have gross margins that

7     are slightly profitable.  Most of them have gross margins that

8     are not profitable.  And if you took the aggregate of them all,

9     there is going to be a loss in these documents.

10          THE COURT:  Okay.  Well, I at least found the rule I

11     was speaking about, trying to cite before.  It's section 504(b)

12     of the copyright act, which says the copyright owner is

13     required to present proof only of infringer's gross revenue.

14     And once that is accomplished, the burden shifts to the

15     defendant to prove deductible expenses.  That was the phrase I

16     was looking for.  But that's right out of the copyright act.

17          The point is, you do have to tell Mr. Ravicher which

18     gross revenue you're referring to.  Can't be the whole company,

19     has to be some products, which products.  I agree you get that

20     information from the defendant.  Then you give it back to him

21     and say, with respect to these products, according to your own

22     documents, the gross revenue was X.  That's all.

23          MR. RAVICHER:  I mean the spreadsheet which we

24     identified, which we didn't get into native format until

25     not very long ago.

1560sofc

1          THE COURT:  Okay.

2          MR. RAVICHER:  We identified that spreadsheet.  And

3    there is a page which says -- and I'm sorry I can't remember

4    the exact precise page.  But there is a page that says SKU

5    number, gross revenues.

6          THE COURT:  Okay.

7          MR. RAVICHER:  Now, I know there are other pages that

8    talk about margins and costs --

9          THE COURT:  No, no, that's not your burden.  You just

10   show him the page that says -- he is handing you the page.

11         MR. McMAHON:  No, the one with the SKU numbers --

12         THE COURT:  Maybe that's the one.

13         MR. RAVICHER:  No, this is margins, this is not --

14         THE COURT:  Then you're not prepared, you don't have

15   it with you in court today.

16         When you get back to the office, find that page, fax

17   it over and say that's the number I'm claiming is gross

18   revenues.  The rest is up to him.  The copyright act says that

19   you prove deductible expenses.  And if it comes up a loss, then

20   I don't know what the lawsuit is about.  But he'll tell you the

21   gross revenue figure, and he'll have to prove deductible

22   expenses.  Not through an expert, through a fact witness.

23         MR. RAVICHER:  Right.  The only problem is, your

24   Honor, if I want an expert to rebut whether or not the expenses

25   they are trying to deduct are reasonable or not, I don't know

1560sofc

 1  what they want to deduct, because they didn't provide --

 2          THE COURT:  Correct.  Fair enough.  So just like I

 3  said, he can still depose Kuhn.  When he tells you who the fact

 4  witness is in the company who is going to make their case on

 5  deductible expenses, then you can depose that person.

 6          MR. RAVICHER:  What about providing my own expert?

 7          THE COURT:  Right.  After you depose that person and

 8  you have a quarrel with certain expenses that this person

 9  claims should be deducted and you think they shouldn't be as a

10  matter of industry practice or whatever, I will allow you an

11  expert.  There is no way you could have done that earlier

12  because you don't know what this fellow is going to say.

13          MR. RAVICHER:  Thank you, your Honor.

14          THE COURT:  Yeah, I understand where we have to go

15  here.

16          MR. McMAHON:  Your Honor --

17          THE COURT:  You have to go step by step.

18          MR. McMAHON:  I need to be able to submit an expert to

19  lay down the expenses.  No, you don't, because you didn't and

20  it's too late.  I'm sorry, you are barred.  There was a date by

21  which you were to produce affirmative expert reports.  That

22  date has come and gone.  You're barred.  But, I don't think

23  you're out of luck, because I think it is a fact.  Somebody

24  sits down in the company and says we are claiming this is a

25  deduction; this, this, this.  Her is the dollar amount.  We

1560sofc

```
 1   spent X dollars on postage -- make it up, whatever it is.  We
 2   spent X, X, X, X.  And that's why, when you look at the margin
 3   of gross revenue versus deductible, we took a loss.  Fine,
 4   that's what you get to do.
 5            Then he proposes an expert, theoretically, to rebut
 6   that.  The expert can only say as a matter of industry practice
 7   or something, postage isn't deductible.  You can try that.  I
 8   mean I don't know what else his expert is going to say.  And
 9   then your guy comes back and says, you're just wrong, we do it
10   all the time.  But you can't do an expert now, because you
11   didn't.  You had a chance to do experts, you didn't do experts.
12   But you're not out of luck.
13            MR. McMAHON:  May I -- I understand, your Honor.
14            May I just speak to that, I want to make sure my
15   record is clear on this.
16            I understand the ruling.  The Court had just referred
17   to section 504B.
18            THE COURT:  I did.
19            MR. McMAHON:  Which says, first, the plaintiff's
20   submit the profits --
21            THE COURT:  No.  It does not say that.  It says gross
22   revenue.
23            MR. McMAHON:  All right.  Gross revenue.  He still has
24   not done that.
25            THE COURT:  He says he has.  He doesn't have the
```

1560sofc

1    page with him in Court today.  He said he sent it to you.  He

2    referred you to the page with the SKU number that says this was

3    the gross revenue for that number.  You then tried to hand him

4    a piece of paper.  He said, no, it's not that page, because

5    that page talks about the margin.  He has got one page, and I

6    don't know what it is.  It is not here in the courtroom for

7    some reason.  But when he gets back to office, he'll find the

8    page, fax it to you, that's your gross number.  That's the

9    products we are talking about.  Then you have your people look

10   at it, talk about deductible expenses all you want.  Then he

11   deposes that person.  Then if he thinks he can pick it apart

12   with an expert, he tries.  But if you challenge that expert

13   under Daubert, I may just -- that's not the way -- the field

14   for expert testimony.  We'll see what he comes up with.

15            MR. McMAHON:  All right.  He didn't submit this letter

16   that he is referring to until April 27th --

17            THE COURT:  I realize that, and he says --

18            MR. McMAHON:  -- after they were done with their

19   expert reports.

20            THE COURT:  Sorry, I know you are trying to win the

21   point, you're not going to get there.

22            He didn't get that information in native usable

23   format, he says, until quite recently.  He is giving you back

24   information you had all along.  It's your gross revenues.  You

25   knew 504B better than I did.  You knew after gross revenues

1560sofc

1    come deductible expenses.  Prove them up.

2              MR. McMAHON:  Your Honor --

3              THE COURT:  I'm not foreclosing you.  Everything is

4    going to work out okay.  But I'm not taking an expert report.

5    I don't even think it is really an expert area.  I think it's a

6    fact area.  Company comes in and proves its deductions.  And,

7    usually, for cross-examination, the deductions are challenged

8    and the jury decides.  I mean I have done this before.  Without

9    experts, by the way.  It's a fact issue, I think.  So that's

10   why I'm curious as to what he's going to do when he says we

11   want an expert.  Anyway, he is not sure.  First he's going to

12   take the guy's deposition.  If he has enough there, he won't

13   bother with an expert.  I hope.

14             MR. McMAHON:  Something the Court needs to understand

15   the full fact.  I just want it in the record.

16             What we did, before April 27th, we gave them a

17   document that -- this is not -- he didn't get it for the first

18   time in April.  He is misleading the Court in that respect.

19             They got an earlier chart that they deposed the

20   witness on February 11.  He could have told us which products

21   he was asserting -- he could have done what is doing, now, back

22   in February.  All we did was we supplemented as was required by

23   rule 26, and gave him some new.  That's all we did.  And then

24   he focuses on that and says, well, that then my disclosure was

25   timely.  It wasn't untimely.  We made the disclosure, we just

1560sofc

1    updated as we were required to do.

2            THE COURT:  Sorry, no prejudice.  You know your gross

3    revenues as well as he does.  I agree with you, he has to be

4    specific and tell you what products.  Maybe he should have done

5    it earlier.  To me, no harm no foul.  You are not going to

6    suffer.  He is going to tell you which ones.  Somebody at the

7    company is going to look at deductions.  You can depose that

8    person.  That may be the end of the matter.  He attempts

9    experts, you may challenge it.  If you don't challenge it, your

10    guy may be able to rebut it easily.  Let's take this step by

11    step.

12            MR. McMAHON:  Our experts will also attribute indirect

13    costs to the sales --

14            THE COURT:  What experts?

15            MR. McMAHON:  Whenever experts testify about -- this

16    is what you're cutting me off on, your Honor.

17            THE COURT:  What -- you know you are presuming,

18    without ever seeing it, that he is going to be able to come up

19    with an expert that is acceptable on this.  I think it's a fact

20    question.  I have said that three times on this record.  I

21    don't even think it's an area for expert testimony.

22            MR. McMAHON:  Right.

23            THE COURT:  But if he tries, and you look at it, and

24    you challenge it, the first step is do I agree with you that

25    the expert should be stricken.  If I don't agree with you, the

1560sofc

```
 1   rebuttal may be easy for you.  You may be in the same hands as
 2   the person who figured out the deductible expenses.  Why don't
 3   we go step by step.  He may not ever propose an expert.  He may
 4   be satisfied just challenging your fact person.  I don't know
 5   yet.  You don't know yet.
 6            MR. McMAHON:  All right.  I made my point.
 7            THE COURT:  Yes.  And after you get that expert
 8   report, and if you lose a challenge to it, maybe I would relent
 9   then and say, well, I see so much new here, you should really
10   be able to rebut his expert, I don't know.  Because you were
11   not barred from rebuttal experts, you are only barred from
12   affirmative experts.  So we need to go step by step.
13            MR. McMAHON:  May I address one more unrelated issue.
14            THE COURT:  Unrelated, okay.
15            MR. McMAHON:  With the concession that they're not
16   seeking damages to themselves.
17            THE COURT:  Actual damages.
18            MR. McMAHON:  Right -- well, right.
19            THE COURT:  It's called actual damages.
20            MR. McMAHON:  I believe that that puts the death nail
21   on the pending motion for preliminary injunction.  I mean
22   they -- we've argued -- this is just something new that I want
23   the tell the Court.
24            THE COURT:  Okay.
25            MR. McMAHON:  We have argued that there was no
```

1560sofc

1    evidence, whatsoever, in their affidavits about any actual harm

2    that was sustained by either of the plaintiffs in this case.

3    And the only comments that were made were lawyers' arguments.

4    And now it is -- it is out of the case based on this

5    concession.  So I think that just eliminates any allegation of

6    harm.  And the Court should --

7              THE COURT:  Of irreparable harm?

8              MR. McMAHON:  Yes, irreparable harm.  Well, first you

9    have to have harm.  And then it has to be irreparable.

10             THE COURT:  That's true.  Let's see what mer. Ravicher

11   has to say.

12             MR. RAVICHER:  The reason why we need preliminary

13   injunction is because the harm being caused by their failure to

14   comply with the license is not causing economic harm.  It can't

15   be compensible for with money later on.  That's why we had to

16   move for preliminary injunction.  The harm is irreparable

17   because of the other effects --

18             THE COURT:  Noneconomic effects.

19             MR. RAVICHER:  Right.

20             THE COURT:  What are the noneconomic effects?

21             MR. RAVICHER:  It destroys the ecosystem under which

22   the open source exists.  This was the whole federal circuit

23   opinion, where the district court there had denied a

24   preliminary injunction because they felt there was no

25   irreparable harm.  The federal circuit said, no, allowing

1560sofc

```
1    copyright holders even to license their copyrights for free, in

2    order to encourage collaboration, and future development, and

3    return --

4            THE COURT:  Okay.  So he is conceding on this

5    record -- that's helping you Mr. McMahon -- that he is -- that

6    he is talking about noneconomic harm.

7            MR. McMAHON:  Right.  And there is no evidence that

8    was submitted to the Court for noneconomic harm.

9            THE COURT:  All right.  But that's already briefed, I

10   assume.  I assume that is already briefed?

11           MR. McMAHON:  Yes, it is.

12           THE COURT:  All right.  So that's not new.

13           But what you have got is a very simple and pure

14   concession it's not economic, and it's not compensible to

15   damages, which is exactly why he says he needs a PI.

16           MR. RAVICHER:  While we are talking about preliminary

17   injunction, I wasn't going to mention this today, because I

18   know Mr. McMahon has gone through some personal difficult

19   circumstances.  But in their motion papers opposing our

20   preliminary injunction, they said certain things about when

21   they would stop making products with Busy Box in them.  They

22   said, quote:  Products manufactured after March no longer

23   contain Busy Box.

24           So a couple -- about a week and a half ago, I sent

25   them privately a message saying, hey, can you just confirm --
```

1560sofc

 1   now it's mid April -- can you confirm that what you said in

 2   your opposition --

 3           Because that's very important whether or not they are

 4   still making products.  They concede they are still selling the

 5   products that they made in Busy Box.

 6           THE COURT:  I understand.

 7           MR. RAVICHER:  -- and I understand that there are

 8   still circumstances.

 9           I have gotten, well, our clients are travelling.  It

10   seems to me a very simple question, yes or no, are products

11   still being made --

12           THE COURT:  Yes or no, are products still being made?

13           MR. McMAHON:  No product has been made and shipped

14   into the United States since March 31st, so -- so the answer is

15   that the statement was correct.  We told you that any products

16   manufactured after the date would have would have Busy Box

17   removed.  Well, they are going through QC, from what I

18   understand.

19           Well, they are going through QC, from what I

20   understand.  I had a -- I had a personal emergency this week, I

21   couldn't get all of the facts; we don't need to get into that.

22   And I told Mr. Ravicher this.  But I tried to make the calls

23   that I could.  But I have confirmed that no products -- the

24   statement is correct, I mean nothing has been manufactured and

25   shipped into the United States with Busy Box on it.

1560sofc

1      MR. RAVICHER:  So --

2      THE COURT:  Since March 31?

3      MR. McMAHON:  Right.  The affidavit says -- the plan

4  was as of --

5      THE COURT:  I don't need more.  Since March 31?

6      MR. McMAHON:  Yes.

7      THE COURT:  Does that answer your question?

8      MR. RAVICHER:  Well, that's one of the two questions.

9      THE COURT:  What is the other one?

10     MR. RAVICHER:  The other one is products that people

11  purchased long ago, when they were at home, but they are

12  connected to the internet.  So then Best Buy shoves down the

13  internet the new firmware updates, new software updates to

14  these players all the time.  And they also said in their

15  opposition to our preliminary injunction, that none of those

16  new firmware updates would contain Busy Box after March 31.

17     THE COURT:  Okay.  Do any of the firmware updates

18  after March 31 contain --

19     MR. McMAHON:  I don't know, your Honor.

20     I would anticipate that since the new product has not

21  been launched yet, that it is probably that they --

22     THE COURT:  When can you get an answer.  You already

23  said you don't know, that's all you needed to say.

24     MR. McMAHON:  Within a week, within a week.

25     THE COURT:  Within another week from today?

1560sofc

1        MR. McMAHON:  Well -- all right, Tuesday.  Your Honor,

2   I won't be back to the office until --

3        THE COURT:  Wednesday?

4        MR. McMAHON:   -- Wednesday.

5        THE COURT:  Yes.  You're not back until Wednesday?

6        MR. McMAHON:  Yes, your Honor.  I to have stay here

7   this weekend.  I have another matter in New Jersey.

8        THE COURT:  All right, can you wait until next Friday?

9        MR. RAVICHER:  I just want an answer --

10        THE COURT:  I know what you want.  Can you wait until

11   next Friday to get an answer to the second question.

12        You have the answer to first question on the record.

13   Can you wait until next Friday to get an answer to the second?

14        MR. RAVICHER:  I just want to know when I can expect

15   an answer.

16        THE COURT:  Friday.  Next Friday is May 13.

17        MR. McMAHON:  No -- your Honor --

18        THE COURT:  Please give him the answer on the firmware

19   updates.

20        MR. McMAHON:  But I can add this to it.  And what we

21   also said -- so I'm complete here.  We also said that with --

22   we will be making -- the license requires that anybody using

23   Busy Box must offer to make it available and -- since that

24   time, since March 31, Best Buy has on its website, the same

25   place where they would go to get the downloads, has made the

1560sofc

```
 1    offer.  And, in fact, someone, probably someone at their
 2    instance, has actually requested it.  And it has been
 3    delivered.  So we have the CD.  So we are -- regardless of
 4    whether or not it is in the software, we are making the offer
 5    that's required by this general purpose license, and we have
 6    been since the --
 7              THE COURT:  Do you understand --
 8              MR. RAVICHER:  Yeah, so what he is saying, is they are
 9    complying with the license today --
10              THE COURT:  Right.
11              MR. RAVICHER:  -- so he is no longer infringing our
12    copyrights.
13              We addressed this in our papers.  That directly
14    conflicts the license itself, says once you breach this
15    license, your rights are gone forever until they are
16    reinstated.
17              So it's kind of like if a police officer pulled me
18    over for speeding, and I say, well, I'll abide by the speed
19    limit now.  I was speeding, right?  And if I was recklessly
20    driving, you can take away my license, it doesn't matter if I'm
21    now going to drive according to the law, I've lost my license
22    exactly the same by breaking the license, they have lost their
23    license, they have no permission even if they do now comply
24    with the license.
25              THE COURT:  All right.  You have made that argument,
```

1560sofc

1    I'll see it.

2            MR. McMAHON:  It has been briefed.  I obviously

3    disagree with them.

4            THE COURT:  But it's been briefed.

5            MR. McMAHON:  Yes.

6            THE COURT:  Okay.  All right, I think that's what the

7    conference was about.  It's done.  You made a promise, Mr.

8    Ravicher, when you get back to the office you are going to send

9    this document that gives that gross revenue figure.

10           MR. RAVICHER:  Yes, your Honor.

11           MR. McMAHON:  And he has made a promise that he is

12   going to kind of me a deposition of Mr. Kuhn.

13           THE COURT:  No, I have ordered it.

14           MR. McMAHON:  All right, thank you.

15           THE COURT:  And I have also ordered that whoever is

16   going to testify about deductible expenses, he can depose.  As

17   soon as gets arranged, that person should calculate it.  Once

18   you get this piece of paper that you already have, he points

19   you to it, then designate the person in the company, do those

20   calculations, you take that person's deposition.  Then he'll

21   decide about experts, then he'll see if you challenge it, then

22   I'll rule, and then I'll see what I can do for you, Mr.

23   McMahon.

24           Got the sequence?

25           MR. McMAHON:  Yes, your Honor.

1560sofc

 1            THE COURT:  Okay, good.

 2            MR. McMAHON:  I -- please don't -- I just want to make

 3    sure my record is clear that I'm objecting to foreclosure of

 4    the expert.

 5            THE COURT:  Right.  Got it.  Okay.  Thank you.

 6            MR. RAVICHER:  Thank you, your Honor.

 7            (Adjourned)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25