188ksofc                         Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SOFTWARE FREEDOM CONSERVANCY &
ERIK ANDERSEN,

                 Plaintiffs,

            v.                              09 CV 10155 (SAS)

ZyXEL COMMUNICATIONS INC, and
PHOEBE MICRO, INC.,

                 Defendants.

------------------------------x
                                         New York, N.Y.
                                         August 8, 2011
                                         5:00 p.m.

Before:

                    HON. SHIRA A. SCHEINDLIN,

                                         District Judge

                         APPEARANCES

LAW OFFICES OF DANIEL RAVICHER
     Attorney for Software Freedom Conservancy and Erik
Andersen
DANIEL RAVICHER

ROBINS KAPLAN MILLER & CIRESI LLP
     Attorneys for ZyXEL Communications, Inc.
DAVID LEICHTMAN
MATTHEW J. YANG

COHEN LAW GROUP, PC
     Attorneys for Phoebe Micro, Inc.
BRIAN COHEN

ALSO PRESENT:  TINA WONG, (By Speakerphone)

188ksofc                         Conference

1              (In open court)

2              (Case called)

3              THE COURT:  OK, so I guess today is a premotion

4     conference.  Four letters have been received:  The plaintiff's

5     July 15th letter describing his intention to move for summary

6     judgment; I don't know how to pronounce it -- ZyXEL?

7              MR. LEICHTMAN:  ZyXEL.

8              THE COURT:  -- ZyXEL's July 15th letter, also

9     requesting summary judgment; ZyXEL's July 18th letter claiming

10    there are inaccuracies in plaintiff's July 15th letter that

11    should be addressed now, before a briefing on summary judgment;

12    and then plaintiff's July 19th letter that was response to both

13    ZyXEL's letters.

14             So we do have a number of topics to discuss.  One that

15    I think we should start with is sort of toward the back of my

16    agenda.  That has to do with the expert evidence issue.

17             Plaintiffs say that ZyXEL has waived any right to

18    introduce expert evidence because it didn't produce any initial

19    expert report or rebuttal expert report; and also ZyXEL never

20    served any deposition notice on plaintiff's expert, Mr. Khun,

21    or any expert discovery requests on plaintiffs at all;

22    therefore, ZyXEL should be barred from producing any expert

23    evidence.  ZyXEL says it hasn't had the opportunity to provide

24    a expert rebuttal report, expert rebuttal witness.  It says

25    that during the 30(b)(6) deposition of Khun, Khun refused to

1   testify to any details of his expert opinion and was instructed

2   not to answer such questions.

3          Plaintiffs respond by asserting that those questions

4   related to Kuhn's rebuttal expert report regarding the now

5   dismissed codefendant, Best Buy, and were therefore improper

6   and untimely; and during the deposition plaintiffs told ZyXEL

7   that this deposition was a 30(b)(6) deposition limited to the

8   designated topics and was not an expert deposition of Khun.  So

9   plaintiffs state that they're going to seek to exclude any

10  improper portions of that deposition, including any questions

11  related to Kuhn's rebuttal expert report, and that ZyXEL should

12  be barred.

13         Now, my clerk has just written me a note, that I

14  apparently forgot to put counsel for Phoebe Micro on the phone.

15  I'm not going to repeat all that, but I will ask the court

16  reporter to read back that whole language, introduction of

17  mine.

18         (Pause)

19         THE COURT:  Hello?  Hello.

20         MS. WONG:  Yes this -- defendants -- Phoebe Micro.

21         THE COURT:  What's your name?

22         MS. WONG:  Tina Wong with --

23         THE COURT:  You're breaking up.  I don't know if

24  you're on a cell phone.  All I caught is your first name.  I

25  don't have your last name.

188ksofc                         Conference

1          MS. WONG:  Wong, W-O-N-G.

2          THE COURT:  Ah, Ms. Wong, OK.

3          Are you on a cell phone?

4          MS. WONG:  Yes, I'm sorry.  I'm traveling, so I don't

5     have a phone landline.  My apologies.

6          THE COURT:  Well, you were not coming in clearly.  We

7     really won't be able to hear what you say for the record, but

8     you'll be able to hear what we're saying.  So I'm going to

9     begin by asking the court reporter to read back my statement

10    which introduced the first of the topics that I intend to

11    discuss at this conference.  So hold on a second and he'll read

12    it to you.

13          (Record read)

14          THE COURT:  OK, did you hear that, more or less,

15    Ms. Wong?

16          MS. WONG:  Yes.  Thank you.

17          THE COURT:  OK, so now you're up to where we're up to.

18          My inclination on that one is absolutely to bar ZyXEL

19    from offering any expert evidence.  Who here represents ZyXEL?

20    Mr. Leichtman, you want to say anything about that?

21          MR. LEICHTMAN:  Yes, your Honor.  Your Honor may

22    recall --

23          THE COURT:  I think you better come close so Ms. Wong

24    hears you too.

25          MR. LEICHTMAN:  Sure.

188ksofc                    Conference

1          Your Honor may recall that just in terms of the

2     sequence of timing of things here, our firm represented Best

3     Buy in this case, and Best Buy then settled.  After that

4     settlement, we were asked by ZyXEL to come in and replace their

5     existing counsel and represent them in the case.

6          What happened with respect to ZyXEL, your Honor, is

7     they believed they were going down a road towards a settlement.

8     Neither side really engaged in any discovery.  But all that

9     they had received from the plaintiff by way of expert

10    disclosures was two sentences on what Mr. Khun was going to

11    testify about.

12         THE COURT:  You mean his report is a two-sentence

13    report?

14         MR. LEICHTMAN:  Yes, your Honor.

15         THE COURT:  Well, he'll be limited to the two

16    sentences.

17         MR. LEICHTMAN:  Can I hand it up?

18         THE COURT:  No, because it doesn't matter.  That's all

19    he's going to be able to say -- experts are limited to the

20    opinions expressed in their report.  That's why we have expert

21    reports in the Federal Rules of Civil Procedure, and nobody's

22    going around the rules here.  If that's all he wrote,

23    Mr. Ravicher, then that's all he's testifying to, end of story.

24    Why don't you read the two sentences.

25         MR. LEICHTMAN:  Sure.  But if I may, you'll recall --

188ksofc                    Conference

```
1          THE COURT:  I don't want to recall anything.  Read me
2     the two sentences, because that's what he's going to be allowed
3     to say, period.
4          MR. LEICHTMAN:  Sure.  "Bradley M. Khun to testify to
5     the facts and opinions contained in his declaration before the
6     Court in the abovereferenced matters."
7          THE COURT:  Well, then there's a declaration.
8          MR. LEICHTMAN:  That's right.
9          THE COURT:  That's not two sentences, is it?
10          MR. LEICHTMAN:  No, but the declaration doesn't relate
11     to my client.
12          THE COURT:  Well, then he's not testifying about your
13     client, he's testifying so far to what he said in the
14     declaration.  Go ahead.
15          MR. LEICHTMAN:  OK.  "The similarity between code
16     produced by defendants and contributions to the BusyBox
17     software program by Erik Andersen."
18          THE COURT:  OK, and he can't testify to that.
19          MR. LEICHTMAN:  OK, but there's a lot that would be
20     packed in there that I have not --
21          THE COURT:  I can't help it.  You had the opportunity,
22     while you busily thought you were settling, to ask for expert
23     discovery and didn't.  We don't reopen the door.  If that
24     discovery is closed -- and I believe it is -- that's it, you
25     waived.
```

188ksofc                    Conference

1           MR. LEICHTMAN:  Well, if I may, your Honor, there had

2    been an agreement to take Mr. Kuhn's deposition by ZyXEL.  That

3    got pushed off until after those deadlines had expired because

4    the parties were talking about settling.  When Mr. Khun then

5    came to be deposed, and your Honor had said in that context of

6    the Best Buy case these two sentences are not sufficient but

7    you can take his deposition --

8           THE COURT:  Right.

9           MR. LEICHTMAN:  -- so we assumed that the same would

10   apply for ZyXEL and would apply for Best Buy.

11          THE COURT:  You can't assume anything.  That was a

12   30(b)(6) deposition.  It was done in response to a notice that

13   designated topics.  That's why we have Rule 30(b)(6).  And

14   apparently it was not converted, so to speak, into an expert

15   deposition because it was not noticed as an expert deposition.

16          MR. LEICHTMAN:  Well, I clearly put Mr. Ravicher on

17   notice in advance of the deposition, we intended to find out

18   his expert opinion.

19          THE COURT:  Really?  How did you do that?

20          MR. LEICHTMAN:  By email.

21          THE COURT:  I guess you can produce that email?

22          MR. LEICHTMAN:  I can.

23          THE COURT:  Then if you gave you notice, Mr. Ravicher,

24   why did you instruct the witness not to give answers to

25   questions regarding his expert opinion?

188ksofc                    Conference

1          MR. RAVICHER:  I don't recall -- I don't know what

2     email he's talking about.

3          THE COURT:  I don't either, but he says he can produce

4     it, so I can't do much more today.  He says, I gave him notice

5     and I was going to explore the expert opinions.  And despite

6     that notice, you wouldn't let him testify as to his expert

7     opinions.

8          MR. RAVICHER:  I'd just like to correct a couple

9     things:

10          First of all, Mr. Khun answered dozens of questions

11     about his expert report in the deposition.  I made objections.

12     There were a couple of specific questions about Best Buy that I

13     said he wasn't prepared to answer, and Best Buy had nothing to

14     do with any deposition topics.  But if we look at the

15     deposition transcript, he answered pages and pages, hours and

16     hours and hours, of questions.  We went through almost every

17     paragraph of his expert report.  So for them to say he didn't

18     answer questions about his expert report is not true.

19          Secondly --

20          THE COURT:  All right, but then the objections are

21     overruled.

22          MR. RAVICHER:  But the email I believe he sent me, I

23     haven't seen it, but I believe it was after discovery, after

24     expert discovery closed.

25          THE COURT:  But before the Khun deposition?

188ksofc                    Conference

1          MR. RAVICHER:  But that was not a Kuhn deposition; it

2     was a 30(b)(6) --

3          THE COURT:  But if he said to you before the

4     deposition, while we are at Mr. Kuhn's deposition, given that

5     he is the expert and has written a report of two lines, which

6     the judge said can be explored at deposition, I intend to

7     question him as to his expert opinions.  That changes

8     everything.

9          MR. RAVICHER:  But I responded by email, if I remember

10    correctly, almost instantly, saying that's not proper; if you

11    want to take it to the judge for a ruling, you can.

12         THE COURT:  And I would have ruled in his favor,

13    because apparently I said on the record, that's the time to

14    explore his opinions; since this thing is so barebones, go

15    ahead and ask him whatever you want at deposition.  But

16    basically you're saying people did ask about his expert

17    opinions.  And while you preserved the objections for the

18    record, I can now overrule them; and whatever he said there is

19    part of his opinion, and you know what he's going to say.

20         MR. RAVICHER:  I think there's confusion between his

21    report.  First of all, he was an internal expert, so he had no

22    duty to provide an expert report.  We went over that issue with

23    Best Buy.  What he's talking about is our initial disclosures

24    of who our experts were, which was done in April.

25         Now, Mr. Khun did provide a rebuttal report in May to

188ksofc                    Conference

1    Best Buy's expert, and so what he's talking about here, where

2    he asked him questions about his report, he's talking about the

3    Best Buy rebuttal report, not these two lines of our expert

4    disclosure.  Again --

5              THE COURT:  Were any of those questions answered about

6    the rebuttal report?

7              MR. RAVICHER:  We were there seven hours, your Honor.

8              THE COURT:  I know.  Were questions answered about the

9    rebuttal report?

10             MR. RAVICHER:  Yes.

11             THE COURT:  All right, all those answers are there, on

12   the record and can be used.

13             MR. LEICHTMAN:  I understand that.  But what he

14   wouldn't answer was questions relating to an infringement by

15   ZyXEL.  And so what I still don't have is any opinion from him

16   whatsoever about what manner in which ZyXEL --

17             THE COURT:  Maybe he's never given an opinion on that.

18             MR. LEICHTMAN:  Well, if he's not given an opinion on

19   it, then I don't need an expert.

20             THE COURT:  That's right.

21             MR. LEICHTMAN:  If he's going to be permitted to give

22   an opinion on it, then I need a rebuttal expert, and that's --

23             THE COURT:  Hold on, hold on, hold on.  The case is

24   getting out of control, and I won't allow that.  I am not

25   starting expert discovery all over again.  If he has given no

1    opinions about ZyXEL, that's the end of that story.  Has he

2    given any opinions about ZyXEL, in writing or anything else?

3            MR. RAVICHER:  He's given opinions in a deposition,

4    yes, about ZyXEL and his infringement analysis, yes.

5            THE COURT:  In the deposition?

6            MR. RAVICHER:  Yes.

7            MR. LEICHTMAN:  I don't think he did, but --

8            THE COURT:  What do you mean, you think?  There's a

9    transcript, folks.

10           MR. LEICHTMAN:  There is a transcript.

11           THE COURT:  You don't have to think what he said.

12   It's in the transcript.

13           MR. LEICHTMAN:  When I asked what his expert opinion

14   about ZyXEL's infringement, Mr. Ravicher instructed him not to

15   answer.

16           THE COURT:  His testimony will be limited to that

17   which he did answer and not to which there was objection.

18           Mr. Ravicher, you can't have it both ways.  If this

19   guy's going to testify, you couldn't do that, you couldn't say

20   he's not allowed to tell his opinion and then he's allowed at

21   trial.  That's sandbagging, and it's wrong.  So his opinion is

22   limited to whatever he answered at the deposition.

23           MR. RAVICHER:  Your Honor, just to defend myself, this

24   was -- they never served any -- if they served --

25           THE COURT:  I can't help it.  It's gamesmanship, and

1    it's wrong, and it's wrong for me to have to listen to it.

2    Everybody knew what was going on there.  If he's going to be

3    the trial expert witness, then let him answer the questions and

4    be done with it.  Let him give his opinions and expound on

5    them.  If you say I instruct him not to answer, then there's no

6    opinion on the record, not in writing and not at deposition,

7    and it's over.

8            So whatever he said about ZyXEL comes in, and not

9    more.  And you do not get a rebuttal expert.  You've known

10   about this problem for a long time.  Expert discovery is over.

11   It's too late for you to put in any expert witnesses.  You were

12   busy settling.  You could have worked on two tracks at once;

13   I'm not reopening expert discovery.  The record is what it is.

14           MR. LEICHTMAN:  Let me make an alternative proposal,

15   your Honor.

16           In the context of Best Buy, Best Buy had put an expert

17   report in.  ZyXEL would be satisfied as an alternative to use

18   the same expert and to be limited to what that expert said in

19   his report at trial.  There is no notice --

20           THE COURT:  Did you ever depose that fellow?

21           MR. RAVICHER:  We served deposition notices on Best

22   Buy's counsel, which was his firm.

23           THE COURT:  Yes.

24           MR. RAVICHER:  They said he had some health issues and

25   so they wanted to postpone the scheduling of the deposition.

188ksofc                          Conference

1    Then we settled, so we never had --

2              THE COURT:  I would accept that alternative if he's

3    deposed, if Mr. Ravicher has an opportunity to depose him, and

4    that ends the problem.

5              Now, let's talk about another discovery problem.

6    Plaintiffs say that ZyXEL is precluded from offering any

7    witnesses with regard to profits.  On June 10th, plaintiffs

8    provided ZyXEL with a calculation of ZyXEL's gross revenues

9    attributable to the alleged infringement and the documents that

10   supported the calculation.  On July 9th, plaintiffs asked ZyXEL

11   whether ZyXEL intended to use any fact witnesses to address the

12   issue of actual damages so that if there was such a person,

13   they could be deposed.  Plaintiffs say that on July 10th, ZyXEL

14   responded that it did not plan on offering any further

15   discovery on this topic, and it has not yet decided who it will

16   call to testify at trial on that issue.

17             So plaintiffs now say we move to preclude the

18   production of any such evidence and the only evidence in the

19   record is going to be our calculation, and that sounds right

20   again, Mr. Leichtman.  We asked you on July 9th, you responded

21   on July 10th, and that's the end of it.

22             MR. LEICHTMAN:  Well, I don't know --

23             THE COURT:  Didn't plan on offering any further

24   discovery on this topic, whatever that means.

25             MR. LEICHTMAN:  Well, because here's what happened in

188ksofc                    Conference

1    this instance, your Honor:  Plaintiff served a 30(b)(6) notice

2    on our client.  Our client provided a 30(b)(6) witness to

3    testify to both gross revenue and deductible expenses.  We

4    provided that witness.  They already took the testimony of that

5    witness --

6              THE COURT:  Well, that comes in.

7              MR. LEICHTMAN:  OK, so all I was saying in my email

8    was, I haven't decided who I'm going to call to testify at

9    trial but I've already given the discovery that's required to

10   prove our deductible expenses.  It's in the very same

11   documents.

12             THE COURT:  You're saying whether it's Mr. Jones or

13   Mr. Smith, the testimony is on the record?

14             MR. LEICHTMAN:  Correct.

15             THE COURT:  It will not change?

16             MR. LEICHTMAN:  Correct.

17             THE COURT:  It's just the person speaking; it might be

18   somebody else.

19             MR. LEICHTMAN:  Correct.  Now, he may ask different

20   questions, I don't know what questions he's --

21             THE COURT:  "He," Mr. Ravicher?

22             MR. LEICHTMAN:  Right, on cross-examination.

23             THE COURT:  That's up to him.  But that person is

24   limited to the testimony given at the 30(b)(6) deposition.  He

25   cannot come up with all new figures, all new documents, no way.

1    He's limited to what was said at the 30(b)(6) deposition.

2              MR. LEICHTMAN:  Correct.  That's all I was saying.  I

3    wasn't saying we're not going to prove deductible expenses at

4    trial.  All I was saying is, you already have the discovery

5    you're asking for.

6              THE COURT:  And you're limited to it, you can't change

7    that testimony.  You can change the person who speaks, the

8    words, but the testimony is set in stone now.

9              MR. LEICHTMAN:  I understand.

10             THE COURT:  All right, Mr. Ravicher.

11             MR. RAVICHER:  Well, the 30(b)(6) witness is their

12   chief technology officer.  He does nothing with financial

13   accounting --

14             THE COURT:  But if he gave you figures, those figures

15   come in, that's it, OK, done.

16             Now, another preclusion:  Plaintiffs want to preclude

17   introduction of evidence pertaining to ZyXEL's use of fact

18   witnesses to address the issue of actual damages.  I guess --

19             MR. LEICHTMAN:  I think that's the same issue, your

20   Honor.

21             THE COURT:  I was going to say, it sounds the same,

22   but for the remedy down the road, they ask that the Court

23   eventually order ZyXEL to deliver all articles containing

24   BusyBox to plaintiffs.  That's down the road.  We don't have to

25   reach the remedy now, do we?

188ksofc                    Conference

1           MR. RAVICHER:  No, your Honor.

2           THE COURT:  OK, so that's done.

3           So there's two issues left really, the substantive

4      ones.  The first is, the extent of plaintiff's copyright.

5           What has Andersen really copyrighted?  And I gather

6      it's limited, it has only a copyright to a portion of version

7      .60.3 that did not exist at the time of .60.1, and whatever new

8      portions Andersen himself authored, and that's the extent of

9      his copyright.  And plaintiffs apparently think that the

10     registration covers the new code he wrote as well as the

11     version as a whole, since he was the project manager and is,

12     therefore, responsible for the collection and assembly of the

13     whole.  ZyXEL says that plaintiff's unregistered copyright, so

14     to speak, can't be asserted, and it cites to a Southern

15     District case from 2009, SimplexGrinnell, which held that

16     plaintiffs cannot assert any remedy for claims of infringement

17     in an unregistered work because registration is a precondition

18     to filing suit, and ZyXEL says that Andersen or plaintiffs

19     haven't met this precondition and so they can't recover for any

20     of the unregistered versions.

21          Then plaintiffs say, well, the Supreme Court, in Reed

22     Elsevier, 2010, in some way overruled SimplexGrinnell because

23     that case said it doesn't go -- it's not a jurisdictional bar

24     but it's still a precondition to suit.

25          So I'm really confused by the argument, Mr. Ravicher.

1   Maybe the Court still has jurisdiction over the action, but the

2   registration is still a precondition to suit, and I don't know

3   that Reed Elsevier changed that at all.  Did it?

4          MR. RAVICHER:  In Reed Elsevier, you had some

5   copyrights that were registered, some that were not, exactly

6   the same situation we have here.

7          THE COURT:  Right.

8          MR. RAVICHER:  Mr. Andersen has a registered copyright

9   in 60.3 and has registered copyrights in later versions as

10  well.  So in Reed Elsiver, both the registered and unregistered

11  copyrights were asserted and remedied by the Court, and we seek

12  the same thing here, both the registered and unregistered

13  copyrights being asserted and remedied.

14         THE COURT:  What do you say the outcome was in Reed

15  Elsevier, they heard the unregistered copyright portion of the

16  infringement case?

17         MR. RAVICHER:  So the case in Reed Elsevier was

18  basically a class action, and they were trying to settle claims

19  by both registered copyrightholders and unregistered.

20         THE COURT:  Right.

21         MR. RAVICHER:  And the Court was asked the question,

22  can we resolve claims of unregistered copyrights since you

23  can't file a suit and the Supreme Court said yes, you can.

24         THE COURT:  Well, you can resolve suits, I think is

25  somewhat different than litigating suits.

1          MR. RAVICHER:  Well, I'll --

2          THE COURT:  In other words, there's -- can we resolve

3     them even though we can't actually bring them as a claim?  The

4     Court said, essentially, go ahead and resolve them, which

5     sounds logical to me.  But here it's not being resolved now.

6     Now we're talking about full-blown litigation, a trial, an

7     outcome, a remedy and enforcement, all of that stuff, when for

8     the unregistered copyright portion of this, there's a

9     precondition of being able to file that suit, which has not

10    been met.

11         MR. RAVICHER:  Well, I would argue that what Reed

12    Elsevier means is that a precondition for filing suit is either

13    registration of the copyright --

14         THE COURT:  Right.

15         MR. RAVICHER:  -- or bringing the unregistered

16    copyright in conjunction with a copyright --

17         THE COURT:  You think that's what it means,

18    Mr. Leichtman?

19         MR. LEICHTMAN:  No, absolutely not.

20         THE COURT:  I doubt it.  But if you think this is an

21    issue to be briefed, that's it, you can go ahead and brief it,

22    but I can tell you where I think I'm going to go with it.

23         All right, then we get what products are involved

24    here.  ZyXEL says that the summary judgment proceeding should

25    be limited to only one product, the P663H router, because it's

1    the only product mentioned in the complaint.  And apparently

2    Khun in his deposition couldn't even describe, with respect to

3    even that product, what version of BusyBox or what features of

4    BusyBox that router actually used.

5           But related to that, ZyXEL says that plaintiff's

6    knowledge of any other ZyXEL products that may contain BusyBox

7    were revealed to the plaintiffs during settlement discussions

8    and, therefore, can't be used.  And plaintiffs said, in

9    response, that the complaint uses that router only as an

10   example but not as a limitation, and that they were aware of

11   other products apart from the settlement effort.

12          I would like the plaintiff to try to be more specific

13   if we can't do this today.  Do you have evidence of what

14   specific portions or versions of .60.3 that Andersen does have

15   a registered copyright for and what products are the totality

16   of the list of products that you want to use and how you

17   learned about them outside of settlement?  Because I think you

18   are barred if the only way you learned about them is through

19   settlement discussions, where there's a presumption that you're

20   not going to be able to use it for any purpose.

21          MR. RAVICHER:  So with respect to what Mr. Andersen

22   contributed -- putting aside the editorial anthology

23   compilation copyright he has, because he put together all these

24   pieces, but just looking at specific code that he added, either

25   by himself or as a co-author with other persons, that is

188ksofc                    Conference

1    detailed in Mr. Kuhn's rebuttal expert report to Best Buy, and

2    Mr. Leichtman asked Mr. Khun dozens of questions exactly about

3    this.  The analysis is not capable of precise -- like comparing

4    two books to see where the same words are, because software is

5    written in one language and then gets compiled in just binary

6    digits and completely differently, so you can't eyeball it to

7    see the identicalness.

8            So what Mr. Khun described in his report is he

9    compares the previous version of BusyBox to .60.3, he finds all

10   the differences.  Then in those differences, he looks in the

11   author field to find who was the attributed author and where

12   there was -- I think you may recall we had a phone call about

13   this during the Best Buy preliminary injunction.  And there are

14   certain fields where Mr. Andersen attributes the authorship to

15   himself and some where he attributes it to other people certain

16   instances where he left it blank, which was his way of saying

17   I'm not going to waste my time putting my own name in when I

18   wrote it.  So Mr. Khun goes into detail about this.  So that's

19   Mr. Anderson's copyrights that he wrote in the version.

20           With respect to the versions in the products, we do

21   know -- and we have a detailed spreadsheet with each product

22   that we believe has BusyBox in it -- which version is in there.

23           THE COURT:  So you know which products he wants to

24   talk about, you just think it should be limited to one in the

25   complaint?

188ksofc                    Conference

1          MR. LEICHTMAN:  I have not seen that spreadsheet; it

2     hasn't been produced.

3          THE COURT:  Are you planning to show your adversary

4     the spreadsheet so he knows which products you think were in

5     dispute?

6          MR. LEICHTMAN:  I think it's too late for that, your

7     Honor.

8          THE COURT:  No, I don't think it's too late.  I'm not

9     saying I'm going to let him.  It's not too late to show you.

10    We'll all see what the list is.  Weren't you planning to show

11    it to him?

12         MR. RAVICHER:  We can provide this information to him.

13    I was waiting for us to get this expert discovery issue

14    resolved.

15         THE COURT:  We need to get it resolved.

16         MR. RAVICHER:  I can tell you that we know that the

17    one product that's mentioned in the complaint, which is just an

18    example of the number of products that they had, has a version,

19    which if I recall correctly -- I don't have it right in front

20    of me -- is the same exact version that was in the Best Buy

21    products that we alleged infringed.  So the analysis of

22    Mr. Kuhn's -- what's left over from .60.3 into version 1.0 --

23         THE COURT:  No, I understand that in terms of which

24    portions of the code might be registered or not, might be new

25    or not, compared to an older version, but I think he's entitled

188ksofc                    Conference

1    to this spreadsheet that tells him what products you think are

2    infringing and, therefore, at issue.  So will you turn over

3    that spreadsheet?

4             MR. RAVICHER:  Yes, your Honor.

5             THE COURT:  So that's coming.  And then we can revisit

6    whether it's fair to do that, but I don't think the fact that

7    they're not listed one by one in the complaint is a problem

8    because I think he's saying any product that uses the

9    infringing software we believe we have a right to pursue.

10            MR. LEICHTMAN:  Just so I understand, because then I

11   think what flows from that is a whole host of additional

12   issues, because, one, we have no opinions on those versions

13   from Mr. Khun and, therefore, we have had no opportunity to put

14   in any rebuttal expert evidence on the infringement issues.

15            THE COURT:  I don't know that -- wait a minute.

16   You're telling me two different things.  You're talking about

17   versions of the software and I'm talking about additional

18   products to the router.

19            MR. LEICHTMAN:  That's exactly what I'm talking about

20   as well because each product uses a different version.

21            THE COURT:  Every product is a different version?

22   There can't be that many different versions.  If you have 50

23   products, you have 50 versions of the code.

24            MR. LEICHTMAN:  Your Honor, there are at least 15

25   versions that just start with 1.00 and then they go up from

188ksofc                    Conference

1    there, and I think they're already up to 1.18 now, and within

2    each of those gradations -- so if you have 1.2, you might also

3    have 1.2.1, 1.2.2.  I don't know how many version there are,

4    but there are many, so there are many different versions of the

5    software that have been used.

6            THE COURT:  When you produce the spreadsheet with the

7    many products, when you say here's a spreadsheet of 50

8    products, will it also disclose whether those 50 products each

9    have a different code or whether the following ten have the

10   same code, the following five have the same code, we can see

11   how many different codes we're talking about?

12           MR. RAVICHER:  We can produce a spreadsheet with every

13   product identified and which version of BusyBox we believe is

14   in it, and you can sort it by version --

15           THE COURT:  How many different versions are there

16   going to be in that spreadsheet?

17           MR. RAVICHER:  I would think Mr. Leichtman's about

18   right -- somewhere around 15.

19           THE COURT:  How many different products are going to

20   be in that list?

21           MR. RAVICHER:  About 50.

22           THE COURT:  I think there too --

23           MR. LEICHTMAN:  Your Honor, again, there's been no

24   request for discovery about sales, profits, about any of those

25   products.  There's been no request for a discovery about

1   infringement on any of those products.

2            THE COURT:  How are you going to prove any damages if

3   you didn't make any request for discovery with regard to those

4   products?

5            MR. RAVICHER:  Your Honor, we did make requests for

6   discovery on all products which include BusyBox.  They only

7   gave us what they gave us.

8            THE COURT:  And what were you complaining about that?

9            MR. RAVICHER:  I didn't complain about that, so we'll

10   still seek a remedy of an injunction for any of the products

11   that we didn't get --

12            THE COURT:  But not damages?

13            MR. RAVICHER:  Well, statutory damages, but that's by

14   work, not by product.

15            THE COURT:  And you wouldn't need to know profits and

16   expenses, deductions and things like that?

17            MR. RAVICHER:  Right.

18            THE COURT:  That's helpful.

19            MR. LEICHTMAN:  It is, except they still have no

20   infringement evidence with respect to --

21            THE COURT:  Then they'll fail.  If they don't have

22   infringement evidence, they'll fail.

23            MR. LEICHTMAN:  Because none of the versions use --

24   none of the products use version .60.3.

25            THE COURT:  But they may use portions of the

1   registered copyright in the codes; is that your point?  I'm

2   asking Mr. Ravicher.  Some portion of those codes may contain

3   the information that Andersen was able to register; is that

4   right or wrong?

5           MR. RAVICHER:  That's true.  And I also don't know how

6   he can say none of the 50 products use 60.3 if he doesn't know

7   what versions are in his products.

8           MR. LEICHTMAN:  I know it's not 60.3.

9           THE COURT:  Why don't we reconvene after we get the

10  spreadsheet?

11          MR. LEICHTMAN:  That's fine, your Honor.

12          THE COURT:  OK.

13          MR. RAVICHER:  I'd like to --

14          THE COURT:  We need a schedule for this brief.  We're

15  very close.  But when are you going to turn over this

16  spreadsheet?

17          MR. RAVICHER:  I can turn it over by tomorrow.

18          THE COURT:  So should we reconvene toward the end of

19  this week, Thursday or Friday?

20          MR. RAVICHER:  I actually am traveling.  I can do

21  Monday or Tuesday.

22          THE COURT:  OK.  I'm not here Tuesday so Monday.  Let

23  me look.  I want to get it done.

24          Well, we can try 5:30.  You may end up waiting.  I'll

25  do my best.  So 5:30 on Monday the 15th, and then we'll finish

188ksofc                      Conference

1    up and do a briefing schedule.

2              MR. RAVICHER:  There's just one issue you mentioned

3    there, your Honor, about how we became aware of all these

4    products.

5              THE COURT:  Yes, I did ask that, when you raised the

6    point about settlement.

7              MR. RAVICHER:  In these products, the firmwares for

8    those products are all available on ZyXEL's website.  So any

9    member of the public can go there and look at the firmware and

10   it's easy to inspect and determine if BusyBox is in there.

11   They also have an admission on their website saying:  Dear

12   customer, our products, including the following model numbers,

13   have BusyBox in them.  And so there's plenty of public

14   information about these products that include BusyBox in them.

15             THE COURT:  That would seem to make an end to the

16   argument about the settlement talks, do you think,

17   Mr. Leichtman?

18             MR. LEICHTMAN:  Your Honor, I don't think that's quite

19   accurate.  I think what's on the website shows updates in the

20   software, to the extent that members of the public can make

21   updates to the products.  And if the BusyBox hasn't been

22   updated, there's no BusyBox software code on ZyXEL's website.

23             THE COURT:  No, no, he didn't say the code was.  He

24   said it's disclosed, all the products that are using the

25   BusyBox software.  Isn't that what you said?

188ksofc                      Conference

1          MR. RAVICHER:  Two things:  First of all, there's --

2     you can go and download new firmware for your device.  And it's

3     not componentized from where it's a complete new firmware that

4     you just flash on your device to replace everything else.  They

5     have whole host of files and folders you can download that for

6     their products, so that's (a).

7          (B) is the statement on the website says:  Dear

8     customer, some of our products have included software written

9     by third parties, including BusyBox.  These are the product

10    model numbers that include --

11         THE COURT:  Well, I think maybe what you ought to

12    do -- can you do can a snapshot and bring in what you're saying

13    supports your ability to have found this out other than through

14    settlement?

15         MR. RAVICHER:  Yes.

16         THE COURT:  Can you go to that website and show me

17    what you're talking about?

18         MR. RAVICHER:  Assuming they have not taken it down

19    since our letter, yes.

20         THE COURT:  Assuming they have not taken it down since

21    your letter.  Best I can do.  As you say, it shows one thing

22    and he denies it.  That's again silly.  The record is what it

23    is, just like a transcript.

24         Whatever is up there, is up there, unless you took it

25    down.  So why don't you try to do that this afternoon so I can

188ksofc                    Conference

1    see it on Monday.

2              MR. RAVICHER:  Yes, your Honor.

3              THE COURT:  All right.

4              MR. LEICHTMAN:  Will I be allowed to see that in

5    advance as well, your Honor?

6              THE COURT:  Well, it's there if it's there.

7              MR. LEICHTMAN:  Because I don't know what he's talking

8    about.

9              THE COURT:  OK.

10             MR. LEICHTMAN:  He says it can be found.  I haven't

11   been able to find it.

12             THE COURT:  OK.

13             MR. LEICHTMAN:  Your Honor, when is he going to turn

14   over the list?

15             THE COURT:  He said he would turn over the spreadsheet

16   tomorrow, close of business tomorrow.  That's the 9th.  And the

17   snapshots, I would think the same thing; you go back, you go on

18   the site, either they're there or they're not.

19             MR. RAVICHER:  Our letter has the URLs.  All he has to

20   do is type it into his web browser.

21             THE COURT:  Why don't you do it.  Then there won't be

22   any confusion that you're talking about the same spot so to

23   speak.

24             MR. RAVICHER:  Yes, your Honor.

25             THE COURT:  There's probably a lot of things on there.

188ksofc                    Conference

1    You know what you're saying.  Otherwise I get this:  It's up

2    there; no, it's not -- two people saying the opposite about

3    what's right there.  OK, so by the close of business tomorrow

4    you can get both of these things to him?

5              MR. RAVICHER:  Yes, your Honor.

6              THE COURT:  Then we'll be ready to talk again on

7    Monday.  OK, thank you.

8              MR. RAVICHER:  Thank you.

9              MS. WONG:  Your Honor?

10             THE COURT:  Yes, Ms. Wong?

11             MS. WONG:  Yes, Phoebe Micro is hoping to settle --

12             THE COURT:  Wait, wait.  Phoebe Micro is helping to

13   settle, you said?

14             MS. WONG:  Yes.

15             -- with plaintiffs shortly, and we're trying to reduce

16   the costs for my client.  Can we be excused from the reconvened

17   hearing?

18             THE COURT:  Yes.  That's your choice.  If you wish to

19   be excused from the reconvened hearing next Monday, you can.

20   That's up to you.  I have no problem.

21             MS. WONG:  Thank you, your Honor.

22             THE COURT:  OK, thank you.  Bye-bye.

23             MS. WONG:  Bye-bye.

24             THE COURT:  OK.  I guess we're done.  Thank you.

25                              *  *  *