UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


------------------------------------------------------------------ X
SOFTWARE FREEDOM CONSERVANCY, INC. and       :
ERIK ANDERSEN,                               :       ECF CASE
                          Plaintiffs,        :
        -against-                            :
                                             :       09-CV-10155 (SAS)
PHOEBE MICRO, INC.,                          :
                          Defendant.         :
------------------------------------------------------------------ X


**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Daniel B. Ravicher
Law Offices of Daniel B. Ravicher, Esq.
1375 Broadway, Ste. 600
New York, NY 10018
Tel.: (646) 470-2641
Fax.: (212) 591-6038

Counsel for Plaintiffs *Software Freedom
Conservancy, Inc. and Erik Andersen*

August 21, 2012

## **TABLE OF CONTENTS**

TABLE OF CONTENTS....................................................................................................................i

TABLE OF AUTHORITIES...........................................................................................................ii

INTRODUCTION...........................................................................................................................1

ARGUMENT...................................................................................................................................1

    I.      SUMMARY JUDGMENT IS APPROPRIATE.......................................................1

          A.      Plaintiffs Own Valid Copyrights in Multiple Versions of BusyBox............2

          B.      Phoebe's Unauthorized Copying and Redistribution of Plaintiffs' Copyrights....................................................................................................5

    II.     PLAINTIFFS REQUEST ALL APPROPRIATE REMEDIES...........................10

          A.      Permanent Injunction................................................................................10

          B.      Damages....................................................................................................11

          C.      Costs and Attorneys Fees..........................................................................11

          D.      Other Proper Relief: Delivery of All Infringing Articles to Plaintiffs.......12

CONCLUSION..............................................................................................................................13

# TABLE OF AUTHORITIES

Page

**Cases**

*Crescent Pubrg Grp., Inc. v. Playboy Enters., Inc.*,
    246 F.3d 142 (2d Cir. 2001)..................................................................12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..........................................................................2, 9

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)............................................................................12

*Island Software & Computer Serv. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir 2005)................................................................11

*Kepner-Tregoe, Inc. v. Vroom*,
    186 F.3d 283 (2d Cir. 1999)...............................................................12

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).............................................................................2

*Pearson Educ., Inc. v. Jun Liao*,
    2008 U.S. Dist. LEXIS 39222 (S.D.N.Y. 2008)................................10

*Scott v. Harris*,
    550 U.S. 372 (2007)..............................................................................1

*Software Freedom Conservancy, Inc. v. Best Buy Co.*,
    2010 U.S. Dist. LEXIS 75208 (S.D.N.Y. 2010)................................12

*U2 Home Entm't v. Lai Ying Music & Video Trading, Inc.*,
    2005 U.S. Dist. LEXIS 9853 (S.D.N.Y. 2005)..................................12

*Universal City Studios v. Ahmed*,
    1994 U.S. Dist. LEXIS 6251 (E.D.P.A. 1994)..................................12

*Yurman Design, Inc. v. Golden Treasure Imps., Inc.*,
    275 F. Supp. 2D 506 (S.D.N.Y. 2003).................................................5

*Yurman Studio, Inc. v. Castaneda*,
    2009 U.S. Dist. LEXIS 13869 (S.D.N.Y. 2009)..........................................................11, 12

**Statutes**

17 U.S.C. § 410...............................................................................................................4, 5

17 U.S.C. § 501....................................................................................................................2

17 U.S.C. § 502..................................................................................................................10

17 U.S.C. § 503..................................................................................................................12

17 U.S.C. § 504..................................................................................................................11

17 U.S.C. § 505..................................................................................................................11

**Rules**

Fed. R. Civ. Pro. 56(c)........................................................................................................1

Plaintiffs Software Freedom Conservancy, Inc. and Erik Andersen ("Plaintiffs") respectfully submit this Memorandum of Law in support of their motion for summary judgment against defendant Phoebe Micro, Inc. ("Phoebe").

## INTRODUCTION

Plaintiffs filed this action for copyright infringement against fourteen commercial electronics distributors because they each copied and distributed Plaintiffs' copyrighted software without Plaintiffs' permission and continued to do so even after receiving direct notice from Plaintiffs of their unlawful activity. The Court granted default judgment against one defendant (Dkt. 131) and all but one of the other defendants have been voluntarily dismissed from this action after agreeing to settlement terms with Plaintiffs. Phoebe is the lone remaining defendant.

Plaintiffs now move for summary judgment against Phoebe based on the Statement of Material Facts ("SMF")[1] and declarations submitted herewith that show there is no genuine issue as to any material fact regarding Phoebe's infringement of Plaintiffs' copyrights. Upon judgment being granted in their favor, Plaintiffs respectfully request an award of all appropriate remedies, including a permanent injunction, damages, and attorneys fees and costs.

## ARGUMENT

## I. SUMMARY JUDGMENT IS APPROPRIATE

Summary judgment shall be granted if "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine'

---

1 The Statement of Material Facts ("SMF") filed pursuant to Local Rule 56.1 contains a complete list of all of the material facts. As required by the Rule, each paragraph in the SMF includes a supporting citation to one or more declaration or other document filed herewith.

dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A copyright infringement claim comprises two elements: (i) ownership of a valid copyright; and, (ii) unauthorized copying, modifying, or distributing of the copyrighted work by another. 17 U.S.C. § 501(a); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). There is no genuine issue of fact that Plaintiffs' own valid copyrights in multiple versions of a computer program known as "BusyBox" and that Phoebe has made unauthorized copies and distributions of those copyrighted works. Thus, Plaintiffs are entitled to summary judgment on their claim of copyright infringement against Phoebe and an award of appropriate remedies.

### A.    Plaintiffs Own Valid Copyrights in Multiple Versions of BusyBox

Plaintiff Software Freedom Conservancy, Inc. ("Conservancy"), is a 501(c)(3) not-for-profit organization incorporated in New York. SMF ¶ 3. Conservancy's purpose is to provide fiscal sponsorship and various other non-profit organizational services to volunteer-based, community-oriented Open Source and Free Software projects. SMF ¶ 4. Conservancy serves as a fiscal sponsor and non-profit home for the BusyBox project. SMF ¶ 5. BusyBox is a program that functions well as a core component of the operating system for software in embedded computers, such as the wireless routers and Internet cameras at issue in this case. SMF ¶¶ 104, 107. BusyBox has been developed on an ongoing basis by many authors and is licensed to the pubic under the terms of the open source license known as the GNU General Public License, version 2

("GPLv2"). SMF ¶¶ 81, 108.

Plaintiff Erik Andersen is a computer programmer who has for many years written and distributed computer software in a professional capacity. SMF ¶ 2. Beginning in 1999, Mr. Andersen wrote and contributed software code to BusyBox. SMF ¶ 7. Over the years, the BusyBox project came to include many of his contributions. SMF ¶ 9. Although he allows others to use the code he contributed to BusyBox under the terms and conditions of the GPLv2, Mr. Andersen retains ownership over the copyrights in all of his contributions. SMF ¶ 8. In 2007, Mr. Andersen has designated Conservancy to act as an enforcement agent on behalf of his copyrights in BusyBox. SMF ¶ 32.

Beginning in about January 2002, Mr. Andersen became maintainer of BusyBox. SMF ¶ 10. In that capacity, Mr. Andersen supervised, coordinated and managed the release of multiple updates to BusyBox, including every version from 0.60.3 through version 1.1.0. SMF ¶ 11. In addition to the textual modifications Mr. Andersen personally made to BusyBox's source code, as maintainer Mr. Andersen edited and arranged code and documentation contributed by other software developers for inclusion into BusyBox's source code – accepting some contributions, and rejecting other contributions. SMF ¶ 12.

As a maintainer and a developer of the BusyBox program, Mr. Andersen used a version control software program to manage all modifications made to the BusyBox source code and to store "commit logs" containing all relevant metadata associated with each "commit" (i.e., new and/or modified code submitted for inclusion). SMF ¶ 15. Each commit log includes an "author" field, which the version control software program would automatically populate with the name of

the developer formally adding (or "committing") the modification to the BusyBox code base. SMF ¶ 21. When Mr. Andersen committed modifications to BusyBox on behalf of other developers, he would manually enter the developers' name(s) in a human-readable field of the associated commit logs as recognition of their contributions. SMF ¶¶ 22-23. In contrast, Mr. Andersen did not enter his own name into a human-readable field in commit logs relating to code he personally authored, since his user name was already in the author field. SMF ¶ 24. All of the commit logs produced during Mr. Andersen's tenure as maintainer are available for public viewing and inspection, and one can use simple known commands to identify the lines of code Mr. Andersen added, wrote, and/or edited. SMF ¶¶ 27, 29-31.

Mr. Andersen registered his copyrights in his contributions to and arrangement of the versions of BusyBox set forth in the table below.

| Version | Date Published | Date Copyright Registered | Copyright Reg. No. |
|---|---|---|---|
| 0.60.3 | Apr. 27, 2002 (SMF ¶ 34) | Oct. 2, 2008 (SMF ¶ 41) | TX0006869051 (SMF ¶ 41) |
| 1.00-pre1 | July 15, 2003 (SMF ¶ 42) | Aug. 30, 2011 (SMF ¶ 79) | TX007441841 (SMF ¶ 79) |
| 1.00-pre2 | July 30, 2003 (SMF ¶ 46) | Aug. 30, 2011 (SMF ¶ 79) | TX007450229 (SMF ¶ 79) |
| 1.00-pre3 | Sept. 12, 2003 (SMF ¶ 50) | Aug. 31, 2011 (SMF ¶ 79) | TX007450225 (SMF ¶ 79) |
| 1.00-pre4 | Dec. 10, 2003 (SMF ¶ 54) | Aug. 31, 2011 (SMF ¶ 79) | TX007450179 (SMF ¶ 79) |
| 1.00-pre6 | Jan. 31, 2004 (SMF ¶ 58) | Sept. 1, 2011 (SMF ¶ 79) | TX007443243 (SMF ¶ 79) |
| 1.00-pre8 | Feb. 23, 2004 (SMF ¶ 62) | Sept. 6, 2011 (SMF ¶ 79) | TX007445924 (SMF ¶ 79) |
| 1.00-pre9 | Apr. 7, 2004 (SMF ¶ 66) | Sept. 6, 2011 (SMF ¶ 79) | TX007445912 (SMF ¶ 79) |
| 1.00-rc1 | July 20, 2004 (SMF ¶ 70) | Sept. 6, 2011 (SMF ¶ 79) | TX007445909 (SMF ¶ 79) |
| 1.00 | Oct. 13, 2004 (SMF ¶ 74) | Sept. 6, 2011 (SMF ¶ 79) | TX007412131 (SMF ¶ 79) |

The evidentiary weight to be accorded copyright registrations is set forth in 17 U.S.C. § 410(c), which states:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

Although Mr. Andersen's ten registered copyrights were registered more than five years after they were first published, in the absence of any evidence to the contrary, Plaintiffs are still entitled to a presumption of validity. *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2D 506, 515-16 (S.D.N.Y. 2003). Phoebe has identified no witness, fact or expert, to dispute Plaintiffs' copyright claims. Thus, there is no genuine dispute regarding the issue of whether Mr. Andersen holds valid copyrights in his contributions to and role as maintainer of these ten versions of BusyBox.

### B.      Phoebe's Unauthorized Copying and Redistribution of Plaintiffs' Copyrights

Bradley M. Kuhn is President and Executive Director of  the Conservancy. SMF ¶ 3. Mr. Kuhn holds a *summa cum laude* Bachelor's degree in Computer Science and a Master's degree in Computer Science. SMF ¶ 83. Mr. Kuhn's master's thesis covered topics related to programming language implementations and compilation. SMF ¶ 84. Mr. Kuhn has extensive industry experience as a software developer and computer systems administrator. SMF ¶ 85.

Since 2001, Mr. Kuhn has been employed at various not-for-profit charities related to Open Source and Free Software where he has focused extensively on the technical details of proper compliance with the terms and requirements of the GPLv2 and other open source related copyright licenses. SMF ¶¶ 86, 87. Pursuant to Fed. R. Civ. P. 26(a)(2)(C), Plaintiffs disclosed to Phoebe that they intended to call Mr. Kuhn as an expert to testify to the similarity between

Phoebe's software code and contributions to the BusyBox software program made by Mr. Andersen. Mr. Kuhn has submitted a declaration in support of this motion for summary judgment to set forth both certain facts and his expert opinions.

Mr. Kuhn examined the software for several of Phoebe's products and determined that they contained various versions of BusyBox. SMF ¶¶ 112-14. Mr. Kuhn's conclusions are summarized in the following table:

| Phoebe Product | BusyBox Version |
| --- | --- |
| AICAP650W | 1.00-pre1 |
| AICAP650 | 1.00-pre1 |
| AICN500 | 1.01 |
| AICN500W | 1.01 |
| AICN747W | 1.01 |
| AICN777W | 1.01 |
| ANAS350 | 1.00-rc2 |
| AP671W | 1.11.1 |
| AR360W3G | 1.00-rc2 |
| AR525W | 1.00 |
| AR570W | 1.15.2 |
| AR660W3G | 1.11.1 |
| AR675W | 1.00-pre8 |
| AR680W | 1.00 |

SMF ¶ 114 (Exhibit A attached to Declaration of Bradley M. Kuhn). Phoebe has identified no witness, fact or expert, to dispute these allegations. Thus, there is no genuine dispute that Phoebe has distributed copies of various versions of BusyBox.

Once Mr. Kuhn identified the versions of BusyBox distributed by Phoebe, he then analyzed the commit logs for the ten versions of BusyBox in which Mr. Andersen registered his

copyrights to determine the extent to which the versions of BusyBox distributed by Phoebe were derived from Mr. Andersen's contributions. SMF ¶¶ 193-97. To summarize his findings, Mr. Kuhn produced the following table matching up Mr. Andersen's lines of textual contribution to the specific versions of BusyBox in which he registered his copyrights with the specific versions of BusyBox in Phoebe's products.

| LINES OF CODE | | Versions of BusyBox in Phoebe's Products | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 1.00-pre1 (AICAP650W, AICAP650) | 1.00-pre8 (AR675W) | 1.00-rc2 (ANAS350, AR360W3G) | 1.00 (AR525W, AR680W) | 1.01 (AICN500, AICN500W, AICN747W, AICN777W) | 1.11.1 (AR660W3G, AP671W) | 1.15.2 (AR570W) |
| Andersen's Additions and/or Modifications First Published in These BusyBox Versions | 0.60.3 | 221 | 213 | 208 | 203 | 195 | 89 | 29 |
| | 1.00-pre1 | 2125 | 1928 | 1730 | 1696 | 1520 | 865 | 690 |
| | 1.00-pre2 | N/A | 322 | 300 | 297 | 284 | 80 | 71 |
| | 1.00-pre3 | N/A | 261 | 258 | 258 | 218 | 151 | 91 |
| | 1.00-pre4 | N/A | 667 | 658 | 660 | 262 | 419 | 104 |
| | 1.00-pre6 | N/A | 462 | 449 | 435 | 282 | 137 | 47 |
| | 1.00-pre8 | N/A | 172 | 184 | 189 | 127 | 129 | 67 |
| | 1.00-pre9 | N/A | N/A | 1597 | 1536 | 1218 | 623 | 565 |
| | 1.00-rc1 | N/A | N/A | 342 | 307 | 254 | 146 | 66 |
| | 1.00 | N/A | N/A | N/A | 583 | 186 | 261 | 117 |
| | TOTAL | 2346 | 4025 | 5726 | 6164 | 4546 | 2900 | 1847 |

SMF ¶ 197.

As shown in Mr. Kuhn's table, Phoebe's AICAP650W and AICAP650 products, for example, contained BusyBox version 1.00-pre1, which is derived from 221 lines of code added and/or revised by Mr. Andersen in version 0.60.3 of BusyBox and 2,125 lines of code added and/or revised by Mr. Andersen in version 1.00-pre1 itself.

Due to the significant amount of Mr. Andersen's contributions contained in Phoebe's

products, Mr. Kuhn concluded that each of the versions of BusyBox found in Phoebe's products were derived from each of the earlier versions of BusyBox that Mr. Andersen published. SMF ¶ 202. For example, Mr. Kuhn's opinion is that the version of BusyBox found in the AICAP650W and AICAP650 products (1.00-pre1) was derived from both the contributions Mr. Andersen made to version 0.60.3 and the contributions he made to version 1.00-pre1. SMF ¶ 202. Even the most recent version of BusyBox included in a Phoebe product, version 1.15.2 found in the AR570W product, is derived from each of the ten versions in which Mr. Andersen registered his copyrights.

Summarizing, Phoebe's fourteen products cumulatively infringe all ten of Plaintiffs' registered copyrights. In fact, several of Phoebe's products infringe all ten of Plaintiffs' registered copyrights individually, as each of the AR525W, AR680W, AICN500, AICN500W, AICN747W, AICN777W, AR660W3G, AP671W, and AR570W products contain a version of BusyBox derived from significant portions of Mr. Andersen's contributions to each of the ten versions of BusyBox in which he registered his copyrights. Phoebe has identified no witness, fact or expert, to dispute these conclusions. Thus, there is no genuine dispute that Phoebe has distributed various versions of BusyBox that are copies of or derived from each of Plaintiffs' ten registered copyrights.

In addition, as discussed above, Mr. Andersen was maintainer for several versions of BusyBox, including versions 1.00-pre1, 1.00-pre8 and 1.00-rc2, which are specifically used by Phoebe in its AICAP650W, AICAP650, AR675W, ANAS350, and AR360W3G products. Therefore, in addition to the infringement by Phoebe of Mr. Andersen's copyrights in the content

he contributed to those versions of BusyBox, Phoebe also infringed his copyright as maintainer of those versions since he selected and arranged the contributions made to them. *Feist Publ'ns*, 499 U.S. at 348 ("The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws."). Phoebe has identified no witness, fact or expert, to dispute these conclusions. Thus, there is no genuine dispute that Phoebe has distributed versions of BusyBox that violate Plaintiffs' registered copyrights in the selection and arrangement of BusyBox versions 1.00-pre1, 1.00-pre8 and 1.00-rc2.

Phoebe's copying and distribution of BusyBox was and is without Plaintiffs' permission. SMF ¶ 113. Phoebe could have had Plaintiffs' permission had it complied with the GPLv2 under which BusyBox is licensed. SMF ¶¶ 81-82, 108. However, Phoebe failed to comply with the GPLv2's requirements, including, for example, § 3, which requires Phoebe to provide recipients of BusyBox with either a copy of the complete and corresponding source code thereto or an offer for such source. SMF ¶ 81 (Exhibit 4 to Declaration of Erik Andersen contains a copy of the GPLv2). Mr. Kuhn confirmed Phoebe's failure to do so on multiple occasions. SMF ¶¶ 109-10, 122, 137, 188.

Further, under GPLv2 § 4, Phoebe's first violation of GPLv2's terms and conditions terminated any right Phoebe had to copy, modify or redistribute BusyBox ever again, even if later done in compliance with the terms of GPLv2. SMF ¶ 81 (Exhibit 4 to Declaration of Erik

9

Andersen contains a copy of the GPL, which states "You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License."). Therefore, Phoebe's subsequent copying and distributing of BusyBox was and is without Plaintiffs' permission, even if it is now done in compliance with the GPLv2. The only way for Phoebe to again have permission to distribute Plaintiffs' copyrighted portions of BusyBox under GPLv2 is for Phoebe to receive Plaintiffs' express permission to do so. Plaintiffs have not granted such permission.

## II. PLAINTIFFS REQUEST ALL APPROPRIATE REMEDIES

Plaintiffs respectfully request that, upon entry of summary judgment against Phoebe, the court award (i) permanent injunctive relief, (ii) damages, (iii) reasonable attorneys fees and costs, and (iv) any such further relief as the Court may deem just and proper.

### A. Permanent Injunction

Under 17 U.S.C. § 502(a), a court may grant an injunction, "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," and, "permanent injunctions are generally granted where liability has been established and there is a threat of continuing infringement." *Pearson Educ., Inc. v. Jun Liao*, 2008 U.S. Dist. LEXIS 39222, at *14-15 (S.D.N.Y. 2008). To prevent Phoebe from infringing Plaintiffs' copyrights in the future, Plaintiffs respectfully request that the court permanently enjoin Phoebe from any further copying, distribution or use of Plaintiffs' copyrights in BusyBox, including specifically Mr. Andersen's ten registered copyrights discussed herein.

10

### B.      Damages

After proving infringement, a copyright holder may elect to recover an award of statutory damages in a sum of not less than $750 or more than $30,000. 17 U.S.C. § 504(c). However, if the defendant's infringement was willful, a court may award statutory damages up to $150,000. 17 U.S.C. § 504(c)(2). A finding of willful infringement is appropriate if the infringer was "actually aware of the infringing activity." *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir 2005).

Here, Phoebe had actual knowledge of its infringement of Plaintiffs' copyrights as of at least December 2009, when this suit was filed. However, Mr. Kuhn determined that Phoebe was still making distributions of Plaintiffs' copyrights in BusyBox in several products in January 2011 and August 2011 without complying with the GPL. SMF ¶ 114 (Exhibit A attached to Declaration of Bradley M. Kuhn), 130-88. Thus, these acts of infringement committed by Phoebe long after the filing of this suit were willful and an award of enhanced statutory damages is appropriate. Plaintiffs request an award of statutory damages against Phoebe in the amount of $150,000.

### C.      Costs and Attorneys Fees

Under 17 U.S.C. § 505, a court may grant to prevailing copyright holders "the recovery of full costs" and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." "The decision to award costs and fees may take into account punitive or deterrent policies[, and] [o]ther factors to consider may include 'frivolousness, motivation, objective unreasonableness [] and the need in particular circumstances to advance considerations of compensation ....'" *Yurman Studio, Inc. v. Castaneda*, 2009 U.S. Dist. LEXIS 13869, at *5

(S.D.N.Y. 2009) (*citing Crescent Pubrg Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19, (1994))). Further, "[a] finding that a defendant's copyright infringement was willful can support the award of attorney's fees to the plaintiff.'" *Software Freedom Conservancy, Inc. v. Best Buy Co.*, 2010 U.S. Dist. LEXIS 75208, at \*14-15 (S.D.N.Y. 2010) (*citing U2 Home Entm't v. Lai Ying Music & Video Trading, Inc.*, 2005 U.S. Dist. LEXIS 9853, at \*7 (S.D.N.Y. 2005) (*citing Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999))).

In this case, Phoebe's infringement of Plaintiffs' numerous copyrights has been sustained and ongoing for at least the more than two and a half years since this suit was first filed in December 2009. The punitive and deterrent policies of copyright law thus support an award of attorneys fees and costs to Plaintiffs. Further, Plaintiffs are an individual and a not-for-profit public charity, while Defendant is a for-profit enterprise. These circumstances further support an award of attorneys fees and costs out of a consideration for just compensation. Plaintiffs respectfully request that the court order Phoebe to pay to Plaintiffs their costs and attorneys fees, which Plaintiffs will specify if granted.

### D.  Other Proper Relief: Delivery of All Infringing Articles to Plaintiffs

Under 17 U.S.C. § 503(b), "[a]s part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies ... found to have been made or used in violation of the copyright owner's exclusive rights."  Such "reasonable disposition" can include issuing an order permitting plaintiffs to seize infringing articles and donate those infringing articles to charity. *Universal City Studios v. Ahmed*, 1994 U.S. Dist. LEXIS 6251, \*14 (E.D.P.A.

12

1994).

Rather than order the destruction of infringing articles in Phoebe's possession, Plaintiffs respectfully request that the court order Phoebe to deliver all articles containing versions of BusyBox containing or derived from Plaintiffs' registered copyrights to Plaintiffs for reasonable disposition. Plaintiffs will donate all such articles to charity.

<u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully ask that their motion for summary judgment against defendant Phoebe be granted and that all appropriate remedies be awarded therefor.


Dated: August 21, 2012                    Respectfully submitted,
       New York, New York         By:  s/ Daniel B. Ravicher
                                       Law Offices of Daniel B. Ravicher, Esq.
                                       1375 Broadway, Ste. 600
                                       New York, NY 10018
                                       Tel.: (646) 470-2641
                                       Fax.: (212) 591-6038

                                       Counsel for Plaintiffs *Software Freedom
                                       Conservancy, Inc. and Erik Andersen*

13